IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| BRANTLEY COUNTY DEVELOPMENT PARTNER, LLC,<br><br>        Plaintiff,<br>V.<br><br>BRANTLEY COUNTY, GEORGIA by and through its CHAIRMAN and MEMBERS OF THE BRANTLEY COUNTY BOARD OF COMMISSIONERS; CHRIS "SKIPPER" HARRIS; RANDY DAVIDSON; BRIAN HENDRIX; JESSE MOBLEY and RAY GRIFFIN, all in their official capacities as commissioners; and JESSE MOBLEY, individually,<br><br>        Defendants. | CIVIL ACTION FILE<br>NO. 5:19-CV-00109-LGW-BWC |

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

#### I.   INTRODUCTION

COME NOW Defendants Brantley County, Georgia, Chairman and members of the Brantley County Board of Commissioners, Chris Harris, Randy Davidson, Brian Hendrix, Jesse Mobley and Ray Griffin ("Defendants" or "County"), by and through the undersigned counsel, and hereby file this, their Response in Opposition to Brantley County Development Partners' Motion for Preliminary Injunction (Doc. 58).

At the outset, it must be noted that it is not at all clear what Brantley County Development Partners ("Development Partners" or "Plaintiff") is seeking to have this Court enjoin, other than some type of broad restriction on the County's participation in the Georgia Environmental Protection Division's ("EPD") public process of reviewing a landfill permit application and

1

forbidding the County from enforcing its valid laws.  Call this what it is – an attempt to bully and intimidate the County into silence. Plaintiff's agents were able to convince the county manager and one commissioner in 2014 that it did not plan to build a landfill at all, but instead planned to build an environmentally friendly waste-to-energy project.  Its agents even got the County to ignore its own Solid Waste Management Plan ("SWMP") and provide consistency letters without having any understanding of Plaintiff's project or seeing any plans or proposals.[1]  Plaintiff accomplished this feat by falsely assuring the County that what it intended to develop complied with the SWMP.  Even up to the week before Plaintiff filed its application with EPD, the commissioner Plaintiff was able to sway (Michael Edgy) was declaring to the public that Plaintiff was not developing a landfill, but rather a facility that utilized new technology to convert waste to energy.[2]  (*See* Transcript of Meeting on December 22, 2016, pp. 21-23, attached to Declaration of Brian Hendrix, which is Exhibit 2 to Defendants' Notice of Filing.)

Once Plaintiff's application was filed and the County understood that it had been misled, it let EPD know it had never approved what was contained in Plaintiff's application.  It did this through EPD's invitation to the public to comment about the pending application.  Plaintiff now appears to seek the Court's power to prevent the County from further participation in the EPD's review of Development Partners' permit application.

Development Partners also appears to seek an injunction requiring Brantley County to issue consistency letters to EPD certifying that Development Partners' development plans are consistent

---

[1] Charles D. Summerlin, Jr. denies signing the February 6, 2015 letters.  (Declaration of Charles D. Summerlin, Jr., attached to Defendants Notice of Filing as Exhibit 1.)  In sworn testimony, Commissioner Edgy is forced to admit that Chairman Summerlin told him he refused to execute the letters.  (Doc. 58-4 p.16.)

[2] Discovery has not commenced, and if it does, the County will be able to uncover whether Plaintiff's agents deliberately misled the commissioners, or they simply took advantage of their misunderstanding and trust.

with the Brantley County 2006 Solid Waste Management Plan and zoning ordinance. None of this relief is warranted and the Court should deny the motion.

## II.   FACTS

Defendants adopt the Factual Background as stated in their Renewed Motion to Dismiss (Doc. 48.) In several instances, the County vehemently objects to Plaintiff's characterization of the facts and files herewith declaration of individuals who contradict some of Plaintiff's allegations. (*See* Defendants' Notice of Filing.) Given the expedited hearing on Plaintiff's motion, the County will address Plaintiff's inaccuracies as needed during presentation of the motion to the Court.

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Standard for the Issuance of a Preliminary Injunction

The purpose of a preliminary injunction is to "restrain or compel conduct in those extraordinary situations where irreparable injury might result from delay or inaction." *Alabama v. United States Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir. 2005) (citing *United Bonding Ins. Co. v. Stein*, 410 F.2d 483, 486-87 (3d Cir. 1969)).

