IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

BRANTLEY COUNTY DEVELOPMENT
PARTNERS, LLC,

    Plaintiff,

v.

BRANTLEY COUNTY, GEORGIA, et al.,

    Defendants.

CIVIL ACTION NO.: 5:19-cv-109

# O R D E R

This matter is before the Court on a discovery dispute between Plaintiff and Defendants. After conducting a telephonic status conference on the matter, the Court instructed the parties to provide letter briefing on whether certain emails between Plaintiff, its lawyers, and various non-parties were protected by attorney-client privilege or the work-product doctrine, as well as the disputed emails for *in camera* review.[1] For the following reasons, the Court finds the March 12–14, 2020 and June 23, 2020 emails submitted for *in camera* review are not protected by attorney-client privilege or the work-product doctrine.

## BACKGROUND

The litigation between the parties involves Plaintiff's efforts to build a landfill in Brantley County. See Doc. 1. Senate Bill 384 was a piece of proposed legislation at the state

---

[1] The Clerk of Court is **DIRECTED** to file the parties' letter briefing on the docket under seal as attachments to this Order. The letter briefing will be unsealed by separate order once any objections to this Order have been resolved, or, if no objections are filed, once the time for filing objections has expired.

level that concerned whether a landfill may be built in Brantley County. Notably, the legislation was introduced after this lawsuit began.

Defendant Brantley County supported Senate Bill 384, but the bill did not pass. Docs. 52, 58. Plaintiff was also interested in Senate Bill 384 and engaged in some lobbying and public relations efforts related to the Bill. This Order concerns certain emails related to those lobbying and public relations efforts. The emails in question were produced by Plaintiff to Defendants on October 22, 2020, in a document production referred to here as the "Harbin Document Production." The disputed emails are dated March 12–14, 2020 and June 23, 2020.

On November 24, 2020, the Court held a telephonic status conference related the Harbin Document Production. The Court conducted the conference because Plaintiff claimed other emails in that production—i.e., not the emails at issue in this Order—were privileged after Defendants produced and questioned witnesses about the documents at a deposition. Doc. 81. During the conference, Plaintiff withdrew its objections that these other emails were privileged. Id. However, at the conclusion of the conference, the Court instructed Plaintiff's counsel to review the Harbin Document Production and identify other potentially privileged documents that may have been inadvertently produced to avoid further privilege issues. Id. at 2. It appears this did not occur.

In March 2021, a second dispute about emails in the Harbin Document Production arose. The second dispute began when Defendants attached redacted emails from the Harbin Document Production to a brief in this case—namely, Defendants' reply brief in support of motion to bar Plaintiff from making public statements. See Doc. 105-6 (attaching an email dated June 23, 2020). Defendants also stated their intent to supplement their reply with other emails from that production, specifically emails dated March 12–14, 2020.

On March 18, 2021, Plaintiff informed Defendants it believed the March 12–14 and June 23, 2020 emails are privileged. After conferral, the parties could not come to an agreement about whether the disputed emails are privileged, and on April 19, 2021, Defendants contacted the Court to set a telephonic status conference on the issue. On April 22, 2021, just prior to the call with the Court, Plaintiff provided a privilege log related to the Harbin Document Production and asserted the disputed emails (along with several others identified in the log) are privileged. During the telephonic status conference, the Court ordered the parties to submit briefing on whether the disputed emails (only those dated March 12–14, 2020 and June 23, 2020) are privileged and provide the emails to the Court for *in camera* review.

## I. Attorney-Client Privilege

Plaintiff asserts the emails are protected by attorney-client privilege because the emails contain legal advice and mental impressions of counsel on Senate Bill 384.

### A. Legal Standard

"The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice." In re Grand Jury Proceedings 88-9, 899 F.2d 1039, 1042 (11th Cir. 1990). In this case, the question of privilege is governed by federal common law because the Court's jurisdiction is based on a federal question. Hancock v. Hobbs, 967 F.2d 462, 467 (11th Cir. 1992) (holding the federal law of privilege applies in a civil proceeding where the court's jurisdiction is premised upon a federal question), *abrogated on other grounds by* Jaffee v. Redmond, 518 U.S. 1 (1996).

To carry its burden, the party claiming the privilege must show "the primary purpose of the communication was to relay, request or transmit legal advice." Gibson-Carter v. Rape Crisis Ctr., No. 4:19-cv-122, 2020 WL 2815122, at *9 (S.D. Ga. May 29, 2020) (quoting United States

3

v. Davita, Inc., 301 F.R.D. 676, 682 (N.D. Ga. 2014)). Thus, "[w]here a lawyer provides non-legal business advice, the communication is not privileged." Id. (quoting Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3d Cir. 2007)).

The burden of sustaining a claim of privilege is a "heavy" one. Bridgewater v. Carnival Corp., 286 F.R.D. 636, 639 (S.D. Fla. 2011). Plainly, "[the] burden is not . . . discharged by mere conclusory or *ipse dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." Id. (quoting In re Bonanno, 344 F.2d 830, 833 (2d Cir. 1965)).

### B. Whether the Communications Sought or Provided Legal Advice

Plaintiff fails to meet its burden in showing the March 12–14 and June 23, 2020 emails are communications which primarily sought to relay, request, or transmit legal advice. The March 12–14, 2020 emails are communications that include a number of individuals: Plaintiff's public relations consultant; members of the Plaintiff-LLC; Plaintiff's lawyers; and engineers who contracted with Plaintiff. The emails discuss a newspaper article about Senate Bill 384 and potential lobbying support to defeat the Bill. The June 23, 2020 emails discuss a potential response to a newspaper editorial which criticized a possible landfill in Brantley County.

