# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

|  |  |
|---|---|
| BRANTLEY COUNTY DEVELOPMENT PARTNERS, LLC, | |
| Plaintiff, | |
| v. | CV 5:19-109 |
| BRANTLEY COUNTY, GEORGIA by and through its Chairman and Members of the Brantley County Board of Commissioners; CHRIS "SKIPPER" HARRIS, RANDY DAVIDSON, BRIAN HENDRIX, JESSE MOBLEY, and RAY GRIFFIN, all in their individual and official capacities as Commissioners, | |
| Defendants. | |

## ORDER

Presently before the Court is Defendants' Renewed Motion to Dismiss. Dkt. No. 48. Plaintiff has filed a Response in opposition to Defendants' Motion, dkt. no. 52, to which Defendants have filed a Reply, dkt. no. 55. For the reasons below, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Plaintiff Brantley County Development Partners, LLC ("Plaintiff") is a limited liability company registered to do business under the laws of the State of Georgia. Dkt. No. 1 ¶ 1.

On December 22, 2014, Plaintiff purchased 2,839 acres of land (the "Property") to pursue the construction and operation of a solid waste handling facility in Brantley County (the "County"). Id. ¶ 9. Under the provisions of Georgia's Comprehensive Solid Waste Management Act (the "CSWMA"), O.C.G.A. §§ 12-8-20 et seq., any person seeking to operate a solid waste handling facility must obtain a solid waste handling permit by application to the Georgia Environmental Protection Division (the "EPD"). In order to proceed through the EPD's permitting process, the applicant must submit certain letters from the local governing authority certifying that the proposed site complies with local land use ordinances and is consistent with the local solid waste management plan (the "SWMP"). O.C.G.A. § 12-8-24(g). Moreover, pursuant to the rules of the Georgia Department of Natural Resources, written verification of local zoning compliance must be "reaffirmed by the governmental authority prior to permit issuance." Ga. Comp. R. & Regs. 391-3-4-.05(1)(a).

Before closing on the Property, Plaintiff sought and obtained written verification (the "2014 Verification Letters") from County Manager Carl Rowland ("Rowland") certifying that Plaintiff's proposed solid waste handling facility (the "Proposed Facility") was consistent with the County's SWMP and local land use plan. Dkt. No. 1-2 at 3. At that time, the County did not have any zoning ordinances in effect at all. Id. at 2.

On February 5, 2015, at a regularly scheduled meeting, the Brantley County Commission, through its Board of Commissioners ("Defendants"),[1] took official action to authorize Plaintiff's Proposed Facility. Dkt. No. 1-4 at 4. The minutes and regular agenda show Plaintiff requested Defendants ratify and confirm the prior certification that the Proposed Facility and related activities were "consistent with [the] local land use plan and [the] Solid Waste Management Plan." Id. Consequently, Defendants authorized the Chairman of the Board of Commissioners, Charlie Summerlin, to execute two letters ("the 2015 Verification Letters"):

> [T]he first letter acknowledging that the solid waste handling facilities proposed by [Plaintiff] . . . is consistent with the approved Solid Waste Management Plan adopted by Brantley County and the cities of Hoboken and Nahunta on June 26, 2006, and our most recent 2011 Five Year Short Term Work Program 2010-2019; and, the second letter acknowledging that the facilities proposed by [Plaintiff] is consistent with Brantley County's Local Land Use Plan.

Id. The minutes acknowledge that Defendants knew these letters were necessary for Plaintiff to obtain permits from the EPD in order to conduct solid waste material activities. Id.

On February 6, 2015, Chairman Summerlin signed and issued the 2015 Verification Letters to Claudia Moeller, an EPD program

_____

[1] Plaintiff is suing the individual commissioners of Brantley County both in their individual and official capacities. Dkt. No. 1 at 1. Defendants include Commissioners Chris "Skipper" Harris, Randy Davidson, Brian Hendrix, Jesse Mobley, and Ray Griffin. Id.

manager, verifying Plaintiff's Proposed Facility was consistent with the County's SWMP and local land and zoning regulations. Dkt. No. 1-5 at 3. These letters reiterated that "Brantley County at the present time does not have a zoning ordinance." Id. at 2.

On September 8, 2016, Defendants voted to adopt a new land-use ordinance for Brantley County (the "2016 Zoning Ordinance"). Dkt. No. 1-7. Plaintiff alleges it received assurances from Defendants that the 2016 Zoning Ordinance would not apply to its Proposed Facility. Dkt. No. 1 ¶ 18. Moreover, at the time the 2016 Zoning Ordinance was adopted, the ordinance did not include a map identifying the various zoning classifications, and no motion was made to approve any official zoning map. Id. ¶ 19. On December 29, 2016, Plaintiff filed a permit application with the EPD for the Proposed Facility. Dkt. No. 1-11. The EPD accepted the application along with Plaintiff's filing fee for processing. Dkt. No. 1 ¶ 28.

Beginning in 2017, a noticeable shift occurred in Defendants' stance toward the siting and construction of a solid waste handling facility on Plaintiff's Property. On January 3, 2017, Defendants imposed a 180-day moratorium on any landfills in Brantley County. Dkt. No. 1-12. That same day, Defendants also moved to send a written objection to the EPD regarding Plaintiff's Proposed Facility. Dkt. No. 1-14 at 2. The January 3, 2017 Board minutes show that Defendants moved to instruct all county officials to "immediately cease and desist any communications or efforts with

4

[Plaintiff] or any other individual or entity where the intent is to establish or facilitate a landfill or solid waste handling facility." Id. at 3.

On January 6, 2017, County Attorney Deen Strickland, on behalf of Defendants, sent a letter to the EPD stating that Defendants were unanimously opposed to Plaintiff's Proposed Facility and advising the EPD that Defendants had passed a moratorium on the proposed location. Dkt. No. 1-16 at 2. On January 19, 2017, Defendants took official action to hire outside counsel for the purpose of "stopping the landfill" on Plaintiff's Property. Dkt. No. 1 ¶ 35.

On June 15, 2017, Defendants convened and took action to down-zone Plaintiff's Property from Heavy Industrial to Light Industrial (the "2017 Rezoning Decision"). Id. ¶ 42. Under the Light Industrial zoning classification, landfills are forbidden on Plaintiff's Property. Id. ¶ 45. Plaintiff contends Defendants' entire rezoning process failed to follow proper procedures and no notice was given. Id. That same day, Defendants also allegedly adopted a new zoning ordinance (the "2017 Zoning Ordinance") along with an official zoning map. Id. ¶ 43.

Finally, at the same meeting, Defendants also adopted an amended Solid Waste Management Plan (the "2017 SWMP"). Dkt. No. 45 ¶ 151. The 2017 SWMP, as amended, prevents solid waste facilities from importing any waste from outside the County. Id. ¶¶ 151, 154.

Specifically, any waste disposal facility must "limit use of such sites to disposal of waste generated from only within the County." Id. ¶ 154.

On June 19, 2019, Plaintiff demanded Defendants provide the necessary written verification of local zoning compliance (the "Reaffirmation Letters") for its EPD permit. Id. ¶ 58; see also Ga. Comp. R. & Regs. 391-3-4-.05(1)(a). Specifically, Plaintiff requested that Defendants confirm Plaintiff's Property is not subject to the 2017 Rezoning Decision, the 2017 SWMP, or any zoning ordinances at all. Dkt. No. 1-26 at 3. Plaintiff also put Defendants on notice of its constitutional objections to the 2017 Rezoning Decision and the 2017 Zoning Ordinance based on its vested rights. Id. Defendants have refused and continue to refuse to provide the Reaffirmation Letters sought by Plaintiff. Id. ¶ 59.

Plaintiff alleges it has expended over three million dollars to purchase and develop its solid waste handling facility on the Property—all in reliance on the representations and letters from Defendants. Id. ¶ 49.

On July 17, 2017, Plaintiff timely filed a complaint against Defendants in the Superior Court of Brantley County. Id. ¶ 117; Dkt. No. 52-1. However, on November 13, 2019, Plaintiff voluntarily dismissed that complaint in order to file the present action in federal court. Dkt. No. 1 ¶ 100. On November 26, 2019, Plaintiff filed its first complaint, dkt. no. 1, as an alleged renewal of

6

its prior Superior Court action. Id. Thereafter, on July 8, 2020, Plaintiff amended its complaint to include a claim for violation of the Dormant Commerce Clause of the United States Constitution. Dkt. No. 45 ¶¶ 148-50, 161-63 (the "Amended Complaint"). As it presently stands, Plaintiff's Amended Complaint asserts four federal claims against Defendants: violation of the Takings Clause of the Fifth Amendment (Count I); violation of Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment (Count II); violation of the First Amendment (Count III); and violation of the Dormant Commerce Clause (Count VII). Plaintiff also alleges three claims under Georgia law: violation of substantive due process (Count IV); an unconstitutional denial of vested property rights (Count V); and a state law rezoning appeal (Count VI). On July 22, 2020, Defendants moved to dismiss the Amended Complaint. Dkt. No. 48.

## LEGAL STANDARD

Federal courts have limited jurisdiction. Ishler v. Internal Revenue, 237 F. App'x 394, 395 (11th Cir. 2007) (citing Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005)). The plaintiff bears the burden of establishing the court's subject matter jurisdiction. Id. Under Federal Rule of Civil Procedure 12(b)(1), there are two types of motions to dismiss for lack of subject matter jurisdiction—facial attacks and factual attacks. Morrison v. Amway Corp., 323 F.3d 920, 925 n.5 (11th Cir. 2003)

(citing Lawrence v. Dubar, 919 F.2d 1525, 1529 (11th Cir. 1990)).

"Facial attacks challenge subject matter jurisdiction based on allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." Id. "Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings." Id.  "In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." Id.  In considering a factual attack:

> the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims.

Lawrence, 919 F.2d at 1529 (citing Williamson v. Tucker, 645 F.2d 404, 412-413 (5th Cir. 1981)).

Further, Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

555 (2007)).  In order to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

It is important to note that while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  The court need not "accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.

Lastly, the Court notes that exhibits attached to pleadings become part of a pleading.  Fed. R. Civ. P. 10(c).  Consequently, a court may consider documents attached to a complaint as exhibits in resolving a motion to dismiss without converting the motion to one for summary judgment.  Taylor v. Appleton, 30 F.3d 1365, 1368 n.3 (11th Cir. 1994).

**DISCUSSION**

Defendants move to dismiss all of Plaintiff's claims. Dkt. No. 48 at 1. In doing so, Defendants set forth the following fourteen reasons why Plaintiff's claims should be dismissed:

> (1) [Plaintiff] lacks standing to assert the facial claims as to the County's amended zoning ordinance or amended SWMP because it has never filed anything with the County that call for the provisions it challenges to be applied to it; (2) the claims are barred by the applicable statute of limitations; (3) any claim for vested rights has to be presented to the County prior to asserting the claim in a court; (4) the Complaint as amended fails to state a claim for a taking under the Fifth Amendment; (5) [Plaintiff] does not have vested rights in an illegally issued approval letter; (6) the Substantive Due Process Clause of the Fourteenth Amendment does not apply to rezoning decision; (7) the amended zoning ordinance and the amended Solid Waste Management Plan are not unconstitutionally vague; (8) a state law remedy exists to address [Plaintiff's] federal Procedural Due Process Clause claims, so the federal claim fails; (9) the Complaint as amended fails to state a claim for First Amendment violations; (10) [Plaintiff] cannot appeal the rezoning of its property by brining (sic) a state law substantive due process claim; (11) [Plaintiff] was required to file an application for writ of certiorari in order to appeal the rezoning decision; (12) [Plaintiff] does not have standing to assert a Dormant Commerce Clause claim as the portions it challenges have never been applied to it, and may never be; (13) the individual commissioners are entitled to qualified, legislative, and official immunities; and (14) the County is entitled to official immunity as to any state law claims asserted against it.

