IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

BRANTLEY COUNTY DEVELOPMENT   :
PARTNERS, LLC                               :
                                           :
     Plaintiff,                        :
                                           :
vs.                                      :    CASE NO. 5:19-CV-00109
                                         :
BRANTLEY COUNTY, GEORGIA by and  :
through its Chairman and Members of the  :
Brantley County Board of Commissioners;  :
CHRIS "SKIPPER" HARRIS, RANDY    :
DAVIDSON, BRIAN HENDRIX, JESSE   :
MOBLEY AND RAY GRIFFIN, all in their  :
individual and official capacities as     :
Commissioners,                      :
                                         :
     Defendants.                   :

**PLAINTIFF BRANTLEY COUNTY DEVELOPMENT PARTNERS, LLC'S
STATEMENT OF MATERIAL FACTS FOR WHICH THERE EXIST NO GENUINE
ISSUE OF DISPUTE TO BE TRIED AND CONCLUSIONS OF LAW**

      Brantley County Development Partners, LLC ("Plaintiff"), pursuant to Fed. R. Civ. P. 56

and Local Rule 56.1, hereby annexes to its Motion for Summary Judgment this Statement of

Material Facts For Which There Exist No Genuine Issue of Dispute To Be Tried and Conclusions

of Law in support of Plaintiff's Motion For Summary Judgment, filed contemporaneously

herewith.  As grounds therefor, Plaintiff shows this Honorable Court as follows:

**STATEMENT OF MATERIAL FACTS**

1.

      In 2014, Brantley County officials Carl Rowland and Mike Edgy approached and solicited

Plaintiff to develop a 2,389 acre tract of land in unincorporated Brantley County known as the

Magnolia Holdings Business Park into a "Technology Park," which would include a subtitle "D"

1

solid waste disposal facility, a thermal conversion process, and a mixed use light industrial and heavy industrial development (the "Property").  [Dkt. No. 58-3 at 2-3; Dkt. No. 58-2 at 2].

2.

In 2014, the Property had been foreclosed and was bank owned.  [Id.].

3.

On November 21, 2014, before closing on the Property, Plaintiff sought and obtained written verification letters from County Manager Carl Rowland certifying that the proposed solid waste handling facilities on the Property were consistent with Defendants' solid waste management plan and local land use plan.  The letters confirmed that "Brantley County at the present time does not have a zoning ordinance".  [Dkt. No. 58-2 at 2; Dkt. No. 58-3 at 4, Exs."B", "C" and "D" thereto; Dkt. No. 74 at 2, Exs. "A" and "B" thereto].

4.

On December 22, 2014, Plaintiff bought the Property for over $2,632,000.00 to develop it with the solid waste handling facilities.  When Plaintiff purchased the land, **the solid waste handling facilities indisputably were permitted uses as evidenced by County certifications. Brantley County had no zoning restrictions at that time**.  [Dkt. No. 58-2 at 2-3; Dkt. No. 58-3 at 4, Ex. "E"].

5.

Plaintiff purchased the Property to develop it with the solid waste handling facilities. Plaintiff would never have bought it as a speculative investment.  [Id.].

6.

On February 5, 2015, at a regularly scheduled meeting, the Brantley County Board of Commissioners took **<u>official action by vote</u>** to **<u>again</u>** confirm, ratify and approve Plaintiff's

2

proposed solid waste handling facilities as "**consistent with our local land use plan and our**

**Solid Waste Management Plan**" and Defendants authorized their Chairman:

> to execute two letters; the first letter acknowledging that the solid waste handling facilities proposed by [Plaintiff] … is consistent with the approved Solid Waste Management Plan adopted by Brantley County and the cities of Hoboken and Nahunta on June 26, 2006, and our most recent 2011 Five-Year Short Term Work Program 2010-2019; and, the second letter acknowledging that the facilities proposed by [Plaintiff] is consistent with Brantley County's Local Land Use Plan.  [Dkt. No. 58-2 at 3; Dkt. No. 58-3 at 6, Ex. "F"; Dkt. No. 100, Plaintiff's Ex. "5"].

7.

