IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| BRANTLEY COUNTY DEVELOPMENT PARTNERS, LLC,<br><br>    Plaintiff,<br><br>V.<br><br>BRANTLEY COUNTY, GEORGIA by and through its CHAIRMAN and MEMBERS OF THE BRANTLEY COUNTY BOARD OF COMMISSIONERS; CHRIS "SKIPPER" HARRIS; RANDY DAVIDSON; BRIAN HENDRIX; JESSE MOBLEY and RAY GRIFFIN, all in their official capacities as commissioners; and JESSE MOBLEY, individually,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 5:19-CV-00109-LGW-BWC |

**DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION REGARDING
MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

COME NOW Defendants and hereby respectfully objects to the Magistrate Judge's report and recommendation regarding Defendant's motion to stay preliminary injunction pending appeal.

**A.    Defendants' Objection to the Report and Recommendation's Standing Analysis**

The Magistrate Judge erred in concluding Defendants were not likely to prevail on the merits of their argument that Plaintiff did not have standing to assert the claims in the complaint. In its order on Defendants' motion to dismiss, the District Court found that two injuries satisfy the injury-in-fact requirement for standing: the 2017 zoning change decision and Development Partners' expenditure of money. (Doc. 135, pp.13-15). These actions do not support a finding that Development Partners has standing due to the lack of injury, redressability, and ripeness.

First, the District Court found that the zoning change decision in June 2017 was an injury. In explaining why the 2017 zoning change is an injury-in-fact, the order states: "The 2017 rezoning decision forbids Plaintiff from using its Property in a particular manner—namely, as a solid waste handling facility." (Doc. 135, p.13). But, the County has never applied the 2017 Zoning Ordinance to Development Partners' proposed landfill. Further, the EPD has not requested a reaffirmation letter and will not request or require any reaffirmation letter unless the D&O plan is approved. (Doc. 84, pp.11-12, EPD dep., pp. 20:24-21:17).[1] Unless and until EPD approved Development Partners' D&O plans, zoning change cannot injure Development Partners, because it is forbidden by state law from using its property as a solid waste handling facility without EPD approval. O.C.G.A. § 12-8-24. (Exhibit B - EPD dep., pp. 20:24-21:17, 37:6-39:2, 39:12-24, 49:17-24.)

Additionally, any allegation in the Amended Complaint that Development Partners' has been injured because the County's action has delayed the processing of the permit is unequivocally belied by the testimony of the EPD. Charles Mueller, on behalf of the EPD, testified that there was nothing the County did that delayed EPD's processing of Plaintiff's permit application, nor was there anything EPD was going to do with reference to its review of Plaintiff's Design and Operation ("D&O") any differently because of the County's opposition to the landfill application.

Second, the District Court's Order found that Development Partners suffered an injury because it spent money on plans and site studies for the Proposed Facility and that "business

---

[1] Defendants asserted a factual challenge to subject matter jurisdiction, so "the district court may consider extrinsic evidence." *Carmichael v. Kellogg, Brown & Root Servs.*, 572 F.3d 1271, 1279 (11th Cir. 2009). Further, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 412-413 (5th Cir. 1981), *cert. denied*, 454 U.S. 897, 102 S. Ct. 396 (1981)).

commitment opportunities have been lost" due to Defendants' actions. (Doc. 135, p.14) (citing Doc. 1, ¶ 124). To start, Development Partners does not allege it has lost business opportunities in the cited paragraph or anywhere else in the Amended Complaint[2], so this is a factual error in the Order. (Doc. 1; Doc. 45). The Magistrate Judge's report and recommendation overlooks the fact that the allegation relied upon by the District Court for standing in this regard are not contained in the amended complaint.

