IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

BRANTLEY COUNTY DEVELOPMENT
PARTNERS, LLC,

               Plaintiff,

V.

CHRIS "SKIPPER" HARRIS; et al.,

               Defendants.

CIVIL ACTION FILE
NO. 5:19-CV-00109-LGW-BWC

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I.      INTRODUCTION

Plaintiff's Motion for Summary Judgment should be denied for a number of reasons: (1) Plaintiff lacks standing to bring its claims; (2) Plaintiff does not have a valid vested rights claim; (3) Plaintiff does not have a valid void for vagueness claim; (4) Plaintiff is not entitled to a permanent injunction; and (5) Defendants are entitled to legislative and official immunity as to all claims.

### II.      STATEMENT OF FACTS AND PROCEDURE

The claims which remain after the Court's ruling on Defendants' motion to dismiss (Doc. 135) are the state law vested rights claim and void for vagueness due process claim against Defendants in their individual capacities, for prospective injunctive and declaratory relief. (Doc. 135, pp. 34, 37, 58, 68.)  Defendants rely on their Response to Plaintiff's Statement of Material Facts submitted concurrently with this brief to demonstrate their disagreement with Plaintiff's alleged facts.

### III.   <u>STANDARD OF REVIEW</u>

Summary judgment may only be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law" and a dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Brazell Holdings, LLC v. USI Ins. Servs. Nat'l, Inc.*, 378 F. Supp. 3d 1253, 1259 (S.D. Ga. 2019) (quoting *FindWhat Invir Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011)).  "When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Adams v. BSI Mgmt. Sys. Am.*, 523 Fed. Appx. 658, 659-660 (11th Cir. 2013) (emphasis in original) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)).

If the moving party discharges its burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. *Brazell Holdings, LLC*, 378 F. Supp. 3d at 1259 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).  The nonmovant may satisfy this burden in two ways: (1) the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was overlooked or ignored by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence," and (2) the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id*. (quoting *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116-1117 (11th Cir. 1993)).

Plaintiff stated an incorrect burden in its Memorandum of Law. (Doc. 141-2, pp.16-19). Plaintiff is not entitled to summary judgment just because it alleges a prima facie claim and

Defendants do not need to assert any "defense" to defeat summary judgment. Plaintiff must instead support every element of its claims with evidence outside the pleadings which would be admissible at trial, and Defendants need only point to a dispute of material fact or absence of an element of a claim to defeat summary judgment. *See Adams*, 523 Fed. Appx. at 659-660; *Brazell Holdings, LLC*, 378 F. Supp. 3d at 1259. The court must view the evidence in the light most favorable to the nonmoving party – Defendants – and draw all reasonable inferences in Defendants' favor. *See Brazell Holdings, LLC*, 378 F. Supp. 3d at 1259 (citing *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000)).

In deciding whether to grant summary judgment, a district court 'may not weigh conflicting evidence or make credibility determinations. If the record presents disputed issues of fact, the court may not decide them; rather, [the court] must deny the motion and proceed to trial.'" *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quoting *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011)).

## IV.   ARGUMENT AND CITATION TO AUTHORITY

### A.   <u>Plaintiff Lacks Standing</u>[1]

Plaintiff has the burden of establishing all elements of standing in accordance with its evidentiary burden at the stage of the proceeding in which standing is being challenged. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) Therefore, for example, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," whereas "[i]n response to a summary judgment motion, … the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts, Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true." *Id*. Plaintiff

---

[1] The Court previously made a ruling on standing and other issues in its orders on the motion to dismiss and preliminary injunction. Defendants raise these arguments herein because a different evidentiary standard applies and to preserve the arguments.

can no longer simply allege that Defendants have applied certain regulations or state that Defendants have not shown that they have not applied the regulations.  Rather, Plaintiff must affirmatively show through evidence that it has standing.

In order to establish standing, Plaintiff must make a showing (through evidence, not allegations, at this stage) of three elements: (1) that it "suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[;]" (2) that there exists "a causal connection between the injury and the conduct complained of[;]" and (3) that the subject injury is "likely, as opposed to merely speculative, [and] that the injury will be redressed by a favorable decision."  *Id.* (internal quotation marks omitted).  "To establish an injury in fact, the plaintiff must demonstrate that he suffered an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1112–13 (11th Cir. 2021) (citation and internal quotation marks omitted).

Furthermore, as to the injury in fact requirement in the context where a plaintiff seeks injunctive relief, the plaintiff must show a real and immediate – and not a conjectural or hypothetical – threat of *future injury*.  *Kennedy v. Floridian Hotel, Inc*., 998 F.3d 1221, 1229–30 (11th Cir. 2021).  Elaborating on the imminent nature of this risk of future harm, the Eleventh Circuit court has stated that the plaintiff must show that there is a "substantial risk" that the posited harm will eventuate.  *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1338-9 (11th Cir. 2021).

Plaintiff alleges that three injuries satisfy the injury-in-fact requirement for standing: the 2017 zoning change decision, Development Partners' expenditure of money, and the alleged delay of EPD's consideration of Plaintiff's EPD Permit Application. (Doc. 135, pp.13-15; Doc. 114 at p.13.)  These actions do not support a finding that Development Partners has standing.

Regarding ripeness and redressability for all alleged injuries, Plaintiff faces no imminent threat of any zoning decision being applied to its property because it's design and operations (D&O) plan has not been approved.  After Plaintiff submitted its application, the EPD was required to make a determination of site suitability (which occurred 3.5 years after the application was submitted), and Development Partners was required to submit a (D&O) plan for the EPD's approval. Development Partners has not alleged that the EPD has approved a D&O plan.  The EPD has also not guaranteed, nor has Plaintiff so alleged, that the EPD will approve Plaintiff's D&O plan or that a permit will issue. (EPD dep., Doc. 88-5, p.49:17-24, excerpts of which are attached hereto as Exhibit A.)  Unless and until such approval occurs, the zoning change cannot injure Development Partners, because it is forbidden by state law from using its property as a solid waste handling facility without an EPD permit.  *See* O.C.G.A. § 12-8-24.

