Case 5:19-cv-00109-LGW-BWC   Document 150-2   Filed 11/05/21   Page 1 of 11
30(b)(6) Matt Roper & John Kelly                 November 11, 2020
Brantley Cty Dev Partners, LLC v. Brantley Cty, Georgia, et al.

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF GEORGIA
 2                     WAYCROSS DIVISION
 3
 4    BRANTLEY COUNTY DEVELOPMENT  )
      PARTNER, LLC,                ) CIVIL ACTION FILE
 5                                 ) 5:19-CV00109LGWBWC
         Plaintiff,                )
 6                                 )
      vs.                          )
 7                                 )
      BRANTLEY COUNTY, GEORGIA by  )
 8    and through its CHAIRMAN and )
      MEMBERS of the BRANTLEY      )
 9    COUNTY BOARD OF COMMISSIONERS )
      CHRIS SKIPPER• HARRIS,       )
10    RANDY DAVIDSON, BRIAN HENDRIX )
      JESSE MOBLEY and RAY GRIFFIN,)
11    all in their official        )
      capacity capacities as       )
12    COMMISSIONERS; and JESS      )
      MOBLEY, Individually.        )
13                                 )
         Defendants.                )
14
                 _____
15
16
            The Veritext Virtual deposition of MATT ROPER
17
      and JOHN KELLY taken on behalf of the Defendants by
18
      Crystal Souter, Certified Court Reporter,
19
      commencing at approximately 10:00 a.m. on the 11th
20
      day of November 2020.
21
22
23
24
25
```

Case 5:19-cv-00109-LGW-BWC   Document 150-2   Filed 11/05/21   Page 2 of 11
30(b)(6) Matt Roper & John Kelly                November 11, 2020
Brantley Cty Dev Partners, LLC v. Brantley Cty, Georgia, et al.

Page 114

```
 1     during that time.
 2          Q.   Okay.   But, I'm asking you a specific
 3     question.   Do you recall going to a meeting when
 4     you were down there with Mr. Marks?
 5               MR. ROPER:   To the work session?
 6          Q.   Correct.
 7               MR. ROPER:   Yeah, I -- yes.
 8          Q.   Do you recall telling the board of
 9     commissioners what's included in the paragraph that
10     I just read out to you?
11               MR. ROPER:   I do not recall exactly
12     what I said, no.
13          Q.   And did you speak or did Mr. Marks speak?
14               MR. ROPER:   I don't remember.
15          Q.   Is it accurate that, as of the date of
16     that meeting, that you had no firm commitments, but
17     expected the efforts should result in a specific
18     development potentials in the near future, is that
19     accurate?
20               MR. ROPER:   I would say that's an
21     accurate statement.
22          Q.   And you hadn't had any of the engineering
23     completed at that point, had you?
24               MR. ROPER:   Nothing completed, no.
25          Q.   And the quick kill study hadn't been done,
```

Case 5:19-cv-00109-LGW-BWC   Document 150-2   Filed 11/05/21   Page 3 of 11
30(b)(6) Matt Roper & John Kelly                November 11, 2020
Brantley Cty Dev Partners, LLC v. Brantley Cty, Georgia, et al.

Page 115

1    either?
2            MR. ROPER:  I don't remember.
3        Q.  You were still in the exploration stage,
4    isn't that right?
5            MR. ROPER:  Yes.
6            MS. MAINE:  If you would look at
7    Exhibit 15 for me, please.
8            MR. ROPER:  Okay.
9            MS. MAINE:  And that is an email from
10   Carl to Mike Edgy and copied Matt Roper with what
11   he's going to say at the meeting and then the
12   proposed motion for Mike to say.
13           MR. ROPER:  Okay.
14       Q.  Do you recall -- do you know who wrote
15   that?
16           MR. ROPER:  Well, it says Carl wrote
17   it.
18       Q.  Do you know who wrote those words?
19           MR. ROPER:  No.
20       Q.  Did you write it?
21           MR. ROPER:  No.
22       Q.  But, he sent it to you for approval,
23   correct?
24           MR. ROPER:  I don't -- he sent it to -
25   - I don't think he was asking for my approval.

Case 5:19-cv-00109-LGW-BWC   Document 150-2   Filed 11/05/21   Page 4 of 11
30(b)(6) Matt Roper & John Kelly          November 11, 2020
Brantley Cty Dev Partners, LLC v. Brantley Cty, Georgia, et al.

Page 131

1   determined that those facilities and activities are
2   consistent with the local land-use plan and the
3   solid waste management plan."    What, to your
4   knowledge, what is it that your engineer and Carl
5   Rowland looked at?
6              MR. ROPER:   The solid waste management
7   plan.
8       Q.   What about -- what, in connection with
9   waste -- what waste handling, handling waste-to-
10  energy and waste management from your project did
11  he look at?
12             MR. ROPER:   You'll have to ask Steve
13  and Carl.
