IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| BRANTLEY COUNTY DEVELOPMENT PARTNERS, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CASE NO. 5:19-CV-00109 |
| | : | |
| BRANTLEY COUNTY, GEORGIA by and through its Chairman and Members of the Brantley County Board of Commissioners; CHRIS "SKIPPER" HARRIS, RANDY DAVIDSON, BRIAN HENDRIX, JESSE MOBLEY AND RAY GRIFFIN, all in their individual and official capacities as Commissioners, | : | |
| | : | |
| Defendants. | : | |

## AFFIDAVIT OF JOHN KELLY

PERSONALLY APPEARED before me, the undersigned officer duly authorized by law to administer oaths, John Kelly, after being first duly sworn, deposes and says the following:

1.

My name is John Kelly. I am over 21 years of age, under no legal disability and of sound mind. I provide this Affidavit based on my personal knowledge. I provide this Affidavit voluntarily and of my own free will. I provide this Affidavit in the above-styled matter for all purposes allowed by law.

2.

I am a Managing Partner of Brantley County Development Partners, LLC ("BCDP"). I am authorized to make this Affidavit.

1

3.

In 2014, Brantley County officials Carl Rowland (County Manager) and Mike Edgy (County Commissioner) approached BCDP and solicited BCDP to develop a 2,389-acre tract of land in unincorporated Brantley County known as the Magnolia Holdings Business Park into a "Technology Park," which would include a small subtitle "D" solid waste disposal facility, a thermal conversion process, and a mixed use light industrial and heavy industrial development (the "Property"). The Property had been foreclosed and was bank owned.

4.

On November 21, 2014, before closing on the Property, BCDP sought and obtained written verification letters from County Manager Carl Rowland certifying that the proposed solid waste handling facilities on the Property were consistent with Defendants' solid waste management plan and local land use plan. The letters confirmed that Brantley County did not have a zoning ordinance and Mr. Rowland signed the letters on behalf of the Brantley County Board of Commissioners. True and correct copies of these November 21, 2014 letters are attached to BCDP's Complaint as Exhibit "B".

5.

Having received both verbal and written assurances from County Officials that they wanted BCDP to site the solid waste handling facilities on the Property, and that the project was authorized, BCDP relied upon those assurances when, on December 22, 2014, BCDP bought the Property for $2,632,000.00 to develop it with the solid waste handling facilities. BCDP would never have bought this Property as a speculative investment. It was purchased with the sole purpose and intent to develop it with the solid waste handling facilities. A true and correct copy

2

of the Limited Warranty Deed by which BCDP acquired title to the Property is attached to BCDP's Complaint as Exhibit "A".

6.

On August 19, 2015, Defendants' County Manager Carl Rowland issued another letter confirming that Defendants consider BCDP's Property situated on the north and south boundaries of State Highway 520 as one and the same tract. This was done to clarify and confirm that compliance with local land use laws and the solid waste management plan is consistent on both the northern and southern tracts of the Property. A true and correct copy of this August 19, 2015 letter is attached to BCDP'S Complaint as Exhibit "C".

7.

On February 5, 2015, at a regularly scheduled meeting, the Brantley County Board of Commissioners took official action by vote to approve again the project and confirm that BCDP's proposed solid waste handling facilities on the Property are consistent with Defendants' local land use plan and solid waste management plan. Defendants' Chairman issued letters verifying BCDP's proposed solid waste handling facilities on the Property are consistent with Defendants' solid waste management plan and consistent with Brantley County's local land use plan. True and correct copies of the February 5, 2015 Board of Commissioner Meeting Minutes and February 5, 2015 Letters are attached to BCDP's Complaint as Exhibits "D" and "E".

8.

On December 29, 2016, BCDP filed its permit application for the solid waste handling facilities on the Property with the Georgia EPD. The application was complete and was accepted along with the filing fee for processing by the Georgia EPD. A true and correct copy of the

3

December 29, 2016 application which I signed as a Manager of BCDP is attached to BCDP's

Complaint as Exhibit "K".

9.

Following an election cycle, on January 3, 2017, without notice to BCDP or opportunity

to be heard, Defendants imposed a moratorium on any landfills in Brantley County for a period

of 180 days.  A true and correct copy of the moratorium is attached to BCDP's Complaint as

Exhibit "L".

10.

Also on January 3, 2017, at a work session Defendants voted to readopt their 2006 solid

waste management plan which they admitted had expired in 2016, to send written objection to

the Georgia EPD in regards to BCDP's Application, and to instruct all Brantley County officials

or agents to cease communication with BCDP.  A true and correct copy of the Defendants'

January 3, 2017 work session minutes are attached to BCDP's Complaint as Exhibit "N".

11.

On January 5, 2017, at a regular meeting, Defendants voted to amend the moratorium and

to hire outside counsel to oppose BCDP's solid waste handling facilities on the Property.  A true

and correct copy of Defendants' January 5, 2017 regular meeting minutes is attached to BCDP's

Complaint as Exhibit "O".

12.

On January 6, 2017, County Attorney Deen Strickland sent a letter to Georgia EPD

stating

that Defendants were unanimously opposed to Plaintiff's solid waste handling facilities sought

with the Georgia EPD Application and advising the EPD that Defendants had passed a

moratorium containing Defendants' opposition for any type of waste facility in the county.  A

4

true and correct copy of Strickland's January 6, 2017 letter is attached to BCDP's Complaint as Exhibit "P".

13.

On or about February of 2017, US Rail, LLC ("US Rail") contacted BCDP about siting a railcar cleaning and repair facility on the Property. From discussions about the business opportunity, I learned that US Rail was partnering with another company, Barber Recycling, that was also interested in locating a railcar scrapping business on the Property. A true and correct copy of a February 28, 2017 Letter of Intent BCDP received from US Rail is attached hereto as Exhibit "1".

14.

However, Brantley County, and its representatives, refused to communicate with either BCDP or US Rail about this business opportunity. I also learned that Brantley County representatives threatened to cut off funding to the Brantley County Industrial Authority if the Authority supported the project. As a result of Brantley County's refusal to engage on the project, and hostility towards BCDP, US Rail wound up locating its business in Mississippi which generated approximately 285 good paying jobs. The Governor of Mississippi has visited US Rail's site.

15.

On June 15, 2017, the Defendants took regulatory action to adopt a County-wide zoning ordinance, to downzone BCDP's Property, and to amend the solid waste management plan, all for the purpose of stopping BCDP's solid waste handling facilities on the Property. A true and correct copy of May 10, 2017 correspondence to BCDP from Deen Strickland concerning the

5

downzoning of BCDP's Property and the amended solid waste management plan are attached to
BCDP's Complaint as Exhibits "S" and "U".

16.

On May 25, 2017, June 13, 2017 and June 14, 2017, BCDP, by and through counsel, sent
letters to Defendants objecting to Defendants' June 15, 2017 regulatory actions.  True and
correct copies of these letters are attached to BCDP's Complaint as Exhibits "V-1", "V-2", "W"
and "X".

