IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| BRANTLEY COUNTY DEVELOPMENT PARTNERS, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION FILE |
| | : | |
| BRANTLEY COUNTY, GEORGIA by and | : | NO. 5:19-CV-00109 |
| through its Chairman and Members of the | : | |
| Brantley County Board of Commissioners; | : | |
| CHRIS "SKIPPER" HARRIS, RANDY | : | |
| DAVIDSON, BRIAN HENDRIX, JESSE | : | |
| MOBLEY AND RAY GRIFFIN, all in their | : | |
| individual and official capacities as | : | |
| Commissioners, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND SUPPLEMENT TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Plaintiff Brantley County Development Partners, LLC ("Plaintiff") hereby submits its Reply to Defendants' Memorandum of Law In Opposition to Motion for Summary Judgment ("Response") [Dkt. No. 150] and Supplements its Motion for Summary Judgment against the Defendants, filed on October 8, 2021 [Dkt. No. 141]. As grounds therefor, Plaintiff shows this Honorable Court as follows:

## I.      INTRODUCTION

On October 8, 2021, Plaintiff filed its Motion for Summary Judgment, supportive Memorandum of Law and Statement of Undisputed Material Facts (collectively, "Summary Judgment") against the Defendants.  [Dkt. No. 141].  Plaintiff seeks Summary Judgment against Defendants on Plaintiff's vested rights claim and its void for vagueness claims under both the

United States and Georgia Constitutions.  With Summary Judgment, Plaintiff also moves this Court to enter permanent injunctive relief against the Defendants.

In an effort to un-do their previous official approval of Plaintiff's solid waste handling facilities, done by unanimous vote at public hearing, and to manufacture obstacles to Plaintiff's clear right to legal relief, Defendants twist themselves into knots with their continuing contradictory positions.  Defendants assert that Plaintiff's claims are both too early and too late. [Dkt. No. 48, at 5-8; 8-13].  Defendants argue that Defendants' challenged zoning decisions are both quasi-judicial (non-legislative) and legislative (so as to invoke "legislative immunity").  [Dkt. No. 48, at 26-27; 33-34].  Defendants unanimously voted to issue the February 6, 2015 verification letters and then sent the signed letters to Matt Roper.  [Dkt. No. 100 at 36, Plaintiff's Ex. "3"]. Yet, years later, Defendants claim that the letters were not validly signed and that they somehow did not know Plaintiff intended to site a landfill on its Property.

Defendants' pattern of contradictory positions continues here.  After previously conceding, as they must, that Plaintiff acquired vested rights in December 2016 by virtue of becoming a permit applicant, Defendants now argue Plaintiff has no vested rights.  [Compare Dkt. No. 66 at 79-80; Dkt. No. 85 at 5 With Dkt. No. 150 at 8-12]. After voting unanimously in February 2015 to issue the letter verifying that Plaintiff's solid waste facilities were consistent with the 2006 SWMP, Defendants now argue there is no consistency and that Plaintiff should suffer harm **because their own official act was void**. [1]  In May 2017 Deen Strickland sent a letter to Plaintiff telling Plaintiff its Property was going to be zoned Light Industrial.  [Dkt. No. 1-19].  Then, on June 15, 2017, Defendants passed the 2017 Zoning Ordinance and Map, imposing Light Industrial zoning on the

---

[1] Unless otherwise noted, capitalized terms used herein shall have the same meaning as capitalized terms used by the Court in the Orders granting Plaintiff's Motion for Preliminary Injunctive Relief, granting in part and denying in part Defendants' Renewed Motion to Dismiss and as used in Plaintiff's Summary Judgment.  [*See* Dkt. Nos. 114, 135 & 141].

Property and forbidding Plaintiff's solid waste facilities.  [Dkt. Nos. 58-4; 86-4].  There have been

no changes to the Property's zoning since.  Yet, Defendants now argue there is no evidence that

Defendants' 2017 Zoning Ordinance applies to Plaintiff. [2]

Defendants previously argued that Plaintiff was required to subject itself to the Heavy

Industrial Special Exception Process for landfills under the 2016 Zoning Ordinance. [Dkt. No. 66,

at 79-80].   Yet, Defendants now argue there are no facts showing that the 2016 Zoning Ordinance

has ever been applied to Plaintiff.  [Dkt. No. 150 at 16].  To avoid contempt, Plaintiff issued its

reaffirmation letter to the Georgia EPD.  [Dkt. No. 153].  Yet, Defendants still refuse to rescind

the July 9, 2020 Resolution withdrawing their initial verification letters and they still contend those

letters are invalid. [3]

All this to say, Defendants' Response to Summary Judgment, with its continuing shifting

and contradictions positions, is but the latest in a long line of examples demonstrating Plaintiff's

need for permanent injunctive relief.   Defendants' change of position on important issues, all

while Plaintiff continues to make expenditures and incur obligations pursuing a permit from

Georgia EPD, highlights Plaintiff's need for final judgment and permanent injunctive relief from

this Court.  As a businessowner, landowner and corporate citizen of Brantley County, Plaintiff is

legally entitled to the relief sought and to the ability to operate, once and for all, with some

regulatory certainty free from Defendants' continuing quest to pull the rug out from underneath

Plaintiff through illegal regulatory action.  As set forth below, within previous briefing and within

---

[2] This is a strange argument indeed given that the 2017 Zoning Ordinance and Map imposing the Light Industrial zoning on the Property are in evidence before this Court.  [Dkt. Nos. 58-4; 86-4].

[3] Followed to its logical conclusion on this point, to avoid this Court's contempt, Defendants issued a letter reaffirming an official act which they concomitantly claim to be invalid and void. Plaintiff's need for permanent injunctive relief to stop Defendants' shifting positions and regulatory sleight of hand is abundantly clear.

previous Orders from this Court, none of Defendants' arguments have merit.  Plaintiff's Motion

for Summary Judgment should be granted and permanent injunctive relief entered.

