IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| BRANTLEY COUNTY DEVELOPMENT PARTNERS, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION FILE |
| | : | |
| BRANTLEY COUNTY, GEORGIA by and through its Chairman and Members of the Brantley County Board of Commissioners; CHRIS "SKIPPER" HARRIS, RANDY DAVIDSON, BRIAN HENDRIX, JESSE MOBLEY AND RAY GRIFFIN, all in their individual and official capacities as Commissioners, | : : : : : : : : : | NO. 5:19-CV-00109 |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF AND
SUPPLEMENT TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST
DEFENDANTS WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Plaintiff Brantley County Development

Partners, LLC ("Plaintiff") hereby submits its Response to Defendants' Motion for Summary

Judgment and Memorandum of Law In Support Thereof [Doc. 167] and further Supplements its

Motion for Summary Judgment against the Defendants, filed on October 8, 2021 [Doc. 141], to

amend and modify its request for permanent injunctive relief.  As grounds therefor, Plaintiff shows

this Honorable Court as follows:

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

On October 8, 2021, Plaintiff filed its Motion for Summary Judgment, supportive

Memorandum of Law and Statement of Undisputed Material Facts (collectively, "Summary

Judgment") against the Defendants.  [Doc. 141].  Plaintiff seeks Summary Judgment against

Defendants on Plaintiff's vested rights claim and its void for vagueness claims under the United States and Georgia Constitutions.  With Summary Judgment, Plaintiff also moves this Court to enter permanent injunctive relief against the Defendants.

On October 14, 2021, after the filing of Plaintiff's Summary Judgment, Defendants took new regulatory action that, unless enjoined by this Court, further impedes, delays, thwarts and frustrates Plaintiff's vested, and permitted, right to develop its land.  Specifically, on October 14, 2021, Defendants passed a new Solid Waste Management Plan (previously defined as the "2021 SWMP") containing more regulatory burdens and requirements providing Defendants with unfettered discretion to injure Plaintiff's vested rights and forbid Plaintiff's proposed development on its land. [1]

On November 18, 2021, Plaintiff filed its Reply Brief in support of Motion for Summary Judgment and supplemented its Summary Judgment to include the 2021 SWMP and to request that the Court's grant of permanent injunctive relief include enjoining application of the 2021 SWMP. [Doc. 157].

On June 1, 2022, Defendants filed their Motion for Summary Judgment ("Defendants' Summary Judgment").  Defendants' Summary Judgment presents no new argument for this Court to consider.  Instead, it regurgitates previously raised arguments, most of which have been considered, and properly rejected, by this Court.

For the **fifth time**, Defendants stubbornly continue to argue that Plaintiff lacks standing. Defendants have previously argued standing **four (4) times**, within their: (1) Renewed Motion To Dismiss; (2) Opposition to Plaintiff's Motion for Preliminary Injunction; (3) Motion for

---

[1] Unless otherwise noted, capitalized terms used herein shall have the same meaning as capitalized terms used by the Court in the Orders granting Plaintiff's Motion for Preliminary Injunctive Relief, granting in part and denying in part Defendants' Renewed Motion to Dismiss and as used in Plaintiff's Summary Judgment.  [*See* Doc. Nos. 114, 135 & 141].

Reconsideration; and (4) Motion to Stay Preliminary Injunction.  [Doc. Nos. 48, 63, 140 and 143].  This Court has rejected Defendants' standing argument each time.  [Doc. Nos. 114, 135, 158 and 159].  Yet, Defendants' Summary Judgment continues to stubbornly make the same standing arguments based on the **same factual evidence** upon which this Court has previously ruled.  For all the reasons previously argued by Plaintiff, as ruled upon by this Court four (4) previous times, and as set forth below, Plaintiff states this Court should reject Defendants' standing arguments for a fifth, and final, time.

Although they previously admitted and acknowledged Plaintiff's vested rights, Defendants now contradict their previous admission by asserting that Plaintiff did not obtain vested rights.  In the context of a landfill, black letter law states that the filing of a permit application for the landfill with the Georgia EPD vests the landowner's rights.  Southern States-Bartow Co., Inc. v. Riverwood Farm Prop. Owners Ass'n, Inc., 331 Ga. App. 878, 883 (2015) ("the vested right was acquired in 1989 when Southern States submitted its application for a landfill permit to the Georgia EPD") (citing Fulton County v. Action Outdoor Advertising, JV, LLC, 289 Ga. 347, 350 (2011)); Accord, S. States-Bartow Co., Inc. v. Riverwood Farm Homeowners Assoc., 300 Ga. 609, 610-611 (2017) ("the Court of Appeals concluded, inter alia, that Southern States' vested right – which was recognized by the Bartow County Superior Court in September 1994, was *acquired* as of the date of its May 1989 application to the EPD") (emphasis in opinion); see also this Court's May 14, 2021 Order "**[i]t is undisputed that Plaintiff's rights vested in December 2016**.  Doc. 66 at 79-80; Doc. 83 at 5.  Plaintiff submitted its application on December 29, 2016, which the EPD accepted along with a filing fee for processing".  [Doc. 114 at 33-34] (emphasis supplied).

