IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| BRANTLEY COUNTY DEVELOPMENT PARTNERS, LLC | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CASE NO. 5:19-CV-00109 |
| | : | |
| BRANTLEY COUNTY, GEORGIA by and through its Chairman and Members of the Brantley County Board of Commissioners; CHRIS "SKIPPER" HARRIS, RANDY DAVIDSON, BRIAN HENDRIX, JESSE MOBLEY AND RAY GRIFFIN, all in their individual and official capacities as Commissioners, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF BRANTLEY COUNTY DEVELOPMENT PARTNERS, LLC'S
RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS
FOR WHICH THERE EXIST NO GENUINE ISSUE OF DISPUTE TO BE TRIED AND
CONCLUSIONS OF LAW**

Brantley County Development Partners, LLC ("Plaintiff"), pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, hereby responds to Defendants' Statement of Material Facts for which there is no genuine issue to be tried and Conclusion of Law [Doc. 167-1], as follows:

I.      **RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS FOR WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

1.

**Response**: Not Disputed.

105168.1 141566-000002

2.

**Response**:  Disputed.  Plaintiff acquired the subject Property by virtue of one (1) vesting deed recorded at Deed Book 588, Page 235, Brantley County, Georgia Records and such deed describes the majority of the land acquired within one tract located on both sides of Highway 82/Georgia State Highway 520.  [Doc. 1-1].  Moreover, Brantley County taxes the Property as one contiguous parcel (parcel ID B072003) consisting of approximately 2,389 acres located on both the north and south side of Highway 82.  A true and correct copy of the Brantley County tax map for the Property is attached hereto as Exhibit "1".  See Horne v. Potter, 392 Fed. Appx. 800, 802 (11th Cir. 2010); Universal Express, Inc. v. SEC, 177 Fed. Appx. 52, 53 (11th Cir. 2006) (the Court may take judicial notice of public records).

3.

**Response**:  Plaintiff denies that the content of Statement Number 3 is relevant or contains any material fact pertinent to the legal issues pending before the Court on motion for summary judgment.  Nevertheless, it is disputed.  In 2014, Brantley County officials Carl Rowland and Mike Edgy approached and solicited Plaintiff to develop a 2,389 acre tract of land in unincorporated Brantley County known as the Magnolia Holdings Business Park into a "Technology Park," which would include, among other things, a subtitle "D" solid waste disposal facility and thermal conversion process (the "Property").  [Doc. No. 58-3 at 2-3; Doc. No. 58-2 at 2].

4.

**Response**:  Plaintiff denies that the content of Statement Number 4 is relevant or contains any material fact pertinent to the legal issues pending before the Court on motion for summary judgment.  The content of Statement Number 4 is inadmissible hearsay and should not be considered by the Court as it pertains to a conversation Mr. Rowland allegedly had with an

105168.1 141566-000002

unnamed engineer and includes alleged hearsay statements from the unnamed engineer. Nevertheless, it is disputed. The genesis of discussions concerning a landfill were captured by Matt Roper's contemporaneous March 4, 2014 email to then partner Don Marks stating in pertinent part: "I got a green light from 4/5 commissioners and the county [manager] to develop my solid waste facility and an industrial park. They're begging for someone to bring industry/technology into the county …. the bank owned tract is 2400 acres, and I would only need 300 for a landfill/solid waste facility, and the county wants a 200 acre industrial park developed alongside … The county is willing to wave [sic] all taxes until I receive my permit for the landfill. **The county actually wants a landfill for the host fees (taxes). I tried steering them toward WTE [waste to energy], but they insist on a landfill, which isn't a problem, for I would incorporate both …. I have never had so much support from a municipality**." [Doc. 85 (Second Affidavit of Matt Roper)] (emphasis supplied).

5.

**Response**:   Plaintiff denies that the content of Statement Number 5 is relevant or contains any material fact pertinent to the legal issues pending before the Court on motion for summary judgment. Nevertheless, it is disputed. [See Response to Statement Number 4 hereinabove].

6.

**Response**:    Plaintiff denies that the content of Statement Number 6 is relevant or contains any material fact pertinent to the legal issues pending before the Court on motion for summary judgment. Nevertheless, it is disputed. [See Doc. No. 58-3 at 2-3; Doc. No. 58-2 at 2; Doc. 85].

7.

**Response**:  Plaintiff denies that the content of Statement Number 7 is relevant or contains any material fact pertinent to the legal issues pending before the Court on motion for summary

judgment. Nevertheless, it is disputed.  [See Response to Statement Number 4 hereinabove; see also Doc. No. 58-3 at 2-3; Doc. No. 58-2 at 2].

8.

**Response**:   Plaintiff denies that the content of Statement Number 8 is relevant or contains any material fact pertinent to the legal issues pending before the Court on motion for summary judgment. Nevertheless, it is not disputed.

9.

**Response**:   Plaintiff denies that the content of Statement Number 9 is relevant or contains any material fact pertinent to the legal issues pending before the Court on motion for summary judgment. Nevertheless, it is not disputed.

10.

**Response**:  Plaintiff denies that the content of Statement Number 10 is relevant or contains any material fact pertinent to the legal issues pending before the Court on motion for summary judgment. Nevertheless, it is not disputed.

11.

**Response**:  Plaintiff denies that the content of Statement Number 11 is relevant or contains any material fact pertinent to the legal issues pending before the Court on motion for summary judgment. Nevertheless, it is not disputed.

12.

**Response**:  Plaintiff denies that the content of Statement Number 12 is relevant or contains any material fact pertinent to the legal issues pending before the Court on motion for summary judgment.  Nevertheless, it is not disputed insofar as the Disaster Plan, in and of itself, does not

4

specifically tie reference to a landfill to Plaintiff's Property.  In further response, see response to Statement Number 13.

13.