A motion for a preliminary injunction must be based upon a cause of action. "There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim)." *Id*. at 1127 (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004)). As discussed in Brantley County's Renewed Motion to Dismiss, Development Partners has not stated a claim. (*See* Doc. 48.) Moreover, because a preliminary injunction is an "extraordinary remedy," it is not available whenever a legal right has been infringed, "but only when that legal right has been infringed by an

injury for which there is no adequate legal remedy and which will result in irreparable injury if the injunction does not issue." *Id.* (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506 (1959); *Newman v. Alabama*, 683 F.2d 1312, 1319 (11th Cir. 1982)).

Therefore, a movant must make four showings to obtain a preliminary injunction: 1) substantial likelihood of success on the merits; 2) the movant will suffer irreparable injury unless the injunction is issued; 3) the threatened injury to the movant outweighs the possible injury that the injunction may cause the opposing party; and 4) if issued, the injunction would not be adverse to the public interest. *Klay*, 376 F.3d at 1097 (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).

A preliminary injunction "is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015) (quoting *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001)). Plaintiff cannot make these showings.

**B.    No Likelihood Plaintiff Will Prevail on the Merits**

    **1.    No Dormant Commerce Clause Claim Exists**

Development Partners' motion includes a lengthy discussion of the dormant commerce clause, which is not relevant to any of its claims for two reasons.[3]

First, the correct version of the amended Solid Waste Management Plan ("SWMP") does not distinguish between in-county and out-of-county waste. Due to a clerical error, a Brantley County clerk mistakenly produced to Plaintiff's counsel a draft version of the amended SWMP

---

[3] This discussion is contained in the County's renewed motion to dismiss and is provided in summary fashion here.

4

and not what was adopted. Brantley County has remedied this mistake, and clarified that the County Commissioners passed a version of the amended SWMP that does not state that a solid waste management facility must serve only the needs of the County. (Attached as Exhibit 6 to Defendant's Notice of Filing is a certified copy of the minutes from the meeting at which the County clarified which version was adopted, with the final version attached to the minutes.) The adopted version of the amended SWMP omits reference to any prohibition of importation on out-of-county waste.

Second, and more importantly, the amended SWMP has never been applied to Development Partners. Rather, the 2006 SWMP was in effect when Plaintiff submitted its application to the EPD. And, then, Plaintiff did not attempt to take even meager steps to comply with the 2006 SWMP.

### 2.     No Vested Rights Claim Exists

Development Partners incorrectly claims that it obtained a vested right to build a landfill when it sought and obtained initial consistency letters in 2014.[4] The initial consistency letters issued by the County did not create vested rights because they were given in violation of the 2006 SWMP. Not only does Development Partners not have a vested rights claim, Defendants are immune from this and other state law claims brought by Development Partners.

#### a. *Defendants have immunity from vested rights claim*

The determination of a vested property right is, as Development Partners states, a question of state law. *Crown Media, LLC v. Gwinnett Cty.*, 380 F.3d 1317, 1325 (11th Cir. 2004). State law thus governs immunity from vested rights claims, and Brantley County and the individual

---

[4] Again, this issue is addressed in detail in the County's renewed motion to dismiss, which the County will not repeat in detail.

commissioners are entitled to sovereign immunity on this and other state law claims. *Lathrop v. Deal*, 301 Ga. 408, 444 (2017) ("The constitutional doctrine of sovereign immunity bars any suit against the State to which it has not given its consent, including suits against state departments, agencies, and officers in their official capacities, and including suits for injunctive and declaratory relief…").

Development Partners' state law claims are also barred as to the individual commissioners by official immunity. Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d). As discussed in Defendants' Reply Brief in Support of Renewed Motion to Dismiss, Development Partners cannot evade sovereign immunity in this case by suing the commissioners in their individual capacities, because it is clear that Development Partners' claims are not against the commissioners as individuals, but against the County. (Doc. 55, pp.21-22.)

The rule of sovereign immunity "can not be evaded by making an action nominally one against the servants or agents of a State, when the real claim is against the State itself and it is the party vitally interested." *Lathrop*, 301 Ga. at 414-415 (quoting *Cannon v. Montgomery*, 184 Ga. 588, 591 (1937)). This is in contrast with claims in which an officer is sued "individually for an act which, while done in his official capacity, was wholly without lawful authority, and beyond the scope of his official power." *Id*. at 415-416 (citing *Dennison Mfg. Co. v. Wright*, 156 Ga. 789 (1923)). Here, the County commissioners had lawful authority to adopt a zoning ordinance, amend its SWMP, and communicate the illegality of the consistency letters to the EPD.