The discussions in the instant emails between counsel, clients, and others is standard lobbying and public relations advice, which is inadequate to invoke the attorney-client privilege. See Ala. Aircraft Indus., Inc. v. Boeing Co., No. 2:11-cv-03577, 2016 WL 9781826, at *3–4 (N.D. Ala. Mar. 24, 2016); see also In re Seroquel Prod. Liab. Litig., No. 606MD1769, 2008 WL 1995058, at *4 (M.D. Fla. May 7, 2008) ("When the business simultaneously sends communications to both lawyers and non-lawyers, it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication

4

served both business and legal purposes.") (internal quotations and citations omitted). After reviewing the emails in question, there is no apparent legal advice sought or given. Indeed, Plaintiff offers nothing more than a conclusory argument the communications about responses to newspaper articles and lobbying efforts is legal advice, which is insufficient to meet its heavy burden in claiming privilege. Id. at *7 (explaining where documents concern business decisions in the area of public relations, it is the party claiming the privilege who has the burden of showing the advice sought is legal advice).

In sum, because the emails at issue are not for the primary purpose of obtaining legal advice, the attorney-client privilege does not apply.

## II.     **Work-Product Doctrine**

Plaintiff also argues the work-product doctrine applies, and, thus, the emails are protected from disclosure.

### A.     **Legal Standard**

Federal law determines the scope of the work-product doctrine. Castle-Foster v. Cintas Corp. No. 2, CV419-139, 2021 WL 601877, at *5 (S.D. Ga. Feb. 16, 2021) (citing United Coal Companies v. Powell Constr. Co., 839 F.2d 958, 966 (3d Cir. 1988)). The party claiming the privilege bears the burden of establishing the privilege applies. Republic of Ecuador v. Hinchee, 741 F.3d 1185, 1189 (11th Cir. 2013).

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). However, it is not the presence of an attorney which dictates whether a document is

protected work product, but rather whether the document has been "prepared in anticipation of litigation." A document will be deemed prepared in anticipation of litigation when:

> the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work-product [protection] for documents prepared in the regular course of business rather than for purposes of litigation.

Castle-Foster, 2021 WL 601877, at *5 (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2024 (2d ed. 1994)); see also Regions Fin. Corp. & Subsidiaries v. United States, No. 2:06-cv-00895, 2008 WL 2139008, at *18 (N.D. Ala. May 8, 2008) ("[T]he court concludes that the Eleventh Circuit would align itself with the majority of the other courts of appeal and adopt the 'because of litigation' test.").

Indeed, "the Eleventh Circuit adheres to the standard that litigation need not be imminent 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" Pate v. Winn-Dixie Stores, Inc., 2:13-cv-166, 2014 WL 5460629, at *2 (S.D. Ga. Oct. 7, 2014) (quoting United States v. Davis, 636 F.2d 1028, 1040 (5th Cir. 1981) (citing Bridgewater., 286 F.R.D. at 641 ("This 'primary motivating purpose' language has been cited innumerable times by courts within this Circuit, and appears to be the standard followed in this Circuit.")). "Generally, a document will be deemed to have been prepared 'in anticipation of litigation' when the 'document can fairly be said to have been prepared or obtained because of the prospect of litigation . . . and not in the regular course of business.'" Abdallah v. Coca-Cola Co., No. CIV A1:98CV3679, 2000 WL 33249254, at * 4 (N.D. Ga. Jan. 25, 2000) (citing Carver v. Allstate Ins. Co., 94 F.R.D. 131, 134 (S.D. Ga. 1982)). Because materials or documents drafted in the ordinary course of business are not protected, "one must focus on when the document was created, and why it was created." Castle-Foster, 2021 WL 601877, at *5 (quoting Kallas v. Carnival Corp., No. 06-20115-CIV, 2008 WL 2222152, *3 (S.D. Fla. May 27, 2008)).

### B. Whether the Work-Product Doctrine Applies

Plaintiff asserts the work-product doctrine applies because the emails were made in anticipation of litigation should Senate Bill 384 pass. Plaintiff asserts the emails were sent as part of an ongoing effort to defeat the Bill and, therefore, avoid additional litigation. However, public relations advice and pure lobbying work, even when conducted in parallel with ongoing or anticipated litigation, falls outside of the protections provided by the work-product doctrine. See Ala. Aircraft, 2016 WL 9781826, at *5. Importantly, the work-product doctrine protects legal work. Id. The emails do not contain any discernible legal work connected to any litigation and, instead, provide public relations and lobbying advice. Put another way, the work-product doctrine protects documents created to aid in litigation. United States v. Davis, 636 F.2d 1028, 1040 (5th Cir. 1981) (holding the work product doctrine applies "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation."). Here, the emails do not reflect any such purpose, and Plaintiff has not demonstrated such a purpose.

Accordingly, the work-product doctrine does not apply to the March 12–14 and June 23, 2020 emails, and Defendants may use the emails in litigation consistent with other applicable Rules and law.[2]

**SO ORDERED**, this 29th day of June, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[2] Because attorney-client privilege or the work-product doctrine does not apply to the emails at issue, the Court declines to address whether Plaintiff waived any claims of privilege or protection.