Dkt. No. 48 at 2-3. The Court addresses each of Defendants' arguments in turn.

I.   **Standing**[2]

In their motion to dismiss, Defendants contend that Plaintiff does not have standing to assert any of its claims because it has not suffered any harm. Dkt. No. 48 at 9. In Defendants' view, Plaintiff has not suffered a concrete and particularized injury because its EPD application remains pending. Id. Defendants also submit that standing is not satisfied because zoning regulations have not yet been applied to Plaintiff's Property and Plaintiff never applied for a permit with the County. Dkt. No. 55 at 3-4.

Litigants must have standing to properly invoke the jurisdiction of federal courts. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); U.S. Const. art. III, § 2. "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims, and the court is powerless to continue." Hollywood Mobile Estates Ltd. v. Seminole Tribe, 641 F.3d 1259, 1265 (11th Cir. 2011). To have standing, a plaintiff must show that it: (1) suffered an injury-in-fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. Lujan, 504 U.S. at 560.

Here, Defendants contest Plaintiff's satisfaction of the injury-in-fact requirement. Dkt. No. 55 at 4. The requirement that

---

[2] This section addresses Defendants' first, third, and twelfth arguments listed above, which all relate to standing.

a plaintiff suffer an injury-in-fact helps "ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). A plaintiff must show that the injury is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" Id. (quoting Lujan, 504 U.S. at 560). An allegation of future injury may suffice if the threatened injury is "certainly impending" or there is a "substantial risk" that the harm will occur. Tsao v. Captiva MVP Rest. Partners, LLC, 986 F.3d 1332, 1339 (11th Cir. 2021) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 n.5 (2013)).

The Court finds that Plaintiff has standing to maintain this action. Plaintiff has satisfied the constitutional requirements under Article III because it has alleged a personal injury fairly traceable to the challenged conduct and a likelihood of redress by a favorable judicial decision. Lujan, 504 U.S. at 560.

In the "context of a challenge to a land use regulation, the test of the plaintiff's standing is whether he has alleged 'specific, concrete facts demonstrating that the challenged practices harmed him and that he personally would benefit in a tangible way from the court's intervention.'" White v. City of Live Oak, No. 3:09-CV-391-J-34JRK, 2010 WL 11623480, at *12 (M.D. Fla. June 8, 2010) (quoting Amico v. New Castle Cnty., 571 F. Supp.

160, 164 (D. Del. 1983)). In <u>Village of Arlington Heights v.</u>
<u>Metropolitan Housing Development Corp.</u>, the local government
alleged the developer lacked standing for its challenge to a zoning
decision. 429 U.S. 252, 260 (1977). Yet, the Supreme Court held
that it was clear the developer had met the constitutional
requirements of standing:

> Here there can be little doubt that [plaintiff] meets
> the constitutional standing requirements. The challenged
> action of the [locality] stands as an absolute barrier
> to constructing the housing [plaintiff] had contracted
> to place on the [] site. If [plaintiff] secures the
> injunctive relief it seeks, that barrier will be
> removed. An injunction would not, of course, guarantee
> that [development] will be built. [Plaintiff] would
> still have to secure financing, qualify for federal
> subsidies, and carry through with construction. But all
> [] developments are subject to some extent to similar
> uncertainties. When a project is as detailed and
> specific as [this development], a court is not required
> to engage in undue speculation as a predicate for finding
> that the plaintiff has the requisite personal stake in
> the controversy. [Plaintiff] has shown an injury to
> itself that is "likely to be redressed by a favorable
> decision."

<u>Id.</u> at 261-62.

Here, the Court is not persuaded by Defendants' assertion
that Plaintiff lacks standing. The 2017 rezoning decision forbids
Plaintiff from using its Property in a particular manner—namely,
as a solid waste handling facility. Dkt. No. 1 ¶ 36. As it stands,
the allegedly unconstitutional regulatory actions taken by
Defendants stand as an absolute barrier to Plaintiff's proceeding
with development of its Proposed Facility. At the time when

Plaintiff contends its rights vested, no such regulations were in place. As such, a favorable decision from this Court would remove such barriers for Plaintiff.

Moreover, Plaintiff alleges it has expended thousands of dollars on plans and site studies for the Proposed Facility and that business commitment opportunities have been lost, all due to Defendants' actions. Dkt. No. 1 ¶ 124. As such, Plaintiff sufficiently states an economic injury to support standing based on its investment-backed plans for the Property. Without a favorable resolution, many of Plaintiff's development efforts will be valueless due to Defendants' regulatory conduct. Losing such an investment constitutes a cognizable injury for purposes of standing. See Vill. of Arlington Heights, 429 U.S. at 262 (finding injury where plaintiff expended thousands of dollars on plans and studies because, in the context of land development, "many of these plans and studies will be worthless even if [plaintiff] finds another site at an equally attractive price").

It is of no import that the Proposed Facility is not *guaranteed* to be built at this juncture. Despite some uncertainties that remain, it is clear Plaintiff has the requisite personal stake in the controversy, and it is unnecessary for the Court to engage

in speculation as to potential barriers that may arise in the future.[3] See id. at 261-62.

Further, the Court is not persuaded by Defendants' additional arguments. Defendants insist that Plaintiff has suffered no injury related to the 2017 Zoning Ordinance or the 2017 SWMP because Defendants have never applied either to Plaintiff's development efforts.[4] Dkt. No. 48 at 10. Defendant also submits that there is no injury because "Plaintiff has made no allegation of an adverse decision from the County." Dkt. No. 48 at 10-11. Defendants provide no support for their assertion that the regulations are not being applied to Plaintiff's property. Moreover, Plaintiff *has* alleged it is being affected by an adverse decision from the County. Indeed, Plaintiff alleges it suffered injury when Defendants enacted a specific zoning decision against Plaintiff by rezoning its property from a Heavy Industrial to Light Industrial zoning classification. Dkt. No. 1 ¶ 42. As such, the Court is unpersuaded by Defendants' contentions to the contrary.

Defendants also bring a ripeness challenge and submit Plaintiff has no standing to assert a vested rights claim "because

---

[3] Plaintiff also sufficiently demonstrates standing through delay of the EPD permitting process—this basis was discussed in depth in this Court's Order granting Plaintiff's motion for a preliminary injunction. See Dkt. No. 114 at 11-13.

[4] This is particularly confusing given that Defendants concomitantly maintain that the statutes of limitations for the claims challenging these regulations have already expired. Defendants ostensibly contend, without further clarification, that Plaintiff's claims are somehow both too early and too late.

[Plaintiff] has never applied for any permit with the County."
Dkt. No. 48 at 12. Defendants insist that any vested rights claim
must be presented to the County prior to the claim's assertion in
court. In doing so, Defendants cite Cooper v. Unified Government
of Athens Clarke County, 589 S.E.2d 105, 107 (Ga. 2003), and
contend that Plaintiff has failed to seek relief from the local
government before pursuing its vested rights claim in court. Dkt.
No. 48 at 12-13.

Under Georgia law, the general rule is that before a party
seeks redress in the courts regarding the application of a local
regulation to property, the party must apply to the local
authorities for a determination on zoning matters. Cooper, 589
S.E.2d at 107. Such a rule is intended to promote "judicial
economy, since the local authority is empowered to correct any
such violations." Id. As such, "the long-standing procedure in
Georgia is to address these vested rights claims only after the
local zoning authority has refused to issue the necessary permits
for the proposed project or has imposed unconstitutional
restrictions on an existing project." Id.

In Cooper, a landowner sought a permit to build a solid waste
transfer station. Id. at 106. After receiving assurances from the
county that his land was properly zoned, the landowner commissioned
a feasibility study for the station but never applied for a permit.
Id. At some point, the county changed the zoning classification of

16

the landowner's property, effectively prohibiting the construction of a solid waste transfer station. Id. The landowner sought relief in the local superior court, where he asserted—for the first time—that he had a vested right in the granting of his hypothetical permit application.[5] The Georgia Supreme Court held that the vested rights claim was not ripe because the landowner had never applied for a permit or variance based on his vested rights and, thus, "did not give the zoning authority any opportunity to address his constitutionally-based vested right claim." Id. at 107.

Here, Plaintiff's situation is notably different from Cooper. For one, Plaintiff contends that its rights vested when it submitted its application with the EPD. See Fulton Cnty. v. Action Outdoor Advert., JV, 711 S.E.2d 682, 685 (Ga. 2011) ("[S]ubmission of a then-proper application for a permit gives an applicant a vested right to consideration of the application under the law in existence at the time the application is filed."); S. States-Bartow Cnty., Inc. v. Riverwood Farm Prop. Owners Ass'n, Inc., 769 S.E.2d 823, 827 (Ga. Ct. App. 2015) ("[T]he [vested] right was actually acquired in 1989 when [plaintiff] submitted its application for a landfill permit to the EPD."). Thus, unlike the landowner in Cooper, Plaintiff did, in fact, apply for issuance of a permit with the appropriate authority.

---

[5] Although the landowner had previously requested that the county change the zoning on his property back to the prior classification, he never sought a variance or made any such request *based on* his vested rights. Id. at 107.

Second, Plaintiff does not complain about the mere existence of a zoning classification. Rather, Plaintiff takes issue with Defendants' specific refusal to issue zoning Reaffirmation Letters, which Plaintiff submits it is entitled to through its vested rights. See BFI Waste Sys. of N. Am. v. Dekalb Cnty., 303 F. Supp. 2d 1335, 1353 (N.D. Ga. 2004) ("[B]ecause [the property owner] was in compliance at the time of its application, it had a vested right to verification of that compliance, even at the time of reaffirmation."). Plaintiff has made clear that it requested the Reaffirmation Letters based on its vested rights claim. Dkt. No. 1-26 at 3. Plaintiff's vested rights claim is ripe for adjudication because Defendants *have* refused to issue the necessary Reaffirmation Letters for Plaintiff's EPD permit. Plaintiff's "constitutional rights are not being violated merely by the existence of a certain zoning classification," but, rather, by a specific decision not to issue Reaffirmation Letters to Plaintiff and the EPD. Cooper, 589 S.E.2d at 107. Thus, unlike in Cooper, seeking a variance from the current zoning classification would not vindicate Plaintiff's vested rights. Plaintiff would still require the requisite Reaffirmation Letters to be sent to the EPD by Defendants. See BFI Waste, 303 F. Supp. 2d at 1354 n.18 (drawing a distinction between seeking written verification of compliance and seeking a rezoning or special use exception). Defendants had the opportunity to address Plaintiff's vested

rights claim when Plaintiff requested the Reaffirmation Letters. Dkt. No. 1-26 at 3. Yet, Defendants declined to issue the necessary letters for the proposed EPD permit; this makes Plaintiff's vested rights claim ripe for adjudication.

Moreover, even if a zoning variance or special use exception would provide Defendants an opportunity to remedy any violation of Plaintiff's vested rights, such a request would be futile. Georgia courts recognize a futility exception to its administrative exhaustion requirement where further administrative review would result in another decision on the same issue by the same body. Ga. Dep't of Behav. Health & Developmental Disabilities v. United Cerebral Palsy of Ga., 784 S.E.2d 781, 788 (Ga. 2016). "[T]he first step in establishing futility is to show that the administrative decision-maker to whom the litigant would be required to go to seek relief has already rendered a decision on the issue." City of Suwanee v. Settles Bridge Farm, LLC, 738 S.E.2d 597, 600 (Ga. 2013). For example, in Powell v. City of Snellville, 467 S.E.2d 540 (Ga. 1996), the plaintiff was not required to file an application for rezoning before going to court where the city government had already voted to rezone the plaintiff's property despite her objections. Id. at 542. The Powell court also considered that the government had "purposefully placed restrictions on the property's use which would thwart what the city knew [the plaintiff] planned to do with the property." Id. As

such, it was clear that a rezoning application "would have been in vain." Id.