The February 5, 2015 Minutes acknowledge Defendants knew that the February 6,

2015 letters were necessary for Plaintiff to obtain permits from the EPD in order to conduct

solid waste material activities.  [Dkt. No. 58-3, Ex. "F"].

8.

Pursuant to such official action, the Chairman of the Board of Commissioners signed and

re-issued letters dated February 6, 2015 verifying Plaintiff's proposed solid waste handling

facilities on the Property are consistent with Defendants' solid waste handling plan and "consistent

with Brantley County's local land use plan.  **Brantley County at the present does not have a**

**zoning ordinance**".  [Dkt. No. 58-2 at 3; Dkt. No. 58-3 at 6, Ex. "G"; Dkt. No. 100, Plaintiff's

Exs. "6" and "7"].

9.

On February 6, 2015 at 3:55 p.m., Defendants sent an email to Matt Roper attaching the

February 6, 2015 certification letters bearing the signature of Chairman Charlie Summerlin.  [Dkt.

No. 100 at 36, Plaintiff's Ex. "3"].

10.

Defendants' issuance of these certification letters was a required precondition for the Plaintiff to file its permit application with the Georgia EPD for the solid waste handling facilities. [Dkt. No. 58-1 at 3].

11.

On August 19, 2015, Defendants' County Manager Carl Rowland issued an additional letter confirming that Defendants consider Plaintiff's Property situated on the north and south boundaries of State Highway 520 as one and the same tract.  This was done to clarify and confirm that compliance with local land use laws and the solid waste management plan is consistent on both the northern and southern tracts of the Property.  [Dkt. No. 74 at 2, Ex. "C"].

12.

Plaintiff engaged Harbin Engineering, P.C. ("Harbin") to perform and coordinate all of the extensive work and studies required to submit an application to the Georgia EPD for determination of the Property's suitability and issuance of a permit for the solid waste handling facilities.  [Dkt. No. 58-1 at 2].

13.

On behalf of Plaintiff, Harbin completed the necessary work to prepare the application for site suitability and permit for the solid waste handling facilities on the Property and on December 29, 2016, Plaintiff filed with Georgia EPD its permit application for the solid waste handling facilities on the Property ("Application").  [Dkt. No. 58-1 at 4; Dkt. No. 58-3 at 4-7, Ex. "H"; Dkt. No. 58-2 at 3-4].

14.

The Application was complete and was accepted for processing by the Georgia EPD.  [Id.].

15.

Plaintiff complied with all applicable state laws and EPD rules and regulations with respect to submission of its December 29, 2016 Application for site suitability and permit to the Georgia EPD.  [Dkt. No. 58-1 at 4].

16.

The Georgia EPD has confirmed that the 2015 verification letters issued by Defendants to Plaintiff satisfy the preliminary verification required by O.C.G.A. § 12-8-24(g).  [Dkt. No. 64-4; Dkt. No. 88-5 at 120].

17.

With respect to the Application, Plaintiff has provided all information to the Georgia EPD requested or required by that agency.  [Dkt. 88-5 at 49].

18.

On September 8, 2016, Defendants adopted the text of a new zoning ordinance which purports to incorporate by reference maps entitled "Official Land Use Districts Map of Brantley County, Georgia".  [Dkt. No. 1-8 at 17; Dkt. No. 64-3].

19.

The September 8, 2016 Meeting Minutes fail to show the adoption of any zoning map in connection with adopting the text of the September 8, 2016 zoning ordinance.  [Dkt. No. 64-3].

20.

The September 8, 2016 zoning ordinance identifies the lands to which its various zoning classifications apply only by reference to the maps.  [Dkt. 1-8 at 17 "the boundaries of each district are shown on maps"; *see also* Section 4.3 on same page, Interpretation of Land Use Districts].

5

21.

During discovery, Plaintiff specifically asked Defendants to produce a certified copy of any zoning map adopted in connection with the September 8, 2016 zoning ordinance and to produce any minutes, ordinances or resolutions reflecting the adoption of any such zoning map. [Dkt. No. 86-1].

22.

In response, Defendants said they would produce all documents responsive to these requests, but Defendants failed to produce any minutes, ordinances or resolutions showing the adoption of any zoning map for the September 8, 2016 zoning ordinance.  [Dkt. No. 86-2].