This situation is distinguishable from the case cited by the District Court to support standing, *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). The Supreme Court in *Arlington Heights* states: "When a project is as detailed and specific as [that development], a court is not required to engage in undue speculations as a predicate for find that the plaintiff has the requisite personal stake in the controversy." *Id*. at 261. The "detail" and "specificity" are predicates to the court's finding of a "personal stake" in the controversy. The developers in *Arlington Heights* provided the local government specific plans for building height, number of units and number of bedrooms, exterior doors in all units, plans for trees, studies regarding the need for and impact of the development, and they met with local officials to ensure compliance with building code and fire regulations. *Id*. at 257. Here, Development Partners' EPD application does not even identify the type of landfill for which it wants a permit and states only that the proposed landfill of an unknown size and type will sit somewhere on the southern tract of its property. (Doc. 1-11, pp.3,12). Plaintiff's EPD application does not have the requisite specificity and detail which permitted a finding of standing in *Arlington Heights*. All developers expend

---

[2] Development Partners made this argument in its Motion for Preliminary Injunction, not in the Amended Complaint. (*See* Doc. 58). Development Partners' only allegation in the Amended Complaint which relates to interference with business is the allegation that the 2017 SWMP provisions concerning the interstate flow of waste will impair Development Partners' business and ability to contract with market participants located outside the County. (Doc. 45, ¶ 164). The Court has previously found that Plaintiff "cannot suffer any actual or threatened injury" from the 2017 or 2020 SWMP because neither is being enforced against Plaintiff's property. (Doc. 114, p.45).

money before developing their property, but not all developers suffer a cognizable injury from zoning laws, especially when those zoning laws have never been applied to the developer.

Furthermore, it is undisputed that EPD has not evaluated Development Partners' D&O plans, has not approved the D&O plans, might never approve the D&O plans, has not asked the County for any reauthorization letters, and might never ask the County for the letters. (Doc. 84, pp.11-12, EPD dep., pp. 20:24-21:17). These facts are starkly different from the facts in *Arlington Heights*.

In addition, both alleged injuries of the zoning change and money spent raise problems with ripeness and redressability. Development Partners alleges that Defendants' failure to provide letters reaffirming consistency with the County's zoning ordinance and solid waste management plan has interfered with its vested right to develop a solid waste handling facility. (Doc.1, ¶ 59). The District Court found that Development Partners has standing because the '2017 rezoning decision forbids Plaintiff from using its Property in a particular manner – namely, as a solid waste handling facility" (Doc. 135, p.13) and the vested rights claim is ripe because Defendants have not issued the reaffirmation letters. (Doc. 135, p.18). Yet, the rezoning has not been applied to the property to prevent Development Partners from building a solid waste handling facility, because Development Partners cannot build a landfill without the EPD approving its D&O plan.

The instant lawsuit involves requirements over which Defendants have no control, which Development Partners must meet *before* the EPD will ever ask for reaffirmation letters and *before* Development Partners could ever use its property as a solid waste handling facility. Because of the extra steps implicating ripeness and redressability, this case is not governed by the ruling in *Arlington Heights*. In *Arlington Heights*, the court found standing for a developer whose only obstacle was the local government's zoning decision. *Arlington Heights*, 429 U.S. at 257, 261. Here, though, Development Partners is required to go through additional steps and get

additional approvals from the EPD after it submits its permit application and before the EPD will ever ask for or require a reaffirmation letter.

After submitting its application, the EPD was required to make a determination of site suitability (which occurred 3.5 years after Plaintiff submitted the application), and Development Partners was required to submit a design and operations (D&O) plan for the EPD's approval. (Doc. 48-2, p.2); (Doc. 52, p.7, citing to Doc. 48-2). Development Partners has not alleged that the EPD has approved a D&O Plan. The EPD has also not guaranteed, nor has Plaintiff so alleged, that the EPD will approve Plaintiff's D&O plan or that a permit will issue. (Doc. 84, p.18, EPD dep., p.49:17-24). The EPD has not requested additional consistency letters and will not request or require additional consistency letters *unless and until* after the D&O plan is approved. (Doc. 84, pp.11-12, EPD dep., pp. 20:24-21:17).

Development Partners' claims are not ripe because Plaintiff has not reached the point, and may never reach the point, when Defendants could interfere with its claimed right to build a landfill. At this point, the EPD is the only entity preventing Plaintiff from building a landfill because it has not approved its D&O plan or decided to issue Plaintiff a permit. In the same vein, Defendants' issuance of reaffirmation letters cannot redress Development Partners' grievance of not being able to build a solid waste handling facility on the Property. (*See* Doc. 135, p.13). Development Partners makes no allegation that receipt of such letters will influence the EPD's decision on the as-yet unapproved D&O plan, the approval of which is a prerequisite for the permit. Simply put, the reaffirmation letter will *not* get Development Partners any closer to being able to build a solid waste handling facility.