Second, it is an undisputed fact that the EPD has yet to actually request the zoning consistency reaffirmation letter, and will not request or require such letter *unless and until* after the D&O plan is approved and the EPD has decided to issue a permit. (Exhibit A, pp. 20:24-21:17.)  And Plaintiff did not submit its D&O plan to EPD until August 26, 2021, more than three months after the district court entered the Preliminary Injunction.  (Submission of D&O Plan, Doc. 136 at 1.)  In this respect, the injury in fact analysis "converges with ripeness[,]" as the Eleventh Circuit court observed in *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006).

Development Partners' claims are not ripe because Plaintiff has not reached the point, and may never reach the point, when Defendants could interfere with its claimed right to build a landfill.  At this point, the EPD is the only entity preventing Plaintiff from building a landfill because it has not approved its D&O plan or decided to issue Plaintiff a permit.  In the same vein, Defendants' issuance of a reaffirmation letter cannot redress Development Partners' grievance of not being able to build a solid waste handling facility on the Property.

- 5 -

### 1.   *2017 Zoning Decision*

In its Motion to Dismiss Order, the Court found "[t]he 2017 rezoning decision forbids Plaintiff from using its Property in a particular manner—namely, as a solid waste handling facility." (Doc. 135, p.13).  Plaintiff must now present evidence to support its contention at the summary judgment phase, but it has not done so.  There is not a single allegation of application of the 2017 ordinance to Plaintiff's project.

### 2.   *Money Spent*

Development Partners has not suffered an injury due to money spent on plans and site studies for the Proposed Facility or lost business commitment opportunities.  Plaintiff itself acknowledged that potential contracts are contingent on receiving an EPD permit, not on Defendants' conduct. (Plaintiff 30(b)(6) Dep., Doc. 88-4, pp.219:19-22, 220:11-221:1, excerpted pages attached hereto as Ex B.)  Plaintiff referenced one single contract that it alleges Defendants interfered with in its statement of undisputed material facts. (Doc. 141-1, p.9).  That single contingent contract is dated September 2, 2020, and "terminates under its own terms if [Plaintiff] does not receive a permit within Nine (9) months of signing." (John Kelly affidavit, Doc. 58-2, p.8 and Atlantic Water Services Contract, Exhibit 5 to Doc. 58-2, a copy of which is attached hereto as Exhibit C.)  Plaintiff failed to even submit its D&O plan before the contract expired "under its own terms" on June 2, 2020.  Plaintiff submitted its D&O Plan on August 26, 2021. (Docs. 136, 136-1.)

This situation is also distinguishable from *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977).  The Supreme Court opinion in *Arlington Heights* states: "When a project is as detailed and specific as [that development], a court is not required to engage in undue speculations as a predicate for find that the plaintiff has the requisite personal stake in the controversy."  *Id.* at 261.  The "detail" and "specificity" are predicates to the

court's finding of a "personal stake" in the controversy. The developers in *Arlington Heights* provided to the local government specific plans for building height, number of units and number of bedrooms, exterior doors in all units, plans for trees, studies regarding the need for and impact of the development, and they met with local officials to ensure compliance with building code and fire regulations. *Id*. at 257. Here, Plaintiff submitted absolutely nothing to the County and Development Partners' EPD application does not have the requisite specificity and detail which permitted a finding of standing in *Arlington Heights*. (Plaintiff EPD Application, Doc. 1-11, pp. 3, 12.) All developers expend money before developing their property, but not all developers suffer a cognizable injury from zoning laws, especially when those zoning laws have never been applied to the developer.

The instant lawsuit involves additional requirements, over which Defendants have no control, which Plaintiff must meet *before* the EPD will ever ask for a reaffirmation letter and *before* Plaintiff could ever use its property as a solid waste handling facility. Because of the extra steps implicating ripeness and redressability, this case is not governed by the ruling in *Arlington Heights*. In *Arlington Heights*, the court found standing for a developer whose only obstacle was the local government's zoning decision. *Village of Arlington Heights*, 429 U.S. at 257, 261. Here, though, Development Partners is required to go through additional steps and get additional approvals from the EPD after it submits its permit application and before the EPD will ever ask for or require a reaffirmation letter.

### 3.   *Delay of Permit Process*

Regarding the third injury - delay of the EPD permit - this Court previously found that Defendants' conduct caused an indefinite delay (presumably into the future) of EPD's consideration of Plaintiff's EPD Permit Application, presumably based on the allegations of the complaint. (Doc. 114 at p. 13.) In reaching this conclusion, this Court posited that an indefinite

delay is being caused by the County's failure to provide the zoning consistency reaffirmation letter to the EPD. (Doc. 114 at p. 11.) Therefore, stated in terms of the applicable standing precedents, the Court held that there is a "substantial risk" that, because the County has not provided the Zoning Consistency Reaffirmation Letter, Plaintiff will suffer harm (delay in the EPD's evaluation of the EPD Permit Application), which is "real and immediate," not merely "conjectural or hypothetical." *Kennedy, Inc*., 998 F.3d at 1229-30; *Corbett*, 930 F.3d at 1232-33. At this summary judgment phase, it is abundantly clear there is no evidence to support these allegations. Quite simply, the unequivocal evidence is the EPD has not delayed processing plaintiff's EPD application.