14      Q.   What was in existence?   I mean, you guys
15  didn't have anything -- you had nothing planned at
16  that point, right, because on the 3rd you said you
17  didn't have any specific plans so that did not
18  change in two days, did it?
19             MR. ROPER:   I don't understand the
20  question.
21      Q.   On the 3rd in those minutes, it says that
22  you were unsure and you didn't have anything
23  concrete as of, yet, correct?
24             MR. ROPER:    That's correct.
25      Q.   And that didn't change in two days, did

Case 5:19-cv-00109-LGW-BWC   Document 150-2   Filed 11/05/21   Page 5 of 11
30(b)(6) Matt Roper & John Kelly        November 11, 2020
Brantley Cty Dev Partners, LLC v. Brantley Cty, Georgia, et al.

Page 132

1  it?

2         MR. ROPER:  No.  No, ma'am.

3     Q.  So what would it have been that was

4  considered by the county at that point?  If you

5  didn't have any plans, how could they tell that it

6  was compliant with the solid waste management plan?

7         MR. ROPER:  Solid waste handling

8  plans, you have a plan to handle solid waste.

9     Q.  So, basically, any -- did you take it that

10 they were approving anything that you wanted to do

11 that came under the --

12        MR. ROPER:  That is correct.  That was

13 my understanding.

14    Q.  And so the first letter acknowledging that

15 the solid waste handling facilities proposed by

16 Brantley Development Partners, but you didn't have

17 anything proposed at that time, did you?

18        MR. ROPER:  We discussed everything,

19 the landfill, we discussed material recovery, we

20 discussed recycling, we discussed thermal

21 conversion, we discussed disposal.  We discussed

22 everything.

23    Q.  What was proposed?

24        MR. ROPER:  What I just said, a multi-

25 faceted solid waster development.

Case 5:19-cv-00109-LGW-BWC   Document 150-2   Filed 11/05/21   Page 6 of 11
30(b)(6) Matt Roper & John Kelly         November 11, 2020
Brantley Cty Dev Partners, LLC v. Brantley Cty, Georgia, et al.

Page 133

1    Q.   And is that what you're planning on, right
2    now?
3            MR. ROPER:   Yes, ma'am.
4    Q.   And where did -- anything written down at
5    the time of February 5, 2015?
6            MR. ROPER:   "Written down?"
7    Q.   Anywhere.   Anything -- your proposal, what
8    you were proposing to do, anything written down?
9            MR. ROPER:   Are you talking about
10   between the partners, what we've written and shared
11   between ourselves?
12           MS. MAINE:   Start there, yes.
13           MR. ROPER:   Yes.   Volumes.
14   Q.   Before February 5, 2015?
15           MR. ROPER:   We have reviewed multiple
16   processes, that is correct.
17   Q.   Okay.   Where are those documents?   Where
18   is the documentation of your proposal that was
19   considered on the 5th of February 2015?   I mean,
20   the board -- you didn't present anything in writing
21   to the board, correct?
22           MR. ROPER:   That is correct.
23   Q.   You actually --
24           MR. KELLY:   We weren't required to.
25           MR. ROPER:   We were not required to;

Case 5:19-cv-00109-LGW-BWC   Document 150-2   Filed 11/05/21   Page 7 of 11
30(b)(6) Matt Roper & John Kelly                November 11, 2020
Brantley Cty Dev Partners, LLC v. Brantley Cty, Georgia, et al.

Page 145

1  MR. ROPER: No.
2  Q. Have you read the transcript of his
3  deposition?
4  MR. ROPER: Actually, I have not.
5  Q. What about Carl Rowland, have you read
6  that?
7  MR. ROPER: Yes.
8  Q. And have you talked to Mr. Rowland since
9  his deposition?
10 MR. ROPER: No.
11 Q. Did you talk to him before his deposition?
12 MS. MAINE: I think he -- I can't
13 remember if he said he talked -- I think he did
14 talk to you.
15 MR. ROPER: Before, that is correct.
16 Q. Yeah. And what did y'all talk about?
17 MR. ROPER: We just talked about how
18 his kids were growing up. We talked about that
19 there was some things being said that he did or
20 didn't do. Talked about Worth County. We talked
21 about -- or whatever county he's in -- down in
22 Sylvester, trying to bring jobs and business, down
23 there, to the peanut butter factory that's no
24 longer, I guess it's vacant now.
25 Q. Anything you sae in his deposition that

Case 5:19-cv-00109-LGW-BWC   Document 150-2   Filed 11/05/21   Page 8 of 11

30(b)(6) Matt Roper & John Kelly                     November 11, 2020
Brantley Cty Dev Partners, LLC v. Brantley Cty, Georgia, et al.

Page 146

1  was inaccurate?
2              MR. ROPER:    Not that I can remember.
3  It was almost 200 pages so, no, I don't -- not that
4  I can remember, no.
5              MS. MAINE:    Would you look at Exhibit
6  21, please.