17.

On June 19, 2019, BCDP, by and through counsel, demanded that Defendants certify in
writing, as needed to complete processing and approval of BCDP's EPD Application, that
BCDP's solid waste handling facilities are neither subject to zoning ordinance or the June 15,
2017 solid waste management plan and that BCDP has a vested right to develop the Property
with the solid waste handling facilities sought with its Application to Georgia EPD.  A true and
correct copy of the June 19, 2019 letter is attached to BCDP's Complaint as Exhibit "Y".
Defendants have failed and refused to provide the requested certification letters.

18.

On May 28, 2020, the Georgia EPD issued a site suitability notice for BCDP's solid
waste handling facilities on the Property.  Therein, the Georgia EPD stated that no permit will be
issued for BCDP's proposed solid waste disposal site unless: "a reaffirmation of zoning
consistency must be submitted to EPD prior to a final decision regarding the issuance of a permit
for the proposed solid waste disposal facility."  This is the same reaffirmation demanded by

6

BCDP on June 19, 2019, which Defendants still fail and refuse to provide. A true and correct copy of the Georgia EPD's May 28, 2020 site suitability notice received by BCDP is attached hereto as Exhibit "2".

19.

On June 6, 2020, Defendants, along with the Clerk of the Brantley County Superior Court, and others, wrote a letter to the Georgia Department of Natural Resources Legislation Committee supporting Senate Bill 384 and stating that Defendants "oppose any permitting for a solid waste disposal facility in Brantley County." Senate Bill 384 was introduced specifically to stop BCDP from developing the Property with the proposed solid waste handling facilities but Senate Bill 384 did not pass out of the Rules Committee of the Georgia House of Representatives. A true and correct copy of Defendants' June 6, 2020 letter is attached as Exhibit "3".

20.

On July 9, 2020, Defendants adopted a Resolution which purports to withdraw the certification letters issued by County Manager Rowland in 2014 and by Defendants' Chairman in 2015. A true and correct copy of the Resolution is attached hereto as Exhibit "4".

21.

Brantley County only has an active inert landfill and it accepts no solid waste generated from outside the County.

22.

The solid waste handling facilities sought by BCDP with the Application will receive, handle and dispose of solid waste generated from outside both Brantley County and the State of

7

Georgia and they will compete in the interstate market for the transfer, transportation, handling and disposal of solid waste. BCDP's solid waste handling facilities on the Property will not accept hazardous waste.

23.

On September 2, 2020, BCDP entered into a Contract For Waste Disposal Services with Atlantic Waste Services, Inc. for the handling and disposal of solid waste, some of which is generated in, and would be imported from, South Carolina. However, this contract is entirely contingent upon BCDP obtaining the required permit from Georgia EPD to construct and operate the solid waste handling facilities sought with the Application and it does not become effective until the first day of permitted operation of the facilities. The contract terminates under its own terms if BCDP does not receive the permit from Georgia EPD within Nine (9) months of signing. A true and correct copy of BCDP's contingent contract with Atlantic Waste Services, Inc. is attached hereto as Exhibit "5".

24.

BCDP cannot enter into final non-contingent contracts with market participants, including out-of-state market participants, for the handling and disposal of solid waste because BCDP is not able to give assurances at this time to prospective customers and entities that would potentially deposit solid waste at the solid waste handling facilities that BCDP will actually be able to construct and operate the facilities on the Property.

25.

BCDP is precluded from entering into any final non-contingent contracts with market participants, including out-of-state customers, unless and until BCDP is able to receive a permit

8

from Georgia EDP authorizing construction and operation of the solid waste handling facilities sought with the Application.

26.

BCDP has the financial capability to construct and complete the solid waste handling facilities sought with the Application.

27.

In addition to the Property purchase price of over 2.6 million dollars, to date BCDP has spent $1,109,436.15 on engineers, geologists, hydrogeologists, other professionals, and carrying costs, pursuing development of the solid waste handling facilities on the Property as sought with the Application and in reliance on Defendants' verbal and written assurances that the project was authorized and that Defendants wanted the solid waste handling facilities sited on the Property. This figure does not include BCDP's legal fees.

28.

Following issuance of the May 28, 2020 notice of site suitability from Georgia EPD, on August 14, 2020, BCDP received a scope of work and cost estimate from Harbin Engineering, P.C. for preparation of the Design and Operation plans, and other required submittals, in order to complete the processing of BCDP's Application with the Georgia EPD. BCDP stands to incur an additional $400,000 to $500,000 on engineering costs to Harbin Engineering, P.C. for completion of the required EPD permit submittals within a six (6) to nine (9) month time frame. A true and correct copy of the August 14, 2020 correspondence from Harbin Engineering, P.C. is

9

attached hereto as Exhibit "6". BCDP has accepted Harbin Engineering, P.C.'s August 14, 2020 scope of work.

29.

BCDP makes writings, records, or other memoranda of transactions, occurrences, or events in the regular course of its business. It is in the regular course of the business activity of BCDP to make such writings, records or other memoranda at the time of the act, transaction, occurrence, or within a reasonable time thereafter. I am familiar with and have personal knowledge of the business records of BCDP and they are within my custody and control. The Exhibits referenced in this Affidavit as attached to BCDP's Complaint or that are attached hereto are business records of BCDP and are maintained by BCDP for business purposes. Such business records were made at or near the time of the transaction referenced therein and/or are maintained in the ordinary course of BCDP's business.

So Sworn this 10th day of September, 2020.

John Kelly

Sworn to and subscribed before me
This 10th day of September, 2020.

Notary Public
My commission expires: 1/21/2024

## U S Rail, LLC
301 W Blackshear Ave. Waycross, GA 31503          912-218-8185

Curtis Jarrard                                                                February 28, 2017
PO BOX 315
Waycross, Georgia 31502
912-218-8185
Curtis@usrail.com

Brantley County Development Partners, LLC
Attention: Matt Roper

Please accept this letter on behalf of United States Rail, LLC doing business as "US RAIL". We are excited to announce our position, and indicate our intention to the pursuit of expanding our current operations in Brantley County.

The services which US Rail is currently providing have become overwhelmingly demanding, and have positioned our business for growth and expansion. We are currently operating in Ware County, and Camden County with both locations being leased properties. Our expansion plan includes adding the following services to our operation.
- Railcar Cleaning (General Service railcars)
- Flaring, and Purging (High Pressure Railcars)
- Railcar Scrapping
- Railcar Painting (interior, and Exterior)
- Trans-loading. (Rail to truck) (Truck to Rail)
- Railcar Repair

The following is a brief outline of the infrastructure needed to successfully develop and expand our operation as well as providing additional services.

- Rail served property (Served by CSX)
- 3 phase power
- Water/ Sewer services
- Track and or Track space.
- Covered building/rail-track accessible
- Administrative building

I look forward to working with you.