Compounding Defendants' regulatory mischief, on October 14, 2021, after the filing of

Plaintiff's Summary Judgment, Defendants took new regulatory action that, unless enjoined by

this Court, further impedes, delays, thwarts and frustrates Plaintiff's vested right to develop its

land as sought with the Application to the Georgia EPD.  Specifically, on October 14, 2021,

Defendants passed a new Solid Waste Management Plan (the "2021 SWMP"). [4] As set forth more

fully below, the 2021 SWMP contains regulatory burdens and requirements providing Defendants

with unfettered discretion to injure Plaintiff's vested rights and forbidding Plaintiff's proposed

development on its land, warranting permanent injunctive relief.

Like Defendants' other regulatory actions heretofore addressed and preliminarily enjoined

by this Court's May 14, 2021 Order, because the 2021 SWMP injuriously impairs Plaintiff's vested

rights it cannot be retroactively applied to Plaintiff or Plaintiff's Property.  *See* S. States-Bartow

Cnty., Inc. v. Riverwood Farm Homeowners Ass'n., 797 S.E. 2d 468, 471 (Ga. 2017) (the Georgia

Constitution "prohibits a legislative exercise of the police power that results in the passage of

retrospective laws which injuriously affect the 'vested rights' of citizens"); Banks Cnty. v.

Chambers of Georgia, Inc., 444 S.E.2d 783, 786 (Ga. 1994) (when a vested right is acquired, "a

governing authority cannot deny or postpone requested authorization to use the land for a permitted

use" in an attempt to defeat the landowner's rights); see also City of Duluth v. Riverbrooke

---

[4] The 2021 SWMP is the fourth solid waste management plan involved in this suit.  As addressed
by the Court in its May 14, 2021 Order granting Plaintiff preliminary injunctive relief,
Defendants had a 2006 solid waste management plan at the time Defendants provided their
verification letters for the project.  [*See* Dkt. No. 114 at 28].  Then, Defendants passed a 2017
SWMP and later passed a 2020 SWMP, both of which this Court has enjoined from applying to
Plaintiff's land and its EPD Application.  [Id. at 52].  Plaintiff now adds Defendants' latest 2021
SWMP to the list and requests that the Court enter permanent injunctive relief enjoining its
application as well.

4

Properties, Inc., 233 Ga. App. 46, 50 (1998) ("[a] governmental entity cannot make laws **and regulations** retroactive when a person has acquired a vested property interest") (emphasis supplied).

Plaintiff supplements its Summary Judgment to add into the Record the recently passed 2021 SWMP and to amend its request for permanent injunctive relief. As amended, Plaintiff now respectfully requests this Court for an Order permanently enjoining Defendants from retrospective application of the July 9, 2020 Resolution, the 2016 Zoning Ordinance, the 2017 Zoning Ordinance, the 2017 SWMP, the 2020 SWMP **and the 2021 SWMP** to Plaintiff, Plaintiff's Property and its EPD permit application and ordering Defendants to issue the reaffirmation of zoning consistency required by Ga. Comp. R. and Regs. 391-3-4-.05(1)(a). [5]

## II.    STATEMENT OF THE FACTS

In accordance with Local Rule 56.1, Plaintiff annexed to its Motion for Summary Judgment a separate Statement of Material Facts to which Plaintiff contends there is no dispute and each such Statement of Material Fact is supported by citations to the Record. [Dkt. No. 141-1]. Pursuant to Fed. R. Civ. P. 10, Plaintiff adopts and incorporates by reference its Statement of Facts as if fully set forth herein.

---

[5] On November 4, 2021, Defendants sent the Court Ordered reaffirmation letter to the Georgia EPD per the requirements of Ga. Comp. R. & Regs. 391-3-4-.05(1)(a). [Dkt. Nos. 152 & 153]. The letter reaffirms that Plaintiff's solid waste handling facilities are consistent with Brantley County's local land use plan on February 6, 2015 and it also states, "nor will Brantley County be applying the zoning ordinance it attempted to adopt in 2016 to the project that is the subject of the application [Plaintiff] submitted to the EPD in December 2016". However, there appears to be a complete disconnect between Defendants' November 4, 2021 letter and their Response to Plaintiff's Summary Judgment. As noted, in their Response to Summary Judgment, Defendants still claim the official act authorizing the February 6, 2015 verification letters to be invalid and they still oppose Plaintiff's void for vagueness claims concerning the 2016 Zoning Ordinance. Therefore, out of an abundance of caution, in addition to the other injunctive relief sought, Plaintiff still requests permanent injunctive relief ordering Defendants to issue the reaffirmation required by Ga. Comp. R. & Regs. 391-3-4-.05(1)(a).

Plaintiff further submits herewith its Supplemental Statement of Undisputed Material Facts to include Defendants' adoption of the 2021 SWMP and to attach a certified copy of the 2021 SWMP into the Record.  Pursuant to Fed. R. Civ. P. 10, Plaintiff adopts and incorporates by reference its Supplemental Statement of Facts as if fully set forth herein.

## III.     ARGUMENT AND CITATION TO AUTHORITY

### A.  Plaintiff has standing to maintain its claims

With their Response, Defendants stubbornly continue to argue that Plaintiff lacks standing to maintain its claims.  Before raising standing yet again in their Response, Defendants previously asserted lack of standing in their: (1) Renewed Motion To Dismiss and (2) Opposition to Plaintiff's Motion for Preliminary Injunction.  On both occasions, this Court rejected Defendants' arguments and correctly ruled that Plaintiff has standing to maintain its claims.  [Dkt. No. 114 at 9-13; Dkt. No. 135 at 12].

To have standing, a plaintiff must show that it: (1) suffered an injury-in-fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision.  Lujan v. Defenders of Wildfire, 504 U.S. 555, 560 (1992).  Plaintiff has standing because it has demonstrated, based on undisputed evidence, that it acquired vested rights to develop its Property under the valid law in force as of December 29, 2016 when it submitted its Application for solid waste handling facilities to the Georgia EPD.  After Plaintiff acquired vested rights, Defendants took regulatory actions identified as the July 9, 2020 Resolution, the 2017 Zoning Ordinance, the 2017 SWMP, the 2020 SWMP and the 2021 SWMP, any and all of which impair and injure Plaintiff's constitutionally protected vested property rights.  Accordingly, legal relief from this Court enjoining these regulatory actions would alleviate the harm to Plaintiff's vested property rights and remove regulatory barriers precluding Plaintiff from developing its Property in accordance with those rights.  Plaintiff has standing and its claims are

103823.1 141566-000002

ripe. [6] Lujan, Supra.; see also Crown Media, LLC v. Gwinnett County, 380 F.3d 1317, 1325 (11th Cir. 2004) (concluding a plaintiff's claim seeking recognition of vested property rights presents a live controversy despite the defendants' repeal of the challenged ordinances).