Moreover, on May 9, 2022, the Georgia EPD approved Plaintiff's Application and issued the required Permit for the Solid Waste Landfill and the Materials Facility Recovery (Recycling).  [Doc. 164-1].  As an alternative legal method, property rights in Georgia also vest when a permit

3

is actually issued for a particular land use.  <u>Crown Media, LLC v. Gwinnett Cnty</u>., 380 F. 3d 1317, 1325 (11th Cir. 2004) (citing <u>WMM Properties, Inc. v. Cobb Cnty</u>., 255 Ga. 436 (1986)); <u>Jackson v. Delk</u>, 361 S.E.2d 370, 372 (Ga. 1987) (vested right to use property for a particular use can arise from issuance of building permit as well as various other forms of administrative approval).  Once a permit has issued, a landowner has a right to develop the property pursuant to that permit.  <u>Crown Media, LLC</u>, 380 F. 3d at 1326 (citing <u>WMM Properties, Inc</u>., <u>Supra</u>.).  Accordingly, in addition to acquiring vested rights by virtue of being an actual applicant seeking to alter use of its land, Plaintiff also acquired vested rights by virtue of being a permit recipient.

Defendants' argument as to Plaintiff's void for vagueness claim is similarly without merit. Defendants do not dispute that the 2016 Zoning Ordinance was passed without any map to show the land to which its various zoning districts apply.  This fatal defect renders the 2016 Zoning Ordinance void for vagueness.  Nevertheless, Defendants argue there are no facts showing that the 2016 Zoning Ordinance has ever been applied to Plaintiff while **at the same time Defendants are, in fact, attempting to apply the 2016 Zoning Ordinance to Plaintiff and Plaintiff's Property.** At the September 24, 2020 Hearing on Preliminary Injunction, and in their briefing, Defendants applied the 2016 Zoning Ordinance to Plaintiff and its land because Defendants argued that Plaintiff's land is subject to the Heavy Industrial zoning classification, and its special exception requirements, allegedly in place when Plaintiff submitted its EPD application on December 29, 2016.  [Doc. 66 at 79-80]; see also Court's May 14, 2021 Order: "Defendants insist that Plaintiff must comply with the Heavy Industrial zoning allegedly placed on the Property pursuant to the September 8, 2016 Zoning Ordinance".  [Doc. 114 at 34].

Nor are Plaintiff's void for vagueness claims mooted by the 2017 Zoning Ordinance, as urged by Defendants.  As the Court correctly found on this point, Plaintiff's void for vagueness

4

challenge to the 2016 Zoning Ordinance is not mooted by the adoption of a new zoning ordinance and official zoning map on June 15, 2017:

"Given Plaintiff's claim that its rights vested in 2016, the challenge to the 2016 Zoning Ordinance's validity is not obviated by passage of later ordinance in 2017.  See Crown Media, LLC v. Gwinnett Cnty., 380 F.3d 1317, 1325 (11th Cir. 2004) …."  [Doc. 135 at 56].

Defendants now also argue that Plaintiff's void for vagueness challenge fails because Plaintiff somehow knew about the proposed zoning classification for its Property.  Even if Plaintiff was told that the Property would be getting a "Heavy Industrial" zoning, no evidence exists of what that meant from a regulatory standpoint insofar as permitted and forbidden uses, nor is there any evidence that Plaintiff knew about the special exception process contained within the Heavy Industrial zoning which purports to give Defendants unfettered discretion to deny permits for landfills.

Plaintiff's knowledge, or lack thereof, about the proposed zoning classification for its land is completely irrelevant.  To be enforceable, zoning and land use regulations restricting property rights must be formally adopted in a clear manner so that there is no uncertainty as to what restrictions apply.  Because criminal penalties can be imposed for violation of land use regulations, zoning is not a guessing game.  Formalities must be strictly followed when enacting and enforcing land use regulations because when it comes to lawmaking which affects the property rights of Georgia citizens, as zoning ordinances clearly do:

"the law requires such formalism, and as we have explained before, there are good reasons to insist upon such formalism in lawmaking, especially when it comes to the enactment of laws restraining the property rights of citizens.  Such formalism is necessary, we have said, 'to provide certainty to the public as to what was actually adopted … and also to protect the public from any

arbitrary changes of the ordinance or [zoning] maps that do not go through the notice process'". Newton Co. v. East Ga. Land & Dev. Co., 296 Ga. 18, 21 fn. 3 (2014). [2]

With Georgia EPD's issuance of the May 9, 2022 Permit, Plaintiff supplements its Summary Judgment to amend its request for permanent injunctive relief.  As further amended and modified, Plaintiff respectfully requests this Court to grant summary judgment in favor of Plaintiff, deny Defendants' motion for summary judgment and to enter an Order permanently enjoining Defendants from application of the July 9, 2020 Resolution, the 2016 Zoning Ordinance, the 2017 Zoning Ordinance, the 2017 SWMP, the 2020 SWMP and the 2021 SWMP to Plaintiff, Plaintiff's Property and its May 9, 2022 Permit.

## II.      STATEMENT OF THE FACTS

In accordance with Local Rule 56.1, Plaintiff annexed to its Motion for Summary Judgment a separate Statement of Material Facts to which Plaintiff contends there is no dispute and each such Statement of Material Fact is supported by citations to the Record.  [Doc. 141-1].  Pursuant to Fed. R. Civ. P. 10, Plaintiff adopts and incorporates by reference its Statement of Facts as if fully set forth herein.

On November 18, 2021, Plaintiff filed its Supplemental Statement of Undisputed Material Facts to include Defendants' adoption of the 2021 SWMP and to attach a certified copy of the 2021 SWMP into the Record.  [Doc. Nos. 157-1 and 157-2].  Pursuant to Fed. R. Civ. P. 10, Plaintiff adopts and incorporates by reference its Supplemental Statement of Facts as if fully set forth herein.