**Response**:  Disputed.  During the relevant timeframe in 2015 and 2016, the Brantley County Board of Commissioners were fully aware of all of Plaintiff's plans, including the landfill, and they had agreed to everything.  [Doc. 88-1 (Deposition of Carl Rowland) at 24-25; 140-141 ("Q. Why do you think they [Commissioners] knew it was a landfill from day one? A. Because I was there and I told them from day one.").  Defendants' own meeting minutes throughout 2015 and 2016 repeatedly reference and discuss Plaintiff's proposed solid waste handling facilities, including use of the words "landfill" and "Subtitle D landfill".  [Docs. 89-7, 89-8, 89-10; Docs. 86-8, 86-9].

On June 10, 2016, before adoption of the Disaster Plan, Defendants adopted a Comprehensive Plan which states: "The community does not have a Subtitle D Solid Waste Facility for economic development and emergency management. **The location of such a facility is, however, generating a lot of discussion within the County**." [Doc. 86-11 at 11] (emphasis supplied).  Also in June, 2016 County representatives flew to Knoxville, Tennessee to look at a solid waste facility like one being proposed by Plaintiff and the County approved reimbursement for the trip expense.  [Doc. 86-12].

14.

**Response**:  Disputed in part.  On November 21, 2014, before closing on the Property, Plaintiff sought and obtained written verification letters from County Manager Carl Rowland certifying that the proposed solid waste handling facilities on the Property were consistent with Defendants' solid waste management plan and local land use plan.  The letters confirmed that

5

"Brantley County at the present time does not have a zoning ordinance". [Doc. No. 58-2 at 2; Doc. No. 58-3 at 4, Exs."B", "C" and "D" thereto; Doc. No. 74 at 2, Exs. "A" and "B" thereto]. Plaintiff agrees there was no vote from the Board of Commissioners specifically authorizing Mr. Rowland to issue the November, 2014 letters. But, before November, 2014, Defendants knew Plaintiff was interested in development of the Property with a landfill, which is why Plaintiff requested issuance of the letters before closing. [Doc. 58-3 at 3-4; Doc. 85]. Nor was any vote necessary as Mr. Rowland had the authority, as County Manager, to issue the November, 2014 consistency letters under the broad authority granted to him by the Brantley County Code of Ordinance, Section 2-105, a true and correct copy of which is attached hereto as Exhibit "2".

15.

**Response**:   Disputed.    On December 22, 2014, Plaintiff bought the Property from Primesouth Bank for over $2,632,000.00 to develop it with solid waste handling facilities. When Plaintiff purchased the land, **the solid waste handling facilities indisputably were permitted uses as evidenced by County certifications.  Brantley County had no zoning restrictions at that time**.  Plaintiff purchased the Property to develop it with the solid waste handling facilities; Plaintiff would never have bought it as a speculative investment. [Doc. 58-2 at 2-3, ¶ 5; Doc. 58-3 at 4, ¶ 8].

Brantley County Commissioners were aware of Plaintiff's purchase commitment for the Property and that Plaintiff would be spending hundreds of thousands of dollars of additional monies to apply to the state for the necessary permits to site the facilities. [Doc. 58-4 (Sworn Statement of Mike Edgy) at 24-25].

On March 4, 2014, at the genesis of discussions, Plaintiff representative Matt Roper sent an email to his business partner Don Marks stating in pertinent part: "I got a green light from 4/5

commissioners and the county [manager] to develop my solid waste facility and an industrial park. They're begging for someone to bring industry/technology into the county …. the bank owned tract is 2400 acres, and I would only need 300 for a landfill/solid waste facility, and the county wants a 200 acre industrial park developed alongside … The county is willing to wave [sic] all taxes until I receive my permit for the landfill. **The county actually wants a landfill for the host fees (taxes). I tried steering them toward WTE [waste to energy], but they insist on a landfill, which isn't a problem, for I would incorporate both …. I have never had so much support from a municipality**." [Doc. 85 (Second Affidavit of Matt Roper)] (emphasis supplied).

**All of the County Commissioners knew there was going to be a landfill before their vote on February 5, 2015 to approve the landfill**. [Doc. 88-2 (Deposition of Mike Edgy) at 116-117; 119; 121-122]. The landfill was discussed in County Board meetings, the four (4) voting members of the Board of Commissioners supported the landfill, but Chairman Charlie Summerlin opposed it. [Doc. 89 (Deposition of Charlie Summerlin) at 21-22; 38-41; 44-45; 48 ("the ones that I talked to in my opinion they were for a landfill. Q. That would be the four other commissioners that were serving at the time? A. Yes"); 58; 60-61].

The Board of Commissioners was fully aware of all of Plaintiff's plans, including the landfill, and they had agreed to everything. [Doc. 88-1 (Deposition of Carl Rowland) at 24-25; 140-141 ("Q. Why do you think they [Commissioners] knew it was a landfill from day one? A. Because I was there and I told them from day one.").

16.

**Response**: Plaintiff agrees that Commissioner Edgy made the motion which was seconded by Commissioner Hendrix. Otherwise, the meeting minutes from the February 5, 2015 Brantley

7

County Board of Commissioners public meeting are the better evidence of their content and speak for themselves. [See Doc. 58-3, Ex. F].

17.

**Response**: Plaintiff agrees that the content of Statement Number 17 accurately quotes a portion of the February 2015 consistency letters, but Plaintiff states that the letters themselves are the better evidence of their content and speak for themselves. [See Doc. 58-3, Ex. G].

18.

**Response**: Disputed. Defendants baldly assert that "Magnolia Holdings Business Park" is an 89.65 acre portion of Plaintiff's Property located north of Highway 82 and as evidence for such assertion cite to Army Corps of Engineering documents from 2010 that have nothing whatsoever to do with Plaintiff or with Plaintiff's solid waste handling facility on the Property. These documents concern issuance of a 2010 wetlands permit from the Army Corps of Engineers to Magnolia Holdings for a biomass facility. Plaintiff had nothing to do with those documents, nothing to do with that wetlands permit, and indeed, did not even own the Property in 2010.