"The test for determining whether a suit is in reality one against the State though the State is not named as a party is whether 'if the relief prayed [for] in the present case is granted, it will not operate to control the action of the State or subject it to liability[.]'" *Bd. of Comm'rs v. Mayor & Council of Valdosta*, 352 Ga. App. 391, 395 (2019) (quoting *Moore v. Robinson*, 206 Ga. 27,

37 (1949). *See also Holcombe v. Ga. Milk Producers Confederation*, 188 Ga. 358, 363 (1939) (sovereign immunity did not bar suit for injunctive relief against board members, as individuals, because "the State is not a party to the record[, and] [no] judgment is asked which will take any property of the State, or fasten a lien on it, or interfere with the disposition of funds in its treasury, or compel the State indirectly, by controlling its officers, to affirmatively perform any contract, or pay any debt, or direct the exercise of any discretion committed to its officers").

Here, Development Partners is clearly suing the County. Plaintiff demands injunctive relief that would require the County to not enforce its laws, not communicate with the EPD, reverse its own zoning decisions, and require the County to send consistency letters to the EPD despite its inability to legally do so. (Doc. 58, pp.27-28.) It would also forbid any County officials from communicating the illegality of the initial consistency letters to the EPD. These demands go well beyond the individual commissioners. Development Partners' claims for injunctive relief are clearly demands against the County. Therefore, the state law vested rights claim is barred by sovereign immunity.

### b. *Development Partners does not have a vested right to develop a landfill*

Development Partners argues that a "Regulation" violates its allegedly vested right to build a landfill. The "Regulation" referenced in this argument is a County resolution withdrawing the 2014 consistency certification letters. (Doc. 58, pp.14 n.6, 19,20.) Development Partners claims it has "relied on" these initial consistency letters for years. (Doc. 58, p.14.)

To start, it is inappropriate to challenge this resolution in a motion for preliminary injunction. "The sole function of an action for injunction is to forestall future violations. It is so unrelated to punishment or reparations for those past that its pendency or decision does not prevent concurrent or later remedy for past violations by indictment or action for damages by those

injured." *Alabama v. United States Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir. 2005) (quoting *United States v. Oregon State Med. Soc.*, 343 U.S. 326, 333 (1952)).  The resolution has already passed.  If Development Partners can show it was harmed by this resolution, it may sue for damages, but it cannot obtain an injunction.[5]

As discussed in Brantley County's Renewed Motion to Dismiss, it was illegal for the County Manager to provide the initial consistency letters in November 2014; it was an ultra vires act. (Doc. 55, pp.11-12.)  It was always against the law for the County to issue the consistency letters without meeting the requirements in the SWMP, so Development Partners could get no vested rights from those letters. *See Corey Outdoor Advertising, Inc. v. Board of Zoning Adjustments*, 254 Ga. 221 (1985).

Development Partners cites to *Crown Media, LLC v. Gwinnett County* to state that a vested right cannot be divested by subsequent government action. 380 F.3d 1317 (11th Cir. 2004).  *Crown Media* involved vested rights in county-issued building permits and sign permits, and a plaintiff that actually applied for and received permits. *Id*. at 1329.  Here, in contrast, Development Partners never submitted any plans or made any requests for a building permit from Brantley County.

Similarly, in *Wal-Mart Stores, Inc. v. County of Clark*, 125 F. Supp. 2d 420, 423 (D. Nev. 1999), also cited by Development Partners, the property owner had previously received zoning approvals and the county had approved various plans and granted various permits.  Again, Development Partners never submitted any plans or proposals to Brantley County, so County officials could not reasonably approve anything.

---

[5] Development Partners, moreover, provides no allegation in its complaint that EPD delayed processing the permit application. Rather, it now presents to this Court self-serving conclusory allegations from its engineer Steven Harbin.  The Court should not consider the affidavit for purposes of ruling on this motion.

Plaintiff incorrectly interprets *Banks County v. Chambers of Georgia*, 264 Ga. 421 (1994). Development Partners says that this case stands for the proposition that an applicant gets vested right upon seeking written verification that proposed landfill complies with local zoning ordinances. The case actually says: "Plaintiffs were in compliance with the County's zoning ordinances when they sought written verification of compliance on August 20, 1991. It follows that plaintiffs have a vested right to obtain written verification of zoning compliance despite the enactment of [a later] zoning ordinance." *Id*. at 423.