Here, Defendants submit that Plaintiff must seek a variance from its zoning classification to develop its Property. Dkt. No. 48 at 29; Dkt. No. 55 at 7. Yet, Defendants have already downzoned Plaintiff's Property *despite* Plaintiff's objections. Dkt. No. 52 at 5; Dkt. No. 1 ¶ 42. Additionally, Plaintiff alleges that Defendants' rezoning decision was a part of Defendants' larger efforts to "stop the landfill" from being developed on the Property. Id. ¶¶ 35-36. If Plaintiff were to avail itself of the administrative process for a variance in zoning, it would result in another decision on the same issue by the same body.[6] Given the previous downzoning and Defendants' alleged purpose in doing so, requesting a variance would be futile. Based on the reasons stated, the Court finds Plaintiff's vested rights claim ripe to proceed.

---

[6] In the same vein, if the Court were to require Plaintiff to go back and seek its Reaffirmation Letters again, it would likewise be futile. More on point than Cooper is the Georgia Supreme Court's decision in WMM Properties, Inc. v. Cobb County, 339 S.E.2d 252, 256 (Ga. 1986). In WMM, the Court dealt with the county's decision to apply specific zoning stipulations to a landowner who had acquired vested rights. Id. The court found that a claim was ripe despite the plaintiff's failure to seek removal of the stipulations from the local government. Id. The Court noted that such an instance was notably different from parties' seeking a variance to preexisting zoning classifications because the plaintiff landowner was, instead, challenging the application of zoning laws based on vested rights. Id. The Court held that requiring the landowner to seek review of the stipulations being applied to the property ultimately would "result in a decision on the same issue by the same body." Id. The Court considered such a review to be a "useless act" and found the plaintiff's vested rights claim to be ripe. Id.

## II.  Statute of Limitations

Defendants argue that all of Plaintiff's federal claims are time-barred by the applicable two-year statute of limitations. Dkt. No. 48 at 5. Plaintiff responds that its claims are timely because the federal lawsuit is a valid renewal pursuant to O.C.G.A. § 9-2-61. Dkt. No. 52 at 8; Dkt. No. 1 ¶ 100.

Georgia's "renewal statute" provides:

> When any case has been commenced in either a state or federal court within the applicable statute of limitations[,] and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later.

O.C.G.A. § 9-2-61(a). The renewal statute is a remedial statute that must be "liberally construed so as to preserve the right to renew the cause of action set out in a previous suit, wherever the same has been disposed of on any ground other than one affecting the merits." U.S. Cas. Co. v. Am. Oil Co., 121 S.E.2d 328, 329 (Ga. Ct. App. 1961); Jester v. Emerson Climate Techs., Inc., No. 20-13147, 2021 WL 942781, at *3 (11th Cir. Mar. 12, 2021).

Nonetheless, Defendants insist that Plaintiff has failed to "*show affirmatively*" that the Amended Complaint qualifies as a renewal action. Dkt. No. 55 at 2 (quoting Whitesell v. Ga. Power Co., 800 S.E.2d 370, 371 (Ga. Ct. App. 2017)).

To bring a renewal suit after the expiration of the statute of limitations, a petition must:

> show affirmatively that the former petition was not a void suit, that it is such a valid suit as may be renewed under [O.C.G.A.] § 9-2-61, that it is based upon substantially the same cause of action, and that it is not a renewal of a previous action which was dismissed on its merits so that the dismissal would act as a bar to the rebringing of the petition.

Jester, 2021 WL 942781, at *4 (quoting Whitesell, 800 S.E.2d at 371).

In arguing Plaintiff failed to make such a showing, Defendants point to Georgia cases such as Whitesell and Morrison v. Bowen for support. 800 S.E.2d at 372; 127 S.E.2d 194, 195 (Ga. Ct. App. 1962). In Whitesell, a complaint stated only that "[t]his is a renewal action against [defendant] pursuant to [O.C.G.A.] § 9-2-61" and then provided the previous action's docket number; the court held that was not enough to affirmatively show a right to renewal. 800 S.E.2d at 372. Similarly, in Morrison v. Bowen, a paragraph stating that plaintiff "filed this action originally on September 21, 1954, in this court against the same defendants, said case being No. 18,634, and thereafter on May 29, 1961, a judgment was entered dismissing said case, and now within the time provided by law plaintiff renews her case" was also insufficient. 127 S.E.2d at 195.

Here, Plaintiff's Amended Complaint states: "[t]he petition was voluntarily dismissed pursuant to O.C.G.A. § 9-11-41, in order

to file this Federal Complaint. This Complaint is filed as a renewal action of the original appeal filed in state court." Dkt. No. 1 ¶ 100. Based on the Georgia case law discussed above, this statement alone likely fails to affirmatively demonstrate a renewal action. However, unlike the parties in Whitesell and Morrison, Plaintiff has attached to its response previous filings from its superior court proceedings, and Plaintiff has requested the Court take judicial notice of these attached exhibits. Dkt. No. 52 at 6, n.2.

"Relying on an attached exhibit is permissible, as 'a plaintiff may make the requisite showing by proof outside the renewed complaint.'" Jester, 2021 WL 942781, at *5 (quoting Belcher v. Folsom, 573 S.E.2d 447, 449 (Ga. Ct. App. 2002)); see also Belcher, 573 S.E.2d at 449 (explaining that proof may be made by offering evidence or requesting that a court take judicial notice). Judicial notice of public records and other adjudicative facts may be taken at any stage of the proceeding. Fed. R. Evid. 201(d). "[T]he Court may take judicial notice of public records, such as pleadings and orders from prior cases." Burgest v. Bd. of Regents, No. 4:19-CV-335, 2021 WL 1187088, at *1 n.1 (S.D. Ga. Mar. 29, 2021); see also Universal Express, Inc. v. U.S. SEC, 177 F. App'x 52, 53 (11th Cir. 2006) (affirming the district court's decision to take judicial notice of a complaint filed in the Southern District of New York); Lee v. Select Portfolio Servicing, Inc.,

23

No. CV 2:19-140, 2020 WL 4505535, at *4 (S.D. Ga. Aug. 5, 2020) (noting that prior filings in state superior court are public records of which the district court may take judicial notice).

Here, Plaintiff requests that the Court take judicial notice of the prior filings in the Superior Court of Brantley County and has supplied the Court with the necessary information to do so. See, e.g., Dkt. No. 52-1; Dkt. No. 52-2; Dkt. No. 52-3; see also Fed. R. Evid. 201(c)(2). As such, the Court takes judicial notice of the parties' previous proceedings.

The attached filings demonstrate that Plaintiff timely filed its state court action on July 17, 2017; Plaintiff served Defendants with that action; and Defendants filed an answer on August 24, 2017. Dkt. No. 52-1; Dkt. No. 52-2. On November 12, 2019, Plaintiff amended its state court complaint to assert its federal claims, which are now pled as Counts I, II, and III in this action. Dkt. No. 48-1. The attached filings also indicate that, on November 13, 2019, Plaintiff voluntarily dismissed the state court action without prejudice. Dkt. No. 52-3. On November 26, 2019, Plaintiff filed the present action with this Court. Dkt. No. 1. The Amended Complaint establishes Plaintiff's intent to file this suit as a renewal of the Superior Court action. Id. ¶ 100. The attached Superior Court filings demonstrate the original action was not void, was not dismissed on the merits, and was voluntarily dismissed by Plaintiff. Comparison of the original

state court action and the present action before the Court supports Plaintiff's contention that the renewed suit is based on substantially the same causes of action. Accordingly, Plaintiff has demonstrated a valid renewal suit, and Plaintiff's federal claims (Counts I, II, and III) are not barred by the applicable statutes of limitations.

Nonetheless, Defendants argue that the renewal suit must fail altogether because it contains at least one additional claim: namely, the Dormant Commerce Clause claim in Count VII.[7] Thus, Defendants contend that "[a]dding a cause of action that was not part of the prior lawsuit makes an action improper for renewal." Dkt. No. 48 at 7.

Georgia courts have been clear that a renewal action cannot enlarge a defendant's liability beyond the allegations in the first case. See Burns v. Dees, 557 S.E.2d 32, 39 (Ga. Ct. App. 2001). However, Defendants misinterpret how an added cause of action is remedied under Georgia law.

An added cause of action does not render improper the entire renewal action. Instead, the newly added claim is simply not protected by the renewal statute, while claims found in the original pleadings in the first case are. See Alfred v. Right Stuff

---

[7] On July 8, 2020, Plaintiff amended its original complaint, dkt. no. 1, to include a claim for violation of the Dormant Commerce Clause of the United States Constitution. See Dkt. No. 45. The Dormant Commerce Clause claim was not contained in the Superior Court action.

Food Stores, Inc., 525 S.E.2d 717, 719 (Ga. Ct. App. 1999) (holding that a nuisance claim added by later amendment was untimely but permitting the claims alleged in the original complaint to be renewed); Blier v. Greene, 587 S.E.2d 190, 194 (Ga. Ct. App. 2003) (dismissing only the newly added claim because it was "not saved by the renewal statute"); Burns, 557 S.E.2d at 40 (dismissing only the newly added claim rather than the renewal action as a whole); Thurmon v. Clayton Cnty., No. 1:11-CV-1412-RWS, 2012 WL 6625637, at *5 (N.D. Ga. Dec. 19, 2012) ("Plaintiff has failed to show that Defendants were on notice under the original complaint of an intentional infliction of emotional distress claim against them. Therefore, *that claim* may not be added to the renewal action." (emphasis added)). Accordingly, Plaintiff's Dormant Commerce Clause claim, which was added after the original action was renewed in this Court, is not protected by the renewal statute. Thus, to survive Defendant's motion to dismiss, Plaintiff's Dormant Commerce Clause claim must independently satisfy the applicable statute of limitations period.

Plaintiff concedes the Dormant Commerce Clause claim is not protected by the renewal statute; instead, it contends that the claim was timely brought. Dkt. No. 52 at 11. Defendants argue that the applicable statute of limitations expired on June 15, 2019 for the Dormant Commerce Clause claim and, thus, the claim is

untimely.[8] Dkt. No. 48 at 6. However, Plaintiff attempts to avoid the statute of limitations bar here by employing the "continuing violation doctrine." Dkt. No. 52 at 12.

The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period. See Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1221 (11th Cir. 2001); Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1334 (11th Cir. 2006). "The critical distinction in the continuing violation analysis . . . is whether the plaintiff [] complain[s] of the present consequence of a one-time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003).

The Eleventh Circuit's recent decision in McGroarty v. Swearingen, 977 F.3d 1302 (11th Cir. 2020), demonstrates the limited scope of the continuing violation doctrine. In McGroarty, the plaintiff contended that the Florida Department of Law Enforcement ("FDLE") Commissioner violated his constitutional rights by publishing his personally identifiable information on FDLE's sex offender registry website. Id. at 1307. The plaintiff's sex-offender registration information was posted online in 2004,

---

[8] Plaintiff's Dormant Commerce Clause claim was added on July 8, 2020. Dkt. No. 45.

and he knew of its publication by 2012, but he did not file a section 1983 action challenging the publication until 2018. Id. McGroarty argued "the continuing display of his information on Florida's sex offender registry [wa]s a continuing violation because he continuously suffer[ed] the injury of having his information published, which interfere[d] with his daily life." Id. The Eleventh Circuit explained that the plaintiff's argument failed "to appreciate the limits of the continuing violation doctrine—he has alleged a continuing harm (which does not extend the limitations period), not a continuing violation (which may extend the period)." Id. at 1307-08. The initial publishing of plaintiff's information on the website was a "one time" act, even if plaintiff was experiencing a present consequence of that initial publication. Id. at 1308. Thus, the doctrine of continuing violation did not avail plaintiff, and his claims were outside of the applicable statute of limitations.