23.

Defendants only produced multiple pages of a quadrant map which was never adopted. [Dkt. No. 86-3].

24.

No zoning map was adopted in connection with the September 8, 2016 zoning ordinance. [Dkt. No. 74 at 3-4].

25.

Instead of adopting a finalized zoning map designating land in Brantley County to various zoning districts at the time the text of the September 8, 2016 zoning ordinance was adopted, Defendants worked off quadrant maps and employed a process where landowners had a period of time to request that the County zone land parcels to certain districts.  [Dkt. No. 89 at 69; Dkt. No. 88-1 at 163-165; Dkt. No. 90 at 71-74; Dkt. No. 91 at 25-26].

26.

On June 15, 2017, Defendants took further regulatory action to adopt a County-wide zoning ordinance, to downzone Plaintiff's Property, and to amend the solid waste management plan. [Dkt. 58-2 at 5-6; Dkt. No. 58-4; Dkt. No. 86-4].

27.

On June 19, 2019, Plaintiff demanded that Defendants certify in writing, as needed to complete processing and approval of Plaintiff's EPD Application, that Plaintiff's solid waste handling facilities are neither subject to zoning ordinance nor the June 15, 2017 solid waste management plan and that Plaintiff has a vested right to develop the Property with the solid waste handling facilities sought with its Application. Defendants failed and refused to provide the requested certification letters. [Dkt. No. 58-2 at 6; Dkt. No. 58-3 at 7, Ex. "I"].

28.

On May 28, 2020, after years of study and analysis, the Georgia EPD issued a Site Suitability Notice for Plaintiff's solid waste handling facilities on the Property. Therein, the Georgia EPD stated that no permit will be issued for Plaintiff's proposed solid waste disposal site unless: "**a reaffirmation of zoning consistency must be submitted to EPD prior to a final decision regarding the issuance of a permit for the proposed solid waste disposal facility**." This is the same reaffirmation demanded by Plaintiff on June 19, 2019, which Defendants still fail and refuse to provide. [Dkt. No. 58-2 at 6-7, Ex. "2"; Dkt. No. 58-3 at 7, Ex. "J"; Dkt. No. 58-1 at 5, Ex. "2"].

29.

Issuance of the Site Suitability Notice means Georgia EPD has determined that applicable siting regulatory standards for the solid waste handling facilities can be met.  As required to receive a permit, Plaintiff will perform and meet the site limitations provided with Georgia EPD's May 28, 2020 Site Suitability Notice.   [Dkt. No. 58-1 at 5].

30.

Upon issuing the May 28, 2020 Site Suitability Notice, the Georgia EPD publicly determined that Plaintiff's solid waste handling facilities on the Property can safely meet applicable state laws and EPD rules and regulations, including but not limited to, the required regulatory siting criteria for airport safety, floodplains, wetlands, fault areas, seismic impact zones, groundwater recharge areas, unstable areas, and hydrogeological assessment.  [Dkt. No. 58-1 at 5].

31.

Defendants continue to refuse to provide the necessary reaffirmation of zoning consistency requested by Plaintiff on June 19, 2019 and Defendants remain unwilling to provide reaffirmation of zoning consistency without the Court ordering them to do so.  [Dkt. No. 66 at 59-60].

32.

On July 9, 2020, Defendants adopted a Resolution which purports to withdraw the certification letters issued by County Manager Rowland in 2014 and by Defendants' Chairman in 2015.  [Dkt. No. 58-2 at 7, Ex. "4"].

33.

In the July 9, 2020 Resolution, Defendants acknowledge that the consistency letters they have purported to withdraw are required in order for Plaintiff to obtain a permit from the Georgia EPD for a solid waste handling facility.  [Id.].

34.

On August 6, 2020, Defendants adopted an amended Solid Waste Management Plan.  [Dkt. No. 64-6 at 4].

35.

The solid waste handling facilities sought by Plaintiff with the Application will receive, handle and dispose of solid waste generated from outside both Brantley County and the State of Georgia and will compete in the interstate market for the transfer, transportation, handling and disposal of solid waste. Plaintiff's solid waste handling facilities on the Property will not accept hazardous waste.  [Dkt. No. 58-2 at 7-8; Dkt. No. 58-3 at 7-8].