B. **Defendants' Objection to the Report and Recommendation's Official Immunity Analysis**

The Magistrate Judge's report and recommendation references the District Court's finding that Defendants are only entitled to sovereign immunity for official capacity claims and official

immunity for individual capacity claims for retrospective relief. (Doc. 135, pp.34,37). The District Court declined to apply official immunity to prospective claims against Defendants in their individual capacity because it found that the real party in interest limitation did not apply. (Doc. 135, p.37).

It is true that the Georgia Supreme Court applied a narrower version of the "real party in interest rule" in *Board of Commissioners of Lowndes County v. Mayor & Council of Valdosta*, 309 Ga. 899, 848 S.E.2d 857, 861-862 (2020). The court stated that it has applied this rule "primarily" with respect to State real property rights and contractual obligations. *Lowndes County,* 848 S. E.2d at 861. An application of the *Lowndes County* holding in the instant case presents two related problems: the basis for permitting certain individual capacity claims described in the opinion does not apply here and the relief requested here is only to direct the actions of the County's governing body. The officials in *Lowndes County* were also not entitled to official immunity as the individual Defendants are here. *See Lowndes Cnty.*, *supra*.

The Georgia Supreme Court's acknowledgement that sovereign immunity does not bar individual capacity suits for declaratory and injunctive relief is also based on a premise which does not apply here:

> As Presiding Justice Benham explained in his partial dissent from our opinion in *IBM*, '[i]t is a long-standing principle of Georgia law that sovereign immunity is not applicable where an injunction is sought to prevent the commission of an alleged wrongful act by an officer of the state acting under color of office but without lawful authority and beyond the scope of official power because such a suit is not against the state, but against an individual stripped of his official character.'

*Id*. at 860 (*quoting IBM v. Ga. Dep't of Admin. Servs.*, 453 S.E.2d 706, 711 (Ga. 1995) ((Benham, P. J., concurring in part and dissenting in part) (emphasis omitted)). The Georgia Supreme Court emphasized that Presiding Justice Benham was right; that principle is longstanding in our law and is a part of the sovereign immunity that the Georgia Constitution now preserves." *Id*.

The reasoning for the individual capacity official immunity rule does not apply here. Contrary to the reasoning in *Lowndes County*, this is not a suit "against an individual stripped of his official character." Here, the injunction can only be entered because of and enforced against County Commissioners' official actions in governing the County.

It is illogical for the real party in interest rule to not apply here. Development Partners does not seek to direct the actions of any specific County Commissioner; it seeks action by the Board of Commissioners *as the County's governing body*. The District Court determined that sovereign immunity applies to protect the County from suit. Any relief in this case must be limited to Defendants' legislative and executive actions as the County's governing body because Development Partners' demands only affect the actions of the County as governed by its Board of Commissioners.

C. **Defendants Demonstrated Irreparable Harm**

Defendants' explanation of the harm that would befall the County from enforcement of the stay should not have been characterized as "cursory." Requiring the County to assist in facilitating the development of a landfill whose owners were permitted to completely side-step any county-level approval process, and saddle the County with the expense of road maintenance and policing related to the development will have a definite and distinct harm on the County and its taxpayers.

Development Partners takes the position that it is permitted to utilize its property however it choses, irrespective of even the representation that what it was seeking was utilization of the "Magnolia Holdings" plan, subjects the County to untold expenses and liability. *See* [Doc. 88-2], Edgy dep., pp. 104:25-105:4, 108:15-190:7. The Magnolia Holdings property is a 89.65-acre project site located north of Highway 82. *See* Department of The Army Permit documents provided by Plaintiff to the County [Docs. 87-8]. The area planned for Magnolia Holdings is not

the property covered by Development Partners' application to the EPD. (*See* Site Assessment Report Figure 4-01 [Doc. 87-9].)