The only evidence on this topic, from Charles Mueller of the EPD, is directly to the contrary. (Exhibit A at 35) ("Q. Do you have any knowledge of EPD hindering the application process? A. No."); (*id.* at 37) ("Q. Are you aware of any delay? A. No.")[2]. In short, because Plaintiff's D&O plan is currently under review by the EPD and the EPD will not require the zoning reaffirmation letter unless and until it approves of that plan (which, in the least, is not certain), the alleged injury of a delay of the EPD permit application process does not, as a matter of law and fact, constitute a "real and immediate" threat of future injury. Instead, this projected injury remains purely "conjectural or hypothetical," and as such, it is insufficient to support standing for Plaintiff to bring its vested rights claim or any other claim.

**B.**     **Plaintiff Did Not Obtain Vested Rights**

Even if this Court determines Plaintiff has standing to assert its claims, Plaintiff still fails to assert a valid vested rights claim. Vested rights under Georgia law are based on the theory of estoppel. *See Union Cty. v. CGP, Inc.*, 277 Ga. 349, 589 S.E.2d 240, 242 (Ga. 2003).

---

[2] Mr. Harbin all but expressly admitted at his deposition, his opinion that the EPD's review of Plaintiff's EPD Permit Application was delayed by the County amounted to mere speculation. (Harbin Dep., Doc. 88-3 at 145, excerpts of which are attached hereto as Ex. D.)

> To acquire a vested right to development, a property owner must prove one of four conditions: (1) the property owner actually obtained a valid building permit authorizing a specific use under an existing ordinance; (2) the property owner actually applied for a building permit authorizing a specific use under an existing ordinance that authorizes the use, or the purchaser of land contracts to buy land based on the condition that it will be rezoned to allow a specific use; (3) the property owner had a development plan that was approved either formally or informally by the zoning authority, and the property owner expended money in reliance on the development plan; or (4) the property owner made a substantial change in position by expenditures in reliance upon the probability of the issuance of a building permit, based on an existing zoning ordinance and the assurance of zoning officials.

*Covenant Christian Ministries, Inc. v. City of Marietta*, 654 F.3d 1231, 1241 (11th Cir. 2011) (citing *WMM Props., Inc. v. Cobb Cty.*, 255 Ga. 436, 339 S.E.2d 252, 254-55 (1986)).  In order for Plaintiff to get a vested right from Brantley County such that Defendants are estopped from enforcing certain ordinances and regulations, it must have complied with any approval process in place before the law changed.  It is the process of receiving the local government's approval that estops the government from enforcing its new laws against the applicant.  The approval process Brantley County had in place before Plaintiff submitted its EPD application was the SWMP.  While Defendants contest the propriety of the SWMP approval acknowledgment, February 6, 2015 letter, this is the only triggering event for vested rights.  Thus, the only thing that could have triggered a vested right was the County's issuance of the 2015 consistency letters.

In February 2015, Development Partners had no definite plans for the property and was only in the exploration phase.  (Exhibit A, pp. 114:15-115:5, 131:21-132:2.)  After it had concluded its exploration and had a plan, it would return to the County for approval.  (*See* Doc. 88-1, Rowland dep., pp.141:5-13, 141:22-142:7, 142:24-143:15, excerpts of which are attached hereto as Ex E; Doc. 88-2, Edgy dep., pp.33:2-6, 34:17-19, 67:7-25, 149:9-14, excerpts of which are attached hereto as Ex. F.)  The undisputed evidence is that what was in Plaintiff's 2016 EPD application was not presented to the County before the February 2015 SWMP letter was signed.

As described in the Brantley County Commission work session on February 3, 2015, Development Partners did not communicate anything remotely specific about its plans with the property.  Contrary to John Kelly's affidavit (Doc. 58-2, ¶ 5), Plaintiff's partners Matt Roper and Donald Marks told the County commissioners "they were currently pursuing development projects to include warehousing, technology related businesses such as call centers and software development and waste to energy operations."  (Feb. 3, 2015 Work Session Minutes, Doc. 87-7, p. 3, attached hereto as Ex. G.)  Mr. Roper and Mr. Marks told the County that at that time "no firm commitments have been made, but [they] expected that efforts should result into specific development potentials in the future." *Id*.  These statements to the County not only contradict John Kelly's affidavit, they also contradict the affidavit of Matt Roper, who actually spoke to the County and made the above statements with Mr. Marks. (*See* Matt Roper Affidavit, Doc. 58-3, ¶ 8, attached hereto as Ex. H.)

Of the four conditions to obtain vested rights, Plaintiff certainly does not meet either of the first two conditions because it did not submit any type of application to the County. (Exhibit E, p. 107.)

Discussing this third condition, the Georgia Court of Appeals explained that a vested property right "arises where there was a substantial change of position in reliance with legal or economic liability resulting through expenditures based upon the *probability of approval of the development plan*, and there was conditional or tentative approval; where assurances and representations made by governmental authority, or by someone with the delegated authority to approve the *preliminary developmental plan*; that the plans would allow such development under something other than a final plan; or where regulations existing at the time of *submission of the plan of development* supported such developmental plan. *City of Duluth v. Riverbrooke Props.*, 233 Ga. App. 46, 502 S.E.2d 806, 811 (Ga. Ct. App. 1998) (citations omitted).

Here, Plaintiff plans to build an approximately 100-acre landfill on a southern trace of the nearly 2,400 acres of property.  As of February 22, 2015, Plaintiff was still trying to sell the south tract of the property.  (Exhibit B, pp.146:20-148:2; s*ee also* Site Assessment Report Map attached to EPD Application, Doc. 87-9, attached hereto as Ex. I) ("Q. You did not have any plans, specific plans as of the 5th of February 2015, for what you were going to do, specifically, on the Property, correct, other than you knew that, generally, you wanted a landfill somewhere? [A.] We had no concrete plans.".)  Plaintiff never submitted anything to the County, including the EPD application. (Exhibit E, p. 107.)