7              MR. ROPER:    I'm looking at it.
8       Q.   It's an email, you're copied on it, from
9  Don to Mike --
10             MR. LOVETT:    Hold on.  Hold on.
11             MR. ROPER:    Sorry.  We're looking at
12  the wrong exhibit.   Okay.
13      Q.   Do you know why you guys used Mike's
14  private email instead of his county email?
15             MR. ROPER:    That's the only email that
16  I knew that he had.
17      Q.   It's what he asked you to communicate with
18  him on?
19             MR. ROPER:    That's what he gave me.
20      Q.   Don says to Mike that, talking about
21  showing Adrian and Paul the south tract.   Is that
22  Adrian Prodst?
23             MR. ROPER:    That's not in the exhibit
24  that we're looking -- hold on.   I'm sorry.  I'm
25  looking at the -- yes, that's Adrian Prodst.

Case 5:19-cv-00109-LGW-BWC   Document 150-2   Filed 11/05/21   Page 9 of 11
30(b)(6) Matt Roper & John Kelly                November 11, 2020
Brantley Cty Dev Partners, LLC v. Brantley Cty, Georgia, et al.

Page 147

1    Q.   And who is "Paul?"
2         MR. ROPER:   He was a potential
3    investor that wasn't interested.
4    Q.   And did y'all get additional investors
5    after you had formed the LLC and purchased the
6    property?
7         MR. ROPER:   No.
8         MR. KELLY:   No.
9    Q.   But this was after you formed the LLC and
10   purchased the property.   What was -- what's Paul's
11   last name?
12        MR. ROPER:   Edmondson.
13   Q.   And what was his purpose?   Was he looking
14   at buying the south tract?
15        MR. ROPER:   He could have been; I
16   don't know.
17   Q.   And I just want to follow up with this --
18   I know that you said you were actively -- I mean,
19   actively selling anything that was available, I
20   understand that, but all the emails I have refer to
21   selling off the south tract.   I don't have anything
22   that refers to selling the north tract.   Were you,
23   for a time, trying to sell the south tract?
24        MR. KELLY:   Yes, I'll answer that.   We
25   were -- someone had said they were interested, we

Case 5:19-cv-00109-LGW-BWC   Document 150-2   Filed 11/05/21   Page 10 of 11
30(b)(6) Matt Roper & John Kelly                    November 11, 2020
Brantley Cty Dev Partners, LLC v. Brantley Cty, Georgia, et al.

Page 219

1   Q.   And the commissioners said they wanted to
2   have the option going forward and no one said they
3   wanted to, right, is that what your testimony was?
4           MR. KELLY:   When we sat down and asked
5   them if they wanted to participate, they said, yes,
6   and that is why we had the siting meeting.
7   Q.   I thought you said they wanted to have the
8   option -- I know you didn't meet with everyone, but
9   the ones you did meet with --
10          MR. KELLY:   I didn't say that. I told
11  you the ones I talked to said they wanted to
12  participate in a public/private partnership.
13  Q.   Okay.
14          MS. MAINE:   Exhibit 57, please.
15  Q.   So one of the issues that I had asked
16  about or was in the 30(b)(6) notice was about non-
17  contingent contracts for the landfill.
18          MR. KELLY:   Yes.
19  Q.   And what is non-contingent contract?
20          MR. KELLY:   A non-contingent contract,
21  I mean, this is contingent on us getting the
22  permit.
23  Q.   How could you enter into a non-contingent
24  contract if you don't have the permit?   Could you?
25  Would you?   Would you -- how could you enter -- I

Case 5:19-cv-00109-LGW-BWC   Document 150-2   Filed 11/05/21   Page 11 of 11
30(b)(6) Matt Roper & John Kelly                     November 11, 2020
Brantley Cty Dev Partners, LLC v. Brantley Cty, Georgia, et al.

Page 220

1    don't understand that argument that y'all are
2    making, so please explain it to me?
3              MR. KELLY:   Rephrase the question.
4    You were cutting out --
5        Q.   So wouldn't you always enter into a
6    contingent contract, I mean, a contract contingent
7    upon getting your permit, as opposed to binding
8    yourself to something that would be impossible?
9              MR. KELLY:   I'm not trying to -- I
10   just don't understand.
11       Q.   So one of the complaints that y'all are
12   making is that because Brantley County will not
13   give you the letters that the EPD is going to ask
14   you for down the road if your DNO plan is approved,
15   you can't enter into non-contingent contracts.   So,
16   my question is how could you ever enter into a non-
17   contingent contract?
18             MR. KELLY:   We talked with a lot of
19   other people about disposal on this site.   We
20   talked to -- generally, they all are like, that's
21   great, but you're in a lawsuit, come back and talk
22   to me when it's resolved, when you have a permit
23   in-hand.
24       Q.   Okay.  And then when this lawsuit's
25   resolved and you have a permit in-hand, then