Sincerely,

Curtis Jarrard



EXHIBIT
tabbies
1



**GEORGIA**
DEPARTMENT OF NATURAL RESOURCES

ENVIRONMENTAL PROTECTION DIVISION

**Richard E. Dunn, Director**

**EPD Director's Office**
2 Martin Luther King, Jr. Drive
Suite 1456, East Tower
Atlanta, Georgia 30334
404-656-4713

05/28/2020

John Kelly
Brantley County Development Partners, LLC
2255 Cumberland Parkway Building 1700
Atlanta, Georgia 31029

SUBJECT:   **Site Suitability Notice for**
**US 82 Solid Waste Handling Facility – South, Brantley County**
**Proposed Municipal Solid Waste Landfill**
**APL 01301**

Dear Mr. Kelly:

The Solid Waste Management Program of the Environmental Protection Division (EPD) has completed its review of the *Site Assessment Report for the Brantley County Development Partners, LLC (BCDP), US 82 Solid Waste Handling Facility-South* prepared by Innovative Engineering Strategies, LLC (IES), dated December 2016 and revised October 2019.

Based on the data submitted in addition to your application, EPD has determined that the applicable siting standards can be met in accordance with Chapter 391-3-4-.05(1), provided the attached "Site Limitations" are met. This determination is based on information provided to date for EPD review and is subject to revision prior to permit issuance should errors be found in the submitted information or new information be provided relevant to this determination. This letter denotes only the demonstration of the ability to comply with siting standards for the proposed site and does not constitute approval to begin construction or operation of the disposal site. <u>This letter does not constitute a permit for the proposed solid waste landfill.</u>

Before a permit may be issued for the proposed solid waste disposal site, a Design and Operational Plan (D&O Plan), prepared in accordance with Chapter 391-3-4-.07(1), must be submitted for consideration by the EPD.

Additionally, the appropriate governing authority must hold a public hearing regarding the proposed landfill no less than two weeks prior to the issuance of any permit. At least 30 days prior to the public hearing, notices of the public hearing must be posted at the proposed site and advertised in the legal organ of the county or counties in which the proposed solid waste disposal facility will be located. A transcript of the public hearing proceedings and a reaffirmation of zoning consistency must be submitted to EPD prior to a final decision regarding the issuance of a permit for the proposed solid waste disposal facility.



EXHIBIT
2

Mr. John Kelly
Brantley County Development Partners
US 82 Solid Waste Handling Facility – Proposed MSWL
Brantley County
Page 2

After our review and evaluation of the D&O Plan, and the other required submittals, a Solid Waste Handling Permit will be either issued or denied. This Site Suitability Notice shall terminate upon a final decision to issue or deny the requested permit. Failure to submit to EPD an approvable Design and Operational Plan within one year from this date may result in permit denial.

Sincerely,

Richard E. Dunn, Director
Environmental Protection Division

Attachment

cc:   Brantley County Board of Commissioners
      Jim Guentert, Keith Stevens, John Sayer, William Cook, Susan Wood GA EPD
      EPD Coastal District
      Michael Biers, IES

File: Brantley County – US 82 Solid Waste Handling Facility - South [APL 01301], Permit

**Site Limitations**
**Brantley County- US 82 Solid Waste Handling Facility - South**
**Proposed Municipal Solid Waste Landfill**
**Page 1 of 2**

1. The area considered for acceptability includes only the area within the proposed permit boundary shown on Innovative Engineering Strategies, LLC (IES) Figure 1-02, *Boundary Survey and Topographic map of Site,* revision 2, dated October 2019.

2. Waste shall not be placed outside of the area identified as "Areas <u>Favorable</u> for Disposal of Solid Waste" shown on IES's Figure 4-01, *Areas Favorable and Unfavorable for Municipal Solid Waste Landfilling,* revision 2, dated October 2019.

3. A liner and leachate collection system shall be constructed under all areas proposed for municipal solid waste disposal.  The bottom of the liner system shall be constructed a minimum of five feet above the seasonal high groundwater contours shown on IES's Figure 2-01, *Boring Locations and Seasonal High Groundwater Table Map,* revision 2, dated October 2019 and no lower than an elevation of 60 feet.  An underdrain system shall be installed at the seasonal high groundwater surface under all landfill cells to ensure that groundwater cannot rise to within five feet of the bottom of the liner system. Furthermore, following construction, a demonstration shall be provided with each environmental monitoring report that shows there is a minimum five-foot separation between the water table and the bottom of the liner system.

4. A minimum 200-foot undisturbed buffer shall be maintained between the waste disposal boundary and the permitted property boundaries.

5. A minimum 500-foot buffer shall be maintained between the waste disposal boundary and any adjacent residences and/or water supply wells.

6. A minimum 50-foot undisturbed buffer shall be maintained between the waste disposal boundaries and all wetlands, except as permitted by the United States Army Corps of Engineers (USACE) and allowed by EPD.  A statement certifying that wetlands will not be impacted as a result of construction activities at the site shall be submitted.  This statement shall be signed and stamped by the professional engineer responsible for the Design and Operational Plan for the subject site. Wetland areas shall be delineated on the Design and Operational Plan.

7. A minimum 25-foot undisturbed buffer shall be maintained between the waste disposal area and any on-site springs, intermittent or perennial streams or surface water bodies.

8. All erosion control measures and/or diversion ditches shall conform to the *Erosion and Sediment Control Act* and be protective of the Satilla River, the Little Satilla River, the Turtle River and their perennial and intermittent tributaries.

**Site Limitations**
**Brantley County- US 82 Solid Waste Handling Facility - South**
**Proposed Municipal Solid Waste Landfill**
**Page 2 of 2**

9.  The facility shall not restrict the flow of the 100-year flood, reduce the temporary water storage capacity of the floodplain, or result in a washout of solid waste or material to pose a hazard to human health and the environment.

10. All soil borings, monitoring wells and piezometers that have been completed/installed at this site, shall be plugged and abandoned in accordance with the Water Well Standards Act. Additionally, all soil borings, monitoring wells and piezometers located within the proposed waste footprint shall be abandoned by overdrilling and filling with a non-shrinking cement/bentonite grout mixture via tremie pipe from the bottom to within 10 feet of the base of the landfill. The remaining borehole shall be filled with hydrated bentonite. The abandonment of all borings/piezometers/monitoring wells shall be supervised by a professional geologist (PG) or professional engineer (PE) registered to practice in the State of Georgia. A report documenting the abandonment shall be submitted to EPD prior to cell construction. This documentation shall be signed and stamped by the responsible professional geologist or engineer registered to practice in the State of Georgia.

11. Groundwater, surface water, and methane monitoring systems shall be installed at the site. Sampling parameters, sampling schedules, monitoring well construction and spacing shall adhere to the guidelines established in the EPD's *Rules of Solid Waste Management, Chapter 391-3-4*. The system design and monitoring requirements shall be detailed in a groundwater and surface water monitoring plan and methane monitoring plan that are prepared in accordance with the Georgia Manual for Groundwater Monitoring, EPD's September 2015 document, "Methane Monitoring at Solid Waste Facilities" and current USEPA Region IV guidance and are approvable by EPD. The outfall of all underdrain systems shall be incorporated into the facility's groundwater monitoring system.