1.  In addition to standing conferred by virtue of Plaintiff's vested rights, Plaintiff also has standing based on Defendants' adoption of the 2017 Zoning Ordinance.

In the context of a challenge to a land use regulation, the test of the plaintiff's standing is whether there are specific, concrete facts demonstrating that the challenged practices cause harm and that the plaintiff would benefit in a tangible way from the court's intervention.  White v. City of Live Oak, No. 3:09-CV-391-J-34JRK, 2010 WL 11623480, at *12 (M.D. Fla. June 8, 2010); see also Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 261 (1977) (developer had standing when the challenged zoning decision stood as an absolute barrier to the proposed development and, with relief from the court, such barrier would be removed).

On May 10, 2017, Defendants' attorney Deen Strickland sent a letter to Plaintiff's Registered Agent advising that Defendants would be zoning the Property to the Light Industrial classification.  [Dkt. No. 1-19].  Then, on June 15, 2017, over Plaintiff's objection, Defendants adopted the 2017 Zoning Ordinance and imposed the Light Industrial classification on the Property.  [Dkt. Nos. 58-4 and 86-4].  The Light Industrial classification forbids the solid waste handling facilities sought by Plaintiff with its EPD Application from being developed on the Property.  The 2017 Zoning Ordinance stands as an "absolute barrier" to Plaintiff's proposed

---

[6] In addition to its claim for vested rights, Plaintiff's void for vagueness claims confer standing. Being subject to unconstitutionally vague laws imposes irreparable harm warranting the grant of permanent injunctive relief.  Am. Civil Liberties Union of Ga. v. Miller, 977 F. Supp. 1228, 1235 (N.D. Ga. 1997) (finding substantial threat of irreparable injury from the continued enforcement of a vague statute).

development and Plaintiff has standing to seek relief from this Court to remove this regulatory barrier.

In conclusory fashion, Defendants assert "there is not a single allegation of application of the 2017 ordinance to Plaintiff's project". [Dkt. No. 150 at 6]. Plaintiff is puzzled by this argument. The 2017 Zoning Ordinance and its Zoning Map are before the Court in evidence. By its plain text, the Light Industrial zoning classification Defendants voted to impose on Plaintiff's Property forbids Plaintiff's proposed development on its land. Defendants have the power to rezone Plaintiff's Property to remove these regulatory barriers, but they have failed and refused to do so. Plaintiff has standing in this case because legal relief from this Court will alleviate harm to Plaintiff by removing these regulatory barriers. Defendants' standing argument is wholly without merit.

2. Plaintiff also has standing based on its economic harm (money spent),

Plaintiff has spent millions of dollars pursuing its proposed solid waste handling facilities. On December 22, 2014, Plaintiff bought the Property for over $2,632,000.00 to develop it with the solid waste handling facilities. When Plaintiff purchased the land, **the solid waste handling facilities indisputably were permitted uses as evidenced by County certifications. Brantley County had no zoning restrictions at that time**. [Dkt. No. 58-2 at 2-3; Dkt. No. 58-3 at 4, Ex. "E"]. Plaintiff bought the Property to develop it with the solid waste handling facilities – it would never have bought it as a speculative investment. [Id.]. In addition to the Property purchase price of over 2.6 million dollars, Plaintiff has spent $1,109,436.15 on engineers, geologists, hydrogeologists, other professionals, and carrying costs, pursuing development of the solid waste handling facilities on the Property as sought with its EPD Application. This figure does not include BCDP's legal fees. [Dkt. No. 58-2 at 9].

The evidence more than shows economic injury to confer standing based on Plaintiff's investment backed plans for the Property.  On this point, the Court will recall that EPD's Site Suitability approval for the solid waste facility **is specific to Plaintiff's Property**.  [Dkt. No. 58-1 at 5, Ex. "2"].  Indeed, the whole point of obtaining site suitability is to receive official approval from Georgia EPD that the subject Property is suitable for siting the solid waste handling facilities.  This development is not the type that can simply be moved elsewhere. All of the planning, work, money spent and EPD approvals obtained to date is for siting the facility **on this Property** and the plans are not transferable even if Plaintiff wanted to relocate.  Without judicial decision, Plaintiff's development efforts will be rendered valueless due to Defendants' regulatory conduct.  Plaintiff's economic harm confers standing.  See Vill. Of Arlington Heights, 429 U.S. at 262 (finding injury for purposes of standing where plaintiff expended thousands of dollars on plans and studies because, in the context of land development, "many of these plans and studies will be worthless").

In a vain attempt to distinguish Vill. Of Arlington Heights, Defendants baldly assert that Plaintiff's EPD submittals are too vague to confer standing.  Defendants' assertion is belied by the evidence.  In his Affidavit, Matt Roper testified at length about the detailed and extensive work Plaintiff and its engineers performed when preparing the Application submittal to Georgia EPD.  [Dkt. No. 58-3].  Insofar as the solid waste handling facilities' "operation type", Plaintiff's Application identifies processing, composting, shredding, and materials recovery facility.  [Dkt. No. 1-11 at 3].  Insofar as "disposal site", Plaintiff's Application identifies municipal solid waste landfill and thermal treatment, among others.  [Id.].  The Record is undisputed that the detailed Application was done correctly and that the EPD accepted it for processing.