---

[2] Defendants also move for summary judgment on the issue of damages.  After careful review of this Court's prior order granting in part and denying in part Defendants' Renewed Motion To Dismiss, Plaintiff withdraws its claims for damages, with the exception of its claim for attorney's fees which is preserved and, as ruled by this Court, can be re-urged by Plaintiff upon motion at a later time.  [Doc. 159 at 11].

Plaintiff further submits herewith its Response to Defendants' Statement of Material Facts and Conclusions of Law.  Pursuant to Fed. R. Civ. P. 10, Plaintiff adopts and incorporates by reference its Response to Defendants' Statement of Material Facts and Conclusions of Law as if fully set forth herein.

### III.     LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law".  Fed. R. Civ. P. 56(c).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact".  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted).  Once the moving party meets its burden, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file', designate 'specific facts showing that there is a genuine issue for trial'".  Id. at 324.

The Court must "view the evidence and factual inferences therefrom in the light most favorable to the party opposing the motion".  Cast Steel Prods., Inc. v. Admiral Ins. Co., 348 F.3d 1298, 1301 (11th Cir. 2003).  In assessing the evidence, "[t]he court must not resolve factual disputes by weighing conflicting evidence", Brown v. Hughes, 894 F.2d 1533, 1536 (11th Cir. 1990), but a "mere . . . scintilla of evidence" supporting the opposing party's position will not preclude entry of summary judgment against that party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Loren v. Sasser, 309 F.3d 1296, 1302 (11th Cir. 2002).  To meet the materiality standard, "[o]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted".  Anderson, 477 U.S. at 248; see also United States v. Gilbert, 920 F.2d 878, 883 (11th Cir. 1991).

When properly considered with the relevant, admissible evidence of Record, as a matter of law Defendants' motion for summary judgment should be denied, Plaintiff's motion for summary judgment granted, and permanent injunctive relief entered in favor of Plaintiff and against the Defendants.

## IV.     ARGUMENT AND CITATION TO AUTHORITY

### A.  Plaintiff has standing to maintain its claims

To have standing, a plaintiff must show that it: (1) suffered an injury-in-fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision.  Lujan v. Defenders of Wildfire, 504 U.S. 555, 560 (1992).

As an initial matter, Plaintiff has standing because it has demonstrated, based on undisputed evidence, that it acquired vested rights to develop its Property under the valid law in force as of December 29, 2016 when it submitted its Application for solid waste handling facilities to the Georgia EPD.  After Plaintiff acquired vested rights, Defendants took adverse regulatory actions including: (1) the July 9, 2020 Resolution, (2) the 2016 Zoning Ordinance, (3) the 2017 Zoning Ordinance, (4) the 2017 SWMP, (5) the 2020 SWMP and (6) the 2021 SWMP, any and all of which impair and injure Plaintiff's constitutionally protected vested property rights.

This Court previously, and correctly, found that "all of these actions [referring to the above regulatory actions] are outward attempts to impede Plaintiff from satisfying the requirements of O.C.G.A. § 12-8-24(g) that are necessary for Plaintiff to receive a determination on its EPD permit".  [Doc. 114 at 23].  With respect to the July 9, 2020 Resolution withdrawing Defendants' 2014 and 2015 certification letters to the EPD, this Court found that the Resolution "seeks to

8

eliminate a previously-acquired vested right by retroactively preventing the consideration of Plaintiff's EPD application.  Consequently, Plaintiff has sufficiently demonstrated that the July 9, 2020 resolution is retrospective and **injuriously impairs** Plaintiff's vested right to develop its land free from restriction."  [Doc. 114 at 32] (emphasis supplied).

With respect to the 2016 Zoning Ordinance, Defendants "insist that Plaintiff must comply with the Heavy Industrial zoning allegedly placed on the Property pursuant [to the 2016 Zoning Ordinance]" and "Defendants refuse to reaffirm verification of zoning consistency to the EPD, claiming that Plaintiff's proposal is inconsistent with the 2016 Zoning Ordinance – the law that was in effect at the time Plaintiff's application was filed".  [Doc. 114 at 32 & 35].  After careful consideration and analysis, this Court found that "Plaintiff has sufficiently demonstrated that the 2016 Zoning Ordinance is likely invalid [void for vagueness].  In the absence of valid zoning regulations at the time of Plaintiff's application, Defendants are required to issue the necessary reaffirmation of zoning consistency **to avoid a deprivation of Plaintiff's vested rights**."  [Doc. 114 at 43] (emphasis supplied); see also Am. Civil Liberties Union of Ga. v. Miller, 977 F. Supp. 1228, 1235 (N.D. Ga. 1997) (being subject to unconstitutionally vague laws [such as the 2016 Zoning Ordinance] imposes irreparable harm warranting the grant of injunctive relief).

And, with respect to the 2017 Zoning Ordinance, the 2017 SWMP and the 2020 SWMP, this Court found it undisputed that Plaintiff's rights vested in 2016, thus "retrospective application of regulations enacted in 2017 **would impair Plaintiff's vested rights** to develop its land free from later restriction."  [Doc. 114 at 44]; see also S. States-Bartow Cnty., Inc. v. Riverwood Farm Homeowners Ass'n., 797 S.E.2d 468, 471 (Ga. 2017) (the Georgia Constitution "prohibits a legislative exercise of the police power that results in the passage of retrospective laws which injuriously affect the 'vested rights' of citizens"); City of Duluth v. Riverbrooke Properties, Inc., 233 Ga. App. 46, 50 (1998) ("[a] governmental entity cannot make laws and regulations retroactive

9

when a person has acquired a vested property interest").