On December 22, 2014, Plaintiff bought the Property from Primesouth Bank for over $2,632,000.00 to develop it with the solid waste handling facilities. [Doc. 58-2 at 2-3, ¶ 5; Doc. 58-3 at 4, ¶ 8]. Brantley County Commissioners were aware of Plaintiff's purchase commitment for the Property and that Plaintiff would be spending hundreds of thousands of dollars of additional monies to apply to the state for the necessary permits to site the facilities. [Doc. 58-4 (Sworn Statement of Mike Edgy) at 24-25].

The entirety of the approximate 2,389 acre tract of land in unincorporated Brantley County acquired by Plaintiff was known locally as the "Magnolia Holdings Business Park" because before it was taken by Primesouth Bank in foreclosure, Magnolia Land Holdings, LLC

8

was the owner the Property (all 2,389 acres).   [Doc. 58-3 (Affidavit of Matthew Roper) at 2-3, ¶ 5; Doc. 1-1 (Plaintiff's acquisition deed)].

On this point with respect to Plaintiff's purchase of the entirety of the Property (and not just 89 acres on the north side of the state highway as Defendants now contend), Defendants' own February 3, 2015 Official Minutes from public meeting, **just __two days__ before they voted to issue the February, 2015 consistency letters,** state:

"[Plaintiff] purchased approximately 2,500 acres of property **located on the North and South boundaries** of GA Highway 520 between Waynesville and Atkinson, **formerly known as the site for __Magnolia Holdings__**".   [Doc. 89-4 (February 3, 2015 Minutes)] (emphasis supplied).

19.

**Response**:  Disputed.  See Responses to Statement Numbers 15 and 18 hereinabove.

20.

**Response**:  Plaintiff denies that the content of Statement Number 20 is relevant, admissible, or contains any material fact pertinent to the legal issues pending before the Court on motion for summary judgment.  See DeKalb County v. Post Apartment Homes, 234 Ga. App. 409 (1998) ("In determining the intent of the defendant commission in rezoning the subject property, all of the commission's words used to effect this revision should be given due weight and meaning; however awkward and unusual the language may be, the legislative intent manifested by it must be ascertained and enforced as the law. Thus, testimony by county officers cannot change the plain meaning of an unambiguous ordinance; "[n]either should the county be allowed to extend the plain, objective intent of [conditions] by testimony that county officers subjectively meant for it to attach to [more than what it plainly stated]) (internal citations omitted) (emphasis supplied).

9

Nevertheless, Plaintiff disputes Statement Number 20 as its content, containing testimony about subjective belief and intent of public records, is inadmissible parol evidence controverted by the County's official minutes and the February, 2015 consistency letters, to which the County is bound.  The minutes and regular agenda show Plaintiff requested Defendants ratify and confirm the prior certification that the proposed facilities were consistent with the local land use plan and the solid waste management plan.  Consequently, Defendants authorized the Chairman of the Board of Commissioners to execute the two 2015 verification letters.  Defendants' official minutes acknowledge that Defendants knew these letters were necessary for Plaintiff to obtain permits from the EPD in order to conduct solid waste material activities.  [Doc. 114 at 3; Doc. 135 at 3].

Moreover, Plaintiff disputes the content of Statement Number 20 insofar as the Plaintiff's issued Permit includes a solid waste landfill and a materials recovery facility for recycling.  [See Doc. 164-1].

21.

**Response**:  Plaintiff does not dispute that it did not present any specific plans as of February 5, 2015, but such is not required for issuance of initial consistency letters.  The minutes state solid waste handling facilities to be consistent with the County's Solid Waste Management Plan and with the local land use plan.  [Doc. 58-3, Ex F].  The minutes further acknowledge that the letters were necessary for Plaintiff to obtain permits from the EPD in order to conduct solid waste material activities.  [Id.].

22.

**Response**:  Disputed.  See Responses to Statement Numbers 2 and 18 hereinabove.  The consistency letters were applicable to the entirety of Plaintiff's Property, not a small portion of it on the north side of the highway as Defendants contend.

10

23.

**Response**: Disputed in part.  Plaintiff denies the existence of any north or south tract within the Property.  [See Response to Statement Numbers 2 and 18 hereinabove].  Plaintiff admits that as of February 8, 2016, Plaintiff had not finalized the exact location on the Property where the landfill would be sited as that determination requires extensive engineering work and study to ascertain the most suitable site location.  Harbin completed its work in that regard in September, 2016.  [Doc. 58-3 at 3-6].

24.

**Response**:  Undisputed.

25.

**Response**:  Plaintiff denies that the content of Statement Number 25 is relevant or contains any fact material pertinent to the legal issues pending before the Court on motion for summary judgment.  The Georgia EPD provides notice of application to the local jurisdiction and Defendants were quickly aware of the submission of Plaintiff's application as evidenced by their regulatory actions, beginning on January 3, 2017 and continuing thereafter, to delay and thwart the application.  [See Doc. 1-12; 1-14].

26.

**Response**:  The content of Statement Number 26 appears to contain conclusions of law to which no response is required.  If and to the extent any response is required, Plaintiff disputes them.

On February 5, 2015, at a regularly scheduled meeting, the Brantley County Board of Commissioners took **<u>official action by vote</u>** to confirm, ratify and approve Plaintiff's proposed

11

solid waste handling facilities as "**consistent with our local land use plan and our Solid Waste Management Plan**" and Defendants authorized their Chairman:

> to execute two letters; the first letter acknowledging that the solid waste handling facilities proposed by [Plaintiff] ... is consistent with the approved Solid Waste Management Plan adopted by Brantley County and the cities of Hoboken and Nahunta on June 26, 2006, and our most recent 2011 Five-Year Short Term Work Program 2010-2019; and, the second letter acknowledging that the facilities proposed by [Plaintiff] is consistent with Brantley County's Local Land Use Plan. [Doc. No. 58-2 at 3; Doc. No. 58-3 at 6, Ex. "F"; Doc. No. 100, Plaintiff's Ex. "5"].