Unlike *Banks*, the consistency letters and permit application here did not comply with the SWMP. The issues are that (1) Development Partners did not submit a landfill proposal at all and County officials could not have determined whether the plans complied with the SWMP, and (2) the Development Partners' property violates a restriction in the SWMP by being too close to the Mumford House, as explained in the County's motion to dismiss. The problem is that Plaintiff did not submit a proposal and the certification letters were issued in violation of the law.

Development Partners also relies on *Recycle & Recover v. Georgia Board of Natural Resources* to no avail. 266 Ga. 253 (1996). In *Recycle & Recover*, a property owner applied to modify its solid waste treatment facility permit prior to the enactment of a state law that would delay the application for three years. *Id*. at 255. The court found that the property owner had a right to the consideration of its application under prior law, but did not decide whether the owner had a right to the issuance of the permit. *Id*. ("[W]e do not reach the ultimate question of whether RRI is entitled to issuance of a permit."). Here, the initial application and consistency letters did not comply with then-existing law.

Development Partners also is not correct that any informal assurances from County officials gave it a vested right to build a landfill. In fact, there is evidence that the County officials

9

were mistaken, at best, and hoodwinked, at worst, about the nature of Development Partners' proposal. Then-Commissioner Michael Edgy stated at a public meeting that Development Partners was proposing a waste-to-energy facility, not a landfill. (*See* Transcript of Meeting on December 22, 2016, pp. 21-23, attached to Declaration of Brian Hendrix, which is Exhibit 2 to Defendants' Notice of Filing.) County officials cannot give assurances about the propriety of a development if they do not have any proposed plans and do not even know what type of project is being planned.

In this argument, Plaintiff again misstates the law. Development Partners writes that *WMM Properties, Inc. v. Cobb County,* 255 Ga. 436 (1986), states that a landowner acquires a vested right to develop a property when he relies on assurances by local officials and the landowner expends money in reliance on those assurances. *WMM Properties*, 255 Ga. at 439. The case states that a "landowner has a right to develop property where the property was purchased in reliance upon the assurance of one county commissioner that the property was zoned for the use intended, the *development plan* was in accordance with the existing zoning and was approved, albeit informally, by the county commissioners, and the landowner has expended money in reliance upon the *development plan* and the existing zoning. *Id*. (citing *Spalding Cty. v. E. Enter., Inc.*, 232 Ga. 887 (1974) (emphasis added)). As discussed previously, Development Partners never submitted a development plan. There was nothing that County officials could "assure" Development Partners was in compliance with zoning or the SWMP. Nor was there any "development plan" that Development Partners could rely on in its expenditures.

Furthermore, the property owners in *WMM Properties* were not in a similar situation to Development Partners. The property owner "obtained approval for detailed development plans of all relevant county departments" and "expended large sums of money to go ahead with the development from that point." *Id*. Development Partners did not get formal or informal approval

for "detailed development plans" because there were none.

*Edwards v. City of Warner Robins,* 302 Ga. 381 (2017) presents a different problem for Development Partners, though Plaintiff cites it for the same proposition.  Unlike *WMM Properties*, *Edwards* involved a property owner that was granted a rezoning, but not granted a right to develop a mobile home park. *Id*. at 387.  *Edwards* stated that the *WMM Properties* rule did not apply because no development plans were approved. *Id*. at 388. Even though the locality granted a rezoning, the court reasoned, the zoning law was clear that property owners had to follow the more stringent requirements for the underlying zoning district and "[i]n light of this clear language, Appellants could not have reasonably relied on the rezoning" to develop the property as they desired. *Id*.  Similarly, Development Partners could not have "reasonably relied" on assurances from the county manager and one commissioner because it did not submit a proposal for the officials to review.  Development Partners was well aware that County officials could not provide any information on whether their plan would comply with local laws because the officials never saw a plan, let alone reviewed one.

Development Partners is correct that there is case law which says that a vested right was acquired when a property owner submitted its application to the EPD. *S. States-Bartow Cty., Inc. v. Riverwood Farm Homeowners Assoc.*, 300 Ga. 609, 611 (2017). This statement is supported by precedent that is in line with the case law above, that a property owner gets a vested right to develop its property when it submits its permit application if it is accordance with applicable law.  *S. States-Bartow Cty., Inc. v. Riverwood Farm Prop. Owners Ass'n, Inc.*, 331 Ga. App. 878, 883 n.18 (2015) (citing *Fulton Cty. v. Action Outdoor Advertising, JV, LLC*, 289 Ga. 347, 350 (2011) (holding that when an applicant submits an application in accordance with applicable ordinances, the applicant has a vested right); *WMM Props.*, 255 Ga. at 438 (same)).  In contrast with this precedent,

Development Partners' application was not submitted in accordance with applicable ordinances and laws.