A similar analysis applies in this case. Here, Plaintiff challenges particular portions of the 2017 SWMP. Dkt. No. 45 ¶ 151. Plaintiff pleads that it has suffered, and continues to suffer, economic injury and harm due to Defendants' enactment of the 2017 SWMP. Id. ¶ 156-163. Plaintiff seeks to invoke the continuing violation doctrine because the "resultant harm to Plaintiff is ongoing" since the 2017 SWMP prevents Plaintiff from competing in the interstate market, contracting with market participants, and

importing solid waste into the County. Dkt. No. 52 at 13. However, Plaintiff "confuses the presence of a continuing violation, which tolls the statute of limitations, with that of a continuing injury, which does not." Cohen v. World Omni Fin. Corp., 751 F. Supp. 2d 1289, 1294 (S.D. Fla. 2010), aff'd, 426 F. App'x 766 (11th Cir. 2011). Plaintiff does not allege ongoing instances of Defendants' violating the Dormant Commerce Clause. Instead, the ongoing harms to which Plaintiff refers are consequences of a one-time constitutional violation that occurred when Defendants enacted the 2017 SWMP. Such harms do not permit Plaintiff to invoke the continuing violation doctrine. See, e.g., Fla. Transp. Serv., Inc. v. Miami-Dade Cnty., 757 F. Supp. 2d 1260, 1270 (S.D. Fla. 2010) (declining to apply the continuing violation doctrine and, thus, barring a dormant commerce clause claim based on a policy enactment outside of the limitations period), aff'd sub nom. Fla. Transp. Servs., Inc. v. Miami-Dade Cnty., 703 F.3d 1230 (11th Cir. 2012); Superior-FCR Landfill, Inc. v. Cnty. of Wright, 59 F. Supp. 2d 929, 936 (D. Minn. 1999) ("[T]he mere fact that the ill-effects of the Waste Designation Ordinance continued to injure Superior after its enactment does not establish a continuing violation."); see also Eggers v. City of Key W., Fla., No. 05-10093-CIV, 2008 WL 5070261, at *5 (S.D. Fla. Nov. 25, 2008) ("[A]ll of the alleged harassment and incidents are consequences of the constitutional violations which occurred when Defendant enacted Ordinances 95-4

29

and 95-5."). Simply put, a continual injury resulting from enactment of an ordinance is not the same thing as a continuing violation. Accordingly, the continuing violation doctrine does not apply to Plaintiff's Dormant Commerce Clause claim. Plaintiff's Dormant Commerce Clause claim is, thus, barred as untimely and Defendants' motion to dismiss as to this claim is **GRANTED**.

### III. Immunity

In moving to dismiss, Defendants also contend they are entitled to various forms of immunity that bar Plaintiff's claims, including qualified, legislative, sovereign, and official immunity. Dkt. No. 48 at 3. Each respective immunity is discussed below.

### A. Qualified Immunity

Defendants submit they are entitled to qualified immunity on all of Plaintiff's federal claims. Dkt. No. 48 at 30. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). However, the qualified immunity defense has no application to charges asserted against government actors in their individual capacity to gain prospective relief. Rogers v. Miller,

57 F.3d 986, 988 n.4 (11th Cir. 1995). "Because qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief." Ratliff v. DeKalb Cnty., 62 F.3d 338, 340 n.4 (11th Cir. 1995). As such, to the extent Plaintiff seeks non-monetary relief, qualified immunity does not bar any of Plaintiff's claims against Defendants in their individual capacities.[9]

## B. Legislative Immunity

Defendants contend the individual commissioners are entitled to legislative immunity for Plaintiff's claims related to the commissioners' votes to adopt both the 2016 and 2017 zoning ordinances and the 2017 SWMP at issue. Dkt. No. 48 at 34. "Individuals acting in a legislative capacity are absolutely immune from suit." Saleem v. Snow, 460 S.E.2d 104, 107 (Ga. Ct. App. 1995). However, there is a distinction between voting to *adopt* a regulation and the *enforcement* of already-established regulations. Simply put, "the commissioners wear two hats—as

---

[9] Plaintiff does, however, seek retrospective relief for one remaining federal claim. Specifically, Plaintiff is seeking damages for a taking without just compensation under 42 U.S.C. § 1983. Dkt. No. 1 ¶¶ 67-69. However, as discussed below, Plaintiff has failed to state a constitutional violation for such a claim and, thus, fails to overcome qualified immunity. See infra section IV; Bogle v. McClure, 332 F.3d 1347, 1355 (11th Cir. 2003) (to overcome qualified immunity, a plaintiff must demonstrate "that the defendant's alleged actions violated a constitutional or statutory right").

decision-makers voting on the [regulations] . . . and as enforcers of already-established [regulations]." Dawson Cnty. Bd. of Comm'rs v. Dawson Forest Holdings, LLC, 850 S.E.2d 870, 875 (Ga. Ct. App. 2020). Here, Plaintiff's complaint seeks prospective remedies against the application of allegedly unconstitutional zoning decisions to its development. Its claim does not focus on the individual commissioners' earlier votes in connection with those classifications. The enforcement of a previously established regulation is not a legislative act that warrants legislative immunity. See Dawson Forest Holdings, LLC, 850 S.E.2d at 876 (rejecting legislative immunity where plaintiff's "claims for declaratory and injunctive relief ar[o]se from the commissioners' anticipated future enforcement of allegedly unconstitutional zoning classifications"). As such, Plaintiff's claims are not barred by legislative immunity.

### C. Sovereign Immunity

Defendants argue that both the County and the individual commissioners are entitled to sovereign immunity. Dkt. No. 48 at 34. Under Georgia law, sovereign immunity extends to the State and all of its departments and agencies, including counties and their commissioners. Carter v. Butts Cnty., 821 F.3d 1310, 1323 (11th Cir. 2016). As such, counties and other political subdivisions of the State are absolutely immune from such suits, unless that immunity has been specifically waived pursuant to an act of the

General Assembly. Hackett v. Fulton Cnty. Sch. Dist., 238 F. Supp. 2d 1330, 1367 (N.D. Ga. 2002). An individual defendant sued in his official capacity is also entitled to the benefit of the sovereign immunity defense, so long as the State has not waived it. Carter, 821 F.3d at 1323.

At the time this action commenced,[10] the doctrine of sovereign immunity precluded claims seeking injunctive and declaratory relief against the County and its commissioners in their official capacities. Lathrop v. Deal, 801 S.E.2d 867, 879-80 (Ga. 2017). As a result, both the County and the Board of Commissioners are entitled to sovereign immunity against the state law claims alleged against them unless Plaintiff can show that sovereign immunity has been waived.

Plaintiff submits that its vested rights have been violated under state law. Plaintiff, however, presents no argument or evidence that sovereign immunity has been waived as to this vested rights claim, and the Court can find no basis for concluding that sovereign immunity has been waived. The burden of demonstrating a waiver of sovereign immunity falls on the party seeking to benefit

---

[10] The Court notes that a recent constitutional amendment has since altered the applicability of sovereign immunity to claims for declaratory and prospective relief. See Ga. Const. art. I, § 2, ¶ V. As of January 1, 2021, sovereign immunity is waived for actions seeking declaratory relief from acts of the state. However, such waiver applies only to acts which occur on or after January 1, 2021. Id.; see also Donaldson v. Dep't of Transp., 414 S.E.2d 638, 641 (Ga. 1992) ("Under Georgia law, a waiver of sovereign immunity occurs at the time that the cause of action arises."). This action concerns acts that occurred before that date, so the waiver does not apply.

from it. See Smith v. Chatham Cnty., 591 S.E.2d 388, 389 (Ga. Ct. App. 2003). Because Plaintiff has failed to demonstrate a waiver for state sovereign immunity for its vested rights claim, Plaintiff is barred from bringing such action against the Defendants in their official capacity.[11] As such, all claims against the commissioners in their official capacities are **DISMISSED**.

### D. Official Immunity

With regard to Plaintiff's individual capacity state law claims, Defendants also contend the commissioners are entitled to official immunity. Dkt. No. 55 at 20-21. Official immunity generally applies "to government officials and employees sued in their individual capacities." Roberts v. Mulkey, 808 S.E.2d 32, 35 (Ga. Ct. App. 2017). The official immunity doctrine derives from article I, section II, paragraph IX (d) of the Georgia Constitution, which states:

> all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.

---

[11] Plaintiff also seeks to appeal and invalidate the previously described zoning decisions made by Defendants due to alleged violations of Georgia's Zoning Procedures Law. O.C.G.A. § 36-66-1, et. seq. In doing so, Plaintiff insists the Georgia General Assembly has waived sovereign immunity for suits brought pursuant to the Zoning Procedures Law. Dkt. No. 26 at 7. However, as discussed infra in section XI, the Court declines to exercise supplemental jurisdiction over this claim. Accordingly, it is unnecessary to discuss whether sovereign immunity is waived for such claim.

Ga. Const. art. I, § 2, ¶ IX(d). This language applies to officers and employees of counties as well as those of state departments and agencies. Morgan v. Barnes, 472 S.E.2d 480, 481 (Ga. Ct. App. 1996). Importantly though, the Georgia Supreme Court has held that "Article I, Section II, Paragraph IX (d) concerns suits and liabilities of public officers for monetary damages and other retrospective relief. It does not limit the availability of prospective relief." Lathrop, 801 S.E.2d at 891. As such, "the doctrine of official immunity does not bar suits for declaratory or injunctive relief brought against county officers in their individual capacities." Love v. Fulton Cnty. Bd. of Tax Assessors, 821 S.E.2d 575, 585 (Ga. Ct. App. 2018).

Here, as specifically indicated in its response to Defendants' motion to dismiss, Plaintiff "seeks declaratory relief that it has a vested right to develop its land with the landfill and Plaintiff seeks injunctive relief against Defendants' continuing illegal and unconstitutional actions." Dkt. No. 26 at 6. Accordingly, official immunity does not bar Plaintiff from seeking this prospective relief from Defendants in their individual capacities.[12]

---

[12] To the extent Plaintiff does seek retrospective relief under state law, the complaint fails to identify such requested damages and, thus, fails to make the allegations necessary to overcome official immunity pursuant to Georgia law. See Davis v. Dublin City Bd. of Ed., 464 S.E.2d 251, 252 (Ga. Ct. App. 1995); Truelove v. Wilson, 285 S.E.2d 556, 558 (Ga. Ct. App. 1985).

Even so, Defendants insist that Plaintiff's claims are not against the commissioners as individuals but are instead against the County. Dkt. No. 55 at 22. Thus, Defendants argue that Plaintiff is attempting to evade sovereign immunity by suing the State's agents instead. Id. The Court is unpersuaded by this argument.

Sovereign immunity "can not be evaded by making an action nominally one against the servants or agents of a State, when the real claim is against the State itself and it is the party vitally interested." Lathrop, 801 S.E.2d at 873. Defendants submit that Plaintiff is "clearly suing the County" as the "real party in interest" and cites to a recent Georgia Court of Appeals case to support its proposition. Dkt. No. 55 at 21 (citing Bd. of Comm'rs v. Mayor of Valdosta, 834 S.E.2d 890, 893 (Ga. Ct. App. 2019), rev'd, 848 S.E.2d 857 (Ga. 2020)). However, the Georgia Supreme Court has since reversed that decision and clarified that "the real-party-in-interest limitation is not so broad" as Defendants claim. Mayor of Valdosta, 848 S.E.2d at 858. Instead, the limitation has been applied "primarily when the claimed relief would control or take the State's real property or interfere with contracts to which the State is a party." Id. Applying the limitation broadly "would eviscerate Georgians' well-established rights to seek redress against their government" and "yield a rule wholly incompatible with our long-standing precedent allowing

36

individual-capacity claims for injunctive and declaratory relief."
Id. That Plaintiff's request may direct the exercise of the
commissioners' discretion does not alter the Court's analysis. As
the Georgia Supreme Court noted, "any injunction or declaration as
to an employee or official of the State could be said to 'control
the actions of the State' to some extent." Id. at 862.