36.

Plaintiff has the financial capability to construct and complete the solid waste handling facilities sought with the Application.  [Dkt. No. 58-2 at 9; Dkt. No. 58-3 at 9].

37.

Plaintiff has marketed to, and received interest and inquiry from, out-of-state market participants for the handling and disposal of solid waste generated from outside the State of Georgia at the proposed solid waste handling facilities on the Property sought with the Application. However, given Defendants' actions, Plaintiff cannot enter into final non-contingent contracts with these or any other market participant because, due to Defendants' actions, Plaintiff cannot give

assurances to prospective customers that Plaintiff will actually be able to construct and operate the facilities on the Property. [Dkt. No. 58-2 at 8-9, Ex. "5"; Dkt. No. 58-3 at 8-9].

38.

Plaintiff is precluded from entering into any final non-contingent contracts with market participants, including out-of-state customers, unless and until Plaintiff is able to receive a permit from Georgia EDP authorizing construction and operation of the solid waste handling facilities sought with the Application. [Dkt. No. 58-2 at 9; Dkt. No. 58-3 at 9].

39.

Operation of the subtitle "D" solid waste disposal facility on the Property as sought with the Application will generate approximately 100 good paying jobs for local residents. Additional phases and other planned facilities on the Property will create many more good paying jobs in Brantley County. [Dkt. No. 58-3 at 9].

40.

Operation of the solid waste handling facilities on the Property will generate significant revenue for Brantley County, as the host local government, in the form of "tipping fees" which are authorized by the Georgia Code, Section 12-8-39. [Dkt. No. 58-3 at 9-10].

41.

In addition to the Property purchase price of over 2.6 million dollars, Plaintiff has spent $1,109,436.15 on engineers, geologists, hydrogeologists, other professionals, and carrying costs, pursuing development of the solid waste handling facilities on the Property as sought with the Application and in reliance on Defendants' verbal and written assurances that the project was authorized and that Defendants wanted the solid waste handling facilities sited on the Property. This figure does not include BCDP's legal fees. [Dkt. No. 58-2 at 9].

10

42.

Following issuance of the May 28, 2020 Site Suitability Notice from Georgia EPD, on August 14, 2020, Plaintiff received and approved a scope of work and cost estimate from Harbin for preparation of Design and Operation plans, and other required submittals, to complete the processing of Plaintiff's Application with the Georgia EPD.  [Dkt. No. 58-1 at 6, Ex. "3"; Dkt. No. 58-3 at 9].

43.

On May 14, 2021, this Court entered an Order granting Plaintiff's Motion for Preliminary Injunction which, among other things, ordered Defendants to "issue the reaffirmation of zoning consistency required by Ga. Comp. R. & Regs. 391-3-4-.05(1)(a)".  [Dkt. 114 at 52].

44.

On May 20, 2021, Plaintiff directed written correspondence via overnight delivery to the Defendants demanding that Defendants comply with this Court's May 14, 2021 Order by issuing the required reaffirmation of zoning consistency.   On May 21, 2021, Defendants received Plaintiff's May 20, 2021 correspondence.  [Dkt. 129 at 2; 13-20].

45.

Defendants failed and refused to respond to Plaintiff's May 20, 2021 correspondence and have refused to obey this Court's May 14, 2021 Order.  [Dkt. 129 at 2].

46.

On August 26, 2021, Plaintiff timely submitted the Design and Operation plans to the Georgia EPD.  [Dkt. No. 136].

47.

The parties do not dispute Plaintiff acquired vested rights in December of 2016 by submission of the Application to the Georgia EPD.  [Dkt. No. 66 at 79-80; Dkt. No. 85 at 5].

48.

The text of the September 8, 2016 Zoning Ordinance imposes criminal penalties if land is used in violation of its terms:  "the offender shall, upon conviction in Magistrate Court, be fined no more than five-hundred ($500) dollars or imprisoned for not more than sixty (60) days, or both, for each offense.  Each day of continued violation shall be considered a separate offense."  [Dkt. 1-8 at 46].