It is accurate that Defendants cannot quantify the harm at this point, but that is because Development Partners is not agreeing to be bound by any rules other than those the State of Georgia imposes upon it. The County had no ability to weigh in on Development Partners' plans because the plans were never presented to the County prior to submittal to the EPD.[3] The most Development Partners can say is the County knew there was the potential Development Partners would locate the development that Magnolia Holdings had proposed but abandoned.[4]

The County's then-manager, Carl Rowland, acknowledged in deposition the harm that the switch in location would bring to the county. When the county manager learned of the switch in location of the planned development, he warned Development Partners that it was not the same thing:

> I texted one of them and I told him, I said if you insist on the south side you're gonna run into political opposition, I know that ….because – well, because you had subdivisions that were right to the east of that property that had been platted and developed. I mean, it don't take a rocket scientist. I've been in this business long enough to say you're gonna have some problems and, by damn it, they did have problems on that one.…But, I did point out that'll be a hotly discussed issue and it turned out it was.

---

[3] Unfortunately, the opinion of the former county manager, Carl Rowland, who testified: "**Please understand this, saying that there could be a landfill and saying that we're approving a landfill is two different things.** The public hearings and all that take place after you've made application with EPD" (Rowland dep., p. 70:12-16 [emphasis added]) is not accurate. His belief that the BOC letters, the signing of which he facilitated, were not approvals, and that Development Partners would be required to come back to the County with an actual plan (Rowland dep., p. 73:12-25-74:1-7 [emphasis added]), was not accurate either.

[4] Even Development Partners had to admit it had no definite plans for the property in February 2015 when the alleged approval letters were written. (Plaintiff 30(b)(6) dep., pp. 114:15-115:5, 131:21-132:2.)

(Rowland dep. p. 154:7-24.) There is irreparable harm to require the County to shoulder the burden of something that is decidedly different than Magnolia Holdings.[5]

## CONCLUSION

Then report and recommendation erred in reaching its conclusion that Defendants were not likely to prevail on their appeal.  Since the filing of the motion to stay, the District Court has ruled on the jurisdictional issues Defendants raised, but Defendants' arguments remain viable about the lack of standing and the applicability of immunity.  There can be no doubt that forcing the County to accept a development for which it had absolutely no input or agreement to is an irreparable harm.  Therefore, Defendants respectfully object to the Magistrate Judge's report and recommendation.

Respectfully submitted this 8th day of October, 2021.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Dana K. Maine*
Dana K. Maine
Georgia Bar No. 466580
dmaine@fmglaw.com
Rachael Slimmon
Georgia Bar No. 831661
rslimmon@fmlgaw.com

*Attorneys for Defendants*

100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

---

[5] In fact, in October 2016, one of the investors in Development Partners openly discussed this bait and switch concept with the investor group dond being concerned about the public backlash when the "switch" part of the plan was exposed to the public.  (*See* [Doc. 88-1], Rowland dep. pp. 87-89.)

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing *DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL* to the Clerk of Court using the CM/ECF *e-filing* system which will automatically send electronic mail notification of such filing to the following counsel of record:

| | |
|---|---|
| L. Robert Lovett<br>Lovett Law Group<br>5400 Riverside Drive, Suite 203<br>Macon, GA 31210<br>Bob@LovettLawGroup.com | George Rountree<br>Brown Rountree, P.C.<br>26 North Main Street<br>Statesboro, GA 30458<br>george@br-firm.com |
| Kyler L. Wise<br>Wilson Brock & Irby, LLC<br>2849 Paces Ferry Road, Suite 700<br>Atlanta, GA 30339<br>kwise@wbilegal.com | Mark D. Johnson<br>Gilbert, Harrell, Sumerford & Martin, PC<br>PO Box 190<br>Brunswick, GA 31521-0190<br>mjohnson@gilbertharrelllaw.com |

This 8th day of October, 2021.

>   */s/ Dana K. Maine*
>   Dana K. Maine
>   Georgia Bar No. 466580
>   dmaine@fmglaw.com
>
>   *Counsel for Defendants*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)
18807414