Plaintiff also fails to meet the fourth condition of vested rights because it did not make a "substantial change in position by expenditures in reliance upon the probability of the issuance of a building permit, based on … [official] assurance[s]." *Covenant Christian Ministries, Inc.*, 654 F.3d at 1241.  Plaintiff simply received letters stating that Magnolia Holdings was consistent with then-existing zoning ordinances and the SWMP. (*See* Section IV(B)(1), below).  Plaintiff could not have received any official assurances that a building permit would "probably issue," because Plaintiff did not know *what* it wanted to build or *where* it wanted to build in February 2015, as discussed above.

At the most, the County approved a development located at the Magnolia Holdings Business Park, specifically referenced in the consistency letters.  (2015 Letters, Doc. 100, Exs. 6-7, attached hereto as Exhibit J.)  These letters did not verify that Plaintiff's proposed solid waste handling facilities were consistent with the County's zoning or SWMP, because Plaintiff's EPD permit application is not located at the former Magnolia Holdings Business Park. Magnolia Holdings Business Park is a 89.65-acre project site located north of Highway 82.  (Magnolia Holdings Permit, Doc. 87-8, attached hereto as Ex. K.)  Plaintiff's planned facility is not located at the site of Magnolia Holdings Business Park.  (Exhibit I.)

Development Partners switched location and decided to try to build a landfill on the south tract of property, south of Highway 82, well after the 2015 consistency letters were issued. (*See* Exhibit D, pp. 96-97.) What was included in the EPD application is decidedly different than what was mentioned in the 2015 letters. When the county manager learned of the switch in location of the planned development, he warned Development Partners that it was not the same thing:

> I texted one of them and I told him, I said if you insist on the south side you're gonna run into political opposition, I know that ….because – well, because you had subdivisions that were right to the east of that property that had been platted and developed. I mean, it don't take a rocket scientist. I've been in this business long enough to say you're gonna have some problems and, by damn it, they did have problems on that one.…But, I did point out that'll be a hotly discussed issue and it turned out it was."

(Exhibit E, p. 154:7-24.) If the County ever approved something of Plaintiff's, it does not match Plaintiff's EPD permit application. It is undisputed that Plaintiff did not receive any County approval for the plan set forth in its EPD application.[3]

### 1.  *Consistency Letters Were Issued Ultra Vires*

The 2006 SWMP requires potential solid waste handling facility developers to submit a written statement of consistency to the County, the County's Board of Commissioners was required to review the written statement of consistency, and the County was required to conduct a public hearing before taking official action. (2006 SWMP, pp. 70-71, Doc. 58-4 at 232-23, excerpts of which are attached hereto as Ex. L.) There is *no evidence* in the record that Plaintiff ever submitted the SWMP-mandated written statement, and necessarily, therefore, Plaintiff also

---

[3] Here again, Defendants include this argument in order to preserve it. Given the unique procedural posture of this case, it is not abundantly clear which issues are preserved from the various motions and rulings. Additionally, the Court retains jurisdiction of all issues in the case until final judgment and can revisit on all previous rulings. *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

could not present any proof that the Board of Commissioners reviewed any such written statement. (Exhibit B, p. 133) ("Q. … Where is the documentation of your proposal that was considered on the 5th of February 2015? … [Y]ou *didn't present anything in writing* to the board, correct? [A.] That is *correct*.") (emphasis added).  And, the evidence clearly shows there was no public hearing required by the 2006 SWMP.  (*See* Exhibit E., p. 116.)

There is no doubt that the 2014 and 2015 SWMP Consistency Letters were issued without adherence to the Plan Consistency requirements of the 2006 SWMP.  This cannot be characterized as an immaterial failing because it precluded any meaningful review for SWMP consistency. Thus, the 2014 and 2015 SWMP Consistency Letters were issued unlawfully.[4]

There is a distinction between when a government official acts without legal authority (which is *ultra vires*) and when that official merely mistakenly exercises power that is granted (which is not *ultra vires*).  This distinction is discussed in two opinions from the Supreme Court of Georgia: *Dukes v. Bd. of Trustees for Police Officers Pension Fund*, 280 Ga. 550, 629 S.E.2d 240 (Ga. 2006) and *Quillian v. Emp's' Retirement Sys. of Ga.*, 259 Ga. 253, 379 S.E.2d 515 (Ga. 1989).  Though the Board of Commissioners had the authority to review SWMP consistency for EPD Permit applicants, the Board of Commissioners nonetheless acted without legal authority; it did not simply incorrectly exercise discretion in applying legal requirements of the 2006 SWMP when it voted to issue the 2015 SWMP Consistency Letter, it did not apply key procedural requirements of the 2006 SWMP at all.

*Dukes* and *Quillian* both addressed mistaken awards of pensions to government employees who relied on the pension determinations in deciding to retire.  *Quillian* involved a reduction of a retired judge's previously-determined pension benefit, which resulted from a miscalculation by

---

[4] Mr. Rowland executed the 2014 SWMP Consistency Letter without obtaining Board of Commissioners approval (Doc. 88-1 at 171), which unquestionably was illegal and beyond the scope of his power (*ultra vires*) under the 2006 SWMP.

the Employees' Retirement System ("ERS").  The Supreme Court of Georgia held, consistent with the district court's analysis, that the ERS was estopped from reducing the judge's originally-calculated pension benefit because it had erred in exercising its power to determine pension benefits but had not acted *ultra vires* – beyond its powers – in doing so.