12. Structural fill shall be required to fill the existing ponds and raise the surface grade so that it is a minimum of five feet above the seasonal high potentiometric surface shown on IES's Figure 2-01 *Boring Locations and Seasonal High Groundwater Table Map*, revision 2, dated October 2019 and to at least an elevation of 60 feet. This structural fill must meet requirements presented in the construction quality assurance plan of the Design and Operational (D&O) Plan.



# The Brantley Beacon

*"Shining light into the lives of others"*

PO Box 986 • Nahunta, GA 31553 • 912-462-2326 • facebook.com/brantley.beacon

Vol. 6 Edition 49 | Wednesday, June 17, 2020 | 8 pages

## County misquoted on Senate Bill 384

### House Natural Resources committee told Commission, Constitutional Officers say 'No'

**By RICK HEAD**
**Publisher**

Brantley County officials were blindsided when it was stated they "opposed" Senate Bill 384, a bill that would provide any new landfills within three miles of the Satilla River.

Five members of the Brantley County Commission (Chairman Chris "Skipper" Harris, Vice Chairman Brian Hendrix, Commissioner Ray Griffin, Commissioner Jesse Mobley, Commissioner Randy Davison) and four Constitutional Officers (Clerk of Court Debbie Sirmans, Sheriff Len Davis: Probate Judge Karen Batten: Tax Commissioner Pat Tumpkins) signed a letter dated June 8, 2020 in favor of SB 384 "for the establishment of a corridor that runs along the establishment of a corridor that runs along the "black water" rivers in Southeast Georgia, in order to protect the rivers and the sensitive areas related to these rivers."

The letter also states the Board of Commissioners and the Constitutional Officers oppose any permitting for a solid waste disposal facility in Brantley County.

During the Thursday, June 11 House Natural Resources committee meeting, Budget and Policy Analyst David Hartman of the House Budget and Research Office mistakenly made the reference the officials did not support the bill.

"I have already sent an email directly to all legislators on the committee notifying them of the mistake," wrote Hartman after it was brought to his attention of the slip up. "I have also talked to Madam Chair and we will make mention of the correction any time the bill is

"I want to apologize for the mistake. I read the final paragraph and, in my haste, mistakenly classified the Board as opposed. I should have been more thorough. Again, I am making sure all are aware of the Board's position."

Commissioner Davison said he was "astonished" and "nearly had a heart attack" when he heard the words uttered for non-support.

"We do support the bill," Davison said Monday, "and we do oppose a landfill. We sent the letter stating those facts. We did everything we were supposed to do and the opposite was announced."

"I've talked to (Rep.) Steven Meeks and Sen. (William) Ligon. We're (commissioners) going to send out more letters to let officials know where we stand on this matter. What was said was false."

Commissioner Jesse Mobley said he was unaware of the mistaken response when asked Monday afternoon.

"That is definitely incorrect," Mobley quickly responded. "I whole-heartedly support Senate Bill 384, 100 percent. This is a no-brainer as far as I'm concerned. It's not just for this issue today, but for any future endeavors that may arise and threaten this area."

Laura Early, Satilla Riverkeeper, also spoke.

"Our legislators have a lot on their plates as they resume the interrupted legislative session," said Early. "A major error like this may go unnoticed by some representatives, which would mean they are making decisions based on incorrect information. Legislators often



BRANTLEY COUNTY
GEORGIA

**BRANTLEY COUNTY BOARD OF COMMISSIONERS**

Post Office Box 398
117 Watt Street
Nahunta, Georgia 31553
(912) 462-5256
FAX (912) 462-5538
Land Area of Northline

June 8, 2020

Dear Georgia Department of Natural Resources Legislative Committee:

We recognize the virtual values conference in 6/6/20, the Board of Commissioners of Brantley County, together with the Constitutional Officers of Brantley County, are in favor of Senate Bill 384, 384 sponsored by Sen. William Ligon, for the establishment of a corridor that runs along the "black water" rivers in Southeast Georgia, in order to protect the rivers and the sensitive areas related to these rivers. The Satilla River is a "black water" river that runs the length of Brantley County.

In conjunction with Senate Bill 384, the Board of Commissioners and the Constitutional Officers oppose any permitting for a solid waste disposal facility in Brantley County.

The Constitutional Officers

Debbie Sirmans, Clerk of Court

Len Davis, Sheriff

Karen Batten, Probate Judge

Patricia Tompkins, Tax Commissioner

The Board of Commissioners

Chris Harris, Chairman

Brian Hendrix, Vice Chairman

Ray Griffin, Commissioner

Randy Davison, Commissioner

EXHIBIT

3

# A Resolution
## of the
## Brantley County Board of Commissioners

### Adopting an Amendment to
### Brantley County, City of Hoboken, and City of Nahunta
### Solid Waste Management Plan

WHEREAS,      Brantley County and the Cities of Hoboken and Nahunta jointly participated in the development and submission of an Amendment to the Brantley County, City of Hoboken, and City of Nahunta Solid Waste Management Plan ("SWMP"), as required by the Georgia Solid Waste Management Planning Act of 1990; and

WHEREAS,      the Brantley County Board of Commissioners is charged with providing for the public welfare of the citizens and environment of Brantley County, Georgia; and

WHEREAS,      the Board of Commissioners desires to make sure that the waste disposal needs of the citizens of Brantley County, Georgia are properly provided for; and

WHEREAS,      Chapter 8 of Title 12 of the Official Code of Georgia Annotated, as amended by Act No. 76, Georgia Laws 2011 was passed and signed into law during the 2011 session of the Georgia General Assembly authorizing counties and cities to establish their own procedures and standards for drafting and updating their SWMPs; and

WHEREAS,      O.C.G.A. § 12-8-31.1 no longer requires that counties and cities follow the minimum planning standards or planning guidance established by the Georgia Department of Community Affairs (DCA); and

WHEREAS,      Brantley County and the Cities of Nahunta and Hoboken have prepared a comprehensive SWMP dated March 2006 that, among other provisions:

         i. Demonstrates solid waste collection capabilities and disposal capacity;

         ii. Identifies the type and size of solid waste handling facilities within the county; and



EXHIBIT
4

iii. Identifies the sites which are not suitable for solid waste handling facilities based upon environmental and land use factors; and

WHEREAS, the Amendment to the SWMP is in compliance with the minimum standards and Procedures of the Georgia Solid Waste Management Planning Act of 1990; and

WHEREAS, a public notice to consider adoption of the Amendment to the SWMP was published in Brantley County's legal organ, the Brantley County Express on May 10, 2017, May 17, 2017, and May 24, 2017; and