On August 14, 2020, Plaintiff received and approved a scope of work and cost estimate of $400,000 to $500,000 for its engineer to prepare the detailed Design and Operation Plan for submittal to EPD.  [Dkt. No. 58-1 at 6].  In terms of the engineering drawings for the Design and

9

Operation plans, Mr. Steve Harbin identified **fifty-eight (58) different sheets to be prepared as part of this submittal**. [Dkt. No. 58-1 at 15].   On August 26, 2021, Harbin having completed its extensive work and Plaintiff having spent even more money, Plaintiff submitted its Design and Operation Plans to the Georgia EPD. [Dkt. No. 136-1].  The confirmation of submittal from the Georgia EPD for the Design and Operation Plan shows it is substantial, consisting of three (3) different "PDF's" and voluminous supportive materials and data.  [Dkt. No. 136-1].   Plaintiff's Application and development plans are substantial and are not lacking for detail, as Defendants assert.

3.   <u>Plaintiff has standing based on delay of permit</u>

Defendants' argument on this point appears to be disconnected from the fact that to avoid being held in contempt they issued the reaffirmation letter to the EPD required by this Court's May 14, 2020 Order.  However, irrespective of Defendants' avoidance of contempt, Plaintiff still has standing on this basis.  Defendants' letter to the EPD points out it is being sent pursuant to this Court's grant of preliminary injunctive relief which is under appeal.  Plaintiff continues to have standing to pursue the same redress to final judgment and permanent injunctive relief.

Moreover, with the July 9, 2020 Resolution, Defendants took official action to withdraw the 2015 verification letters asserting, years later, that the letters are ultra vires and thus void. Within that July 9, 2020 Resolution, Defendants acknowledge that the 2015 verification letters were required for Plaintiff to obtain a permit for a solid waste handling facility.  [Dkt. No. 58-2 at 7, Ex. "4"].  Defendants have not rescinded the July 9, 2020 Resolution.

Therefore, in what appears to be a regulatory "head fake", on the one hand Defendants issued the reaffirmation letter to avoid being held in contempt, but on the other hand they still stubbornly insist that the initial 2015 letters required for Plaintiff to obtain a permit are void.  Put another way, to avoid contempt Defendants issued a letter reaffirming an official act while

10

concomitantly claiming that same official act to be invalid.  Even with issuance of the reaffirmation letter, Plaintiff needs relief from Defendants' regulatory actions, including the July 9, 2020 Resolution.  Otherwise, those regulations, and Defendants' on-going conduct, continue to hinder, thwart, frustrate and delay the EPD permitting process.  See Roma Outdoor Creations, Inc. v. City of Cumming, 599 F. Supp. 2d 1332, 1339 (N.D. Ga. 2009) (delayed processing of an application constitutes injury in fact for purposes of standing).

Moreover, because injunctions regulate future conduct, a party has standing to seek injunctive relief when it shows "**a real and immediate**—as opposed to a merely conjectural or hypothetical—**threat of future injury**."  Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1328-29 (11th Cir. 2013) (emphasis supplied); see also Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1283 (11th Cir. 2001); Jones v. Family First Credit Union, 340 F.Supp.3d 1356 (N.D. Ga. 2018).  Plaintiff is suffering injury every day Defendants continue to refuse to remove their regulatory barriers to completion of the EPD permitting process and Plaintiff's construction and operation of the solid waste facilities.  In fact, just last month with the 2021 SWMP, Defendants passed new regulatory barriers.

## B.  Plaintiff acquired vested rights by virtue of submission of its December 29, 2016 Application to the Georgia EPD.

Defendants' Response on this point amounts to nothing more than a confusing *non sequitur*.  Defendants focus on methods of vesting which are applicable under the evidence, but on which Plaintiff did not move for summary judgment.  Plaintiff moved for summary judgment based on its status as a permit applicant pursuant to the December 29, 2016 Application to the Georgia EPD.  Defendants previously conceded Plaintiff acquired vested rights in this manner, but Defendants now claim Plaintiff has no vested rights whatsoever.

11

Georgia law is clear that a permit applicant has a vested right to consideration of its application based on the regulations in force when the landowner applies for a permit.  Recycle & Recover, Inc. v. Ga. Bd. of Nat. Res., 466 S.E.2d 197, 199 (Ga. Sup. Ct. 1996); Fulton Cnty. v. Action Outdoor Advertising, 289 Ga. 347, 349 (2011).  In the context of a landfill, Georgia Courts have specifically held that the filing of a permit application for the landfill with the Georgia EPD vests the landowner's rights.  Southern States-Bartow Co., Inc. v. Riverwood Farm Prop. Owners Ass'n, Inc., 331 Ga. App. 878, 883 (2015) ("the vested right was acquired in 1989 when Southern States submitted its application for a landfill permit to the Georgia EPD") (citing Fulton County v. Action Outdoor Advertising, JV, LLC, 289 Ga. 347, 350 (2011)); accord, S. States-Bartow Co., Inc. v. Riverwood Farm Homeowners Assoc., 300 Ga. 609, 610-611 (2017) ("the Court of Appeals concluded, inter alia, that Southern States' vested right – which was recognized by the Bartow County Superior Court in September 1994, was acquired as of the date of its May 1989 application to the EPD") (emphasis in opinion).

When a vested right is acquired, "a governing authority cannot deny or postpone requested authorization to use the land for a permitted use" in an attempt to defeat the landowner's rights.  Banks Cnty. v. Chambers of Georgia, Inc., 444 S.E.2d 783, 786 (Ga. 1994); see also City of Duluth v. Riverbrooke Properties, Inc., 233 Ga. App. 46, 50 (1998) ("[a] governmental entity cannot make **laws and regulations retroactive** when a person has acquired a vested property interest")

Previously, **it was undisputed by the parties that Plaintiff's rights vested in December 2016**.  [Dkt. No. 66 at 79-80; Dkt. No. 83 at 5].  On December 29, 2016, Plaintiff vested its rights by filing with Georgia EPD its permit Application for the solid waste handling facilities on the Property.  [Dkt. No. 58-1 at 4; Dkt. No. 58-3 at 4-7, Ex. "H"; Dkt. No. 58-2 at 3-4].  The Application was complete and was accepted for processing by the Georgia EPD.  [Id.]. Georgia EPD continues to process the Application.