Defendants' Summary Judgment does not address any of these grounds for standing. Plaintiff has demonstrated multiple injuries and invasions of its legally protected interests based on retrospective application of regulatory action to its vested rights and Defendants' application of the unconstitutionally vague 2016 Zoning Ordinance.  Legal relief from this Court enjoining these regulatory actions would alleviate the harm to Plaintiff's vested property rights and remove regulatory barriers precluding Plaintiff from developing its Property in accordance with those rights.  Plaintiff has standing and its claims are ripe.  Lujan, Supra.; see also Crown Media, LLC v. Gwinnett County, 380 F.3d 1317, 1325 (11th Cir. 2004) (concluding a plaintiff's claim seeking recognition of vested property rights presents a live controversy despite the defendants' repeal of the challenged ordinances).

Defendants' Summary Judgment having not controverted any of these grounds for standing, it should be denied.

   a.  **Plaintiff has standing related to the 2017 Zoning Ordinance**.

In the context of a challenge to a land use regulation, the test of the plaintiff's standing is whether there are specific, concrete facts demonstrating that the challenged practices cause harm and that the plaintiff would benefit in a tangible way from the court's intervention.  White v. City of Live Oak, No. 3:09-CV-391-J-34JRK, 2010 WL 11623480, at *12 (M.D. Fla. June 8, 2010); see also Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 261 (1977) (developer had standing when the challenged zoning decision stood as an absolute barrier to the proposed development and, with relief from the court, such barrier would be removed).

In their current arguments, Defendants baldly deny that the 2017 Zoning Ordinance forbids Plaintiff from developing the Property as a solid waste handling facility and bizarrely argue that

there is no evidence that the 2017 Zoning Ordinance prevents Plaintiff from developing the Property in such manner.  [See Doc. 167 at 11].  Defendants' arguments are belied by the clear Record evidence.

On May 10, 2017, Defendants' attorney Deen Strickland sent a letter to Plaintiff's Registered Agent advising that Defendants would be zoning the Property to the Light Industrial classification.  [Dkt. No. 1-19].  Then, on June 15, 2017, **over Plaintiff's objection**, Defendants adopted the 2017 Zoning Ordinance and imposed the Light Industrial classification on the Property.  The 2017 Zoning Ordinance and its Zoning Map are before the Court in evidence.  [Doc. Nos. 58-4 and 86-4].  By its plain text, the Light Industrial classification **forbids the solid waste handling facilities sought by Plaintiff with its EPD Application from being developed on the Property**.  [Accord Doc. 135 at 13 ("[t]he 2017 rezoning decision forbids Plaintiff from using its Property in a particular manner – namely, as a solid waste handling facility").  Defendants have the regulatory power to rezone Plaintiff's Property to remove these regulatory barriers, but they have failed and refused to do so.  Because the 2017 Zoning Ordinance stands as an "absolute barrier" to Plaintiff's proposed development, Plaintiff has standing to seek relief from this Court to remove this regulatory barrier.

**b.  Plaintiff also has standing based on its expenditures.**

Plaintiff has spent millions of dollars pursuing its proposed solid waste handling facilities. On November 21, 2014, before closing on the Property, Plaintiff sought and obtained written verification letters from County Manager Carl Rowland certifying that the proposed solid waste handling facilities on the Property were consistent with Defendants' solid waste management plan and local land use plan.  The letters confirmed that "Brantley County at the present time does not have a zoning ordinance".  [Doc. 58-2 at 2; Doc. 58-3 at 4, Exs."B", "C" and "D" thereto; Doc. No. 74 at 2, Exs. "A" and "B" thereto].  Before November, 2014, Defendants knew Plaintiff was

11

interested in development of the Property with a landfill, which is why Plaintiff requested issuance of the letters before closing.  [Doc. 58-3 at 3-4; Doc. 85].

On December 22, 2014, Plaintiff bought the Property for over $2,632,000.00 to develop it with the solid waste handling facilities.  When Plaintiff purchased the land, **the solid waste handling facilities indisputably were permitted uses as evidenced by County certifications. Brantley County had no zoning restrictions at that time**.  [Doc. 58-2 at 2-3; Doc. 58-3 at 4, Ex. "E"].  Plaintiff bought the Property to develop it with the solid waste handling facilities – it would never have bought it as a speculative investment. [Id.].  Brantley County Commissioners were aware of Plaintiff's purchase commitment for the Property and that Plaintiff would be spending hundreds of thousands of dollars of additional monies to apply to the state for the necessary permits to site the facilities.  [Doc. 58-4 (Sworn Statement of Mike Edgy) at 24-25].

In addition to the Property purchase price of over 2.6 million dollars, Plaintiff has spent $1,109,436.15 on engineers, geologists, hydrogeologists, other professionals, and carrying costs, pursuing development of the solid waste handling facilities on the Property as sought with its EPD Application.  This figure does not include BCDP's legal fees.  [Doc. 58-2 at 9].

The evidence more than shows injury related to expenditures so as to confer standing based on Plaintiff's investment backed plans for the Property.  Bolstering this point, both EPD's Site Suitability and the issued Permit for the solid waste facilities **are specific to Plaintiff's Property**. [Doc. 58-1 at 5, Ex. "2"; Doc. 164-1].  Indeed, the whole point of obtaining site suitability is to receive official approval from Georgia EPD that the subject Property is suitable for siting the solid waste handling facilities, paving the way for ultimate issuance of the Permit for the Property.  This project is not the type of development that can simply be moved elsewhere. All of the planning, work, money spent and EPD approvals obtained to date is for siting the facility **on this Property** and the plans are not transferable even if Plaintiff wanted to relocate.