The February 5, 2015 Minutes acknowledge Defendants knew that the February 6, 2015 letters were necessary for Plaintiff to obtain permits from the EPD in order to conduct solid waste material activities. [Doc. No. 58-3, Ex. "F"]. Pursuant to such official action, the Chairman of the Board of Commissioners signed and re-issued letters dated February 6, 2015 verifying Plaintiff's proposed solid waste handling facilities on the Property are consistent with Defendants' solid waste handling plan and "consistent with Brantley County's local land use plan. **Brantley County at the present does not have a zoning ordinance**". [Doc. No. 58-2 at 3; Doc. No. 58-3 at 6, Ex. "G"; Doc. No. 100, Plaintiff's Exs. "6" and "7"].

On February 6, 2015 at 3:55 p.m., Defendants sent an email to Matt Roper attaching the February 6, 2015 certification letters bearing the signature of Chairman Charlie Summerlin. [Doc. No. 100 at 36, Plaintiff's Ex. "3"].

Defendants' issuance of these certification letters was a required precondition for the Plaintiff to file its permit application with the Georgia EPD for the solid waste handling facilities. [Doc. No. 58-1 at 3]. The Georgia EPD has confirmed that the 2015 verification letters issued by Defendants to Plaintiff satisfy the preliminary verification required by O.C.G.A. § 12-8-24(g). [Doc. No. 64-4; Doc. No. 88-5 at 120].

12

27.

**Response**: Disputed.  The 2006 SWMP is the better evidence of its content and speaks for itself.  Moreover, the 2006 SWMP is a **plan** that serves as a **guide** for future solid waste facilities.  But, it is without the force of law and **cannot bind** Defendants in the performance of their legislative duties.  See Lamar Cnty v. E.T. Carlyle Co., 277 Ga. 690, 693-694 (2004) (holding that county solid waste development plan adopted under O.C.G.A. § 12-8-20, et. seq. was a plan that served as a guide but it is without the force of law and cannot bind the county in the performance of legislative duties).

Defendants admit "the County has the general authority to issue consistency letters for EPD permit applicants."  [Doc. 55 at 12].  Under this authority, Defendants assessed the consistency of Plaintiff's proposed facility with all the provisions found within the 2006 SWMP.  This included assessing whether Plaintiff's proposed facility furthered the stated goals of solid waste reduction and additional revenue sources, among other stated goals in the 2006 SWMP.  [Doc. 48-3 at 55-56; see also p. 45 "Brantley County … will carefully analyze and choose the disposal options most advantageous to the County, considering economics, environmental concerns, land uses and other issues."].

In determining whether a proposed facility is consistent with its SWMP, the Georgia Supreme Court holds that a local government is authorized to consider **any relevant factor** that it appropriately considered in the SWMP itself.  Murray Cnty. v. R&J Murray, LLC, 627 S.E.2d 574, 578 (Ga. 2006).  Therefore, based on the text of the 2006 SWMP, Defendants had legislative discretion when determining consistency with the 2006 SWMP and voting to issue the consistency letter.  Indeed, the February 6, 2015 consistency letter represents:  "**The Board of Commissioners and its staff have reviewed the approved Solid Waste Management Plan** adopted by Brantley

County and the Cities of Hoboken and Nahunta on June 26, 2006 and our most recent 2011 Five-year Short Term Work Program ... and have determined that the solid waste handling facilities being proposed by Brantley County Development Partners, LLC to be located on a site formerly known as Magnolia Holdings Business Park is consistent with the plans and programs cited above". [Doc. 58-3 at 82-83]. (emphasis supplied). Plaintiff was entitled to rely on Defendants' issuance of the consistency letter, done by unanimous official act with proper authority.

28.

**Response**: Disputed in part. Plaintiff admits it did not provide any specific, formal engineering plan to Defendants prior to the 2015 letters being issued. But, Plaintiff denies any legal obligation to do so. Issuance of the certification letters was a required precondition for the Plaintiff to file its permit application with the Georgia EPD for the solid waste handling facilities. [Doc. 58-1 (Affidavit of J. Steven Harbin) at 3, ¶ 5]. After Plaintiff received the 2015 certification letters, done by official act by unanimous vote, Plaintiff then set about the costly process of preparing the engineering work for submittal of application to the Georgia EPD. [Doc. 58-3 at 3-6].

29.

**Response**: Disputed. See Response to Statement Numbers 2 and 18 hereinabove.

30.

**Response**: Plaintiff does not dispute that Statement Number 30 appears to accurately recite a portion of Mr. Rowland's deposition testimony, but Plaintiff denies that such testimony is relevant or contains any material fact pertinent to any legal issue pending before the Court on summary judgment.

14

31.

**Response**: Disputed. On September 8, 2016, Defendants adopted the **text** of a new zoning

ordinance which purports to incorporate by reference maps entitled "Official Land Use Districts

Map of Brantley County, Georgia". [Doc. No. 1-8 at 17; Doc. No. 64-3]. The September 8, 2016

Meeting Minutes fail to show the adoption of any zoning map in connection with adopting the text

of the September 8, 2016 zoning ordinance. [Doc. No. 64-3]. The September 8, 2016 zoning

ordinance identifies the lands to which its various zoning classifications apply only by reference

to the maps. [Doc. 1-8 at 17 "the boundaries of each district are shown on maps"; *see also* Section

4.3 on same page, Interpretation of Land Use Districts]. No zoning map was adopted in connection

with the September 8, 2016 zoning ordinance. [Doc. No. 74 at 3-4].

32.