In sum, Development Partners has no vested right to build a landfill. The initial consistency letters were illegally issued and are void, and Development Partners never provided the County or its officials with any plans or proposals. Development Partners is therefore unlikely to succeed on the merits of its claim.

## C.  **Plaintiff Will Not Suffer Irreparable Harm**

Development Partners challenges the "Regulations" in its motion, including the amended SWMP, the zoning ordinance, and the July 2020 resolution withdrawing the initial consistency letters. As discussed above, it is inappropriate to challenge the resolution in a motion for preliminary injunction, because the resolution was already approved. Most or all of Development Partners' assertions of irreparable harm relate to past conduct or conduct that is unrelated to Brantley County's actions.

Brantley County's resolution regarding the consistency letters did not delay the EPD permit process. On January 31, 2020, Brantley County sent a letter to the EPD stating that the consistency letters were illegally issued. Months later, on May 28, 2020, EPD sent Development Partners a letter informing that it had completed its review of Development Partners' application and it appeared that siting standards could be met. (*See* Doc. 48, Exhibit B thereto.) Therefore, the County's act of recognizing that the consistency letters are invalid clearly did not affect the EPD permit process. And, in Development Partners' numerous affidavits, there is no statement from the EPD that the permit has been or will be delayed by the County.

Furthermore, it is inappropriate for Development Partners to attempt to thwart the County's involvement in the very public EPD landfill review process. There is nothing illegal or improper

about the County's conduct in this regard.

Development Partners' complaint that it cannot enter into non-contingent contracts without assurances it will be able to develop a landfill cannot serve as the basis of its alleged irreparable harm. Plaintiff's "nonfinal contingency contracts" are conditioned on the receipt of a permit. Development Partners presents an example of one such contract to this Court. Nothing the County does has any bearing on the contingency that EPD issue the landfill permit.

It is the decision of the EPD whether to grant Development Partners a permit to build a landfill; that decision does not lie with the County. This situation is vastly different than that in the case cited by Development Partners. In *GSW, Inc. v. Long County*, the Eleventh Circuit found irreparable harm after a county rescinded a contract to build a solid waste facility. 999 F.2d 1508, 1510 (11th Cir. 1993). The Eleventh Circuit relied on evidence that the EPD told the property owner it could not obtain a permit if it was not included in a county waste reduction plan. *Id.* at 1519 n.21.

Here, the County did not rescind any approval. It simply made it unequivocal to the EPD that the 2014 and 2015 consistency letters were invalid because they were ultra vires. The County has no control over what the EPD does going forward.

Development Partners also complains that the County will not issue new consistency letters. This has not harmed Plaintiff, because the EPD has not requested the new consistency letters. Defendants are aware that the EPD will request new consistency letters if such letters are needed in the future, but it has not yet done so.[6] It is not appropriate for the Court to order the

---

[6] Exhibit 4 to Defendants' Notice of Filing is a copy of EPD's response to comments to the draft site limitations, which addresses the issue of requiring consistency letters in the future. "EPD Response to Comments on Proposed Municipal Solid Waste Landfill in Brantley County," https://epd.georgia.gov/public-announcements-0/land-protection-branch-public-announcements. The document is located in the link just below a document dated May 29, 2020. *See*

County to issue letters in anticipation that the EPD permit will be approved.

Development Partners relies on *Pine Ridge Recycling v. Butts County,* 864 F. Supp. 1338 (M.D. Ga. 1994), in support of the claim that Brantley County should issue another consistency letter. In *Pine Ridge Recycling*, there was evidence that the EPD would issue a permit contingent upon consistency letters and a public hearing. *Id*. at 1341. Here, though, the EPD has not asked for another consistency letter and the EPD has not stated that it will issue a permit. There is therefore no evidence that the absence of a new consistency letter has affected Development Partners or its permit application.