Following the standard as recently clarified by the Georgia
Supreme Court, it is clear the real-party-in-interest limitation
does not apply here. Plaintiff's Amended Complaint does not involve
injunctive relief that would "alter the title, possession, or usage
of any real property of the State." Id. at 863. Further,
Plaintiff's request does not seek to enjoin any contracts to which
the State is a party or "interfere with any state contracts." Id.;
City of Hapeville v. Sylvan Airport Parking, LLC, 858 S.E.2d 538,
542 (Ga. Ct. App. 2021). Consequently, Plaintiff's claims are
properly considered to be against the commissioners in their
individual capacities, and official immunity does not bar
Plaintiff's claims for prospective relief from proceeding.

## IV. Just Compensation Claim

Plaintiff brings a claim pursuant to 42 U.S.C. § 1983 for
violation of its Fifth Amendment rights. Dkt. No. 1 ¶ 67. Plaintiff
alleges that Defendants used their legislative and police powers
to deny, without just compensation, Plaintiff's "reasonable
investment backed expectations in the development of the proposed

37

use, a Solid Waste Handling Facility." Dkt. No. 1 ¶¶ 65-66. In moving to dismiss, Defendants argue that Plaintiff cannot demonstrate a "taking" of Plaintiff's property as required by the Fifth Amendment to prove its claim. Dkt. No. 48 at 13.

The Just Compensation Clause of the Fifth Amendment, which applies to the states by virtue of the Fourteenth Amendment, mandates that "private property shall not be taken for public use without just compensation." U.S. Const. amend. V; Givens v. Ala. Dep't of Corr., 381 F.3d 1064, 1066 (11th Cir. 2004). In some instances, a taking may occur where a governmental entity exercises its police power through regulation which restricts the use of property. A.A. Profiles, Inc. v. City of Ft. Lauderdale, 850 F.2d 1483, 1486 (11th Cir. 1988). "While property may be regulated to a certain extent, if regulations go too far it will be recognized as a taking." Pa. Coal Co. v. Mahon, 260 U.S. 393, 413 (1922). "Whether a landowner has been deprived of all or substantially all economically viable use of his property, either permanently or temporarily, is an essentially ad hoc inquiry into whether the regulation goes 'too far.'" Corn v. City of Lauderdale Lakes, 95 F.3d 1066, 1072 (11th Cir. 1996) (quoting MacDonald, Sommer & Frates v. Yolo Cnty., 477 U.S. 340, 348 (1986)). When assessing the challenged regulation, the court considers "several factors that have particular significance," including (1) the economic impact of the regulation; (2) its interference with the landowner's

reasonable investment-backed expectations; and (3) the character of the governmental action. Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 538 (2005) (citing Penn Central Transp. Co. v. N.Y.C., 438 U.S. 104 (1978)).

Plaintiff argues that Defendants' rezoning of its property constituted a regulatory taking of Plaintiff's property rights. Dkt. No. 1 ¶ 66. In support of this claim, Plaintiff insists "it has a vested property right to develop the property with the Solid Waste Handling Facilities." Id. ¶ 67. As such, Plaintiff believes that it was deprived of the property's economic viability because it was denied its "reasonable investment backed expectation to develop and operate a landfill on its property." Dkt. No. 52 at 24 (citing Penn Central, 438 U.S. at 104). Plaintiffs fail to make the allegations necessary to set forth their just compensation claim.

"It is well established that a plaintiff may only bring a just compensation claim if the challenged regulation 'destroys the value of the land entirely.'" Howard v. Country Club Ests. Homeowners Ass'n, Inc., No. 1:09-CV-37 (WLS), 2011 WL 13176587, at *5 (M.D. Ga. Sept. 30, 2011) (citing First English Evangelical Lutheran Church of Glendale v. L.A. Cnty., 482 U.S. 304, 316-18 (1987)), aff'd, 486 F. App'x 48 (11th Cir. 2012). Moreover, "any constitutional claim . . . challenging the regulatory deprivation of a single use of real property alleged to be vested under state

law must be considered in light of the remaining use of the property as a whole." Villas of Lake Jackson, Ltd. v. Leon Cnty., 121 F.3d 610, 614 (11th Cir. 1997).

The gravamen of Plaintiff's alleged injury is that the regulations diminished the Property's utility only insofar as Plaintiff cannot develop the Property as a solid waste handling facility. Dkt. No. 52 at 26. Regardless of whether Plaintiff has acquired vested rights to develop a landfill, "a denial of permission to build a particular development project does not, by itself, state a just compensation claim." Corn, 95 F.3d at 1074 (finding a lack of just compensation claim where city denied landowner permission to build mini warehouse despite acquiring vested rights to do so). The applicable standard is not whether Plaintiff has been denied the uses for which it wishes to develop its land; rather, it is whether Plaintiff has been denied all or substantially all economically viable use of its land. In short, a taking cannot be established simply by showing that a landowner has "been denied the ability to exploit a particular property interest." Id.; see also Andrus v. Allard, 444 U.S. 51, 65-66 (1979) ("[W]here an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety."). Despite Plaintiff's argument to the contrary, the denial of its vested rights to develop a landfill, without more, does not amount

to a taking as defined by applicable law. Plaintiff has failed to allege that its property was deprived of all economic benefit such that a "taking" occurred within the meaning of the Fifth Amendment. Therefore, Plaintiff's just compensation claim must be dismissed. Accordingly, Defendants' motion to dismiss Count I is **GRANTED**.

## V. Procedural and Substantive Due Process

In Count II of its Amended Complaint, Plaintiff brings a claim for "violation of procedural and substantive due process rights under the Fourteenth Amendment." Dkt. No. 1 at 25. The Due Process Clause of the Fourteenth Amendment affords two types of constitutional protections: procedural and substantive due process. Hillcrest Prop., LLP v. Pasco Cnty., 915 F.3d 1292, 1297 (11th Cir. 2019); J.R. v. Hansen, 803 F.3d 1315, 1320 (11th Cir. 2015). Each type of protection and its related claim is discussed below.

### A. Procedural Due Process

Plaintiff claims that Defendants failed to give proper notice and follow the procedures required by the Georgia Zoning Procedures Law when Defendants amended the 2017 Zoning Ordinance to rezone Plaintiff's property. Dkt. No. 1 ¶¶ 42, 75. Plaintiff also contends that Defendants passed a "moratorium" resolution opposing the landfill without prior notice or opportunity to be heard. Id. ¶ 30-33. Accordingly, Plaintiff submits that its Fourteenth Amendment procedural due process rights have been violated. Id. ¶ 74.

41

Defendant argues for dismissal of the procedural due process claim because "a state law remedy exists in Georgia for these alleged procedural violations." Dkt. No. 48 at 23.

To state a claim for denial of procedural due process, a plaintiff must show that "the state refuse[d] to provide a process sufficient to remedy the procedural deprivation." Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir. 2000). "This rule . . . recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora—agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation." Id. at 1330-31. In such a case, the court's only consideration is whether adequate remedies were available under state law, not whether the plaintiff took advantage of them. See Horton v. Bd. of Cnty. Comm'rs, 202 F.3d 1297, 1300 (11th Cir. 2000); McKinney, 20 F.3d at 1565 ("The fact that [the plaintiff] failed to avail himself of the full procedures provided by state law [such as post-deprivation remedies] does not constitute a sign of their inadequacy." (quoting Kremer v. Chem. Constr. Corp., 456 U.S. 461, 485 (1982))). Simply put, if the state provides any adequate post-deprivation procedure, then the state has fulfilled its obligation to provide procedural due process when depriving the plaintiff of a state-created right.

The proper procedure for remedying an improper zoning decision under Georgia law is admittedly unclear. See generally, Laura E. Nelson, Diverse Holdings and Diversified Holdings: Uncertainty in Georgia's Procedure for Seeking Judicial Review of Rezoning Decisions, 55 Ga. L. Rev. 1383, 1402 (2021) ("[T]he nature of rezoning decisions—and thus the proper procedure for seeking judicial review of those decisions—remains unclear."). Historically, zoning decisions in Georgia have been considered legislative in nature and were reviewed in de novo proceedings before state courts. See Stendahl v. Cobb Cnty., 668 S.E.2d 723, 726 (Ga. 2008) ("When a zoning authority either grants or denies an application for rezoning, it acts in a legislative capacity, and when the constitutionality of that legislative enactment is challenged in court, it is afforded de novo review."); see also Presnell v. McCollum, 145 S.E.2d 770, 770 (Ga. Ct. App. 1965) ("The acts of a county commissioner in zoning matters are not a judicial or quasi-judicial function, but a legislature function, to which the writ of certiorari will not lie."). However, the Georgia Supreme Court has recently signaled that zoning decisions are adjudicative in nature and, thus, warrant an appeal by writ of certiorari to the superior court. See Diversified Holdings, LLP v. City of Suwanee, 807 S.E.2d 876, 883 (Ga. 2017) ("A landowner's challenge that seeks recognition that a zoning ordinance is unlawful with respect to a particular parcel of land thus is the

43

type of individualized application of law to facts and circumstances that constitutes an adjudicative decision and requires a discretionary application.").

Here, Plaintiff submits that the rezoning was legislative rather than adjudicative and, thus, general appeal was proper to the superior court under O.C.G.A. § 5-3-20. Dkt. No. 52 at 29-33; Dkt. No. 25 at 32. Defendants, on the other hand, contend that the rezoning decision here was adjudicative and, therefore, a writ of certiorari for which O.C.G.A. § 5-4-1 provides the only available means of review for Plaintiff. Dkt. No. 48 at 26.

Despite the lack of clarity as to which was the *appropriate* remedy, Plaintiff indeed had the opportunity to pursue either or both avenues of appeal in superior court. See e.g., Diversified, 807 S.E.2d at 881 (indicating that plaintiff could "file[] both a direct appeal and an application for discretionary appeal" to request zoning relief).[13] Regardless of which party is correct, their contentions demonstrate—at least for the purpose of Plaintiff's federal procedural due process challenge—that the state provided at least one avenue to remedy the alleged procedural failings of the rezoning decision in state court. As such, Plaintiff cannot show that the state refused to provide a

---

[13] In fact, Plaintiff did pursue at least one such remedy in state court. As the Amended Complaint indicates, Plaintiff filed a general appeal in the Superior Court of Brantley County but voluntarily dismissed it because the petition was allegedly pending for over two years. Dkt. No. 1 ¶ 117.

sufficient process to remedy Defendants' rezoning decision as required to state a claim. See McKinney, 20 F.3d at 1565.