## CONCLUSIONS OF LAW

1. **Plaintiff acquired vested rights to develop the Property with the solid waste handling facilities by virtue of submitting its December 29, 2016 Application to the Georgia EPD.** [1]

A vested property right constitutes an enforceable entitlement which cannot be divested by subsequent government action.  Whether a landowner has obtained vested property rights is a question of state law.  Crown Media, LLC v. Gwinnett County, 380 F.3d 1317, 1325 (11th Cir. 2004).  The Georgia Constitution forbids a legislative exercise of the police power that results in the passage of retrospective laws which injuriously affect the vested rights of citizens. This prohibition against retroactive impairment of vested rights extends to the enactment of zoning regulations.  Southern States-Bartow County, Inc. v. Riverwood Farm Homeowners Assoc., 300

---

[1] Unless otherwise noted, capitalized terms used herein shall have the same meaning as capitalized terms used by the Court in the Orders granting Plaintiff's Motion for Preliminary Injunctive Relief and granting in part and denying in part Defendants' Renewed Motion to Dismiss.  [Dkt. Nos. 114 and 135].

12

Ga. 609 (2017); *see also* Art. I, Sec. I, Para. X, Georgia Const. of 1983.  To be vested, in its accurate legal sense, a right must be complete and consummated, and one of which the person to whom it belongs cannot be divested without his consent.  <u>Gold Rush II v. City of Marietta</u>, 267 Ga. 683(7) (1997); <u>Merchants Bank v. Garrard,</u> 158 Ga. 867, 871 (1924).

Submission of an application for permit gives the applicant a vested right to consideration of the application under the law in existence at the time the application is filed.  <u>Fulton Cnty.  v. Action Outdoor Advertising</u>, 289 Ga. 347, 349 (2011); <u>Recycle & Recover v. Georgia Bd. of Natural Resources</u>, 266 Ga. 253, 255 (1996) (property owner seeking to alter use of land has vested right to consideration of application under law then in existence); <u>Banks County v. Chambers of Georgia, Inc</u>., 264 Ga. 421 (1994); <u>WMM Properties v. Cobb County</u>, 255 Ga. 436 (1986) (landowner has vested right to use property in accordance with zoning regulations in force when he applied for permit).

In the context of a landfill, Georgia Courts have specifically held that the filing of a permit application for the landfill with the Georgia EPD vests the landowner's rights.  <u>Southern States-Bartow Co., Inc. v. Riverwood Farm Prop. Owners Ass'n, Inc.</u>, 331 Ga. App. 878, 883 (2015) ("the vested right was acquired in 1989 when Southern States submitted its application for a landfill permit to the Georgia EPD") (citing <u>Fulton County v. Action Outdoor Advertising, JV, LLC</u>, 289 Ga. 347, 350 (2011)); Accord, <u>S. States-Bartow Co., Inc. v. Riverwood Farm Homeowners Assoc.</u>, 300 Ga. 609, 610-611 (2017) ("the Court of Appeals concluded, inter alia, that Southern States' vested right – which was recognized by the Bartow County Superior Court in September 1994, was *acquired* as of the date of its May 1989 application to the EPD") (emphasis in opinion).

Here, the parties do not dispute that Plaintiff acquired vested rights in December of 2016 when Plaintiff submitted its Application to the Georgia EPD.  Accordingly, Plaintiff has a vested right to develop the Property with the solid waste handling facilities as sought with the Application under the valid law in force as of December, 2016.

2. **The Defendants' 2016 Zoning Ordinance is void for vagueness and therefore no valid zoning regulations existed as of December, 2016 when Plaintiff acquired vested rights.**

On September 8, 2016, Defendants adopted the text of a zoning ordinance which purports to incorporate by reference maps entitled "Official Land Use Districts Map of Brantley County, Georgia".  These maps are an integral part of the 2016 zoning ordinance because the ordinance identifies the lands to which its various zoning classifications apply only by reference to the maps. [*See* Section 4.2, Dkt. 1-8 at 17 "the boundaries of each district are shown on maps"; *see also* Section 4.3 on same page, Interpretation of Land Use Districts].  But, **the evidence establishes that Defendants failed to adopt any zoning map for the September 8, 2016 zoning ordinance**.