> [T]he initial calculation of retirement benefit calculations made by the Employees' Retirement System was *not* beyond its powers. The duties of the retirement system include the assessment and calculation of entitlements. Even if the computation here were in error, nevertheless it was not ultra vires. * * *  Although a municipality or other governmental agency cannot be estopped by its ultra vires acts, there is nevertheless a broad distinction to be observed between an irregular exercise of a granted power, and the total absence or want of power, and the rule is that it may be estopped, as right and justice may require, where the act or contract relied on to create the estoppel was within its corporate powers, although the method of exercising the power was irregular or unauthorized.

*Quillian*, 259 Ga. at 254 (emphasis in original; internal quotation marks omitted).

By contrast, the *Dukes* decision – which arose from a pension benefit reduction for a retired Atlanta police officer – went the other way because the pension fund did not merely make a computational error, as in *Quillian*, but instead, it failed to recognize an unsatisfied legal predicate to the officer's eligibility to credit for prior service, which led to the conferral of an illegally elevated benefit.

> § 6–222(k)(1) of the 1978 Pension Act authorizes credit for prior service only when two criteria are met: the officer must have completed a minimum of five years of service with the city and must have filed an application with the board five years prior to retirement.  Because Dukes did not satisfy the second condition, his entitlement to prior service *never vested*.  Thus, the board's action in rescinding the credited service was not a recalculation; it was an annulment of an entitlement that had *no legal basis*.

*Dukes*, 280 Ga. at 553 (emphasis added).

The difference between *Quillian* and *Dukes*, therefore, is that *Quillian* involved a mistaken exercise of an otherwise legally-conferred power to determine a pension benefit, whereas *Dukes*

- 14 -

involved a bestowal of benefits that were not authorized by law in the first place.  In other words, in *Dukes*, because the law did not permit the benefit, the plaintiff's right to it "never vested."  The pension board's decision was illegal, and thus *ultra vires* and void.

This assessment of the *ultra vires* doctrine in the vested rights context was more recently confirmed by the Supreme Court of Georgia in *Union County v. CGP, Inc.,* 277 Ga. 349 (2003). In *Union County*, the county had issued several building permits to a developer to build several houses in a subdivision, but then stopped issuing such permits for further homes until the development was brought into compliance with a flood ordinance (which apparently previously had been overlooked).  The Court held that the fact that the county had issued building permits to the developer, which ordinarily confers vested rights, did not apply in the circumstances presented because a permit issued in violation of the law is void:

> The issuance of a building permit results in a vested right only when the permit has been legally obtained and is valid in every respect, and has been validly issued. Where a permit is issued by a governing body *in violation of an ordinance*, even under a mistake of fact, it is *void*, and its holder does not acquire *any rights*; even a substantial expenditure in reliance on a void permit *does not raise an estoppel*.

*Id*. at 351 (emphasis added; internal quotation marks omitted).

Because the County did not hold a public hearing and Plaintiff never submitted a SWMP Consistency Written Statement with respect to the proposed landfill – which obviously the Board of Commissioners could not have reviewed for consistency with the 2006 SWMP – the 2014 and 2015 SWMP Verification Letters were issued *in violation of the express terms of the 2006 SWMP*, which, by law is a resolution or ordinance of the County.[5]

---

[5] O.C.G.A. § 12-8-31.1(c) ("To be included as part of a local, multijurisdictional, or regional solid waste plan, each city and county included as part of the plan shall adopt the plan and any plan updates by *local ordinance or resolution*.") (emphasis added).

Therefore, under the rationale of *Dukes* and *Union County*, the 2014 and 2015 Verification Letters are void.  It was always against the law for the County to issue the consistency letters without meeting the requirements in the SWMP, so Development Partners could get no vested rights from those letters. *See Corey Outdoor Advertising, Inc. v. Bd. of Zoning Adjustments*, 254 Ga. 221 (1985).

**C.**     **Plaintiff Failed to Assert Void for Vagueness Claim**

The Court should deny Plaintiff's motion for summary judgment because Plaintiff fails to state a void for vagueness claim from the failure to provide an official map for the 2016 Zoning Ordinance. (*See* Doc. 135, pp.56, 58.)  Plaintiff does not have standing to assert the claim, and if it did, the claim is moot.  Plaintiff has the burden of proof and has not asserted any facts showing that the 2016 Zoning Ordinance has ever been applied to it.[6]  Plaintiff has no valid void for vagueness claim and has no standing to contest the 2016 Zoning Ordinance.

The void for vagueness claim was also mooted by the 2017 Zoning Ordinance, because Development Partners asserted a facial challenge.  There are two types of challenges under the void-for-vagueness doctrine: facial and as-applied. A facial challenge "seeks to invalidate a statute or regulation itself." *Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294, 1302 (11th Cir. 2013) (quoting *Horton v. City of St. Augustine*, 272 F.3d 1318, 1329 (11th Cir. 2001)). An as-applied challenge "addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009).

Facial vagueness occurs when there is "no set of circumstances exists under which the [law] would be valid." *Indigo Room, Inc.*, 710 F.3d at 1302 (quoting *Horton*, 272 F.3d at 1329).

---

[6] Plaintiff also did not include in its Statement of Material Facts that either or both the 2016 and 2017 Zoning Ordinances have ever been applied to it which indicates that Plaintiff agrees there is, at the very least, a dispute whether either or both zoning ordinances have ever been applied to Plaintiff. (*See* Doc. 141-1.)

But if the challenged law can be constitutionally applied in some circumstances, then "the possibility of a valid application necessarily precludes facial invalidity." *Id.* (citations omitted).

Development Partners asserted a facial void-for-vagueness challenge due to the lack of evidence showing the County adopted a zoning map in the 2016 Zoning Ordinance. (Doc. 1, ¶¶ 21, 75, 78.)  Plaintiff asserts that "[b]ecause the county zoning ordinance … described above fail[s] to provide Plaintiff *or other landowners* fair notice, [it is] void for vagueness and unconstitutional" (Doc. 1, ¶ 78) (emphasis added).  Plaintiff makes its facial challenge plain by asserting the absence of a map in the 2016 Zoning Ordinance "render[s] the zoning ordinance void and of no effect." (Doc. 1, ¶ 81.)