WHEREAS, Brantley County Board of Commissioners through its duly elected Board of Commissioners, after notice to the public, held a joint public hearing on June 1, 2017, in accordance with local public hearing requirements, to receive public input and comments on the proposed amendment to the current Brantley County, City of Hoboken, and City of Nahunta Solid Waste Management Plan attached to this Resolution as Exhibit "A";

WHEREAS, Said Amendment to the March 2006 Brantley County, City of Hoboken, and City of Nahunta Solid Waste Management Plan has been considered by the Brantley County Board of Commissioners at a public meeting following the public hearing; and

WHEREAS, in adopting the Amendment to the to the March 2006 Brantley County, City of Hoboken, and City of Nahunta Solid Waste Management Plan, it is the intent and purpose of the Board of Commissioners to:

a. Protect the health, safety, and welfare of Brantley County's citizens and the public;

b. Protect the environment of Brantley County that includes its rivers, lakes, streams, soil, plant and wildlife;

c. Maintain and protect the historical, cultural, and image of the County;

d. Protect the use and enjoyment of Brantley County's residences, schools, churches, and parks;

e. Protect the citizens of Brantley County's property values;

2

e. Ensure fair and consistent enforcement of Brantley County's Land Use Ordinance.

Having considered the following studies, reports, and other materials that the Board of Commissioners finds to be relevant, useful, and applicable to Brantley County and to the March 2006 Brantley County, City of Hoboken, and City of Nahunta Solid Waste Management Plan: "Zoning Buffers: Solution or Panacea?", American Society of Planning Officials, Information Report No. 133. April 1960; Hudak, S., "East Orange residents raise stink over lingering landfill stench", Orlando Sentinel, September 17, 2015; Lee, F.G et al. "Overview of Subtitle D Landfill Design, Operation, Closure and Postclosure Care Relative to Providing Public Health and Environmental Protection for as Long as the Wastes in the Landfill will be a Threat", January 2004; Sylvester Mumford House, National Register of Historic Places Inventory Certification. US Department of Interior, 1982; Soil Series Descriptions for Brantley County, US Department of Agriculture, National Cooperative Soil Survey; Wall, M., "Tons of garbage: A very unwanted neighbor NIMBY fights go statewide and get nasty", Creative Loafing, September 18, 2003; Nelson, Arthur C., John Genereux and Michelle Genereux. 1997. "Price effects of landfills on House Value Strata". Journal of Urban Planning and Development. Vol. 123, No. 3, September; "School Siting Guidance, Ch. 4. Environmental Siting Considerations", p. 55. USEPA, 2011; "Landfill gas and development near landfills–advice for planning authorities and developers", Environmental Protection Authority, South Australia. EPA 969/12, February 2012; Guideline for Educational Facility Site Selection 160-5-4-.16 (a) 6 Facility Site, Construction, and Reimbursement Georgia Department of Education, Georgia Department of Education. May, 2012; Sacramento Metropolitan Air Quality Management District, CEQA Guide December 2009, (Revised 2016), Chapter 7: Odors; Brantley County Airport Meteorological Wind Rose 30 Year Hourly Average, https://www.meteoblue.com/en/weather /forecast/modelclimate/ brantley-county-airport united-states-of-america 4184154; "Georgia Infrastructure Report Card, Solid Waste" American Society of Civil Engineering, Georgia Section. 2014. (South and SE Georgia not ideal for landfill, shallow groundwater, poor soil); Bouvier, R. A. et al, "The Effect of Landfills on Rural Residential Property Values: Some Empirical Evidence". Journal of Regional Analysis & Policy, JRAP (2000)30:2. 2000; "A REGULATORY STRATEGY FOR SITING AND OPERATING WASTE TRANSFER STATIONS, A Response to a Recurring Environmental Justice Circumstance: The Siting of Waste Transfer Stations in Low-Income Communities and Communities of Color", USEPA, EPA 500-R-001. March 2000; "Waste Transfer Stations: A Manual for Decision-Making", USEPA, Office of Solid Waste and Emergency Response (5306W), EPA 530-K-01-003. January, 2001; "Sites for Our Solid Waste: A Guidebook for Effective Public Involvement", USEPA, Office of Policy, Planning and Evaluation; "CRITERIA FOR PERFORMING SITE ACCEPTABILITY STUDIES FOR SOLID WASTE LANDFILLS IN GEORGIA", Georgia Department of Natural Resources, Georgia

Environmental Protection Division, Georgia Geologic Survey, Circular 14. 1991 (Amended 1997).

THEREFORE,   the Brantley County Board of Commissioners does hereby authorize the adoption of the Amendment to the SWMP attached hereto as Exhibit "A".

IN WITNESS WHEREOF, this resolution has been duly adopted on behalf of the Brantley County Board of Commissioners on the 5th of June , 2017.

Chris "Skipper" Harris, Chairman
Brantley County Board of Commissioners

Randy Davison, Commissioner
Brantley County Board of Commissioners

Ray Griffin, Commissioner
Brantley County Board of Commissioners

Brian Hendrix, Commissioner
Brantley County Board of Commissioners

Jesse Mobley, Commissioner
Brantley County Board of Commissioners

Attest:

Rene T. Herrin, Brantley County Clerk

[County Seal affixed below]

4

# CONTRACT FOR SOLID WASTE DISPOSAL SERVICES

THIS CONTRACT FOR SOLID WASTE DISPOSAL (this "Agreement") is entered into this __2 rd__ day of __September__, 20 __20__, ("Agreement Date") by and between ATLANTIC WASTE SERVICES, INC., herein referred to as "ATLANTIC", a Georgia Corporation, and BRANTLEY COUNTY DEVELOPMENT PARTNERS, LLC., A Georgia Limited Liability Company, herein referred to as "BCDP." The Effective Date of this Agreement shall be the first day of permitted operation of BCDP's solid waste disposal facility pursuant to the issuance of a Solid Waste Handling Disposal Permit by the Georgia Environmental Protection Division of the Georgia Department of Natural Resources; herein the Georgia EPD.

WHEREAS, BCDP has applied to the Georgia EPD pursuant to O.C.G.A § 12-8-20 et seq. for a permit to construct and operate a non-hazardous solid waste handling facility, herein the "MSW Facility" for the disposal of non-hazardous municipal solid waste in an unincorporated area of Brantley County, Georgia;

WHEREAS, ATLANTIC is in the business of collection, hauling and disposal of residential and commercial municipal solid waste generated in the United States of America, specifically including, but not limited to Jasper County, South Carolina, Beaufort County, South Carolina, and various counties in the coastal Georgia region of the State of Georgia all with in proximity to the proposed MSW facility located in Brantley County;

WHEREAS, ATLANTIC desires to dispose of non-hazardous solid waste in BCDP's landfill for an agreed-upon set price and terms.

THEREFORE, the parties agree as follows:

1. Beginning the first day of BCDP's permitted operation of the municipal solid waste disposal facility, herein referred to as the "Starting Date" and continuing for a period of ten (10) years from the Starting Date, ATLANTIC agrees to put or pay, deliver for handling or disposal not less than 1,000 tons of Municipal Solid Waste per day to the landfill located at BCDP's MSW FACILITY for handling and disposal located on Highway 82, Nahunta, Georgia (herein referred to as "Landfill").