12

Having previously conceded that Plaintiff acquired vested rights in December, 2016, Defendants now appear to want to put the genie back in the bottle. A new argument not heretofore asserted by Defendants is that the 2015 verification letters are somehow defective based on a generic label used by the parties at the time to refer to Plaintiff's Property. [Dkt. No. 150 at 11-12]. "Magnolia Holdings Business Park", referenced in the 2015 verification letters, was simply a label used by the parties to refer to Plaintiff's Property because before it was taken by Primesouth Bank in foreclosure, Magnolia Land Holdings, LLC was the owner of the Property. Plaintiff bought the Property from Primesouth Bank in December, 2014, which Defendants knew full well. On February 3, 2015, just days before issuance of the verification letters, Defendants' own official minutes from public meeting state the following:

"[Plaintiff] purchased approximately 2,500 acres of property **located on the North and South boundaries** of GA Highway 520 between Waynesville and Atkinson, **formerly known as the site for <u>Magnolia Holdings</u>**". [Dkt. No. 89-4] (emphasis supplied).

The undisputed evidence and applicable law show, without question, that Plaintiff's rights vested on December 29, 2016 with submission of its Application to the Georgia EPD. The EPD has confirmed that the 2015 verification letters are proper and satisfy the preliminary verification required by O.C.G.A. § 12-8-24(g). [Dkt. No. 64-4; Dkt. No. 88-5 at 120]. Plaintiff's Application being complete, accepted and processed by EPD, it must be considered under the valid law in force as of December 29, 2016. Because the 2016 Zoning Ordinance is void for vagueness and thus invalid from its inception, Plaintiff's vested rights acquired in December, 2016 are not subject to any zoning regulations. A governmental entity cannot make laws and regulations retroactive when a person has acquired a vested property interest. <u>City of Duluth</u>, 233 Ga. App. at 50. Defendants' subsequent regulatory actions, the 2017 Zoning Ordinance, the 2017 SWMP, the 2020 SWMP, the 2021 SWMP and the July 8, 2020 Resolution, cannot be retroactively applied to Plaintiff's

13

Property or its EPD Application.  Accordingly, Plaintiff is entitled to summary judgment on its claim for vested rights by virtue of its December 29, 2016 Application to the Georgia EPD.

1.   The February 2015 consistency letters were not ultra vires

Defendants assert that the verification letters were issued ultra vires because they were allegedly given in violation of procedural requirements within the 2006 SWMP.  Defendants are wrong.  As an initial matter, the 2006 SWMP is a plan that serves as a guide for future solid waste facilities.  But, it is without the force of law and cannot bind Defendants in the performance of their legislative duties.  See Lamar Cnty v. E.T. Carlyle Co., 277 Ga. 690, 693-694 (2004) (holding that county solid waste development plan adopted under O.C.G.A. § 12-8-20, et. seq. was a plan that served as a guide but it is without the force of law and cannot bind the county in the performance of legislative duties).

On February 5, 2015, at a regularly scheduled meeting, the Brantley County Board of Commissioners took **official action by vote** to **legislatively** confirm, ratify and approve Plaintiff's proposed solid waste handling facilities as "**consistent with our local land use plan and our Solid Waste Management Plan**".  Pretermitting whether this official act was consistent with the 2006 SWMP, because the 2006 SWMP is a planning guide, without the force of law, it cannot bind Defendants' in the exercise of their legislative duties, which occurred here on February 5, 2015 when they took official action to confirm Plaintiff's proposed solid waste handling facilities are consistent with the 2006 SWMP.  See Lamar Cnty., Supra.

On this point, Defendants admit "the County has the general authority to issue consistency letters for EPD permit applicants."  [Dkt. No. 55 at 12].  Under this authority, Defendants can assess the consistency of Plaintiff's proposal with all the provisions found within the 2006 SWMP.  This included assessing whether Plaintiff's proposal furthered the stated goals of solid waste reduction and additional revenue sources, among other stated goals in the 2006 SWMP.  [Dkt. No.

14

48-3 at 55-56; see also p. 45 "Brantley County … will carefully analyze and choose the disposal options most advantageous to the County, considering economics, environmental concerns, land uses and other issues."].

In determining whether a proposed facility is consistent with its SWMP, a local government is authorized to consider any relevant factor that it appropriately considered in the SWMP itself.  Murray Cnty. v. R&J Murray, LLC, 627 S.E.2d 574, 578 (Ga. 2006).  Therefore, based on the text of the 2006 SWMP, Defendants had legislative discretion when determining consistency with the 2006 SWMP and voting to issue the consistency letter.  Plaintiff was certainly entitled to rely on Defendants' issuance of the consistency letter, done by unanimous official act.

The rule on this point is that although a governmental agency cannot be estopped by ultra vires act, there is a broad distinction to be observed between an irregular exercise of a granted power, and the total absence or want of power, and the rule is that the governmental agency may be estopped when the act relied on to create the estoppel was within its corporate powers, although the method of exercising the power was irregular or unauthorized.  City of Summerville v. Ga. Power Co., 205 Ga. 843, 846 (1949); Quillian v. Employees' Retirement System, 259 Ga. 253, 255 (1989) (even if act done in error, it was not ultra vires because it was done with appropriate authority).

Here, when Defendants took official action on February 5, 2015 to authorize issuance of the verification letters, they did so with appropriate authority as the elected governing body of Brantley County.  Even if the letters were issued in error (which they were not), the act is not ultra vires because it was done under proper authority vested with the Board of Commissioners and Plaintiff is certainly entitled to rely upon official action taken by the governing body.

Union County, and other cases cited by Defendants in their Response, are inapposite because those cases do not involve issuance of a development entitlement by official act of a local

governing body.  Instead, those cases involve the wrongful issuance of a permit by a city or county employee in violation of an official act by the local governing body.  In such instance, the permit approval by an employee is ultra vires because it violates official action by a local governing body.  But, that is wholly different than here where the local governing body, by authorized official act, has itself approved the very use it now illegally tries to deny.  As noted, the 2006 SWMP is a plan to guide decisions.  The 2006 SWMP did not have the force of law and cannot bind Defendant in the exercise of their legislative functions. Plaintiff was entitled to rely upon Defendants' issuance of the verification letters by legislative act and Defendants are estopped by their own official action.