Without judicial redress, Plaintiff's development efforts will be rendered valueless due to Defendants' regulatory conduct.  Plaintiff's economic injury confers standing.  See Vill. Of Arlington Heights, 429 U.S. at 262 (finding injury for purposes of standing where plaintiff expended thousands of dollars on plans and studies because, in the context of land development, "many of these plans and studies will be worthless").

    **c.   Plaintiff has standing based on delay of Permit**

Defendants' argument on this point is belied by the Record evidence.  In January 2017, Defendants took official action instructing all county officials to cease and desist communication with Plaintiff, imposed a moratorium on landfills and voted to send written objection to the EPD regarding Plaintiff's permit Application.  [Doc. 114 at 4].  On January 6, 2007, the County Attorney sent correspondence to the Georgia EPD stating Defendants' "unanimous opposition" to Plaintiff's Application.  [Doc. 114 at 5].  Defendants also adopted the 2017 Zoning Ordinance, the 2017 SWMP and took other regulatory action to hinder, deny, and delay Plaintiff's vested property right to develop its Property with the solid waste handling facilities sought with its Application.  [Doc. 114 at 10].

On June 19, 2019 Plaintiff demanded in writing that Defendants provide the requisite reaffirmation of zoning consistency as needed to complete processing and approval of Plaintiff's pending EPD Application.  [Doc. 114 at 6 and 10].  Defendants refused.  At the September 24, 2020 Preliminary Injunction Hearing, Defendants doubled down on their refusal, affirmatively stating to this Court that they would not issue the required reaffirmation without being ordered to do so.  [Doc. 114 at 11].

In EPD's own words, "**reaffirmation of zoning consistency must be submitted to EPD prior to a final decision regarding the issuance of a permit**" and only after receiving the required reaffirmation from Defendants will Plaintiff's solid waste permit be issued or denied.

[Doc. 114 at 11].   At every turn, Defendants made it clear they would not reaffirm zoning consistency and they took regulatory action prohibiting Plaintiff from using its land for the proposed solid waste handling facilities.   Defendants wrote an official letter stating that they "**oppose <u>any permitting</u> for a solid waste disposal facility in Brantley County**" and on July 9, 2020 they passed a Resolution purportedly withdrawing the initial certification letters issued to Georgia EPD in 2014 and 2015.   [Doc. 58-2 at 16 and Doc. 61].   Within the July 9, 2020 Resolution, Defendants acknowledge that the certification letters they purported to withdraw are necessary for the EPD permitting process.   This evidence showing Defendants' actions hinder, delay and thwart the Permit process is more than sufficient to confer standing.

Defendants' argument on this point also appears to be completely disconnected from the reality that they issued the reaffirmation letter to the EPD only under pain of being held in contempt of this Court's May 14, 2020 Order.   Irrespective of Defendants' avoidance of contempt, Plaintiff still has standing on this basis.   With the July 9, 2020 Resolution, Defendants took official action to withdraw the 2015 verification letters asserting, years later, that the letters are ultra vires and thus void.   Within that July 9, 2020 Resolution, Defendants acknowledge that the 2015 verification letters were required for Plaintiff to obtain a permit for a solid waste handling facility.   [Doc. 58-2 at 7, Ex. "4"].   Defendants have not rescinded the July 9, 2020 Resolution.

Therefore, in what appears to be a regulatory "head fake", on the one hand Defendants issued the reaffirmation letter to avoid being held in contempt, but on the other hand they still stubbornly insist that the initial 2015 letters required for Plaintiff to obtain a permit are void.   Put another way, to avoid contempt Defendants issued a letter reaffirming an official act while concomitantly claiming that same official act to be invalid.   Even with issuance of the reaffirmation letter, Plaintiff needs relief from Defendants' regulatory actions, including the July 9, 2020

Resolution.  Otherwise, those regulations, and Defendants' on-going conduct, continue to hinder, thwart, frustrate and delay Plaintiff's Permit.  Defendants' Summary Judgment should be denied.

    2.    **Plaintiff's injuries are redressable by Court decision**.

Because injunctions regulate future conduct, a party has standing to seek injunctive relief when it shows "**a real and immediate**—as opposed to a merely conjectural or hypothetical—**threat of future injury**." Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1328-29 (11th Cir. 2013) (emphasis supplied); see also Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1283 (11th Cir. 2001); Jones v. Family First Credit Union, 340 F.Supp.3d 1356 (N.D. Ga. 2018).  As set forth above, Plaintiff is suffering injury every day Defendants continue to refuse to remove their regulatory barriers to Plaintiff's Permit and from construction and operation of the permitted solid waste facilities.

    **B.  Plaintiff obtained vested rights.**

    a.  **Plaintiff acquired vested rights by virtue of submission of its December 29, 2016 Application to the Georgia EPD**.

Plaintiff acquired vested rights based on its status as a permit applicant pursuant to the December 29, 2016 Application to the Georgia EPD.  Defendants previously conceded Plaintiff acquired vested rights in this manner, but Defendants now claim Plaintiff has no vested rights whatsoever.  Defendants' Summary Judgment does not address or controvert this method by which Plaintiff acquired vested rights.  On this argument, pursuant to Fed. R. Civ. P. 10, Plaintiff adopts and incorporates herein by reference Section IV A of its Summary Judgment Brief [Doc. 141-2 at 6-9] and Section III B of its Reply Brief In Support of Summary Judgment [Doc. 157 at 11-14] as if fully set forth herein.

    b.  **Plaintiff acquired vested rights by virtue of receiving the May 9, 2022 Permit from EPD**.