**Response**: Disputed. There is no zoning category called "high industrial" within the text

of the June 15, 2017 zoning ordinance. [Doc. 58-4 at 110-111]. On May 10, 2017, Defendants'

attorney Deen Strickland sent a letter to Plaintiff's Registered Agent advising that Defendants

would be zoning the Property to the Light Industrial classification. [Doc. No. 1-19]. Then, on

June 15, 2017, over Plaintiff's objection, Defendants adopted the 2017 Zoning Ordinance and

imposed the Light Industrial classification on the Property. [Doc. Nos. 58-4 and 86-4]. The Light

Industrial classification forbids the solid waste handling facilities sought by Plaintiff and permitted

by the EPD Application from being developed on the Property. The 2017 Zoning Ordinance,

therefore, stands as an "absolute barrier" to Plaintiff's permitted development.

33.

**Response**: Disputed insofar as Statement Number 33 purports to apply to the 2017 Zoning

Ordinance. Because Defendants failed to adopt any official zoning map with respect to the 2016

Zoning Ordinance, with respect to that ordinance Defendants worked off quadrant maps and employed a process where landowners had a period of time to request that the County zone land parcels to certain districts.  [Doc. No. 89 at 69; Doc. No. 88-1 at 163-165; Doc. No. 90 at 71-74; Doc. No. 91 at 25-26].

34.

**Response**:  Disputed. On January 3, 2017, Defendants imposed a 180 day moratorium on landfills in Brantley County and also took official action instructing Deen Strickland, County Attorney, to send a letter to Georgia EPD opposing Plaintiff's application, which Mr. Strickland did a few days later.  [Doc. 114 at 4-6].  In addition, Defendants' refusal to issue the required reaffirmation of zoning letters without a court order indefinitely delayed Plaintiff's application. Based on Georgia EPD's own words, "**reaffirmation of zoning consistency must be submitted to EPD prior to a final decision regarding the issuance of a permit**", and only after receiving the required reaffirmation from Defendants will Plaintiff's solid waste permit then be issued or denied.  [Doc. 114 at 11].  Defendants refused to issue the reaffirmation of zoning consistency without a court order and, with the July 9, 2020 Resolution, they purported to withdraw the initial 2015 consistency letter which they further admit is necessary for the permit. [Doc. 114 at 7]. Defendants' conduct indefinitely delayed Plaintiff's ability to proceed with the EPD permitting process and Defendants' refusal to issue the required reaffirmation of zoning consistency obstructed Plaintiff from ever receiving a permit absent judicial relief.  [Doc. 114 at 12-13].

35.

**Response**:  Undisputed.

36.

**Response**:  Plaintiff admits there was no guaranty of permit issuance, but the D&O plan has been approved and the Georgia EPD issued a permit to Plaintiff on May 9, 2022.  [Doc. 164-1].

37.

**Response**:  Plaintiff does not dispute that on May 9, 2022, EPD issued a solid waste handling permit to Plaintiff.  The permit is the better evidence of its content and speaks for itself. [See Doc. 164-1].

38.

**Response**:  Plaintiff denies that the content of Statement 38 is relevant or contains any material fact pertinent to the legal issues pending before the Court on motion for summary judgment.  Nevertheless, it is disputed in part.  The testimony cited is correct, but as with many other businesses, Plaintiff also has outside capital through financing as reflected by security deed against the Property which is a matter of public record.

39.

**Response**:  Plaintiff denies that the content of Statement 39 is relevant or contains any material fact pertinent to the legal issues pending before the Court on motion for summary judgment.  Nevertheless, it is disputed.  John Kelly, as managing partner of Plaintiff, testified that Plaintiff has the financial capability to construct and complete the solid waste handling facilities. [Doc. 58-2 at 9].  As further evidence of Plaintiff's financial assurance and capability, Plaintiff acquired an irrevocable letter of credit issued by Synovus Bank to the Georgia EPD in the amount of $16,967,340.15.  The letter of credit is a matter of public record and a true and correct copy of which is attached hereto as Exhibit "3".

17

40.

**Response**:  Plaintiff does not dispute that one way, out of many, it has been harmed is the inability to enter into non-contingent contracts.

41.

**Response**:  Disputed.  From a practical business perspective, Plaintiff cannot enter into non-contingent contracts unless and until this litigation is concluded and the Defendants stop obstructing the Permit.  Plaintiff has marketed to, and received interest and inquiry from, out-of-state market participants for the handling and disposal of solid waste generated from outside the State of Georgia at the proposed solid waste handling facilities on the Property sought with the Application.  However, given Defendants' actions, Plaintiff cannot enter into final non-contingent contracts with these or any other market participant because, due to Defendants' actions, Plaintiff cannot give assurances to prospective customers that Plaintiff will actually be able to construct and operate the facilities on the Property. [Doc. No. 58-2 at 8-9, Ex. "5"; Doc. No. 58-3 at 8-9].

42.

**Response**:  Plaintiff does not dispute that Statement Number 42 appears to accurately quote a portion of the September 2, 2020 contract, but Plaintiff states that the contract is the better evidence of its content and speaks for itself.  Plaintiff also disputes this statement insofar as Plaintiff has marketed to, and received interest and inquiry from, out-of-state market participants for the handling and disposal of solid waste generated from outside the State of Georgia at the proposed solid waste handling facilities on the Property sought with the Application.  However, given Defendants' actions, Plaintiff cannot enter into final non-contingent contracts with these or any other market participant because, due to Defendants' actions, Plaintiff cannot give assurances to prospective customers that Plaintiff will actually be able to construct and operate the facilities

18

on the Property. [Doc. No. 58-2 at 8-9, Ex. "5"; Doc. No. 58-3 at 8-9].

43.

**Response**:  Plaintiff does not dispute that it timely submitted its D&O Plan on August 26, 2021.

44.

**Response**:  Statement Number 44 appears to contain a legal argument with no factual or evidentiary basis and therefore no response is required.  Furthermore, Defendants fail to cite to any evidence, authority or documentation in support of Statement Number 44.  If and to the extent any further response is required, it is disputed.

45.

**Response**:  Disputed.  Paragraph 27 of Mr. Kelly's Affidavit is the better evidence of its content and speaks for itself.  [Doc. 58-2 at 9].