Development Partners also makes the assertion that the Regulations will put it out of business because it won't be able to build a landfill on the property. Development Partners has no evidence to support this statement, and the statement is irrelevant to the facts. It has not provided evidence of its holdings or financial records that could reflect the landfill permit's impact on its business. More importantly, Development Partners has no vested right to build the landfill, so it does not matter that Development Partners' business venture may not succeed.

### D.      Injury to Plaintiff Does Not Outweigh Injury to Defendants

Development Partners claims its injury will be the loss of a vested property right, the inability to get an EPD permit, and the inability to build a landfill. All of these alleged injuries are premised on the fallacy that Development Partners has a vested right to build a landfill and that the EPD will deny the permit. There is no evidence of either of these.

The injury to Development Partners cannot outweigh the injury to Brantley County,

---

*Apalachicola Riverkeeper v. Taylor Energy Co., LLC.*, 113 F. Supp. 3d 870, 881 n.52 (E.D. La. 2015) ("[F]ederal courts consider records from government websites to be self-authenticating under Rule 902(5)."). *See also Qiu Yun Chen v. Holder*, 715 F.3d 207, 212 (7th Cir. 2013) ("A document posted on a government website is presumptively authentic if government sponsorship can be verified by visiting the website itself").

because Development Partners will suffer no injury in the absence of a preliminary injunction. Not only does Development Partners not have a vested right to build a landfill, it does not even have standing to bring this action. (*See* Doc. 48, pp.8-13.)

Moreover, the decision whether to issue the permit belongs to the EPD; Brantley County cannot make that decision. In the absence of an injunction, Development Partners is in exactly the same place it would be with the injunction. Brantley County, though, would be harmed by the injunction. An injunction would compel the County to change its zoning laws and SWMP, violate its laws by issuing another consistency letter, and restrain County officials from communicating the illegality of the initial consistency letters to the EPD.

### E.     Preliminary Injunction Would Be Adverse to the Public Interest

A preliminary injunction would be adverse to the public interest. Development Partners disagrees claiming the "Regulations" are unenforceable, a landfill will create solid waste disposal competition, and a landfill will create jobs.

The zoning ordinance and 2006 SWMP are enforceable against Development Partners. The initial consistency letters were illegally issued, so Development Partners could not have obtained a vested right to build a landfill from those letters. Rather, it would be adverse to the public interest for the County to violate its own laws and issue another consistency letter.

Development Partners' assertion that its proposed landfill will create competition is confusing. Development Partners has provided no evidence to support this allegation, such as evidence of the costs of disposal before and after the proposed landfill would be added. Development Partners itself has also stated that Brantley County has no landfills, and that landfills exist in three neighboring counties. (Doc. 45, ¶ 152.) At present, then, three landfills must compete for Brantley County's waste because no one landfill 'corners' the Brantley County market.

15

Development Partners' proposed landfill would do just that, and would decrease competition in the County.

More importantly, there is strong evidence that the landfill would harm the public interest because it would harm public health for all of the reasons the County has expressed to EPD.

## CONCLUSION

Therefore, the County respectfully requests that the Court deny Development Partners' Motion for Preliminary Injunction.

Respectfully submitted this 23rd day of September, 2020.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Dana K. Maine*_____
Dana K. Maine
Georgia Bar No. 466580
dmaine@fmglaw.com
Rachael Slimmon
Georgia Bar No. 831661
rslimmon@fmlgaw.com

*Attorneys for Defendants*

100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically submitted the foregoing **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** to the Clerk of Court using the CM/ECF *e-filing* system which will automatically send electronic mail notification of such filing to the following counsel of record:

| | |
|---|---|
| L. Robert Lovett<br>Lovett Law Group<br>5400 Riverside Drive, Suite 203<br>Macon, GA 31210<br>Bob@LovettLawGroup.com | George Rountree<br>Brown Rountree, P.C.<br>26 North Main Street<br>Statesboro, GA 30458<br>george@br-firm.com |
| Kyler L. Wise<br>Wilson Brock & Irby, LLC<br>2849 Paces Ferry Road, Suite 700<br>Atlanta, GA 30339<br>kwise@wbilegal.com | Mark D. Johnson<br>Gilbert, Harrell, Sumerford & Martin, PC<br>PO Box 190<br>Brunswick, GA 31521-0190<br>mjohnson@gilbertharrelllaw.com |

This 23rd day of September, 2020.

*/s/ Dana K. Maine*
Dana K. Maine
Georgia Bar No. 466580
dmaine@fmglaw.com

*Counsel for Defendants*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)