Additionally, to the extent Plaintiff alleges a procedural due process claim based on the enacted moratorium, Plaintiff has also failed to state a cognizable claim. "[I]f government action is viewed as legislative in nature, property owners generally are not entitled to procedural due process." 75 Acres, LLC v. Miami-Dade Cnty., 338 F.3d 1288, 1294 (11th Cir. 2003).[14] Moratoriums—like the one at issue here—are generally recognized as legislative acts. Watson Constr. Co. v. City of Gainesville, 244 F. App'x 274, 276 (11th Cir. 2007) ("The City's action in passing the moratorium ordinance constituted a legislative act."). Because the moratorium at issue was a generally applicable ordinance not limited solely to Plaintiff's property, it is a legislative action that does not implicate the procedural due process protections guaranteed by the Fourteenth Amendment. 75 Acres, 338 F.3d at 1290 ("Because we agree with the district court that the imposition of an administrative building moratorium pursuant to § 33-319(k) is a legislative act that does not implicate procedural due process protections, we affirm the district court's final judgment granting the County's

---

[14] As explained by the Eleventh Circuit in 75 Acres, "[w]hen the legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process. The challenges to such laws must be based on their substantive compatibility with constitutional guarantees." 338 F.3d at 1294 (citations omitted).

motion to dismiss.") Accordingly, Plaintiff's federal procedural due process claim must fail, and Defendants' motion to dismiss this portion of the claim is **GRANTED**.

### B. Substantive Due Process

"The substantive component of the Due Process Clause protects those rights that are fundamental, that is, rights that are implicit in the concept of ordered liberty." McKinney, 20 F.3d at 1556 (internal quotation marks omitted). "Fundamental rights are those rights created by the Constitution." Greenbriar Village, LLC v. City of Mountain Brook, 345 F.3d 1258, 1262 (11th Cir. 2003). However, "state-created rights," such as the land use rights at issue in this case, are not established by the U.S. Constitution but are instead created "by existing rules or understandings that stem from an independent source such as state law." Hillcrest Prop., 915 F.3d at 1298 (citing Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)); see also Dekalb Stone, Inc. v. Cnty. of DeKalb, 106 F.3d 956, 959 (11th Cir. 1997) ("[L]and use rights, as property rights generally, are state-created rights."). Thus, as a general rule, "there is generally no substantive due process protection for state-created property rights." Kentner v. City of Sanibel, 750 F.3d 1274, 1280 (11th Cir. 2014); PBT Real Est., LLC v. Town of Palm Beach, 988 F.3d 1274, 1284 (11th Cir. 2021) (the deprivation of "garden-variety property rights . . . does not in and of itself concern the concept of ordered liberty"). However,

there is at least one exception to this rule: "Where a person's state-created rights are infringed by a 'legislative act,' the substantive component of the Due Process Clause generally protects that person from arbitrary and irrational governmental action." PBT Real Est., 988 F.3d at 1284 (quoting Kentner, 750 F.3d at 1279-80). The crux of this analysis is whether rights are infringed by a *legislative*, rather than an *executive* act. Kentner, 750 F.3d at 1280.

There is no dispositive test for determining whether challenged actions are legislative or executive, because local governing bodies often do both. See SP Frederica, LLC v. Glynn Cnty., 173 F. Supp. 3d 1362, 1379 (S.D. Ga. 2016) (citing Kentner, 750 F.3d at 1279). While some governmental officials perform duties that are patently legislative or executive in nature, "others, like county commissioners[,] . . . act in both a legislative and executive capacity," making it more difficult to "sort[ ] out which hat they were wearing when they made a decision." Lewis v. Brown, 409 F.3d 1271, 1273 (11th Cir. 2005). Nevertheless, the Eleventh Circuit has set forth the following guideposts for this determination:

> Executive acts typically arise from the ministerial or administrative activities of the executive branch and characteristically apply to a limited number of people, often to only one. McKinney, 20 F.3d at 1557 n. 9 (citations omitted). This includes employment terminations or individual acts of zoning enforcement.

Id.; see also Crymes v. DeKalb Cnty., 923 F.2d 1482,
1485 (11th Cir. 1991).

"Legislative acts, on the other hand, generally apply to
a larger segment of—if not all of—society." McKinney, 20
F.3d at 1557 n. 9. "[L]aws and broad-ranging executive
regulations are the most common examples." Id. A
legislative act also involves policy-making rather than
mere administrative application of existing policies.
DeKalb Stone, Inc., 106 F.3d at 959. Prospective
"zoning-type decisions made by an elected body" are
often legislative or quasi-legislative. 75 Acres, LLC v.
Miami-Dade Cnty., Fla., 338 F.3d 1288, 1296 n. 12 (11th
Cir.2003).

Kentner, 750 F.3d at 1280; see also Hillcrest Prop., 915 F.3d at

1301 ("[T]he McKinney distinction between legislative and

executive action is alive and well.").

Here, Defendants argue that a substantive due process claim

cannot stand because Plaintiff is challenging an executive act—

namely, the rezoning of Plaintiff's property. Dkt. No. 48 at 19.

Plaintiff, on the other hand, insists that the actions taken by

Defendants "apply to the general public" and "constitute

policymaking functions of the Board of Commissioners." Dkt. No. 25

at 22.

The Court finds that Defendants' 2017 Rezoning Decision

constitutes an executive action, as it applies only to Plaintiff

and its property, rather than the residents of Brantley County at

large. See Lewis, 409 F.3d at 1274 ("[E]nforcement of existing

zoning regulations is an executive, not legislative[,] act

. . . .");  see also Bass v. City of Forsyth, No. 5:06-CV-278HL,

48

2007 WL 4117778, at *4 (M.D. Ga. Nov. 16, 2007) (holding that city council vote to change the zoning of an individual's property was an executive act). The essence of Plaintiff's challenge, as alleged in its Amended Complaint, is that the "[d]ecision to rezone Plaintiff's property" was "completely arbitrary and capricious." Dkt. No. 1 ¶ 83. Specifically, Plaintiff complains that Defendants "[t]ook action on its own application to down zone Plaintiff[']s property from Heavy Industrial to Light Industrial." Id. ¶ 42. Further, Plaintiff alleges that Defendants "purportedly amended the zoning map to reclassify Plaintiff's Property." Id. ¶ 45. Simply put, the harm that allegedly resulted from Defendants' action is harm only to Plaintiff. As made clear by the Eleventh Circuit, such conduct is properly characterized as a "quintessentially executive action". Hillcrest Prop., 915 F.3d at 1301. As such, Plaintiff is subjected to the general rule that no substantive due process claim exists for executive acts affecting state-created land-use rights. Kentner, 750 F.3d at 1280.[15]

---

[15] In a footnote, Plaintiff ostensibly concedes that the action to downzone its property is an executive act because it applies only to Plaintiff's property. Dkt. No. 25 at 22 n. 8. Nonetheless, Plaintiff submits that the downzoning of Plaintiff's land will be nullified upon the invalidation of the county-wide zoning ordinance under which the Property was rezoned. Id. While this may true if Plaintiff succeeds on any other claim which challenges the zoning ordinances as a whole, it does not provide any foundation for Plaintiff's substantive due process claim to go forward. The case law is clear: "[N]on-legislative deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, even if the plaintiff alleges that the government acted [arbitrarily] and irrationally." Greenbriar Vill., 345 F.3d at 1262.

Plaintiff recognizes this limitation in its response to Defendants' motion to dismiss but attempts to invoke the legislative exception for substantive due process claims by listing numerous "legislative actions" challenged in the Amended Complaint. Dkt. No. 25 at 22. Specifically, Plaintiff insists that it also challenges the 2016 Zoning Ordinance, the 2017 moratorium, the 2017 Zoning Ordinance, and the 2017 SWMP—all legislative actions it insists trigger the application of substantive due process. Id. However, Plaintiff has failed to plead any facts or submit any allegations demonstrating that it was challenging any of these ordinances as arbitrary and capricious on their face. Instead, Plaintiff challenges those legislative acts for reasons other than their being arbitrary and capricious. See, e.g., Dkt. No. 1 ¶ 81 (challenging the 2016 Zoning Ordinance as void for vagueness rather than arbitrary and capricious). Count II of the Amended Complaint clearly shows that Plaintiff's arbitrary and capricious challenge was directed toward a specific rezoning decision based on individualized consideration of Plaintiff's property. Plaintiff cannot revive its substantive due process claim by generally pointing to legislation it challenges in other parts of its Amended Complaint. Accordingly, Defendants' motion to dismiss this portion of Plaintiff's due process claim is **GRANTED.**

## VI.  Void for Vagueness

In bringing its due process challenge, Plaintiff further submits that certain land use regulations at issue are void for vagueness and allegedly do not comport with due process as required by the Georgia and United States Constitutions. Dkt. No. 1 ¶ 21. In doing so, Plaintiff alleges: (1) that the September 8, 2016 zoning ordinance was passed without any map to show the land to which various zoning districts may apply and (2) that the various land use regulations fail to define key terms and fail to provide sufficient criteria and guidelines governing landfill facilities. Id. ¶ 81; Dkt. No. 25 at 24. Defendants argue that failing to define certain terms does not render the 2016 Zoning Ordinance void. Dkt. No. 48 at 20. Additionally, Defendants contend that the due process provided by the Georgia and United States Constitutions does not require incorporating an official map. Id. at 20 n.13.

A law "can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Wollschlaeger v. Governor, 848 F.3d 1293, 1319 (11th Cir. 2017) (citing Hill v. Colorado, 530 U.S. 703, 732 (2000)); see also Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1311 (11th Cir. 2009) (stating that a law is unconstitutionally vague "if it is so vague

and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case"). Thus, if a state or federal statute, or local ordinance, fails to give "a person of ordinary intelligence fair notice" of what is prohibited or required, then it is void for vagueness. Papachristou v. City of Jacksonville, 405 U.S. 156, 162 (1972). The same is true if the statute or ordinance is "so standardless that it authorizes or encourages seriously discriminatory enforcement" or arbitrary decision-making. Skilling v. United States, 561 U.S. 358, 416 (2010); see also Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972) (stating ordinances must "provide explicit standards for those who apply" them to avoid "resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application").[16]

Plaintiff alleges that the 2016 Zoning Ordinance is void for vagueness because it did not incorporate an official zoning map as allegedly required to comport with due process. Dkt. No. 1 ¶ 21. Specifically, Plaintiff contends the ordinance was passed on September 8, 2016 without any "maps present showing the various

---

[16] Georgia law uses the same standards in determining whether a statute or ordinance has violated due process because of vagueness. Izzo v. State, 356 S.E.2d 204, 205 (Ga. 1987) (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983)).

zoning districts or the land to which various zoning districts may apply." Id. ¶¶ 19, 78. Further, no motion was ever made to approve any official zoning map. Id. ¶ 19. As such, Plaintiff insists that no zoning map was adopted in connection with the 2016 Zoning Ordinance. Id. ¶ 78.

Plaintiff has stated a valid void for vagueness challenge under both the United States and Georgia Constitutions. Although due process does not always require the incorporation of an official map, it does require local ordinances to harbor a certain level of "precision and guidance" so that those enforcing the law do not act in an "arbitrary and discriminatory way." FCC v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012). Here, the 2016 Zoning Ordinance identifies the land to which its various zoning classifications apply only by reference to a purported map entitled "Official Land Use Districts Map of Brantley County, Georgia." Dkt. No. 1-8 at 17 ("The boundaries of each district are shown on maps entitled 'Official Land Use Districts Map of Brantley County, Georgia.'"). The 2016 Zoning Ordinance also required the map to "be dated and certified by the Chairman of the County Commission and County Clerk." Dkt. No. 1-8 at 17. Yet, Plaintiff alleges that a map entitled "Official Land Use Districts Map" does not exist and was never adopted. Dkt. No. 1 ¶ 78.[17]

_____

[17] Two maps are found attached to Plaintiff's Amended Complaint as Exhibits R and I, but neither accurately reflects the map described in the 2016 Zoning Ordinance. See Dkt. Nos. 1-18, 1-9. Exhibit R is labeled the "Official Land Use

Without an incorporated map, the 2016 Zoning Ordinance invites the unpredictability and arbitrariness that the vagueness doctrine seeks to prevent. Whether a parcel is zoned Light Industrial or Heavy Industrial then hinges on the whims of the commission. Moreover, landowners are left in the dark as to what is a permitted use on their property until they need approval from the local government for such use. It tasks the commissioners to make the law up as they go, based on wholly subjective judgments, such that the commissioners have unfettered discretion to label property a particular designation on an ad hoc basis. See Grayned, 408 U.S. at 108-09 ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.").