Under both the United States and Georgia Constitutions, Defendants' 2016 Zoning Ordinance is void for vagueness and invalid from its inception because it was not adopted with any zoning map to show the lands to which is various zoning districts apply.  See Wollschlaeger v. Governor, 848 F.3d 1293, 1319 (11th Cir. 2017); Newton Cnty. v. E. Ga. Land & Dev. Co., LLC, 764 S.E.2d 830, 832 (Ga. 2014).  Because Defendants had no valid zoning regulations when Plaintiff submitted its December 29, 2016 Application to the Georgia EPD, Plaintiff's EPD Application is not subject to zoning regulations and Defendants are required to issue the reaffirmation of zoning consistency required by Ga. Comp. R. & Regs. 391-3-4-.05(1)(a).

14

**3.    Plaintiff is entitled to permanent injunctive relief**.

This Court has already granted preliminary injunctive relief enjoining Defendants from applying the July 9, 2020 Resolution, the 2016 Zoning Ordinance, the 2017 SWMP and the 2020 SWMP to Plaintiff's Property and its EPD permit Application and ordering Defendants to issue the reaffirmation of zoning consistency required by Ga. Comp. R. & Regs. 391-3-4-.05(1)(a). [Dkt. 114 at 52].

The standard for permanent injunctive relief is essentially the same as for a preliminary injunction, except that to obtain permanent injunctive relief, a plaintiff must show actual success on the merits instead of a likelihood of success.  Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004).  Here, Plaintiff has demonstrated actual success on the merits with respect to its vested rights claim and its void for vagueness claims under both the United States and Georgia Constitutions.  The Court has already concluded that all other requirements for injunctive relief have been met.  Accordingly, Plaintiff is entitled to permanent injunctive relief enjoining Defendants from applying the July 9, 2020 Resolution, the 2016 Zoning Ordinance, the 2017 Zoning Ordinance, the 2017 SWMP and the 2020 SWMP to Plaintiff's Property and its EPD permit Application and ordering Defendants to issue the reaffirmation of zoning consistency required by Ga. Comp. R. & Regs. 391-3-4-.05(1)(a). [2]

Respectfully Submitted, this 8th day of October, 2021.

---

[2] Once an order of permanent injunction is entered, any preliminary injunction merges with it, and appeal may be had only from the order of permanent injunction.  Associated Builders v. Miami-Dade County, Fl., 594 F.3d 1321, 1323-24 (11th Cir. 2010) (appeal from preliminary injunction rendered moot when district court subsequently granted summary judgment and entered permanent injunctive relief).

LOVETT LAW GROUP, LLC

By:\_\_\_\_/s/ L. Robert Lovett_____
       L. Robert Lovett
       Georgia Bar No. 459566
       5400 Riverside Drive
       Suite 203
       Macon, Georgia 31210


GILBERT, HARRELL, SUMERFORD &
MARTIN, P.C.


By: \_\_\_\_/s/ Mark D. Johnson_____
       Mark D. Johnson
       Georgia Bar No. 395041
       Post Office Box 190
       Brunswick, Georgia 31521-0190
       (912) 265-6700

BROWN ROUNTREE PC


By:\_\_\_\_/s/ George Rountree_____
       George Rountree
       Georgia Bar No. 616205
       26 North Main St
       Statesboro, Georgia 30458
       (912) 489-6900
       georgia@br-firm.com


WILSON BROCK & IRBY, L.L.C.


By:\_\_\_\_/s/ Kyler L. Wise_____
       Kyler L. Wise
       Georgia Bar No. 77128
       2849 Paces Ferry Road SE
       Suite 700
       Atlanta, Georgia 30339
       (404) 853-5050
       kwise@wbilegal.com

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing pleading via electronic service through the e-filing system and by placing a copy of same in the United States Mail, properly addressed with adequate postage thereon upon:

Dana K. Maine
Rachael Slimmon
Freeman Mathis & Gary, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339

This 8th day of October, 2021.

/s/ Kyler L. Wise
Kyler L. Wise