Because the void for vagueness challenge was a facial challenge, the adoption of the 2017 Zoning Ordinance makes this claim moot.  "As the Eleventh Circuit has held, 'a challenge becomes moot when the challenged policy was repealed by the governmental authority and there was no reasonable expectation that the governmental authority would return to the prior policy.'" *Stardust, 3007 LLC v. City of Brookhaven*, 2016 U.S. Dist. LEXIS 196088, *55-*56 (N.D. Ga. Sept. 29, 2016) (quoting *Granite State Outdoor Adver. Inc. v. City of St. Pete Beach*, 322 F. Supp. 2d 1335, 1341 (M.D. Fla. 2004)). *See also Reyes v. City of Lynchburg*, 300 F.3d 449, 453 (4th Cir. 2002); *Lockridge v. City of Oldsmar*, 475 F. Supp. 2d 1240 (M.D. Fla. 2007).  There is no evidence, nor is it reasonable, that the County will return to a zoning ordinance without a zoning map or apply an ordinance which no longer exists.

Moreover, Plaintiff's void for vagueness claim would also not be saved even if it had asserted an as-applied challenge.  The doctrine of void for vagueness exists to provide "fair warning" of what is prohibited and to avoid "arbitrary and discriminatory applications" of laws. *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 498 (1982) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972)).

"[A] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Bleccs, Inc. v. Augusta*, 2009 U.S. Dist. LEXIS 126458, *13-*14 (S.D. Ga. May 22, 2009) (quoting *Hoffman Estates*, 455 U.S. 489 at 495). "A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Hoffman Estates*, 455 U.S. 489 at 495.

Plaintiff was well aware of its property's zoning classification without needing to review a map. Here, by analogy, Plaintiff should not be able to complain that the ordinance is vague. Defendants agreed *at Plaintiff's request and with Plaintiffs present* that both the north and south parcels of Plaintiff's property be zoned "heavy industrial." (September 6, 2016 Work Session Minutes, Doc.1-6, attached hereto as Ex. M.)

Additionally, Plaintiff asserts a federal constitutional due process as well as a state law due process claim. "The degree of vagueness that the Constitution tolerates -- as well as the relative importance of fair notice and fair enforcement -- depends in part on the nature of the enactment." *Hoffman Estates*, 455 U.S. 489 at 498. And "perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights." *Id*. at 499. Since Plaintiff *knew* the zoning classification for its property and *was present* when Defendants decided said classification, the absence of the map does not "threaten to inhibit" any of Plaintiff's constitutionally protected rights. Thus, Plaintiff cannot succeed on a Fourteenth Amendment Due Process claim and is not entitled to summary judgment as to the claim.

Further, the Court dismissed all claims against Defendants for monetary relief. (Doc. 135, pp. 31, 34, 37) (dismissing official capacity claims and claims for monetary relief against Defendants and upholding individual capacity claims for prospective injunctive and declaratory relief). So even if Development Partners had alleged that the 2016 Zoning Ordinance had been

applied to its property, the Court has already determined that Defendants are immune from claims of retrospective injury.  Plaintiff has not asserted an injury due to the 2016 Zoning Ordinance and cannot assert claim for damages.  Therefore, there is no case or controversy with respect to the 2016 Zoning Ordinance, so the Court should deny Plaintiff's motion for summary judgment in this regard.

### D.    <u>Official Immunity</u>

Official immunity applies to prospective claims against the commissioner Defendants because the real party in interest limitation does not apply. Therefore, the Court should deny Plaintiff's motion for summary judgment. Though "official immunity generally is no bar to claims against state officers in their individual capacities for injunctive and declaratory relief from the enforcement of laws that are alleged to be unconstitutional, so as the injunctive and declaratory relief is only prospective in nature" *Lathrop v. Deal*, 301 Ga. 408, 434-435 (2017), the rule of sovereign immunity "can not be evaded by making an action nominally one against the servants or agents of a State, when the real claim is against the State itself and it is the party vitally interested." *Id*. at 414-415 (quoting *Cannon v. Montgomery*, 184 Ga. 588, 591 (1937)).  Sovereign immunity bars individual capacity suits "to the extent that the State itself could be said to be the real party in interest." *Bd. of Comm'rs of Lowndes Cty. v. Mayor & Council of Valdosta*, 848 S.E.2d 857, 861 (Ga. 2020).  In *Lowndes County*, the court stated that it has applied this rule "primarily" with respect to State real property rights and contractual obligations. *Id*. at 861.

A similar application of the *Lowndes County* holding in the instant case presents two related problems: the basis for permitting certain individual capacity claims described in the opinion does not apply here and the relief requested here is only to direct the actions of the County's governing body. The officials in *Lowndes County* were also not entitled to official immunity as Defendants are here.  *See Bd. of Comm'rs of Lowndes Cnty.*, *supra*.

- 19 -

The Georgia Supreme Court's acknowledgement that sovereign immunity does not bar individual capacity suits for declaratory and injunctive relief is also based on a premise which does not apply here:

> "As Presiding Justice Benham explained in his partial dissent from our opinion in *IBM*,
> '[i]t is a long-standing principle of Georgia law that sovereign immunity is not applicable where an injunction is sought to prevent the commission of an alleged wrongful act by an officer of the state acting under color of office but without lawful authority and beyond the scope of official power because such a suit is not against the state, but against an individual stripped of his official character.'"