2. **DISPOSAL DATES:** BCDP agrees to accept for safe handling and disposal the municipal solid waste for timely and safe disposal handling of ATLANTIC's municipal solid waste at the BCDP solid waste handling facility on a weekly basis during BCDP's usual and customary hours of operation (7 AM to 6 PM EST, Monday through Friday). BCDP agrees further to accept ATLANTIC'S solid waste at the LANDFILL and give ATLANTIC the immediate right to disposal on a first priority basis.

3. **DISPOSAL RATE:** ATLANTIC agrees to pay BCDP a monthly, solid waste disposal rate based on Seventeen Dollars ($17.00) per ton for not less than One Thousand (1,000) tons per day each month, or not less than Seventeen Thousand Dollars ($17,000.00) for each day of operation, excluding weekends and holidays if closed, every calendar month.



EXHIBIT

5

Should ATLANTIC dispose of more than One Thousand (1000) tons on any one day of operation, ATLANTIC agrees to pay, and BCDP agrees to accept the excess daily disposal of municipal solid waste for the additional disposal rate of Seventeen Dollars ($17.00) per ton (herein "Tipping Fee") for each ton exceeding the 1,000-ton daily limit (herein "Excess Waste Tonnage"). In the event that the LANDFILL remains open for the disposal of storm debris for longer periods of time or weekends, the same rate per ton and priority of disposal rights shall prevail. Notwithstanding, the amount due for the right to put or dispose of any solid waste delivered to BCDP's LANDFILL by ATLANTIC for disposal shall be Seventeen Thousand Dollars ($17,000.00) times the number of days of operation, plus the cost of any Excess Daily Waste Tonnage. If for any reason the LANDFILL is closed during the normal working hours on a business day, then ATLANTIC shall only have to pay the Tipping Fee for the amount of solid waste disposed of in the LANDFILL, if any.

4. **BILLING:** BCDP shall bill ATLANTIC monthly, in arrears, for the cost of the right to put or pay for each day of operation during the month, plus any Excess Daily Tonnage disposed of in the landfill. The monthly invoice shall be due upon receipt and carry a late fee of one and one-half percent monthly for any payment received in excess of thirty (30) days from the date of the invoice.

5. **TERM:** The term of this Agreement shall commence upon the first day of permitted operation of the landfill and the delivery of solid waste to the landfill for disposal and continue for a period of ten (10) years. This Agreement may be terminated by either party ninety (90) days, prior written receipt of said notice delivered by certified United States Mail. Notwithstanding anything else contained herein to the contrary, this Agreement is entirely contingent upon BCDP's receipt of permit from the Georgia EPD to construct and operate the proposed MSW Facility and in the event BCDP has not secured such permit on or before Nine (9) months from the Agreement Date, this Agreement shall stand automatically terminated and be rendered null and void.

6. **NOTICE:** Notice to the parties shall be sent to the following addressed:

Brantley County Development Partners, LLC.

_____

_____

_____

Atlantic Waste Services, Inc.
125 Pine Meadow Dr
Pooler GA 31522
Ben @ Atlanticwaste.com

7. **TIME:** TIME IS OF THE ESSENCE IN THE PERFORMANCE OF THIS CONTRACT.

IT IS AGREED THIS 5th day of September 2020.

BRANTLEY COUNTY DEVELOPMENT PARTNERS, LLC

Managing Member: John W. Kelly

ATLANTIC WASTE RESOURCES, INC.

Vice President: Ben B. Wall Jr

Secretary:



# HARBIN ENGINEERING, P.C.
CIVIL & ENVIRONMENTAL CONSULTANTS

J. Steven Harbin, P.E.
*President*

G. Curtis Reynolds, P.E.
*Vice President*

August 14, 2020

Mr. John Kelly
Managing Partner
Brantley County Development Partners LLC
2255 Cumberland Pkwy
Building 1700, 2nd Floor
Atlanta, GA 30339

Subject:    **Brantley County Development Partners LLC**
**Design and Permitting of a Solid Waste Handling Facility**
**Brantley County, Georgia**
**H.E. Project No. 1390-014-01**

Dear Mr. Kelly,

Harbin Engineering, P.C. (Harbin) is pleased to provide this proposal to Brantley County Development Partners, LLC (BCDP), for the above referenced project. The proposed project is a Design and Operation plan (D&O) for a municipal solid waste landfill with the site provisions for a future waste to energy/fuels/value facility.

## Background:

Mr. Matt Roper contacted Harbin in February, 2014 to inquire if Brantley County was interested in hosting a private MSW landfill. Brantley County was interested and they suggested the ±2,389 acre Magnolia Landholdings, LLC tract, set aside for a future industrial park, was available. A biomass power plant had been planned for the site but was unsuccessful and was never constructed.

On May 18, 2020 Georgia EPD issued a Notice of Site Suitability for BCDP's solid waste handling facilities sought by the application dated and submitted to EPD on December 29, 2016. Now with the receipt of a site suitability letter, Harbin will assist BCDP in the required public participation and will prepare the D&O Plans, calculations and other EPD required permit application documents for submittal to EPD for their review and approval.

Please be aware, Harbin cannot guarantee issuance of a permit for a solid waste handling facility. Forces beyond our control include but are not limited to, the following: political and/or public opposition with legal challenges and the permit appeal can impede, delay, or prevent the issuance of a final and effective solid waste facility handling permit.

**EXHIBIT**
**6**

41 West Johnston Street · Forsyth, Georgia 31029 · Phone: (478) 992-9122 · Fax: (478) 994-0439
www.harbinengineering.com

Design and Permitting of a Solid Waste Handling Facility
U.S. 82 Solid Waste Handling Facility – South
Brantley County, Georgia

Mr. John Kelly
June 12, 2020
Page 2

Listed below is the more detailed work tasks required:

## Work Tasks

1. FIN Meetings (If Necessary) (Not included in our budget estimate)
2. Prepare Design and Operational (D&O) Plans

   a. Anticipated Drawings:

Sheet No.    Description

-Title Sheet

1. Index to Drawings and Legend
2. Boundary and Legal Description
3. Existing Topographical Survey
4. Underdrain System Plan
5. Top of Clay Liner Grading Plan
6. Leachate Collection Plan
7. Final Grading Plan
8. Final Drainage Plan
9. Erosion Control Plan
10. Centerline Profiles
11. Landfill- Cross Sections A&B
12. Landfill- Cross Sections C&D
13-35. Sequence of Fill- Plans as needed for each cell/phase development estimated to be between 25-35 sheets
36. Typical Construction Sequence
37. General Construction Details
38. Erosion Control Details
39-40. Liner and Leachate System Details
41. Final Cover System Details
42. Operational Procedures and Prohibited Waste Exclusion Plan
43. Closure/Post Closure Care Plan
44-50. Phased Closure Plans
51-53. Construction Quality Assurance Plan
54. Environmental Monitoring Location Plan
55- 58. Environmental Monitoring Plan including groundwater, surface water,

Design and Permitting of a Solid Waste Handling Facility
U.S. 82 Solid Waste Handling Facility – South
Brantley County, Georgia

Mr. John Kelly
June 12, 2020
Page 3

methane and leachate management plans.
59.   Methane Gas Monitoring Plan

   b. Complete design calculations including slope stability, settlement, leachate
      generation, under-drain design and stormwater management.

   c. Provide NPDES storm water plan for Industrial Activity Permit.

   d. Complete application of Title V Air Permit.