## C.  **Plaintiff is entitled to summary judgment on its void for vagueness claims under both the United States and Georgia Constitutions**.

In their Response, Defendants do not dispute that the 2016 Zoning Ordinance was passed without any map to show the land to which its various zoning districts apply.  This fatal defect renders the 2016 Zoning Ordinance void for vagueness.  Nevertheless, Defendants argue Plaintiff is not entitled to summary judgment because there are no facts showing that the 2016 Zoning Ordinance has ever been applied to it.  [Dkt. No. 150 at 16].  This argument is surprising **because Defendants are attempting to apply the 2016 Zoning Ordinance to Plaintiff and Plaintiff's Property.**  At the September 24, 2020 Hearing, and in their briefing, Defendants applied the 2016 Zoning Ordinance to Plaintiff and its land because Defendants argued that Plaintiff's land is subject to the Heavy Industrial zoning classification, and its special exception requirements, allegedly in place when Plaintiff submitted its EPD application on December 29, 2016.  [Dkt. No. 66 at 79-80]; see also Court's May 14, 2021 Order: "Defendants insist that Plaintiff must comply with the Heavy Industrial zoning allegedly placed on the Property pursuant to the September 8, 2016 Zoning Ordinance".  [Dkt. No. 114 at 34].

16

Nor are Plaintiff's void for vagueness claims mooted by the 2017 Zoning Ordinance.  As the Court correctly found on this point, Plaintiff's void for vagueness challenge to the 2016 Zoning Ordinance is not mooted by the adoption of a new zoning ordinance and official zoning map on June 15, 2017:

"Given Plaintiff's claim that its rights vested in 2016, the challenge to the 2016 Zoning Ordinance's validity is not obviated by passage of later ordinance in 2017.  See Crown Media, LLC v. Gwinnett Cnty., 380 F.3d 1317, 1325 (11th Cir. 2004) …." [Dkt. No. 135 at 56].

Under well-established Georgia law, a landowner has a vested right to use property in accordance with valid regulations in force when the landowner applies for a permit.  [Dkt. No. 114 at 33]; see also WMM Properties, Inc. v. Cobb County, 255 Ga. 436 (1986); Fulton County v. Action Outdoor Advertising, JV, 289 Ga. 347, 349 (2011).  Plaintiff's rights having vested in 2016 upon submission of its EPD permit application, those rights are governed by the valid law in force as of 2016.  Defendants' passage of later zoning regulations in 2017 does not moot Plaintiff's claim that the 2016 Zoning Ordinance is void for vagueness and therefore Plaintiff's vested rights are not subject to those zoning regulations.

A case is rendered moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome and the court no longer can grant meaningful relief. Crown Media, LLC, 380 F.3d at 1324.  For the repeal of a statute to moot a challenge to the statute, the governmental defendant must show that there is no reasonable likelihood that the repealed statute would be reinstated.  Id.

Plaintiff's void for vagueness challenge to the 2016 Zoning Ordinance is not moot **because Defendants are attempting to apply its regulations to Plaintiff and Plaintiff's Property.**  As noted, Plaintiff contends that it has a vested right to develop the land **without these invalid zoning restrictions**.  Therefore, given Plaintiff's vested rights, and Defendants' attempt to enforce the

2016 Zoning Ordinance against Plaintiff and its Property, a live controversy exists upon which the Court can grant meaningful relief.  That relief is that Plaintiff's vested property right is not subject to the 2016 Zoning Ordinance because it is void for vagueness.

Defendants also appear to argue that Plaintiff's void for vagueness challenge fails because Plaintiff somehow knew about the proposed zoning classification for its Property.  [Dkt. No. 150 at 18].  Even if Plaintiff was told that the Property would be getting a "Heavy Industrial" zoning, no evidence exists of what that meant from a regulatory standpoint insofar as permitted and forbidden uses, nor is there any evidence that Plaintiff had any clue about the special exception process for landfills contained within the Heavy Industrial zoning. Plaintiff's knowledge, or lack thereof, about the proposed zoning classification for its land is completely irrelevant.  Zoning cannot be imposed by words or subjective thoughts.  To be enforceable, zoning and land use regulations restricting property rights must be formally adopted in a clear manner so that there is no uncertainty as to what restrictions apply.  Zoning is not a guessing game.  Formalities must be strictly followed when enacting and enforcing land use regulations because when it comes to lawmaking which affects the property rights of Georgia citizens, as zoning ordinances clearly do:  "the law requires such formalism, and as we have explained before, there are good reasons to insist upon such formalism in lawmaking, especially when it comes to the enactment of laws restraining the property rights of citizens.  Such formalism is necessary, we have said, 'to provide certainty to the public as to what was actually adopted … and also to protect the public from any arbitrary changes of the ordinance or [zoning] maps that do not go through the notice process'". Newton Co. v. East Ga. Land & Dev. Co., 296 Ga. 18, 21 fn. 3 (2014).

Defendants having failed to come forward with any evidence demonstrating the existence of a validly adopted zoning map showing the land to which zoning classifications within the 2016 Zoning Ordinance apply, Plaintiff is entitled to summary judgment on its void for vagueness claims.

**D. Defendants have no immunity for Plaintiff's claims seeking prospective relief.**

In their Response, Defendants assert that "[o]fficial immunity applies to prospective claims against the commissioner Defendants because the real party in interest limitation does not apply". [Dkt. No. 150 at 19].  As an initial matter, Defendants appear to link the real party in interest limitation with official immunity, when it actually pertains to sovereign immunity.  Nevertheless, under well-established Georgia law, Defendants have no immunity (whether sovereign or official) for Plaintiff's claims seeking prospective relief against Defendants in their individual capacities.