15

On May 9, 2022, the Georgia EPD approved Plaintiff's Application and issued a Permit for the Solid Waste Landfill and the Materials Facility Recovery (Recycling).  [Doc. 164-1].  As an alternative legal method to **section a.** hereinabove, property rights in Georgia also vest when a permit is actually issued for a particular land use.  Crown Media, LLC v. Gwinnett Cnty., 380 F. 3d 1317, 1325 (11th Cir. 2004) (citing WMM Properties, Inc. v. Cobb Cnty., 255 Ga. 436 (1986)).  Once a permit has issued, a landowner has a right to develop the property pursuant to that permit.  Crown Media, LLC, 380 F. 3d at 1326 (citing WMM Properties, Inc., Supra.).  Accordingly, in addition to acquiring vested rights by virtue of being an actual applicant seeking to alter use of its land, Plaintiff also acquired vested rights by virtue of being a permit recipient.

**c.** **Defendants' motion for summary judgment should also be denied as Plaintiff acquired vested rights based on official assurances and reliance**.

Either of the methods of vesting discussed above are dispositive as a matter of law and warrant grant of Plaintiff's Summary Judgment and denial of Defendants' Summary Judgment.  However, the factual evidence gives rise to a third method of vesting, also warranting denial of Defendants' Summary Judgment.  A landowner acquires a vested right to develop property when: (1) property is purchased in reliance upon the assurance of a county representative that the property is zoned for the **use intended**; and (2) the landowner spends money in reliance upon the development plan and the existing zoning.   See Clairmont Dev. Co. v. Morgan, 222 Ga. 255 (1966); Norton Realty & Loan Co. v. City of Gainesville, 224 Ga. 166 (1968); Spalding Co. v. East Enterprises, Inc., 232 Ga. 887 (1974); WMM Properties, Inc. v. Cobb Co., 255 Ga. 436, 439 (1986).

Vested rights being based on principles of fairness and equity, equitable estoppel is applied to determine whether "the landowner, relying in good faith upon some act or omission of the government, has made a substantial change in position or incurred such extensive obligation and

16

expenses that it would be highly inequitable and unjust to destroy the rights he has acquired". North Ga. Mountain Crisis Network v. City of Blue Ridge, 248 Ga. 450, 452 (2) (2001) (citing Cohn Communities, Inc. v. Clayton Co., 257 Ga. 357 (1987)).

The factual evidence shows that Plaintiff acquired vested rights based on assurances and reliance or, at least, questions of fact exist as to whether Plaintiff acquired vested rights in such manner.  [See Doc. 135 at 61-62 for discussion of evidence giving rise to claim for this type of vested right].  Before closing on the Property, Plaintiff sought and obtained written verification letters that a solid waste handling facility on the property was consistent with Defendants' solid waste management plan and local land use plan.   Having received both verbal and written assurances from county officials that a solid waste facility was authorized, and in reliance on those assurances, on December 22, 2014 Plaintiff bought the land for over $2.6 million in order to so develop it.  In addition to the property purchase price, Plaintiff has spent well over 1 million dollars on professional engineers, geologists, hydrogeologists, and the like, pursuing development of the solid waste facility on Plaintiff's property. Having relied upon Defendants' assurances with the expenditure of substantial monies, Plaintiff has a vested right to develop its land.  See Edwards v. City of Warner Robbins, 302 Ga. 381, 387 (2017) (landowner acquires vested right when he has made expenditures, in addition to paying the purchase price, in reliance on the existing zoning and assurances by zoning officials).

   1.  **The Consistency Letters were not issued ultra vires**.

Defendants' argument on this point is that the 2015 SWMP consistency letter was issued ultra vires because it was allegedly given in violation of procedural requirements within the 2006 SWMP.  Defendants are wrong because the 2006 SWMP is a **plan** that serves as a **guide** for future solid waste facilities.  The 2006 SWMP is without the force of law and **cannot bind** Defendants in the performance of their legislative duties.  See Lamar Cnty v. E.T. Carlyle Co., 277 Ga. 690,

17

693-694 (2004) (holding that county solid waste development plan adopted under O.C.G.A. § 12-8-20, et. seq. was a plan that served as a guide but it is without the force of law and cannot bind the county in the performance of legislative duties).

On February 5, 2015, at a regularly scheduled meeting, the Brantley County Board of Commissioners took **official action by vote** to **legislatively** confirm, ratify and approve Plaintiff's proposed solid waste handling facilities as "**consistent with our local land use plan and our Solid Waste Management Plan**".  The minutes and regular agenda show Plaintiff requested Defendants ratify and confirm the prior certification that the proposed facilities were consistent with the local land use plan and the solid waste management plan.  Consequently, Defendants authorized the Chairman of the Board of Commissioners to execute the two 2015 verification letters.  Defendants' official minutes acknowledge that Defendants knew these letters were necessary for Plaintiff to obtain permits from the EPD in order to conduct solid waste material activities.  [Doc. 114 at 3; Doc. 135 at 3].