46.

**Response**:  Not disputed.

47.

**Response**:  Plaintiff withdraws claims for money damages except for its claim for attorney fees which this Court ruled can be re-urged by motion at a later time.  [Doc. 159].

## II.  **RESPONSE TO DEFENDANTS' CONCLUSIONS OF LAW**

### 1.  **Plaintiff has standing to bring this lawsuit.**

Defendants stubbornly continue to argue that Plaintiff lacks standing to maintain this lawsuit.  Before raising standing yet again in their Motion for Summary Judgment, Defendants previously asserted lack of standing **four (4) times** in their: (1) Renewed Motion To Dismiss; (2) Opposition to Plaintiff's Motion for Preliminary Injunction; (3) Motion for Reconsideration; and

(4) Motion to Stay Preliminary Injunction. **All Four (4) times**, this Court has rejected Defendants' standing argument. Yet, they continue to stubbornly make the same standing argument based on the same factual record evidence. For all the reasons previously argued by Plaintiff, and ruled upon by this Court four (4) times, Plaintiff states this Court should reject Defendants' standing argument for a fifth time.

> **2.   Plaintiff acquired vested rights to develop the Property with the solid waste handling facilities by virtue of submitting its December 29, 2016 Application to the Georgia EPD.**

A vested property right constitutes an enforceable entitlement which cannot be divested by subsequent government action. Whether a landowner has obtained vested property rights is a question of state law. Crown Media, LLC v. Gwinnett County, 380 F.3d 1317, 1325 (11th Cir. 2004). The Georgia Constitution forbids a legislative exercise of the police power that results in the passage of retrospective laws which injuriously affect the vested rights of citizens. This prohibition against retroactive impairment of vested rights extends to the enactment of zoning regulations. Southern States-Bartow County, Inc. v. Riverwood Farm Homeowners Assoc., 300 Ga. 609 (2017); *see also* Art. I, Sec. I, Para. X, Georgia Const. of 1983. To be vested, in its accurate legal sense, a right must be complete and consummated, and one of which the person to whom it belongs cannot be divested without his consent. Gold Rush II v. City of Marietta, 267 Ga. 683(7) (1997); Merchants Bank v. Garrard, 158 Ga. 867, 871 (1924).

Submission of an application for permit gives the applicant a vested right to consideration of the application under the law in existence at the time the application is filed. Fulton Cnty. v. Action Outdoor Advertising, 289 Ga. 347, 349 (2011); Recycle & Recover v. Georgia Bd. of Natural Resources, 266 Ga. 253, 255 (1996) (property owner seeking to alter use of land has vested

20

right to consideration of application under law then in existence); <u>Banks County v. Chambers of Georgia, Inc.</u>, 264 Ga. 421 (1994); <u>WMM Properties v. Cobb County</u>, 255 Ga. 436 (1986) (landowner has vested right to use property in accordance with zoning regulations in force when he applied for permit).

In the context of a landfill, Georgia Courts have specifically held that the filing of a permit application for the landfill with the Georgia EPD vests the landowner's rights. <u>Southern States-Bartow Co., Inc. v. Riverwood Farm Prop. Owners Ass'n, Inc.</u>, 331 Ga. App. 878, 883 (2015) ("the vested right was acquired in 1989 when Southern States submitted its application for a landfill permit to the Georgia EPD") (citing <u>Fulton County v. Action Outdoor Advertising, JV, LLC</u>, 289 Ga. 347, 350 (2011)); Accord, <u>S. States-Bartow Co., Inc. v. Riverwood Farm Homeowners Assoc.</u>, 300 Ga. 609, 610-611 (2017) ("the Court of Appeals concluded, inter alia, that Southern States' vested right – which was recognized by the Bartow County Superior Court in September 1994, was *acquired* as of the date of its May 1989 application to the EPD") (emphasis in opinion).

Plaintiff reminds the Court that Defendants previously admitted vested rights were obtained with submission of the permit application [Doc. 114 at 33-34; see fn 15]. Now, Defendants argue against their own previous admission.

### 3. Plaintiff also acquired vested rights by virtue of the Georgia EPD's issuance of the May 9, 2022 Permit.

On May 9, 2022, Plaintiff received the Permit for the solid waste handling facilities on its Property. As an alternative method of vesting, property rights in Georgia also vest when a permit is actually issued for a particular land use. <u>Crown Media, LLC v. Gwinnett Cnty.</u>, 380 F. 3d 1317, 1325 (11th Cir. 2004) (citing <u>WMM Properties, Inc. v. Cobb Cnty.</u>, 255 Ga. 436 (1986)). Once a

permit has issued, a landowner has a right to develop the property pursuant to that permit. Crown Media, LLC, 380 F. 3d at 1326 (citing WMM Properties, Inc., Supra.).

Accordingly, in addition to acquiring vested rights by virtue of being an actual applicant seeking to alter use of its land, Plaintiff also acquired vested rights by virtue of being a permit recipient.

4. **The Defendants' 2016 Zoning Ordinance is void for vagueness and therefore no valid zoning regulations existed as of December, 2016 when Plaintiff first acquired vested rights.**

Defendants do not dispute that the 2016 Zoning Ordinance was passed without any map to show the land to which its various zoning districts apply. This fatal defect renders the 2016 Zoning Ordinance void for vagueness. Nevertheless, Defendants argue there are no facts showing that the 2016 Zoning Ordinance has ever been applied to it. This argument is surprising **because Defendants are attempting to apply the 2016 Zoning Ordinance to Plaintiff and Plaintiff's Property.** At the September 24, 2020 Hearing on Preliminary Injunction, and in their briefing, Defendants applied the 2016 Zoning Ordinance to Plaintiff and its land because Defendants argued that Plaintiff's land is subject to the Heavy Industrial zoning classification, and its special exception requirements, allegedly in place when Plaintiff submitted its EPD application on December 29, 2016. [Doc. No. 66 at 79-80]; see also Court's May 14, 2021 Order: "Defendants insist that Plaintiff must comply with the Heavy Industrial zoning allegedly placed on the Property pursuant to the September 8, 2016 Zoning Ordinance". [Doc. No. 114 at 34].