Georgia case law is particularly instructive on this matter. When official maps are missing from a zoning ordinance, Georgia courts have held that "an essential part of the zoning ordinance [is] missing" and "the ordinance [is therefore] void at the moment of its enactment." See e.g., Newton Cnty. v. E. Ga. Land & Dev. Co., LLC, 764 S.E.2d 830, 832 (Ga. 2014). This is because "without

---

Districts Map of Brantley County, Georgia," but it does not bear any signature or date. Dkt. No. 1-18 at 2. Exhibit I appears to have a date and signature but is not labeled and designated as the "Official Land Use Districts Map of Brantley County, Georgia." Dkt. No. 1-9 at 2. Thus, neither sufficiently demonstrates that it is the map referenced and designated in the 2016 Zoning Ordinance. If anything, the multiplicity of maps submitted exacerbates this Court's concern over vagueness.

the maps, the zoning ordinance would be too indefinite and vague to satisfy the requirements of due process." Id. at 831. The Georgia Supreme Court has made clear that zoning laws require formalism in lawmaking—especially when it comes to the enactment of laws restraining citizens' property rights. Id. at 833 n.2. Such formalism is necessary "to provide certainty to the public as to what was actually adopted by the County and also to protect the public from any arbitrary changes of the ordinance or the maps that do not go through the . . . notice process." Id. Accordingly, because Plaintiff has alleged that the zoning map identified by the 2016 Zoning Ordinance does not exist, Plaintiff has set forth a valid void for vagueness challenge under both federal and state law.

Defendants seem to contend that by readopting a zoning ordinance and official zoning map on June 15, 2017, they remedied any deficiencies that may have previously existed. Dkt. No. 55 at 14. While Defendants may have enacted a *new* zoning ordinance and official zoning map effective on June 15, 2017, this does not retroactively cure any alleged deficiencies in the 2016 Zoning Ordinance. A void ordinance cannot be revived by amendment or later adoption of maps. Newton Cnty., 764 S.E.2d at 833. As such, Defendants did not remedy the 2016 Zoning Ordinance's deficiency by allegedly readopting a zoning ordinance and official zoning map on June 15, 2017.

55

Moreover, Plaintiff's void for vagueness challenge to the 2016 ordinance is not mooted by the adoption of a new ordinance and official zoning map on June 15, 2017. Given Plaintiff's claim that its rights vested in 2016, the challenge to the 2016 Zoning Ordinance's validity is not obviated by passage of later ordinance in 2017. See Crown Media, LLC v. Gwinnett Cnty., 380 F.3d 1317, 1325 (11th Cir. 2004) ("[A] party's vested property rights constitute an enforceable entitlement to a permit or a sign unaffected by subsequent changes in [] ordinances and may keep a constitutional challenge to a repealed [] ordinance from becoming moot under federal law.").

However, Plaintiff's allegations regarding Defendants' failure to define key terms does not sufficiently state a void-for-vagueness challenge. Plaintiff insists that various land use regulations are unconstitutionally vague because they do not provide "definitions, explanations, or provisions" for "vested rights" and other terms such as "Solid Waste Handling Facilities, landfills, or recycling facilities." Dkt. No. 1 ¶ 78. However, Plaintiff does not identify which regulation or provision it challenges and, instead, leaves it to the Court to comb through various land use regulations that have been submitted before it. Notably absent are challenges to the actual text of any ordinance. Diversified Numismatics, Inc. v. City of Orlando, 949 F.2d 382, 387 (11th Cir. 1991) ("To state a void-for-vagueness claim, the

language of the ordinance itself must be vague."). Without knowing the context in which these terms are being challenged, the Court cannot determine whether the actual language of any ordinance itself is vague.

Second, "vested rights" is not a term for the commission to define in the ordinance. Whether rights are vested is a legal determination set forth by state law and is not a term requiring further elaboration in a zoning ordinance. See Coral Springs St. Sys., Inc., 371 F.3d at 1333 ("Whether the right to a permit has vested is a question of state law.").

Finally, the terms "Solid Waste Handling Facilities," "landfills" and "recycling facilities" all have common meanings standing alone that a person of reasonable intelligence is able to derive and understand. Plaintiff fails to demonstrate how the omission of definitions or explanations for such terms renders the regulations so unintelligible that "people of ordinary intelligence" would have to guess at the core meaning of the zoning ordinances. Wollschlaeger, 848 F.3d at 1319; Indigo Room, Inc. v. City of Fort Myers, 710 F.3d 1294, 1302 (11th Cir. 2013) (denying a vagueness challenge because people of reasonable intelligence could derive a core meaning from the statute despite the existence of allegedly vague terms).

In sum, Defendants' failure to define key terms does not establish a void for vagueness challenge. However, Defendants'

failure to provide an official map for the 2016 Zoning Ordinance does constitute a valid void for vagueness claim. For this reason, Defendants' motion to dismiss Plaintiff's void for vagueness claim is **DENIED.**

### VII. First Amendment

Plaintiff alleges that the County denied its right to free speech, peaceably assemble, and petition the government. Dkt. No. 1 ¶ 108. Specifically, Plaintiff claims its First Amendment rights were denied when Defendants adopted a resolution that instructed county officials to not talk to Plaintiff about its intent to establish a landfill or solid waste handling facility in Brantley County except as provided by law. Id. ¶ 109. Plaintiff also claims its right to petition was denied when county officials did not respond to Plaintiff after a 2017 work session. Id. ¶ 110. Thus, Plaintiff argues it was prevented from communicating with public officials. Dkt. No. 25 at 26.

The First Amendment protects the right of an individual to speak freely, advocate ideas, associate with others, and petition its government for redress of grievances. Smith v. Ark. State Highway Emp., Loc. 1315, 441 U.S. 463, 464 (1979). The government is prohibited from infringing upon these guarantees by either a general prohibition against certain forms of advocacy or imposing sanctions for the expression of particular views it opposes. Id. (citing Brandenburg v. Ohio, 395 U.S. 444 (1969)).

Here, Plaintiff has failed to state a claim that the resolution violates the First Amendment. Nothing in the resolution or the Amended Complaint specifies an instance where *Plaintiff's* ability to communicate or petition was limited or punished. The no-communication resolution itself instructs the *County's* representatives "to cease and desist any communications or efforts where the intent is to establish or facilitate a landfill"; it does not set forth a prohibition against any form of advocacy by Plaintiff. Dkt. No. 1-14 at 3; Dkt. No. 1 ¶ 109. In fact, the Amended Complaint acknowledges that Plaintiff was still able to send letters to the County and petition Defendants. See, e.g., Dkt. No. 1-26.

That county officials did not respond to Plaintiff is not a First Amendment claim. Although the First Amendment protects the right to petition the government, it neither guarantees "that advocacy will be effective" nor imposes a corresponding "affirmative obligation on the government to listen [or] respond" to requests. Herndon v. Comm'r, 758 F. App'x 857, 859 (11th Cir. 2019) (quoting Smith, 441 U.S. at 465). "Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." Minn. State Bd. for Cmty. Colleges v. Knight, 465 U.S. 271, 285 (1984). Because Plaintiff

has failed to allege any restrictions on its First Amendment rights, Defendants' motion to dismiss Plaintiff's First Amendment claim is **GRANTED**.

**VIII.  Vested Rights**

Under Georgia law, the vested rights doctrine applies when a "landowner, relying in good faith, upon some act or omission of the government, has made a substantial change in position or incurred such extensive obligation and expenses that it would be highly inequitable and unjust to destroy the rights he has acquired." Bickerstaff Clay Prods. Co. v. Harris Cnty., 89 F.3d 1481, 1487-88 (11th Cir. 1996) (quoting Cohn Cmtys., Inc. v. Clayton Cnty., 359 S.E.2d 887, 889 (Ga. 1987)). The term "vested rights" means "interests which it is proper for [the] state to recognize and protect and of which [the] individual cannot be deprived arbitrarily without injustice." Recycle & Recover, Inc. v. Ga. Bd. of Nat. Res., 466 S.E.2d 197, 199 (Ga. Ct. App. 1996). A vested right to use property for a particular purpose can arise from "the issuance of a building permit, as well as various other forms of administrative approval." Jackson v. Delk, 361 S.E.2d 370, 372 (Ga. 1987). Specifically, a landowner can acquire vested rights where it makes a substantial change in position by expenditures in good faith reliance upon the probability of permit issuance, based upon an existing zoning ordinance and the assurance of zoning officials. WMM Props., Inc., 339 S.E.2d at 255 (citing

Barker v. Cnty. of Forsyth, 281 S.E.2d 549 (Ga. 1981)). When such rights vest, a landowner is entitled to have a permit issued despite changes to a zoning ordinance which would otherwise preclude the issuance of a permit. Id.

As alleged in the Amended Complaint, Brantley County officials contacted Plaintiff about siting a municipal solid waste landfill in the unincorporated area of the County. Dkt. No. 1 ¶ 8. Prior to its purchase of the Property, Plaintiff met with county officials to receive assurances that the Plaintiff could obtain the necessary county verification required by the EPD to proceed with the permitting process. Id. ¶¶ 10-11. In reliance upon these alleged representations and approvals from county officials, Plaintiff purchased the Property for over $2.6 million in order to develop the Proposed Facility. Id. ¶ 124. In addition to the purchase price, Plaintiff spent over $800,000 in professional fees and cost of improvements to develop the Proposed Facility. Id. Prior to retaining such professionals for engineering, geological, hydrogeological, and other services, Plaintiff requested the County provide it with two letters verifying that Plaintiff's Proposed Facility was consistent with the County's SWMP and local land use plan. Id. ¶ 15. In 2014, the County Manager—as directed by the County Commissioners—issued the requested written verification necessary to proceed with the permitting process. Id. On February 5, 2015, at a regularly scheduled meeting, Defendants

61

took official action to authorize Plaintiff's Proposed Facility and, once again, issued written verification to the EPD affirming Plaintiff's compliance. Id. ¶ 16. Plaintiff alleges that these 2015 Verification Letters from Defendant repeatedly assured Plaintiff that it had met all local land use laws and was consistent with the County's SWMP. Id. ¶ 123. Plaintiff insists that such reliance and expenditure occurred prior to the County's adoption and re-adoption of any land use ordinance. Id. ¶ 52. Defendants now refuse to recognize Plaintiff's vested rights and are obstructing the development of the Proposed Facility. Id. ¶ 58-59. Such allegations are sufficient to state a vested rights claim under Georgia law. If its allegations are true, Plaintiff relied on official representations and letters from Defendants to spend millions of dollars to purchase and develop a solid waste handling facility on the Property. Id. ¶ 49.