*Id*. at 860 (*quoting IBM v. Ga. Dep't of Admin. Servs.*, 453 S.E.2d 706, 711 (Ga. 1995) ((Benham, P. J., concurring in part and dissenting in part) (emphasis omitted)).  The Georgia Supreme Court emphasized that "Presiding Justice Benham was right; that principle is longstanding in our law and is a part of the sovereign immunity that the Georgia Constitution now preserves." *Id*.

It is completely illogical for the real party in interest rule to not apply here. Development Partners does not seek to direct the actions of any specific County Commissioner; it seeks action by the County Board of Commissioners *as the County's governing body*.  The Court determined that sovereign immunity applies to protect the County from suit.  Any relief in this case must be limited to Defendants' legislative and executive actions as the County's governing body because Plaintiff's demands only affect the actions of the County as governed by its Board of Commissioners.

E.   **Legislative Immunity**

The Court should deny Plaintiff's motion for summary judgment because the commissioners are entitled to legislative immunity for the claims against them related to their votes to adopt the amended zoning ordinance and the amended SWMP.  It is black-letter law that the individual commissioners are entitled to absolute legislative immunity as to both the state law and federal law claims brought against them as a result of the legislative function of voting on

ordinances and the like.  *See Brown v. Crawford Cty.*, 960 F.2d 1002, 1011-12 (11th Cir. 1992);

*Baytree of Inverrary Realty Partners v. City of Lauderhill*, 873 F.2d 1407, 1409 (11th Cir. 1989);

*Fulton Cty. v. Dangerfield*, 260 Ga. 665, 398 S.E.2d 14, 15 (1990); *Jackson v. Delk*, 257 Ga. 541,

543, 361 S.E.2d 370, 372 (1987).  There is no dispute in the instant case that the conduct on the

part of the commissioners was a legislative act - the commissioners voted to amend Brantley

County's zoning ordinance and to amend the SWMP. The Eleventh Circuit was explicit in *Brown*

that absolute immunity applied regardless of the individual motivations of the elected officials.

*Brown*, 960 F.2d at 1012.  Defendants should be dismissed for this additional reason.

**F.**     **Plaintiff Not Entitled to Permanent Injunction**

A plaintiff seeking a permanent injunction must demonstrate four elements: (1) it has

suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are

inadequate to compensate for that injury; (3) considering the balance of hardships between the

plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be

disserved by a permanent injunction. *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d

1200, 1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

To start, Plaintiff has suffered no injury at all, for the reasons discussed herein.  *See*

Sections IV(A) and IV(B).  Defendants have not been injured by the 2016 or 2017 Zoning

Ordinances, because Defendants have not applied the Ordinances to Plaintiff.  Defendant has not

been injured by the 2006 SWMP or amended SWMP for the same reason.  Defendants have not

been injured by Defendants' failure to issue the zoning reaffirmation letter because the EPD has

not and may never request it.  For these reasons, Plaintiff has no injury which cannot be

compensated by monetary damages.

The balance of hardships favors Defendants, as well.  As discussed above, Plaintiff's EPD

permit application has not been delayed.  The EPD representative has contradicted that assertion,

and has instead testified that the County has not put pressure on the EPD and Plaintiff's application has not been delayed. (Exhibit A, pp. 35:10-21,37:6-39:2.)   The EPD has not requested an additional consistency letter and will not request or require such letter unless and until after the D&O Plan is approved. (Exhibit A, pp. 20:24-21:17; *see also* Declaration of Richard Deason, Doc. 64-5, attached hereto as Exhibit N.)  The D&O plan review process is an involved one, and the EPD explicitly did not guarantee that it will approve a D&O plan or that a permit will issue. (Exhibit A, pp. 39:12-24, 49:17-24.)  Plaintiff's D&O Plan is currently under review by the EPD. (*See* Plaintiff's D&O Plan submittal, Docs. 136, 136-1.)  So, the absence of an injunction will cause Plaintiff no hardship whatsoever.

Additionally, Plaintiff cannot receive a permit under Georgia law for a landfill which will take solid waste derived from households, including garbage, trash, and sanitary waste in septic tanks[,] … solid waste from single-family and multifamily residences, hotels and motels, bunkhouses, campgrounds, picnic grounds, and day use recreation areas, … yard trimmings, construction or demolition waste, [or] commercial solid waste." O.C.G.A. § 12-8-22(18) (definition of municipal solid waste).  This is because "no permit, grant, or loan shall be issued for any municipal solid waste disposal facility or any solid waste handling equipment or recycling equipment used in conjunction therewith in a county or region which is not consistent with a local, multijurisdictional, or regional solid waste management plan." O.C.G.A. § 12-8-31.1(e).  For the reasons discussed in Section IV(B)(1), above, Plaintiff was not consistent with the 2006 SWMP.

A permanent injunction also would disserve the public interest.  An injunction would prevent Defendants from enforcing its own law and would force Defendants to violate state law. O.C.G.A. § 12-8-31.1 requires all counties to have or be included in a local or regional solid waste management plan.

O.C.G.A. § 12-8-24 (g) states that the EPD director must "require written verification to be furnished by the applicant that the proposed facility complies with local zoning or land use ordinances, if any; and after July 1, 1992, that the proposed facility is consistent with the local, multijurisdictional, or regional solid waste management plan developed in accordance with standards promulgated pursuant to this part subject to the provisions of Code Section 12-8-31.1…" O.C.G.A. § 12-8-26 also requires a public meeting on site selection for a publicly or privately owned municipal solid waste disposal facility.