Note: Plans and technical specifications for individual cell construction are not included
in EPD permit plans and therefore are not included in this proposal.

3.   Submit D&O Plans to BCDP for Review
4.   Submit D&O Plans and permitting package to EPD
5.   Harbin addresses EPD comments and submits to EPD for approval
6.   Provide the Public Notice and schedule Final Public Hearing with County
7.   Conduct Final Public Hearing
8.   Submit Transcript and Hearing Documentation to EPD
9.   Obtain Re-Confirmation of Zoning Letter (No Zoning in Brantley County) and
     consistency with Solid Waste Management Plan if applicable. Letters are not included
     in this scope of work.

**Budget Estimate: $400,000-$500,000**

Please note that the budget estimate is significantly larger than typically expected due to the
intense and particularly directed opposition by the host local government, Brantley County. The
project started with a supportive County effort and has now evolved into severe opposition. It is
our professional opinion that the County's oppositional pressure on EPD resulted in significant
delay to the project with a resulting large cost increase to the project. This cost increase included
additional field work and testing not normally expected or required by EPD based upon our prior
experience. Therefore, we have increased our overall budget as listed to hopefully allow for the
additional scrutiny, resulting from on-going additional opposition, in EPD plan reviews.

Our Budget Estimate does not include the following: FIN process if activated; detailed plans of
future Waste-to-Energy Facility; or any litigation costs. All costs associated with advertising
public notices, meetings, and retaining a court reporter are extra, and to be borne by BCDP.

The time to complete the above scope of work and submit the D&O plan and calculations to EPD
for review is estimated to be 6 – 9 1390014 months from the date of this proposal

Design and Permitting of a Solid Waste Handling Facility
U.S. 82 Solid Waste Handling Facility – South
Brantley County, Georgia

Mr. John Kelly
June 12, 2020
Page 4

Enclosed are two (2) copies of our standard Proposal Acceptance Sheet. Please sign both copies and return one copy to our office. Our receipt of the signed copy will serve as our notice to proceed.

We will invoice BCDP/CP monthly for the work completed that month. We will not exceed the Budget Estimate without receiving approval in writing from BCDP.

We appreciate the opportunity to work with BCDP/CP on this project. Should you have any questions or need additional information, please contact us.

Sincerely,

**HARBIN ENGINEERING, P.C.**

J. Steven Harbin, P.E.
*President*

cc: Curtis Reynolds, P.E.
    Michael W. Biers, P.E.

# HARBIN ENGINEERING, P.C.

41 West Johnston Street
Forsyth, GA 31029
Phone (478) 992-9122
Fax (478) 994-0439

### PROPOSAL ACCEPTANCE SHEET

PROJECT NO. 1390-014-01      DATE August 21, 2020

PROJECT NAME Preparation of D&O Plans

DESCRIPTION See letter proposal dated August 14, 2020

CLIENT NAME AND ADDRESS (PERSON RESPONSIBLE FOR PAYMENT)

Mr. John Kelly, Managing Partner

Brantley County Development Partners, LLC

6085 Forsyth Rd

Macon, Ga 31210

PROPERTY OWNER NAME & ADDRESS (IF DIFFERENT THAN CLIENT)

## PAYMENT TERMS

Net cash upon receipt of invoice. A late payment charge of 18% per annum or the maximum amount allowed by law may be added in the event payment is not made within 30 days of the date of the invoice.

## INSURANCE

Our company agrees to maintain, subject to normal industry exclusions, statutory workers' compensation coverage, employer's liability, comprehensive general liability insurance coverage, automotive liability insurance coverage, and professional liability coverage, in accordance with the laws of the state applicable to the work performed. Certificates can be issued upon request identifying details and limits of coverage mutually agreed between the parties.

## PROPOSAL ACCEPTANCE:

The Terms and Conditions of this Proposal, including the Terms of the Agreement are accepted this 25th day of August, 2020

Name of Individual, Firm or Corporation Brantley County Development Partners LLC

Signature _____ Title Member

P.O. Number (if applicable)_____

**TERMS AND CONDITIONS**

**1. WARRANTY AND LIABILITY**

A. Standard of Care - Services rendered under this agreement will be performed in accordance with that degree of care and skill ordinarily exercised by competent members of our profession in the performance of services of a similar nature and under similar conditions practicing in the same or a similar locality. NO OTHER WARRANTY OR GUARANTEE, EXPRESS OR IMPLIED, IS MADE OR INTENDED BY THE PROPOSAL FOR CONSULTING SERVICES OR BY FURNISHING ANY ORAL OR WRITTEN REPORTS OF THE FINDINGS MADE, OR BY ANY REPRESENTATIONS MADE REGARDING THE SERVICES INCLUDED IN THIS AGREEMENT.

B. Limitation of Liability - Client's remedies with respect to defects or deficiencies in our company's services which are correctable are limited to re-performance of such portion of the Services or refund of the amount of compensation paid to us for such portion of the services. It is agreed that Client will limit any and all liability of our company, its agents or employees, to Client on account of any other error or omission, whether in contract, tort (including negligence, whether sole or concurrent) or otherwise arising out of, connected with, or resulting from the services provided pursuant to this agreement to a sum not to exceed Fifty Thousand Dollars ($50,000) or the amount of the total fee paid by Client, whichever is greater. If Client prefers to have higher limits of professional liability, the limits can be increased to a maximum of One Million Dollars ($1,000,000) upon written request from Client at the time of the acceptance of this proposal, provided that Client agrees to pay an additional consideration because of the greater risk insured. In no event shall our company be liable for any special, indirect, incidental or consequential loss or damages or punitive damages.

C. Claims - In the event that Client makes a claim against our company, at law or otherwise, for any alleged error, omission, or other act arising out of the performance of these professional services and Client does not succeed in obtaining judgment thereon, or if legal action is brought by our company against Client to enforce any of the obligations hereunder and we succeed in obtaining judgment against Client thereon, then, in either event, Client shall pay all costs incurred by us, including but not limited to staff time, attorney's fees, court costs and all other claim-related expenses.