In <u>Lathrop v. Deal</u>, the Georgia Supreme Court held that claims seeking relief against public officers in their individual capacities are **not** barred by **sovereign immunity**.  301 Ga. 408, 443-444 (2017).   Indeed, the Georgia Supreme Court in <u>Lathrop</u> gave its "assurance that our decisions d[o] not mean that citizens aggrieved by unlawful conduct of public officers are without recourse.  **It means only that they must seek relief against such officers in their individual capacities**".  301 Ga. at 443; see also <u>Georgia Dep't. of Nat'l Res. v. Ctr. For a Sustainable Coast, Inc.</u>, 294 Ga. 593, 603 (2014) (holding that application of sovereign immunity "does not mean that citizens aggrieved by unlawful conduct of public officers are without recourse.  **It means only that they must seek relief against such officers in their <u>individual capacities</u>**.") (emphasis supplied).

After issuing its holding as to sovereign immunity, the <u>Lathrop</u> Court then took the opportunity to analyze the application of **official immunity** to suits against public officers in their individual capacities.  <u>Lathrop</u>, 301 Ga. at 434-444.  Analyzing the text of Article I, Section II, Paragraph IX(d) of the Georgia Constitution, the Georgia Supreme Court held that such constitutional provision only applies to suits and liabilities for **retrospective relief**, "mostly monetary damages in tort cases".  <u>Lathrop</u>, 301 Ga. at 443.  There is no official immunity for suits against public officers in their individual capacities for injunctive and declaratory relief from the

19

threat of official acts that would violate the constitution.  Id.  When a plaintiff seeks **prospective relief** from the enforcement of law alleged to be unconstitutional, in the form of injunctions and declaratory judgments, qualified immunity does not apply.  Id. at 434-435; see also Love v. Fulton Cnty. Bd of Tax Assessors, 821 S.E.2d 575, 585 (Ga. Ct. App. 2018) (official immunity does not bar suits for declaratory or injunctive relief brough against county officers in their individual capacities); City of Hapeville v. Sylvan Airport Parking, LLC, 858 S.E.2d 538, 542 (Ga. App. 2021) (immunity does not apply to claims brought against persons in their individual capacities and real party in interest doctrine is limited to attempts to control the real property rights and obligations of the state) (citing Bd. of Commrs. of Lowndes Cnty. v. Mayor & Council of the City of Valdosta, 309 Ga. 899, 903 (2020)).

This Court has already correctly found that the real party in interest limitation has no application in this case.  [Dkt. No. 135 at 37].  The limitation has been narrowly applied "primarily when the claimed relief would control or take the State's real property or interfere with contracts to which the State is a party".  Mayor of Valdosta, 848 S.E.2d at 858.  The relief sought by Plaintiff will not alter the title, possession or usage of any real property of the State.  Nor will it interfere with any state contracts.  [Dkt. No. 135 at 37].  Accordingly, the narrow real party in interest limitation has no application and Defendants are not immune from Plaintiff's claims seeking prospective relief.

### E.  Defendants have no Legislative Immunity.

Defendants' effort to shield themselves by legislative immunity also misses the mark. Plaintiff has not challenged the Defendants' votes to adopt the challenged regulations.  Instead, Plaintiff challenges Defendants' enforcement of regulations already established which injure and impair Plaintiff's vested rights.  In other words, Plaintiff does not challenge Defendants' legislative power when voting to enact its zoning ordinances and solid waste management plans.  Instead,

20

Plaintiff challenges Defendants' enforcement of those regulations and seeks prospective relief against the application of illegal and unconstitutional regulatory actions to Plaintiff's vested rights. Legislative immunity has no application to such relief.   See Dawson Cnty. Bd. of Comm'rs v. Dawson Forest Holdings, LLC, 850 S.E.2d 870. 875 (Ga. Ct. App. 2020).

      **F**. **Plaintiff is entitled to permanent injunctive relief**.

      To obtain permanent injunctive relief, a plaintiff must show: (1) that he has suffered an irreparable injury; (2) that his remedies at law are inadequate; (3) that the balance of hardship weighs in his favor; and (4) that a permanent injunction would not disserve the public interest. Barrett v. Walker Cty. Sch. Dist., 872 F.3d 1209, 1229 (11th Cir. 2017).

      In their Response, Defendants argue that Plaintiff has suffered no irreparable injury and has an adequate remedy at law because "Defendants have not applied the [Zoning] Ordinances to Plaintiff". [Dkt. No. 150 at 21]. As noted above, Defendants' assertion is belied by the evidence. At the September 24, 2020 Preliminary Injunction Hearing, Defendants took the position that Plaintiff's land is currently zoned to the Light Industrial district (under the 2017 Zoning Ordinance which forbids the solid waste handling facilities), but that Plaintiff has a vested right to use the Property under the previous Heavy Industrial zoning allegedly in place under the 2016 Zoning Ordinance when Plaintiff submitted its EPD application on December 29, 2016. [Dkt. No. 66 at 79-80]. With this contention, Defendants apply their zoning ordinances and would require Plaintiff to subject itself to the special exception process under the text of the 2016 Zoning Ordinance which, as correctly determined by the Court, would be futile. [*See* Dkt. No. 66 at 60-62; Dkt. No. 135 at 19-20].

      Plaintiff asserts the 2016 Zoning Ordinance is void for vagueness and **being subject to unconstitutionally vague laws imposes irreparable harm warranting the grant of permanent injunctive relief**. Am. Civil Liberties Union of Ga. v. Miller, 977 F. Supp. 1228, 1235 (N.D. Ga.

1997) (finding substantial threat of irreparable injury from the continued enforcement of a vague statute).   Additionally, Plaintiff suffers irreparable injury, and lacks an adequate remedy at law, based on: (1) the inability to enter into finalized solid waste disposal contracts with market participants; (2) the inability to recoup monetary damages for the harm suffered; and (3) Defendants' regulatory actions deprive Plaintiff of its vested property right acquired in December 2016.   *See* GSW, Inc. v. Long County, 999 F.2d 1508, 1519, fn. 21 and 22 (11th Cir. 1993) (irreparable harm demonstrated where plaintiff presented evidence that it could not obtain a permit from Georgia EPD and could not enter into contracts for waste disposal services); Pine Ridge Recycling, Inc. v. Butts County, 864 F. Supp. 1338, 1342 (M.D. Ga. 1994);Wal-Mart Stores, Inc. v. Cnty. of Clark, 125 F. Supp. 2d 420, 429 (D. Nev. 1999) ("money damages would not be an adequate remedy for lost property rights '[b]ecause real property and its attributes are considered unique and loss of real property rights generally results in irreparable harm'"); Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp., 715 F.3d 1268, 1289 (11th Cir. 2013) (irreparable harm shown when there is an inability to recover money damages for the harm suffered); Miller, 977 F. Supp. at 1235 (irreparable harm shown because effects of an unconstitutionally vague law cannot be compensated for by monetary damages); Dkt. No. 114 at 45-50 (finding threat of irreparable harm and inadequate remedy at law in this case).