The February 6, 2015 consistency letter represents:

"**The Board of Commissioners and its staff have reviewed the approved Solid Waste Management Plan** adopted by Brantley County and the Cities of Hoboken and Nahunta on June 26, 2006 and our most recent 2011 Five-year Short Term Work Program … **and have determined that the solid waste handling facilities being proposed by Brantley County Development Partners, LLC to be located on a site formerly known as Magnolia Holdings Business Park is consistent with the plans and programs cited above**".  [Doc. 58-3 at 82-83]. (emphasis supplied).

Defendants admit "the County has the general authority to issue consistency letters for EPD permit applicants." [Doc. 55 at 12].  Under this authority, Defendants can assess the consistency of Plaintiff's proposed facility with all the provisions found within the 2006 SWMP.  This included

18

assessing whether a proposed solid waste facility furthered the stated goals of solid waste reduction and additional revenue sources, among other stated goals in the 2006 SWMP.  [Doc. 48-3 at 55-56; see also p. 45 "Brantley County … will carefully analyze and choose the disposal options most advantageous to the County, considering economics, environmental concerns, land uses and other issues."].

In determining whether a proposed facility is consistent with its SWMP, the Georgia Supreme Court holds that a local government is authorized to consider **any relevant factor** that it appropriately considered in the SWMP itself.  Murray Cnty. v. R&J Murray, LLC, 627 S.E.2d 574, 578 (Ga. 2006).  Therefore, based on the text of the 2006 SWMP, Defendants had legislative discretion when determining consistency with the 2006 SWMP and voting to issue the consistency letter.  Lamar Cnty., Supra.  Plaintiff was certainly entitled to rely on Defendants' issuance of the consistency letter, done by unanimous official act with proper authority.

The rule on this point is that although a governmental agency cannot be estopped by ultra vires act, there is a broad distinction to be observed between an irregular exercise of a granted power, and the total absence or want of power, and **the rule is that the governmental agency may be estopped when the act relied on to create the estoppel was within its corporate powers, although the method of exercising the power was irregular or unauthorized**.  City of Summerville v. Ga. Power Co., 205 Ga. 843, 846 (1949); Quillian v. Employees' Retirement System, 259 Ga. 253, 255 (1989) (even if act done in error, it was not ultra vires because it was done with appropriate authority); Mullis v. Bibb Cnty., 669 S.E.2d 716, 719 (Ga. Ct. App. 2008) (error made during the commission of an otherwise authorized action not ultra vires); City of Holly Springs v. Cherokee Cnty., 682 S.E.2d 644, 649 (Ga. Ct. App. 2009) (county approval of property annexation was not ultra vires even though county failed to follow certain procedural requirements); City of Duluth v. Riverbrooke Props., Inc., 502 S.E.2d 806, 813 (Ga. Ct. App. 1998)

19

(issuance of occupancy permit was not an ultra vires act even though developer failed to follow procedural requirements in preliminary development plans).

Defendants' reliance on <u>Union County v. CGP, Inc.,</u> 277 Ga. 349 (2003) is misplaced because that case does not involve issuance of a development entitlement by official act of a local governing body. Instead, <u>Union County</u> involved the wrongful issuance of a permit in violation of an official act by the local governing body. In such instance, the permit issuance is ultra vires because it violates official action by a local governing body. But, that is wholly different than here where the local governing body, by authorized official act, has itself approved the very use it now illegally tries to deny.

Here, when Defendants took official action on February 5, 2015 to authorize issuance of the 2015 SWMP consistency letter, they did so with appropriate authority as the elected governing body of Brantley County. Even if the letter was issued in error (which it was not), the act is not ultra vires because it was done under proper authority vested with the Board of Commissioners, and Plaintiff is certainly entitled to rely upon official legislative action taken by the governing body.

## C. Plaintiff has asserted valid void for vagueness claims under both the United States and Georgia Constitutions.

Defendants do not dispute that the 2016 Zoning Ordinance was passed without any map to show the land to which its various zoning districts apply. This fatal defect renders the 2016 Zoning Ordinance void for vagueness. Nevertheless, Defendants argue they are entitled to summary judgment because there are no facts showing that the 2016 Zoning Ordinance has ever been applied to Plaintiff. [Doc. 167 at 21]. This argument is perplexing because at the September 24, 2020 Hearing, and in their briefing, Defendants applied the 2016 Zoning Ordinance to Plaintiff and its land, arguing that Plaintiff's land is subject to the Heavy Industrial zoning classification, and its

20

special exception requirements, allegedly in place when Plaintiff submitted its EPD application on December 29, 2016.  [Doc. 66 at 79-80]; see also Court's May 14, 2021 Order: "Defendants insist that Plaintiff must comply with the Heavy Industrial zoning allegedly placed on the Property pursuant to the September 8, 2016 Zoning Ordinance".  [Doc. 114 at 34].

Nor are Plaintiff's void for vagueness claims mooted by the 2017 Zoning Ordinance.  As the Court correctly found on this point, Plaintiff's void for vagueness challenge to the 2016 Zoning Ordinance is not mooted by the adoption of a new zoning ordinance and official zoning map on June 15, 2017:

"Given Plaintiff's claim that its rights vested in 2016, the challenge to the 2016 Zoning Ordinance's validity is not obviated by passage of later ordinance in 2017.  See Crown Media, LLC v. Gwinnett Cnty., 380 F.3d 1317, 1325 (11th Cir. 2004) …."  [Doc. 135 at 56].

A case is rendered moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome and the court no longer can grant meaningful relief.  Crown Media, LLC, 380 F.3d at 1324.  For the repeal of a statute to moot a challenge to the statute, the governmental defendant must show that there is no reasonable likelihood that the repealed statute would be reinstated.  Id.