Nor are Plaintiff's void for vagueness claims mooted by the 2017 Zoning Ordinance, as urged by Defendants. As the Court correctly found on this point, Plaintiff's void for vagueness

challenge to the 2016 Zoning Ordinance is not mooted by the adoption of a new zoning ordinance and official zoning map on June 15, 2017:

> "Given Plaintiff's claim that its rights vested in 2016, the challenge to the 2016 Zoning Ordinance's validity is not obviated by passage of later ordinance in 2017. See Crown Media, LLC v. Gwinnett Cnty., 380 F.3d 1317, 1325 (11th Cir. 2004) …." [Doc. No. 135 at 56].

A case is rendered moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome and the court no longer can grant meaningful relief. Crown Media, LLC, 380 F.3d at 1324. For the repeal of a statute to moot a challenge to the statute, the governmental defendant must show that there is no reasonable likelihood that the repealed statute would be reinstated. Id.

Plaintiff's void for vagueness challenge to the 2016 Zoning Ordinance is not moot **because Defendants are attempting to apply its regulations to Plaintiff and Plaintiff's Property.** As noted, Plaintiff contends that it has a vested right to develop the land **without these invalid zoning restrictions**. Therefore, given Plaintiff's vested rights, and Defendants' attempt to enforce the 2016 Zoning Ordinance against Plaintiff and its Property, a live controversy exists upon which the Court can grant meaningful relief. That relief is that Plaintiff's vested property right is not subject to the 2016 Zoning Ordinance because it is void for vagueness.

Defendants also argue that Plaintiff's void for vagueness challenge fails because Plaintiff somehow knew about the proposed zoning classification for its Property. Even if Plaintiff was told that the Property would be getting a "Heavy Industrial" zoning, no evidence exists of what that meant from a regulatory standpoint insofar as permitted and forbidden uses, nor is there any evidence that Plaintiff had any clue about the special exception process for landfills contained within the Heavy Industrial zoning which purported to give Defendants unfettered discretion to

23

deny permits for landfills. Plaintiff's knowledge, or lack thereof, about the proposed zoning classification for its land is completely irrelevant. Zoning cannot be imposed by words or subjective thoughts. To be enforceable, zoning and land use regulations restricting property rights must be formally adopted in a clear manner so that there is no uncertainty as to what restrictions apply. Because criminal penalties can be imposed for violations, zoning is not a guessing game. Formalities must be strictly followed when enacting and enforcing land use regulations because when it comes to lawmaking which affects the property rights of Georgia citizens, as zoning ordinances clearly do:

> "the law requires such formalism, and as we have explained before, there are good reasons to insist upon such formalism in lawmaking, especially when it comes to the enactment of laws restraining the property rights of citizens. Such formalism is necessary, we have said, 'to provide certainty to the public as to what was actually adopted … and also to protect the public from any arbitrary changes of the ordinance or [zoning] maps that do not go through the notice process'". Newton Co. v. East Ga. Land & Dev. Co., 296 Ga. 18, 21 fn. 3 (2014).

5.  **Damages**.

Plaintiff does not seek, and to the extent required, withdraws claims for money damages except for its claim for attorney fees which Plaintiff has been granted leave to re-urge by motion at a later, appropriate, time. [Doc. 159].

Respectfully Submitted, this 22nd day of June, 2022.

LOVETT LAW GROUP, LLC

By:___/s/ L. Robert Lovett_____
    L. Robert Lovett
    Georgia Bar No. 459566
    5400 Riverside Drive
    Suite 203
    Macon, Georgia 31210

GILBERT, HARRELL, SUMERFORD &
MARTIN, P.C.


By:  ___/s/ Mark D. Johnson_____
          Mark D. Johnson
          Georgia Bar No. 395041
          Post Office Box 190
          Brunswick, Georgia 31521-0190
          (912) 265-6700


BROWN ROUNTREE PC


By:  ___/s/ George Rountree_____
          George Rountree
          Georgia Bar No. 616205
          26 North Main St
          Statesboro, Georgia 30458
          (912) 489-6900
          georgia@br-firm.com


WILSON BROCK & IRBY, L.L.C.


By:  ___/s/ Kyler L. Wise_____
          Kyler L. Wise
          Georgia Bar No. 77128
          2849 Paces Ferry Road SE
          Suite 700
          Atlanta, Georgia 30339
          (404) 853-5050
          kwise@wbilegal.com

105168.1 141566-000002

# qPublic.net™ Brantley County, GA



**Overview**

**Legend**
- ☐ Parcels

**USA Major Highways**
- Limited Access
- Highway
- Major Road
- Local Road
- Minor Road
- Other Road
- Ramp
- Ferry
- Pedestrian Way
- ☐ CityLimits

| Parcel ID | B072 003 | Owner | BRANTLEY COUNTY DEVELOPMENT PARTNERS LLC | Last 2 Sales | | | |
|---|---|---|---|---|---|---|---|
| Class Code | Agricultural | | 80 W. WIEUCA RD SUITE 204 | Date | Price | Reason | Qual |
| Taxing District | WAYNESVILLE FIRE DIST | | ATLANTA, GA 30342 | 12/22/2014 | $2632771 | FM | Q |
| Acres | 2389 | | | 7/2/2013 | $2431000 | FD | U |
| | | Physical Address | 23125 HWY 82 | | | | |
| | | Assessed Value | Value $1964024 | | | | |

(Note: Not to be used on legal documents)

Date created: 6/14/2022
Last Data Uploaded: 6/14/2022 6:46:16 AM

Developed by Schneider GEOSPATIAL

*Ex. "1"*

Sec. 2-105. - County manager.