Nonetheless, Defendants contend the letters did not create vested rights because they were given in error. Dkt. No. 48 at 16. Specifically, Defendants argue that the verification letters were issued ultra vires because they were given in violation of the 2006 SWMP. Dkt. No. 55 at 10.[18]

An act is ultra vires when a "government official had *no authority* to take the action in question," and is, thus, void as

---

[18] Ultra vires means "beyond the scope of power allowed or granted by a corporate charter or by law." Black's Law Dictionary (11th ed. 2019).

a matter of law. Dukes v. Bd. of Trustees for Police Officers Pension Fund, 629 S.E.2d 240, 242 (Ga. 2006). However, there is a "broad distinction . . . between an irregular exercise of a granted power, and the total absence or want of power." Id. Only in the latter circumstance does an action qualify as ultra vires under Georgia law. Quillian v. Emp's' Retirement Sys. of Ga., 379 S.E.2d 515, 517 (Ga. 1989). In Quillian, the plaintiff received official acknowledgement from the Employees' Retirement System (the "ERS") that he would be credited for a certain number of service years in receiving his monthly pension allowance. Id. at 516. Six months later, the ERS declared that it had erred in the calculation it issued and reduced plaintiff's pension accordingly. Id. The Court held that the ERS had the legal authority to determine what pension should be paid—even though it made an incorrect decision in the pension calculation. Id. Thus, because the ERS had the power to calculate the plaintiff's pension, the error in making the calculation did not render the official act of calculating ultra vires. Id.; compare Dukes, 629 S.E.2d at 241 (board lacked legal authority to disburse benefits beyond what was permitted in the relevant ordinance).

    As Defendants point out, "the County has the general authority to issue consistency letters for EPD permit applicants." Dkt. No. 55 at 12. Under this authority, the Brantley County commissioners can assess the consistency of Plaintiff's proposal with all the

provisions found within the SWMP. Further, "in determining whether a proposed facility is consistent with its SWMP, a local government is authorized to consider any relevant factor that it appropriately considered in the SWMP itself." Murray Cnty. v. R & J Murray, LLC, 627 S.E.2d 574, 578 (Ga. 2006). As such, the commissioners were empowered with the discretion to determine an initial verification of consistency and issue a SWMP consistency letter.

Like the ERS in Quillian, the Brantley County commissioners did not exceed their authority by issuing the SWMP consistency letter. Plaintiff's alleged noncompliance with the SWMP does not go to whether the Brantley County commissioners *exceeded* their authority, but instead goes to whether the commissioners *correctly exercised* their authority in determining consistency. See City of Summerville v. Ga. Power Co., 55 S.E.2d 540 (Ga. 1949) (city's grant of franchise was not ultra vires because of applicant's failure to post notice of an application for franchise or publish it in official newspaper); City of Holly Springs v. Cherokee Cnty., 682 S.E.2d 644, 649 (Ga. Ct. App. 2009) (county approval of property annexation was not ultra vires even though county failed to follow certain requisite procedures); City of Duluth v. Riverbrooke Props., Inc., 502 S.E.2d 806, 813 (Ga. Ct. App. 1998) (issuance of occupancy permits was not an ultra vires act even though developer failed to follow procedural requirements in preliminary development plans).

The essence of the commissioners' authority is to make an initial decision on SWMP compliance. If commissioners determine a proposal complies with the SWMP, they have the power to issue the requisite verification letter; if they find that the proposal is not compliant, they may decline to issue the letter. Importantly, if—as Defendants allege here—the commissioners issue a letter for a proposal which is *not* in compliance, the issuance of this letter does not constitute an action which the Brantley County commissioners had no authority to take; rather, the letter's issuance was "an error made during the commission of an otherwise authorized action (determined not to be an ultra vires action)." Mullis v. Bibb Cnty., 669 S.E.2d 716, 719 (Ga. Ct. App. 2008).[19]

Ultimately, it is not the Court's role to make the determination of whether Plaintiff's proposal is indeed consistent with the 2006 SWMP for issuance of a solid waste permit.[20] The Court's task is limited to determining whether issuance of the

---

[19] Defendants specifically contend that their own letters were illegally issued because of the proposed landfill's proximity to the Sylvester Mumford House. Dkt. No. 48 at 17. Defendants submit that the property violates the 2006 SWMP provision stating, "[s]olid waste landfills shall not be located within 5,708 yards of a National Historic Site." Id. Even if this could render the letters ultra vires, Plaintiff disputes that the Sylvester Mumford House is a National Historic Site within the meaning of the 2006 SWMP. Dkt. No. 52 at 26. The 2006 SWMP does not define "National Historic Site," and the Court will not resolve this ambiguity at the motion to dismiss stage.

[20] Defendants' ultra vires argument focuses on the *authority* of the Brantley County commissioners. Determining the authority of a governing entity is properly within the realm of this Court. However, whether the commissioners abused their discretion in their consistency determination is not before the Court. Compare R&J Murray, LLC v. Murray Cnty., 653 S.E.2d 720, 723 (Ga. 2007).

2015 Verification Letters were illegal—lacking all authority—such that the act itself was ultra vires. The Court concludes, regardless of whether Defendants erred in their determination, it cannot be said that the letters were issued in the "total absence or want of power." City of Summerville, 55 S.E.2d at 543.

Additionally, under Georgia law, if a property owner becomes an applicant who seeks to alter the use of his land, he has a vested right to consideration of his application under the statutory law in existence at the time of his application. Recycle & Recover, Inc., 466 S.E.2d at 199; WMM Props., Inc., 339 S.E.2d 252 at 254; accord Fulton Cnty. v. Action Outdoor Advert., JV, 711 S.E.2d 682, 686 (Ga. 2011) ("Georgia law does make clear that when an applicant submits an application for a permit in accordance with applicable ordinances, the applicant is entitled to issuance of the permit."). Defendants contend that Plaintiff never formally applied for a permit with the County and, thus, lacks a vested right in developing the Property. Dkt. No. 48 at 13; Dkt. No. 55 at 1, 6. ("There is nothing in which Development Partners could conceivably have a vested right, because nothing was ever given to the County to review."). However, Georgia courts have made clear that filing a permit application with the Georgia EPD vests the property owner's rights at the time the application was submitted. S. States-Bartow Cnty., Inc., 769 S.E.2d at 827 ("[T]he right was

actually acquired in 1989 when [Plaintiff] submitted its application for a landfill permit to the EPD.").

On December 29, 2016, Plaintiff filed its application for the solid waste handling facility with the EPD. Id. ¶ 125. On January 3, 2017, Defendants imposed a 180-day moratorium on any landfills in Brantley County. Id. ¶ 30; Dkt. No. 1-12. On January 6, 2017, Defendants transmitted a letter to the EPD stating that they were unanimously opposed to Plaintiff's Proposed Facility and advising the EPD that Defendants had passed a moratorium on any proposed solid waste handling facility in the County. Id. ¶ 34; Dkt. No. 1-16 at 2. On June 15, 2017, Defendants adopted a new zoning ordinance and an official zoning map. Id. ¶ 43. In doing so, Defendants also downzoned Plaintiff's Property as to prohibit any solid waste handling facility on the Property. Id. ¶¶ 42-45. That same day, Defendants also adopted an amended SWMP. Dkt. No. 45 ¶ 151. The 2017 SWMP, as amended, prevents Plaintiff from importing any waste from outside the County. Id. ¶¶ 151, 154. On June 19, 2019, Plaintiff sent a demand letter to Defendants requesting they certify in writing that Plaintiff's Proposed Facility is subject to neither the 2017 Zoning Ordinance nor the 2017 SWMP. Dkt. No. 1 ¶ 58. Defendants refused to provide the requested confirmation. Dkt. No. 1 ¶ 59.

Using zoning ordinances and other official acts to retroactively impair vested rights is prohibited under Georgia

law. S. States-Bartow Cnty., Inc. v. Riverwood Farm Homeowners Ass'n, 797 S.E.2d 468, 471 (Ga. 2017) ("Our Constitution prohibits a legislative exercise of the police power that results in the passage of retrospective laws which injuriously affect the 'vested rights' of citizens."). Therefore, Plaintiff has sufficiently stated a claim that its vested rights—which Plaintiff acquired on December 29, 2016 when it submitted its permit application to the EPD—are being violated. Accordingly, Defendants' motion to dismiss as to Plaintiff's vested rights claim is **DENIED.**

**IX.  Zoning Appeal**[21]

Plaintiff attempts to appeal Defendants' decision to rezone the subject property pursuant to O.C.G.A. § 5-3-20. Dkt. No. 1 at 131. Defendants contend this appeal should be dismissed because Plaintiff is attempting to bring a rezoning appeal in the incorrect format. Dkt. No. 48 at 26. Defendants argue that a writ of certiorari under O.C.G.A. § 5-4-1 provides the only available means of review for quasi-judicial decisions like the rezoning at issue here. Id. In response, Plaintiff submits that the rezoning was legislative rather than quasi-judicial and, thus, was properly appealed pursuant to O.C.G.A. § 5-3-20.

---

[21] In their briefs, both parties agree that Count IV (state substantive due process) and Count VI (general appeal) present the same issue: Plaintiff's rezoning appeal. As such, the Court incorporates Count IV into this section given that Plaintiff has failed to argue or allege any other independent grounds for a state substantive due process claim to proceed.

Regardless of whether a writ of certiorari or general appeal is appropriate for the rezoning decision, the Court declines to exercise supplemental jurisdiction over this claim. 28 U.S.C. § 1367(c)(1). It has been frequently acknowledged that "federal courts do not sit as zoning boards of review." Spence v. Zimmerman, 873 F.2d 256, 262 (11th Cir. 1989); Corn v. City of Lauderdale Lakes, 997 F.2d 1369, 1389 (11th Cir. 1993); Greenbriar Vill., 345 F.3d at 1262; see also Raskiewicz v. Town of New Boston, 754 F.2d 38, 44 (1st Cir. 1985) ("[F]ederal courts do not sit as a super zoning board or zoning board of appeals"); Construction Indus. Ass'n v. City of Petaluma, 522 F.2d 897, 906 (9th Cir. 1975) ("Being neither a super legislature nor a zoning board of appeal, a federal court is without authority to weigh and reappraise the factors considered or ignored by the legislative body in passing the challenged zoning regulation.").

Moreover, O.C.G.A. § 5-4-1 et seq. lays out a specific process for seeking a writ of certiorari in Georgia. First, a petitioner must file a petition with the superior court of the county in which the case was tried. O.C.G.A. § 5-4-3. After obtaining the sanction of a superior court judge, the petition must then be filed with the clerk of the superior court. Id.

Similarly, O.C.G.A. § 5-3-20(c) states that "[t]his Code section shall apply to all appeals *to the superior court*." (emphasis added); see also O.C.G.A. § 5-3-20(a) ("Appeals to the

69

*superior court* shall be filed within 30 days . . . .") (emphasis added). As such, it is unclear whether this Court can even issue such a writ or hear such an appeal. The statute specifically instructs the parties to proceed to the superior courts of Georgia to file the appropriate writ or appeal. Of course, this Court is not a Georgia superior court. In this way, both the writ and appeal appear to be of "a different species than the run-of-the-mill state claims that could normally be heard by this Court" through supplemental jurisdiction. See Cheshire Bridge Holdings, LLC v. City of Atlanta, No. 1:15-CV-3148-TWT, 2018 WL 279288, at *7 n.68 (N.D. Ga. Jan. 3, 2018). The Court declines to conduct an appellate review of a local zoning board decision. See Hale Found., Inc. v. Augusta-Richmond Cnty., No. CV 121-018, 2021 WL 1845982, at *3 (S.D. Ga. Apr. 19, 2021) (declining to exercise supplemental jurisdiction over a section 5-4-1 zoning petition because the "petition is a uniquely state remedy properly resolved in Georgia's courts"). Accordingly, Plaintiff's zoning appeal is **DISMISSED without prejudice.**

### CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss, dkt. no. 48, is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to Plaintiff's Dormant Commerce Clause claim, just compensation claim, procedural due process claim, substantive due process claim, and First Amendment claim. The motion is **DENIED** as

to Plaintiff's vested rights claim and void-for-vagueness claim. Additionally, the state law claims against Defendants in their official capacities are **DISMISSED** due to sovereign immunity. Finally, Plaintiff's rezoning appeal is **DISMISSED without prejudice.**

    **SO ORDERED**, this 2nd day of September, 2021.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

71