Further, the 2006 SWMP obligates an applicant for an EPD Permit to provide a formal written statement to the County that is designed to facilitate review of a project for consistency with that solid waste management plan ("SWMP Consistency Written Statement"): "To maintain consistency with the plan, the entity, which proposes to site a solid waste handling facility in the County … must provide to the local government[] at least 60 days prior to filing for a solid waste permit … a written statement documenting" among several other matters, "[a] method of notifying and involving the public in the process of consistency review[,]" which includes calling "a public meeting[;] "[a] description of the anticipated impact the proposed facility will have upon the community;" and "[a]n identification of the anticipated impact the proposed facility will have upon the adequate collection and disposal capability within the planning area[.]"   (2006 SWMP)). (Exhibit L.)

Here, Plaintiff never submitted the required written statement of consistency. (Declaration of Brian Hendrix, Doc. 64-2 at 3, ¶ 7, attached hereto as Exhibit O; Exhibit B, p.133.)  There was also no public hearing as required by the 2006 SWMP.  (*See* Exhibit E, p. 116.)  The public interest is best served by upholding Georgia law and Brantley County ordinances.  The public interest is not well served by forcing a county to permit new landfills from development companies which

lie to county officials about its plans, nor is the public interest served by allowing new landfills for which the developer never submitted any plans to the county.

At the very least, Plaintiff is not entitled to a permanent injunction as sweeping as the preliminary injunction. Any injunction should certainly not extend to all of Plaintiff's property.[7] In granting the preliminary injunction, this Court posited that the indefinite delay of Plaintiff's EPD permit application is being caused by the County's failure to provide the Zoning Consistency Reaffirmation Letter to EPD.[8] (Doc. 114 at p.11) ("The EPD's site suitability notice made clear that '*reaffirmation of zoning consistency* must be submitted to EPD prior to a final decision regarding the issuance of a permit.' Dkt. No. 48-2. Only after receiving this *required reaffirmation* from Defendants will Plaintiff's Solid Waste Handling Permit either be issued or denied. Consequently, Plaintiff's EPD permit application will remain pending indefinitely so long as Defendants *continue* to 'hinder, delay[,] and obstruct' Plaintiff's right to develop its property. Dkt. No. 1 ¶¶ 59, 84.") (emphasis added); *see also id.* at 12 ("[H]ere, permit denial may never occur *because of* Defendants' alleged improper obstruction.") (emphasis in original).

Plaintiff has not shown – and the district court did not previously find – that there is a substantial risk that Plaintiff will suffer any harm vis-à-vis other County actions that are also subjects of the Preliminary Injunction: (a) the July 9, 2020 Resolution; (b) the 2016 Zoning Ordinance; (c) the 2017 SWMP; and (d) the 2020 SWMP. (Doc. 114 at 52) ("Defendants are

---

[7] If Plaintiff had received a vested right, then at most it would not have to comply with zoning or other regulations, but only for whatever Plaintiff were vested in. In other words (and assuming Plaintiff's proposed landfill is approximately 100 acres), approximately 2,289 acres of Plaintiff's 2,389 acre-property would still be subject to all ordinances and regulations *even if* Plaintiff had a vested right to build the landfill described in its EPD application.

[8] The entirety of the district court's standing analysis focused on the purported delay in the EPD Permit Application process supposedly caused by the lack of provision of the Zoning Consistency Reaffirmation Letter, which the district court ordered the County to issue in the Preliminary Injunction. (Doc. 114 at 52) ("Defendants are ORDERED to issue the reaffirmation of zoning consistency required by Ga. Comp. R. & Regs. 391-3-4-.05(1)(a).").

hereby ENJOINED from applying the July 9, 2020 resolution, the 2016 Zoning Ordinance, the 2017 SWMP, and the 2020 SWMP to Plaintiff's Property and its EPD permit application.") (emphasis in original).  Indeed, as to the 2016 Zoning Ordinance, the 2017 SWMP, and the 2020 SWMP, no evidence even remotely suggests that the County ever has applied or will apply any of them to the Property.  Plaintiff therefore has no standing to contest these other actions.  *See TransUnion LLC v. Ramirez*, --- U.S. ---, 141 S. Ct. 2190, 2210 (2021).

## CONCLUSION

For the reasons discussed herein, Defendants respectfully request that the Court deny Plaintiff's Motion for Summary Judgment and Permanent Injunction.  Even if the Court finds that Plaintiff has stated a claim, Defendants have demonstrated that there are genuine issues of material fact which defeat summary judgment.

This 5th day of November, 2021.

FREEMAN MATHIS & GARY, LLP

/s/ Dana K. Maine
Dana K. Maine
Georgia Bar No. 466580
dmaine@fmglaw.com
Rachael Slimmon
Georgia Bar No. 831661
rslimmon@fmglaw.com
*Attorneys for Defendants*

100 Galleria Parkway, Suite 1600
Atlanta, GA  30339-5948
(770) 818-0000 (telephone)

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically submitted the foregoing DEFENDANTS'

MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY

JUDGMENT to the Clerk of Court using the *CM/ECF* system which will automatically send

electronic mail notification of such filing and service to the following counsel of record:

L. Robert Lovett
Lovett Law Group
5400 Riverside Drive, Suite 203
Macon, GA 31210
Bob@LovettLawGroup.com

George Rountree
Brown Rountree, P.C.
26 North Main Street
Statesboro, GA 30458
george@br-firm.com

Kyler L. Wise
Wilson Brock & Irby, LLC
2849 Paces Ferry Road, Suite 700
Atlanta, GA 30339
kwise@wbilegal.com

Mark D. Johnson
Gilbert, Harrell, Sumerford & Martin, PC
PO Box 190
Brunswick, GA 31521-0190
mjohnson@gilbertharrelllaw.com

This 5th day of November, 2021.

*/s/ Dana K. Maine*
Dana K. Maine
Georgia Bar No. 466580
dmaine@fmglaw.com

*Attorney for Defendants*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA  30339-5948
(770) 818-0000 (telephone)
17675675