**2. FIELD MONITORING**

Client understands that our company may make on-site observations appropriate to the work or construction stage. If used in the Proposal on other contract documents, the words "supervision", "inspection", or "control" are used to mean periodic observation of the work and the condition of tests to verify substantial compliance with the plans, specifications and design concepts. Monitoring by our employees does not mean that our company is observing placement of all materials. Unless otherwise specified, all firms providing services on the project are direct contractors of the Client, and the Client agrees that our company will not assume responsibility for any contractor's means, methods, techniques, sequences, or procedures of construction and that the field services provided by our company will not relieve any Contractor of its responsibilities for performing the work in accordance with the plans and specifications

**3. SAFETY**

Should Client or its contractors be conducting activities on Site, our company shall not be responsible for site safety and shall have no right or obligation to direct, interfere with, or stop the work of Client's contractors, agents, or employees. Should our company provide observations or monitoring services at the job site during construction, Client agrees that, in accordance with generally accepted construction practice, the Contractor, or Client, will be solely and completely responsible for working conditions on the job site, including safety of all persons and property during the performance of work and compliance with OSHA regulations, and these regulations will apply continuously and will not be limited to working hours. Any monitoring of the Contractor's procedures conducted by our company does not include review of the adequacy of the Contractor's safety measures in, on, adjacent to, or near the project Site.

**4. REPRESENTATION OF CLIENT**

Client warrants that sufficient funds are available or will be available upon receipt of our invoices to make payment in full for the services rendered. Where necessary to the services to be performed, Client agrees to furnish our company with all data, reports, maps, surveys, and other materials and information which are accessible to Client regarding the property which is the subject of the services. Client warrants that no information material to the performance of the services has been withheld, and that all information provided to our company regarding the project and project location is complete and accurate to the best of the Client's knowledge. Client agrees to provide our company and its agents, subcontractors and consultants and their equipment a right of entry onto the project Site and permission to perform the services included in this Agreement.

**5. PROJECT SITE**

Reasonable precautions will be taken to minimize damage to the Project Site from our company's activities and use of equipment. Client recognizes that the performance of the services may cause alteration or damage to the Site which is inherent in the work, and that Client will not look to us for reimbursement or hold our company liable or responsible for such alteration or damage. Should Client not be owner of the property, then Client agrees to notify the owner of the aforementioned possibility of unavoidable alteration and damage and to indemnify and defend our company against any claims by the owner or persons having possession through the owner which are related to such alteration or damage.

It shall be responsibility of the Client or his duly authorized representative to disclose the presence and accurate location of all hidden or obscure man-made objects relative to field tests or boring locations. Our company will take reasonable precautions to prevent damage to property. We will not be liable for injury arising from damage to subterranean structures (pipes, tanks, telephone cables, etc.) the existence of which are not called to our attention and correctly shown on the plans furnished us. Client agrees to indemnify and hold harmless our company from all claims, suits, losses, personal injuries, death and property liability resulting from unusual subsurface conditions and for damages to subsurface structures owned by Client or third parties occurring in the performance of the proposed services, whose presence and exact locations were not revealed to us in writing, and to reimburse our company for expenses in connection with any such claims, or suits, including reasonable attorney fees.

**6. UNFORESEEN OCCURRENCES**

If, during the performance of services hereunder, any unforeseen hazardous substance, material, element or constituent or other unforeseen conditions or occurrences are encountered which, in our company's sole judgment, significantly affects or may affect the services, the risks involved in providing the services, or the recommended scope of services, we will promptly notify Client thereof. Subsequent to such notification, we may: (a) If practicable, in our judgment and with approval of Client, complete the original scope of services in accordance with the procedures originally intended in the Proposal, (b) Agree with Client to modify the scope of services and the estimate of charges to include study of revision to be in writing and signed by the parties and incorporated herein; or (c) Terminate the services effective on the date of notification pursuant to the terms of Termination of Contract.

**7. TERMINATION OF CONTRACT**

Client may terminate this Agreement at any time for any reason, provided that fifteen (15) days prior written notice of termination is given to our company. In the event that Client requests termination of the work prior to completion, we reserve the right to complete such analyses and records as are necessary to protect our professional reputation, to complete a report on the work performed to date. A termination charge to cover costs thereof in an amount not to exceed thirty percent (30%) of charges incurred to date or stoppage of work may, at our discretion, be made. Our company may terminate this work at any time due to non-payment of invoices according to the Payment Terms, failure of the Client to provide information necessary to the performance of the services hereunder, or any substantial failure by Client to perform in accordance with the terms hereof. The termination of this Agreement by our company does not relieve the Client of any liability for fees due.

**8. INDEMNITY**

Except to the extent such are caused by negligence or intentional misconduct of our company, its agents, subcontractors, or employees, Client agrees, to the fullest extent allowed by law, to hold harmless and defend our company, its agents, subcontractors, and employees, from and against any and all claims, losses, liabilities, penalties and costs (including but not limited to attorney's fees and expenses) which our company, its agents, subcontractors, or employees, may incur, may become responsible for or pay out as a result of any suit or claim, by any third party, including any regulatory agency or authority, against our company, its agents, subcontractors and employees; (1) alleging exposure to or damage from material, elements or constituents at or from the project which is subject of this Agreement before, during or after the services provided pursuant to this Agreement, which is alleged to have resulted in or caused disease or any adverse health condition to any third party or resulted in cost for remedial action, uninhabitability of property, or other property damage except, (2) alleging injury or health risk to anyone arising as a result of unanticipated occurrences of hazardous substances known to the Client but not disclosed to our company; (3) Client's violations or alleged violations of RCRA, CERCLA, the Federal Clean Water Act, or any other federal or state environmental Acts or regulations; (4) arising from modifications made or permitted by the Client to devices, or the operation of such devices, etc, in a manner other than specified by our company; and (5) otherwise arising out of operation and management of the project or work on which our company has rendered design, engineering, consulting, or other services under this Agreement.

**9. GOVERNING LAW**

This Agreement shall be governed in all respects by the laws of the State of Georgia.

**10. PROTECTION OF SUCCESSOR CONSULTANT**

In consideration of the risks and rewards involved in this Project, the Client agrees, to the maximum extent permitted by law, to indemnify and hold harmless the Consultant from any damages, liabilities or costs, including reasonable attorneys' fees and defense costs, arising or allegedly arising from any negligent acts, errors or omissions by any prior consultant employed by the Client on this project and from any claims of copyright or patent infringement by the Consultant arising from the use or reuse of any documents prepared or provided by the Client or any prior consultant of the Client. The Client warrants that any documents provided to the Consultant by the Client or by the prior consultant may be relied upon as to their accuracy and completeness without independent investigation by the successor Consultant and that the Client has the right to provide such documents to the successor Consultant free of any claims of copyright or patent infringement or violation of any other party's rights in intellectual property.

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing pleading via electronic service through the e-filing system and by placing a copy of same in the United States Mail, properly addressed with adequate postage thereon upon:

Dana K. Maine
Rachael Slimmon
Freeman Mathis & Gary, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339

This 11th day of September, 2020.

/s/ Kyler L. Wise
Kyler L. Wise

101409.1 141566-000002