Balancing the injuries and public interest also weigh in favor of permanent injunctive relief. The harmful injuries suffered by Plaintiff have been articulated above and in previous briefing. On the other hand, harm to the public interest is minimal because the public has no interest in enforcing unconstitutional regulations.   Odebrecht Const., Inc., 715 F.3d at 1290; Fla. Businessmen for Free Enter. v. City of Hollywood, 648 F.2d 956, 959 (5th Cir. 1981).  Therefore, there is no public harm from Defendants' nonenforcement of invalid regulations.  [Dkt. No. 114 at 50].

103823.1 141566-000002

Defendants' arguments on this point all center around the 2006 SWMP and Plaintiff's alleged inconsistency with it. [Dkt. No. 150 at 22-23]. However, as noted above, the 2006 SWMP is a planning guide without the force of law and, as such, cannot bind Defendants in their legislative determination that Plaintiff's proposal was in fact consistent with the 2006 SWMP.  Defendants had discretion when making that legislative determination and they are estopped now from arguing otherwise.

Finally, Defendants attempt to narrow the scope of injunctive relief, erroneously arguing that there is no evidence that Plaintiff suffered harm from Defendants' Regulatory actions.  To the contrary, this Court has already found harm when it determined that application of the provisions of the 2017 SWMP and the 2020 SWMP would be an unconstitutional deprivation of Plaintiff's vested rights.  [Dkt. No. 114 at 43].  On this point, the Court concluded: "[r]etrospective application of regulations enacted in 2017 would impair Plaintiff's vested right to develop its land free from later restriction.  **Neither the 2017 zoning ordinance nor the 2017/2020 SWMP plan** is applicable to the development of Plaintiff's property".  [Dkt. No. 114 at 44] (emphasis supplied). The same logic and rules likewise apply to bar enforcement of the newly passed 2021 SWMP.

Regulatory action cannot be applied retroactively to take away or impair vested rights acquired under existing laws or to create new obligations, impose new duties, or attach new liabilities with respect to transactions or considerations already past.  S. States-Bartow Cnty., Inc., 797 S.E.2d at 471.  Application of the 2021 SWMP would result in an unconstitutional deprivation of Plaintiff's vested rights.  The 2021 SWMP, if applied, would forbid development of Plaintiff's solid waste handling facilities on the Property as sought by its Georgia EPD Application.   Under the 2021 SWMP, Plaintiff's Property cannot be sited with a solid waste handling facility because, pursuant to its draconian requirements, the Property is too close to a protected river corridor, too close to a groundwater "recharge area", and too close to the Sylvester Mumford House.  [See 2021

23

SWMP, pp. 16, 17 and 19; SWMP Appendix B, Protected River Corridors Map, Recharge Areas Map and Map of 5,708 yard Historic Buffer]. In stark contrast, Georgia EPD, the governing regulatory authority, determined that Plaintiff's Property is suitable for siting the proposed solid waste facilities and that applicable law and governing regulatory requirements can be met.  [Dkt. No. 58-1 at 5, Ex. "2"].

Having satisfied all criteria, Plaintiff is entitled to summary judgment permanently enjoining Defendants from retrospective application of regulatory action injuriously impairing Plaintiff's vested rights, including but not limited to, application of the July 9, 2020 Resolution, the 2016 Zoning Ordinance, the 2017 Zoning Ordinance, the 2017 SWMP, the 2020 SWMP **and the 2021 SWMP** to Plaintiff, Plaintiff's Property and its EPD permit Application.  Plaintiff is also entitled to a final permanent injunction ordering Defendants to issue the reaffirmation of zoning consistency required by Ga. Comp. R. and Regs. 391-3-4-.05(1)(a) and to take no actions inconsistent with such reaffirmation.

## CONCLUSION

For the reasons set forth above and within its Initial Briefing, Plaintiff respectfully requests that this Court grant summary judgment in favor of Plaintiff and enter permanent injunctive relief against Defendants.

Respectfully Submitted, this 18th day of November, 2021.

LOVETT LAW GROUP, LLC

By:___/s/ L. Robert Lovett_____
        L. Robert Lovett
        Georgia Bar No. 459566
        2500 Northside Crossing
        100 Northside Drive
        Macon, Georgia 31210
        (478) 714-251

24

GILBERT, HARRELL, SUMERFORD & MARTIN, P.C.


By:    /s/ Mark D. Johnson
        Mark D. Johnson
        Georgia Bar No. 395041
        Post Office Box 190
        Brunswick, Georgia 31521-0190
        (912) 265-6700


BROWN ROUNTREE PC

By:    /s/ George Rountree
        George Rountree
        Georgia Bar No. 616205
        26 North Main St
        Statesboro, Georgia 30458
        (912) 489-6900
        georgia@br-firm.com


WILSON BROCK & IRBY, L.L.C.


By:    /s/ Kyler L. Wise
        Kyler L. Wise
        Georgia Bar No. 77128
        2849 Paces Ferry Road SE, Suite 700
        Atlanta, Georgia 30339
        (404) 853-5050
        kwise@wbilegal.com

103823.1 141566-000002

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing pleading via electronic

service through the PACER e-filing system upon:

Dana K. Maine
Rachael Slimmon
Freeman Mathis & Gary, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339

This 18th day of November, 2021.


/s/ Kyler L. Wise
Kyler L. Wise

103823.1 141566-000002