Plaintiff's void for vagueness challenge to the 2016 Zoning Ordinance is not moot **because Defendants are attempting to apply its regulations to Plaintiff and Plaintiff's Property.**  As noted, Plaintiff contends that it has a vested right to develop the land **without these invalid zoning restrictions**.  Therefore, given Plaintiff's vested rights, and Defendants' attempt to enforce the 2016 Zoning Ordinance against Plaintiff and its Property, a live controversy exists upon which the Court can grant meaningful relief.  That relief is that Plaintiff's vested property right is not subject to the 2016 Zoning Ordinance because it is void for vagueness.

21

Defendants also appear to argue that Plaintiff's void for vagueness challenge fails because Plaintiff somehow knew about the proposed zoning classification for its Property.  [Doc. 167 at 22].  Even if Plaintiff was told that the Property would be getting a "Heavy Industrial" zoning, no evidence exists of what that meant from a regulatory standpoint insofar as permitted and forbidden uses, nor is there any evidence that Plaintiff knew about the special exception process for landfills contained within the Heavy Industrial zoning. Plaintiff's knowledge, or lack thereof, about the proposed zoning classification for its land is irrelevant.  The 2016 Zoning Ordinance imposes **criminal penalties** if land is used in violation of its terms.  Section 10-5 of the 2016 Zoning Ordinance states that if land is used in violation of the ordinance, the offender shall, upon conviction in magistrate court, be fined no more than $500.00 or **imprisoned** for not more than sixty (60) days, or both, for each offense **and each day of continued violation is considered a separate offense**.  [Doc. 1-8 at 47] (emphasis supplied).

Because zoning ordinances, like the one here, call for criminal penalties, they cannot be imposed on landowners by words or subjective thoughts.  To be enforceable, zoning and land use regulations restricting property rights must be formally adopted in a clear manner so that there is no uncertainty as to what restrictions apply.  Newton Co. v. East Ga. Land & Dev. Co., 296 Ga. 18, 21 fn. 3 (2014).

### D.  Damages.

As noted, Plaintiff withdraws its claims for monetary damages, save for its claim for attorney's fees which Plaintiff expressly preserves.  This Court has previously ruled Plaintiff may re-urge its claim for attorney fees by motion at a later time.  [Doc. 159 at 11].

### E.  Defendants have no Legislative Immunity.

Defendants' legislative immunity argument is without merit.  Plaintiff has not challenged the Defendants' votes to adopt the challenged regulations.  Instead, Plaintiff challenges

22

Defendants' enforcement of regulations already established which injure and impair Plaintiff's vested rights.  In other words, Plaintiff does not challenge Defendants' legislative power when voting to enact its zoning ordinances and solid waste management plans.  Instead, Plaintiff challenges Defendants' enforcement of those regulations and seeks prospective relief against the application of illegal and unconstitutional regulatory actions to Plaintiff's vested rights. Legislative immunity has no application to such relief.  See <u>Dawson Cnty. Bd. of Comm'rs v. Dawson Forest Holdings, LLC</u>, 850 S.E.2d 870. 875 (Ga. Ct. App. 2020).

**F**. **Plaintiff is entitled to permanent injunctive relief**.

Having satisfied all criteria as demonstrated within previous briefing, Plaintiff is entitled to summary judgment permanently enjoining Defendants application of the July 9, 2020 Resolution, the 2016 Zoning Ordinance, the 2017 Zoning Ordinance, the 2017 SWMP, the 2020 SWMP and the 2021 SWMP to Plaintiff, Plaintiff's Property and the May 9, 2022 Permit issued to Plaintiff and ordering Defendants to take no other regulatory actions inconsistent with the rulings and findings of this Court.  Defendants' Summary Judgment should be denied.

## CONCLUSION

For the reasons set forth above and within its Previous Briefing, Plaintiff respectfully requests that this Court deny Defendants' motion for summary judgment, grant summary judgment in favor of Plaintiff and enter permanent injunctive relief against Defendants.

Respectfully Submitted, this 22nd day of June, 2022.

LOVETT LAW GROUP, LLC

By:     /s/ L. Robert Lovett
          L. Robert Lovett
          Georgia Bar No. 459566
          2500 Northside Crossing
          100 Northside Drive
          Macon, Georgia 31210
          (478) 714-251

23

GILBERT, HARRELL, SUMERFORD &
MARTIN, P.C.

By:   /s/ Mark D. Johnson
        Mark D. Johnson
        Georgia Bar No. 395041
        Post Office Box 190
        Brunswick, Georgia 31521-0190
        (912) 265-6700

BROWN ROUNTREE PC

By:   /s/ George Rountree
        George Rountree
        Georgia Bar No. 616205
        26 North Main St
        Statesboro, Georgia 30458
        (912) 489-6900
        georgia@br-firm.com

WILSON BROCK & IRBY, L.L.C.

By:   /s/ Kyler L. Wise
        Kyler L. Wise
        Georgia Bar No. 77128
        2849 Paces Ferry Road SE, Suite 700
        Atlanta, Georgia 30339
        (404) 853-5050
        kwise@wbilegal.com

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing pleading via electronic

service through the PACER e-filing system upon:

Dana K. Maine
Robert P. Marcovitch
Rachael Slimmon
Freeman Mathis & Gary, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339

This 22nd day of June, 2022.

/s/ Kyler L. Wise
Kyler L. Wise

25