(a)  The office of county manager shall be filled by appointment of a majority vote of the board of commissioners of Brantley County, and the person appointed to said office shall serve at the pleasure of the board of commissioners, which may be set forth in an employment contract. Provided, however, no such contract shall have a term of greater than two years.

(b)  Before a person can be appointed to the office of county manager he or she must possess the following minimum knowledge and qualifications, to-wit:

(1)  *Knowledge required:*

   a.  The principles and practices of public administration.

   b.  Of the county Code of Ordinances and other regulations, policies and procedures.

   c.  Of budget preparation and public financial management.

   d.  Of the functions, organization and operations of all county departments.

   e.  Of the demographic and economic profile of the county, including its industrial base.

   f.  Of the principles and practices of effective public relations.

   g.  Of state and federal laws in all areas applicable to county government, including unemployment, wages and hours, EEOC, taxes, workers' compensation, pensions, and others.

   h.  Skills in written and oral communication.

(2)  *Academic and/or job training background:*

   a.  A level of competency commonly associated with the completion of a baccalaureate degree in a course of study related to the occupational field.

   b.  Experience sufficient to thoroughly understand the diverse objectives and functions of the subunits in the division/department in order to direct and coordinate work within the division/department, usually interpreted to require three to five years of related experience.

(d)  The person appointed to the office of county manager shall have the following duties, powers and responsibilities:

(1)  This position shall be responsible for assisting the board of commissioners with the overall management of the county government, including overseeing the personnel, budgeting, purchasing and grants functions of the government. The county manager shall be responsible for carrying out the policies as established by the board of commissioners and within said policies for the general administration of the county government in all areas that are not within the province of a county elected official.

The major duties of the county manager shall include:

Ex. "2"

a. To assists the commissioners by managing the daily operations of the county government.

b. To act as liaison between the commissioners and the public by responding to inquiries and resolving conflicts.

c. To aid and assist in the development of materials for commission meetings.

d. To serve as personnel director for the county by performing duties such as advertising openings, assuring that payrolls are processed on time, administering employee benefits programs, processing complaints or grievances, and overseeing the hiring, disciplining and firing of all county employees, including department heads, but not within the office of an elected county officer.

e. To serve as liaison between the commissioners and department heads; oversees the work of the department heads and office personnel.

f. To assist with the preparation of the county budget by consulting with department heads and commissioners, making and implementing recommendations, and controlling expenditures.

g. To prepare and monitor the use of economic development grant applications; monitors the execution of grants.

h. To oversee the purchasing function of the county government.

i. To assist in maintaining county records and the preparation of all required reports.

j. To assist the board of commissioners in the development and implementation of operating policies and procedures for the county.

k. To assist in the drafting of correspondence, memoranda, speeches, resolutions, ordinances and agreements for the commissioners.

l. To provide reports and information to the media as requested.

m. To perform such other related duties as may from time to time be assigned by the board of commissioners.

(e) The initial compensation for the office of county manager shall be fixed at: $60,000.00, plus all other benefits as the county provides all of its other employees.

(Res. of 10-23-2007; Res. of 5-13-2008)

**Editor's note—** A resolution adopted Oct. 23, 2007, did not specify manner of inclusion; hence, codification as § 2-105 was at the discretion of the editor.



Irrevocable Letter of Credit 1 6 5 1 6 5 6 2 8

Georgia Environmental Protection Division
Land Protection Branch
Solid Waste Management Program

Richard E. Dunn, Director
Environmental Protection Division of Georgia
Department of Natural Resources
4244 International Parkway, Suite 104
Atlanta, Georgia 30354

Dear Director:

We hereby establish our Irrevocable Standby Letter of Credit No. 165165628, in your favor, at the request of and for the account of Brantley County Development Partners, LLC regarding Permit Number 013-004D(MSWL) up to the aggregate amount of sixteen million nine hundred sixty-seven three hundred forty and 65/100 U.S. Dollars $16,967,340.65, available upon presentation of:

(1) Your sight draft, or demand for payment, bearing reference to this Letter of Credit No.165165628

(2) Your signed statement reading as follows: I certify that the amount of the draft is payable pursuant to regulations issued under authority of the Georgia Comprehensive Solid Waste Management Act, O.C.G.A. 12-8-20, ▼ and Regulation issued pursuant there to.

This letter of credit is effective as of 4/22/2022 and shall expire on 4/22/2023, but such expiration date shall be automatically extended for a period of (at least one year) on 4/22/2023 and on each successive expiration date, unless, at least 120 days before the current expiration date, we notify both you and Brantley County Development Partners, LLC by certified mail that we have decided not to extend this letter of credit beyond the current expiration date. In the event you are so notified, the credit established by this letter shall be available upon presentation of your sight draft or demand for payment for 120 days after the date of receipt of such notice by both you and Brantley County Development Partners, LLC, shown on the signed return receipt.

The credit established by this letter and our obligation to pay same shall not be affected by the receivership, bankruptcy or insolvency of debtor or the attachment between Brantley County Development Partners, LLC and our bank.

Whenever this letter of credit is drawn on under and in compliance with the terms of this credit, we shall duly honor such draft upon presentation to us, and we shall pay the amount of the draft directly to you, as Director of the Division or the Solid Waste Trust Fund in accordance with your instructions.

This letter of credit is subject to the Uniform Customs and Practice of Documentary Credits International Chamber of Commerce Publication No. 600 or Uniform Commercial Code, latest edition.

Synovus Bank

David F. Abee
Authorized Signer

Ex. "3"

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing pleading via electronic service through the e-filing system and by placing a copy of same in the United States Mail, properly addressed with adequate postage thereon upon:

Dana K. Maine
Robert P. Marcovitch
Rachael Slimmon
Freeman Mathis & Gary, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339

This 22nd day of June, 2022.

/s/ Kyler L. Wise
Kyler L. Wise

26

105168.1 141566-000002