IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| BRANTLEY COUNTY DEVELOPMENT PARTNERS, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>BRANTLEY COUNTY, GEORGIA by and through its Chairman and Members of the Brantley County Board of Commissioners: CHRIS "SKIPPER" HARRIS; RANDY DAVIDSON; BRIAN HENDRIX; JESSEE MOBLEY AND RAY GRIFFIN, all in their individual and official capacities as Commissioners.<br><br>        Defendants. | Civil Action No: 5:19-CV-00109 |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT

Defendants Brantley County, Georgia, Chairman, and members of the Brantley County Board of Commissioners ("Defendants" or "County"), file this Response in Opposition of Plaintiff's Motion to Enforce Settlement Agreement.

## FACTUAL BACKGROUND

This litigation concerns Plaintiff's alleged right to build a landfill on property in Brantley County, Georgia. On August 11, 2022, the Court ordered a stay of litigation and ordered that the parties participate in a settlement conference to be held September 27, 2022. [Doc. 175]. The Order for Settlement Conference stated:

> Counsel must ensure a client representative with full settlement authority is available in person or by telephone or video teleconference at all times from the beginning of the conference until the conference is concluded. The client representative must be dialed into the conference, or immediately available, for the entire duration of the conference.

1

. . .

If any party believes this case presents an exceptional circumstance which would justify a variance from these rules, that party must contact the Magistrate Judge's office no later than five business days before the settlement conference to request a waiver of the rules.

[Id. at 1, 3]. On September 22, 2022, Dana Maine, counsel for the County, e-mailed Judge Cheesbro's deputy clerk and stated:



(Exhibit 1, E-mail D. Maine to K. Mixon on 9/22/22).

The first settlement conference occurred on September 27, 2022. [Doc. 177]. Brantley County Commission Chairman Skipper Harris, Brantley County Commissioner Randy Davidson, former County Manager Bryan Singleton, County Attorney Deen Strickland, and outside counsel Dana Maine and Kimberly Hale[1] attended this settlement conference on behalf of the County. (Exhibit 2, R. Davidson Dec. at ¶ 3; Exhibit 3, S. Harris Dec. at ¶ 3; Exhibit 4, D. Maine Dec. at ¶ 5; Exhibit 5, K. Hale Dec. at ¶ 5). These attendees had authority to negotiate on behalf of the County, but they did not have authority to bind the County in a settlement agreement. (Exhibit 2, R. Davidson Dec. at ¶¶ 4, 7; Exhibit 3, S. Harris Dec. at ¶¶ 4, 7; Exhibit 4, D. Maine Dec. at ¶¶ 3-4; Exhibit 5, K. Hale Dec. at ¶ 4). ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████ (Exhibit 4, D. Maine Dec. at ¶¶ 3-5, 9-10, 12; Exhibit 5, K.

---

[1] Ms. Hale is not counsel of record to the County in this litigation but is counsel to the County in the Permit Appeal matter. Thus, she participated to assist with various environmental and regulatory issues.

2

Hale Dec. at ¶ 4). ██████████████████████████████████████████

██████████ (Exhibit 4, D. Maine Dec. at ¶ 5; Exhibit 5, K. Hale Dec. at ¶ 4).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██ (Id. at ¶ 6). ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████. (Id. at ¶ 7). By way of explanation, in addition to the state level

permit, most landfills are sited under a host agreement that sets out additional terms for the

landfill's operation (e.g., host fee payments to the County, County waste services, hours of

operation, and other restrictions). (Id.). ██████████████████████

████████████████████████████████████████████████████████

██████████████████. (Id. at ¶ 8). ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████. (Id. at ¶¶ 4-5; Exhibit 4, D. Maine Dec. at ¶ 6-7).

████████████████████████████████████████████

████████████████████████████████████ [Docs. 178-82]. The same

individuals attended the second settlement conference on behalf of the County. (Exhibit 2, R.

Davidson Dec. at ¶ 3; Exhibit 3, S. Harris Dec. at ¶ 3; Exhibit 4, D. Maine Dec. at ¶ 5). ████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████ (Exhibit 2, R. Davidson Dec. at ¶¶ 4, 7; Exhibit

3, S. Harris Dec. at ¶¶ 4, 7; Exhibit 4, D. Maine Dec. at ¶ 10; Exhibit 5, K. Hale Dec. at ¶¶ 3-4).

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████ (Exhibit 4, D. Maine Dec. at ¶ 11; Exhibit 5, K. Hale Dec. at ¶¶ 10-11). DRI

review is required for projects likely to generate impacts beyond the boundaries of the local

government jurisdiction in which it is located, a process that gets initiated whenever a local

government is considering action (e.g., contract with landfill owner) on a proposed project that

meets the DRI thresholds (found at Ga. Comp. R. & Regs. r. 110-12-3-.05). (Exhibit 5, K. Hale

Dec. at ¶ 11). ████████████████████████████████████████████████████████████

████████████████████████████ (Id. at ¶ 17).

Although the issues for discussion were narrowed during the second settlement conference,

an agreement was not reached. [Doc. 204 at Exhibit "G"]. ███████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

4

██████████████████████████████████████████████████████

██████████████████ (Exhibit 6, E-mail D. Maine to M. Johnson 11/18/22).

        ████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████ [Doc. 204 at Exhibits "I" & "J"]. The following

week on November 29, 2022, Ms. Hale responded to Plaintiff's counsel's e-mail, ████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████ [Id. at

Exhibit "K"]. The document e-mailed to Plaintiff's counsel from Ms. Hale ████████████

██████████ [Id.]; (Exhibit 5, K. Hale Dec. at ¶ 16). On December 2, 2022, at 2:56 p.m., Plaintiff's

counsel responded to Ms. Hale's e-mail, ████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████ [Doc. 204 at

Exhibit "L"]. Only three minutes later, Plaintiff's counsel e-mailed Judge Cheesbro's courtroom

deputy ██████████████████████████████████████████████████████

██████████████████████████████████████████ [Id. at Exhibit "M"].

        Later that afternoon, Ms. Hale responded to Plaintiff's counsel's e-mail to the Court,

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████ [Id. at Exhibit "P"]. Ms. Hale informed the Court and Plaintiff's counsel ████████

██████████████████████████████████████████████████████

████████████████████████████████████████████ and that as discussed with the Court during

the  settlement  conferences,  ████████████████████████████████████████████

████████████████████████████████████████████ [Id.].

    The  following  week  on  December  6,  2022,  Plaintiff's  counsel  responded,  largely

addressing the DRI concerns and submitting ████████████████████████████████

████████████████████████████████ [Id. at Exhibit "Q"]. Plaintiff's  counsel

summarized Plaintiff's position that ████████████████████████████████████████

████████████████████████████████████████████

████████████████████ [Id.]. Plaintiff's counsel cited Georgia case law that, according to

Plaintiff, provides ████████████████████████████████████████████████

████████████████████████████████████████████ [Id.

(citing Old Peachtree Partners, LLC v. Gwinnett Cnty., 315 Ga. App. 342 (2012))].

    Ms. Maine responded to Plaintiff's counsel later that afternoon, informing him ████████

████████████████████████████████████████ rather,  counsel  for  the  County

████████████████████████████████████████████ [Doc. 204

at Exhibit "R"]. Ms. Maine told Plaintiff's counsel that she and the other lawyers on behalf of the

County ████████████████████████████████████████████████████████████

████████████████████████ [Id.]. Plaintiff's counsel concluded that ████████████

████████████████████████████████████████████

████████████████████████ [Id.].

    On December 12, 2022, the Court lifted the stay of the case and Plaintiff filed a Motion to

File under Seal Plaintiff's Motion to Enforce Settlement. [Docs. 185-86, 188]. On January 12,

2023, the County voted not to send the proposal to DRI review and rejected the proposed host

agreement. [Doc. 204 at 6]. ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

(Exhibit 4, D. Maine Dec. at ¶ 9). On January 23, 2023, Plaintiff filed its Motion to Enforce

Settlement Agreement. [Docs. 203-04].

## ARGUMENT AND CITATION TO AUTHORITY

    A.    <u>Counsel for Brantley County did not have authority to bind the County.</u>

    Plaintiff argues that counsel for the County has never made an express restriction regarding

their authority. [Doc. 204 at 8]. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ (Exhibit 1, E-mail D. Maine to K.

Mixon on 9/22/22; Exhibit 2, R. Davidson Dec. at ¶¶ 4, 7; Exhibit 3, S. Harris Dec. at ¶¶ 4, 7;

Exhibit 4, D. Maine Dec. at ¶¶ 3-5, 9-10, 12; Exhibit 5, K. Hale Dec. at ¶¶ 3-4). ██████████

██████ ██████████ ███ █ ███████ ████████ ████████ ████████ ███ ███ ███

████████████████████████████████████████████████████████

████████████████████████████ (<u>Id.</u>). In fact, ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ (O.C.G.A. 50-14-1(a)(3)(A))████████████

██████████████████████████████████ (Exhibit 2, R. Davidson Dec. at ¶ 5; Exhibit 3, S.

Harris Dec. at ¶ 5; Exhibit 5, K. Hale Dec. at ¶ 5). ██████████████████████████

████████████████████████████████████████████████████████



(Id.).

(Id.).

(Id. at ¶ 4).

Plaintiff alleges that during the second settlement conference ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ [Doc. 204 at 4 (emphasis added)]. Representatives for the County **did not** make any such representation. (Exhibit 5, K. Hale Dec. at ¶¶ 5, 17-18). Rather, representatives for the County told Judge Cheesbro ██████████████████████████████████████████

███████████████████████████████████████. (Id. at ¶ 11).

Plaintiff suggests that simply by participating in the settlement conference, counsel for the County had authority to bind through some de facto acceptance of the terms of the Court's Settlement Conference Order and Local Rule 16.7.6(c). [Doc. 204 at 8]. The Court's Order for Settlement Conference provided that "Counsel must ensure that a client representative with full settlement authority is available in person or by telephone or video teleconference at all times from the beginning of the conference until the conference is concluded," and further directed counsel to

"contact the Magistrate Judge's office no later than five business days before the settlement conference to request a waiver" in the event a party could not comply with any aspect of the Court's directive. [Doc. 175]. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ (Exhibit 1, E-mail D. Maine to K. Mixon on 9/22/22; Exhibit 5, K. Hale Dec. at ¶ 3).

Further, the Court's Settlement Order and Local Rule cannot change the law regarding county commissions or circumvent their legislative authority. The Court's Settlement Order entered here [doc. 175] is the same or similar to the orders entered in all cases subject to Court-ordered mediation. For example, a recent case in the Southern District of Georgia involving nearby McIntosh County was subject to an order setting mediation. Banks v. McIntosh Cnty., No. 2:16-cv-00053-RSB-BWC, Doc. 472 (S.D. Ga. July 13, 2022). The Court's Order Setting Mediation required a party representative with full settlement authority to appear. Id. at 1. Attending the mediation for McIntosh County were outside counsel for McIntosh County, the McIntosh County Attorney, McIntosh County Board of Commission Chairman, and the claims adjuster. Banks v. McIntosh Cnty., No. 2:16-cv-00053-RSB-BWC, Doc. 476 (S.D. Ga. July 13, 2022). The minutes of the mediation noted that "[s]ettlement [was] contingent upon approval of all Plaintiffs and the County Commission." Id. In that case, neither the plaintiffs nor the defendant county had a representative at the mediation with full authority. Id. For McIntosh County specifically, the

settlement proposal was contingent upon approval by a vote of the McIntosh County Commission. Id. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ (Exhibit 1, E-mail D. Maine to K. Mixon on 9/22/22; Exhibit 2, R. Davidson Dec. at ¶¶ 4, 7; Exhibit 3, S. Harris Dec. at ¶¶ 4, 7; Exhibit 4, D. Maine Dec. at ¶¶ 3-5, 9-10, 12; Exhibit 5, K. Hale Dec. at ¶¶ 3-4).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ [Doc. 204 at 8 (citing docs. 178-79)]. ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████ (Exhibit 5, K. Hale Dec. at ¶ 9). The minutes summarizing the status conferences do not demonstrate that counsel for the County took each proposal back to the County for a vote at a public meeting. [See docs. 178-79]. The minutes also do not show that counsel for the County had authority to bind the County. [Id.]. Rather, the minutes show that counsel for the County had authority to negotiate to secure the best terms Plaintiff was willing to accept that could then be taken to the full Board for consideration. [Id.]; (Exhibit 5, K. Hale Dep. at ¶ 13). Plaintiff also cites an e-mail from Ms. Maine wherein she stated that ███████████████████████████ [Doc. 204 at Exhibit "H"]. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████. [Id.].

Plaintiff also asserts that ███████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████ [Doc. 204 at 8-9]. Plaintiff cites no e-mails or other evidence in support of these

contentions because none exist. Counsel for the County has never represented that ████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████

Despite Plaintiff's allegations that the County has not been involved in the negotiation

process and that the County has somehow acted in bad faith, outside counsel for the County, the

County Attorney, the then-County Manager, and two members of the Board of Commissioners

have been involved in the settlement process since the first settlement conference. (Exhibit 2, R.

Davidson Dec. at ¶ 3; Exhibit 3, S. Harris Dec. at ¶ 3; Exhibit 4, D. Maine Dec. at ¶ 5; Exhibit 5,

K. Hale Dec. at ¶ 5). These representatives have had authority to negotiate in good faith with the

goal to obtain the best possible proposed host agreement to take back to the full Board for approval

or rejection. (Exhibit 1, E-mail D. Maine to K. Mixon on 9/22/22; Exhibit 2, R. Davidson Dec. at

¶¶ 4, 7; Exhibit 3, S. Harris Dec. at ¶¶ 4, 7; Exhibit 4, D. Maine Dec. at ¶ 12; Exhibit 5, K. Hale

Dec. at ¶ 13).

B.     One Peachtree Partners, LLC is inapplicable here.

In support of its position, Plaintiff cites Old Peachtree Partners, LLC v. Gwinnett County,

Georgia, arguing that the case is instructive and demonstrates that attorneys for the County had

authority to bind the County. 315 Ga. App. 342 (2012). In that case, the Georgia Court of Appeals

11

found a settlement agreement to be enforceable based largely on a distinction between a condition precedent to a contract and a condition which is a "mere formality" in an already valid contract. Id. Specifically, in Old Peachtree, there was a dispute between a property owner and a county regarding an option to purchase property. Id. The property owner made a written settlement offer to the county, which was rejected. Id. at 343. In executive session, the county gave its county attorney authority to propose a counter-offer. Id. The proposal provided in part that "the Board has authorized the following counter-offer of settlements." Id. at 344. The property owner accepted the counter-offer and signed the agreement before it went to a vote of the commissioners. Id. However, the county later voted against the property purchase. Id.

The county in Old Peachtree argued that a vote of the board of commissioners to approve the settlement agreement was a condition precedent to the contract. Id. at 345-46. The Court of Appeals found that the vote was not a condition precedent because the county "authorized the county attorney to make a counteroffer of settlement with knowledge that the County's duty pursuant to that settlement would later require the Board's own approval of the purchase agreement by a Board vote in a public meeting." Id. at 346. The Court of Appeals also pointed to emails in which the property owner asked to sign the agreement before the commission meeting and the fact that the property owner did sign the agreement before the meeting to indicate that the property owner considered the vote to be a "mere formality." Id. at 346-47.

Old Peachtree is materially different from this case in several respects. First, the board of commissioners in Old Peachtree gave its county attorney in executive session express authority to propose a specific counter-offer on behalf of the board. Brantley County Board of Commissioners never gave the County Attorney, outside counsel for the County, the then-County Manager, or any of the individual Commissioners authority to make a counteroffer of settlement on its behalf. (And

12

for the reasons below, it likely could not have). This is exactly the reason Plaintiff has presented

no evidence that such authority was given to anyone. Again, the evidence Plaintiff wants to infer

exists to support its arguments does not exist.

Second, the counter-offer of settlement in Old Peachtree expressly stated that "the Board

authorized  the  [  ]  counter-offer."  ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

Third, the plaintiff in Old Peachtree signed the settlement agreement before the agreement

was brought before the board of commissioners, indicating that the counter-offer was objectively

made with the board of commissioner's authority and that the plaintiff believed the agreement was

binding. ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████

Fourth, Old Peachtree involved a contract to purchase a piece of property. Here, the facts

involve whether or not to build a landfill, which will exist in perpetuity and create ongoing

obligations for both parties involved. Any potential settlement agreement would serve as a living

document that the effects of which would continue long after signing. A contract to purchase a

piece of property does not compare to something as critically important and different as creation

of a landfill expected to cover 75 football fields' worth of land surface and tower some 300 feet

above the flatwood communities of a small Georgia county (i.e., the approximate height of a 28-story building). (Exhibit 5, K. Hale Dec. at ¶ 4).

Plaintiff also argues that the County acted in bad faith ███████████████████ ████████████████████████████████████████████████ On December 6, 2022, the date of the work session prior to the December 8, 2022 meeting, counsel for Plaintiff e-mailed the Court ████████████████████████████████████ ██████████ The unsupported legal position in that e-mail made it abundantly clear that there was no meeting of the minds between Plaintiff and the County's negotiating delegation. ███████ ████████████████████████████████████████████████ ████████████████ (Id. at ¶ 20).

Old Peachtree, the sole case on which Plaintiff relies to argue that the County's counsel could bind it, is based upon completely different facts, including that the local government in that case had explicitly granted their counsel authority to counter with a specific offer and that authority had been clearly conveyed to the plaintiff. At no time during the various settlement negotiations in this matter did Brantley County allow a specific offer, grant their counsel settlement authority to present that offer, or convey any such authority to Plaintiff, and Plaintiff has failed to cite any evidence to show otherwise.

Counties are unique creatures established by the Georgia Constitution, which provides that "[e]ach County shall be a body corporate and politic with such governing authority and with such powers and limitations as are provided in this Constitution and as provided by law." Ga. Const. Art. IX., § 1, ¶ 1. As a political subdivision of the State of Georgia, a county must act through its proper officers—the Board of Commissioners. Banks Cnty. v. Stark, 88 Ga. App. 368, 368 (1953). The county commission has "original and exclusive jurisdiction" to examine, settle, or pay claims

against the county. O.C.G.A. § 36-5-22.1 (emphasis added). The county commission also has exclusive power to make contracts on behalf of the County.[2] O.C.G.A. § 36-10-1; Stephenson v. Bd. of Comm'rs of Cobb Cnty., 261 Ga 399, 401 (1991). Courts have held that a county commission is not authorized to delegate its contracting authority. See Floyd v. Thomas, 211 Ga. 656, 656 (1955) (holding that authorization for a county employee to purchase a dump-truck was an attempted delegation of the authority of the commission which was illegal since only the board would have the authority to make such purchase-contract); Ogletree v. Chester, 682 F.2d 1366, 1371 (11th Cir. 1982) (noting that Georgia case law suggests that a person's expectations of employment with a county cannot be enforced when they are a result of representations made by someone believed to have the authority to bind the county in an employment contract).

The Supreme Court of Georgia has found that "[w]here a city charter[3] specifically provides how a municipal contract shall be made and executed, the city may only make a contract in the method prescribed; otherwise, 'the contract is invalid and unenforceable.'" H.G. Brown Family Ltd. v. City of Villa Rica, 278 Ga. 819, 820 (2005). The method of contracting prescribed by law or charter is absolute and exclusive. Id. The Supreme Court of Georgia has also held that a purported municipal contract may be void and "absolutely ineffective" where the city took no action at all and the ultra vires act was that of one or more city officials who acted completely beyond their power to bind the city. City of Baldwin, 293 Ga. at 27. In City of Baldwin, the court found that the governing charter, enacted by the general assembly, set forth the parameters of the

---

[2] A settlement agreement is a contract under Georgia law. H&E Innovation, Inc. v. Shinhan Bank America, Inc., 343 Ga. App. 881, 881 (2017); Taylor v. Teledyne Tech., Inc., 338 F.Supp.2d 1323, 1358 (N.D. Ga. 2004).

[3] "[M]unicipal charter provisions regulating the making of city contracts have the same legal effect as the statutory requirements that govern county contracting." City of Baldwin v. Woodard & Curran, Inc., 293 Ga. 19, 26 (2013).

city's authority to take official action, including its ability to enter into contracts, and that contract at issue was ultra vires because it did not comply with the mandates of the charter and other laws of the state. Id. at 24.

Similarly, in Maner v. Chatham County, a former Chatham County police officer was fired from the county and attempted to appeal his termination. 246 Ga. App. 265 (2000). The plaintiff's counsel spoke with the county's human resources director, who was primarily responsible for handling the matter, and the two negotiated an agreement between the former officer and the county in lieu of the appeal. Id. at 265. The county did not fulfill its terms of the agreement, and the former officer sued the county for breach of contract, seeking, in part, promissory estoppel. Id. at 265-66. The trial court held that the purported agreement between the plaintiff's counsel and the human resources director was void and unenforceable. Id. at 266.

On appeal, the Court of Appeals cited to O.C.G.A. § 45-6-5, which states that "[p]owers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by acts of any officer done in the exercise of an unconferred power." 246 Ga. App. at 267. The Maner Court noted that the law places the authority to enter into contracts with the board of commissioners which is empowered to "examine, settle, and allow all claims against the county." Id.; see O.C.G.A. §§ 36-5-22.1, 36-10-1. In Maner, the court found that the human resources director was not authorized to enter into contracts on behalf of the county or settle the plaintiff's claims against the county. 246 Ga. App. at 267. The county, therefore, could not be estopped by the unauthorized actions of the human resources direction in entering into an alleged settlement agreement with the plaintiff's attorney. Id. The court further reasoned that no evidence was presented that the county or its commission was aware of or ratified the agreement. Id.

As recognized in <u>Maner</u>, <u>H.G. Brown</u>, and <u>City of Baldwin</u>, the laws establishing Brantley County (a county's equivalent of a city charter) and the Official Code of Georgia specifically provide that the Board of Commissioners has "**<u>original and exclusive jurisdiction</u>**" over the ability to settle claims against the County and enter into contracts that bind the County. O.C.G.A. §§ 36-5-22.1, 36-10-1; 1927 Ga. Laws, pp. 500-504, § 12 (emphasis added). Even if Plaintiff believed that representatives for the County had authority to bind the County in a settlement agreement, which they did not, the purported settlement agreement is ultra vires and null and void. <u>H.G. Brown Family Ltd.</u>, 278 Ga. at 820; <u>City of Baldwin</u>, 293 Ga. at 27. In <u>Old Peachtree</u>, the board of commissioners met in executive session to consider a settlement offer from the property owner and authorized the county attorney to convey a counter-offer of $1,100,000.00 to settle the lawsuit and purchase the property in question. <u>Gwinnett Cnty. v. Old Peachtree Partners, LLC</u>, No. 08-A-03939-4, 2011 WL 12672352, at *2 (Ga. Super. Gwinnett Cnty. Apr. 18, 2011). In that case, the county attorney was no more than a messenger conveying the specific offer to the opposing party. Here, Plaintiff has not presented and cannot present any evidence that the representatives for the County were given any authority to convey or accept any specific offer whatsoever. If they had been given unilateral authority to consider Plaintiff BCDP's proposal and respond within their discretion with a counter-offer, that attempted delegation of authority would likely have been illegal. <u>See</u> 20 C.J.S. Counties § 126 (advising that a county commission may not delegate authority to an agent where the duty to be delegated involves the exercise of discretion because powers involving the exercise of judgment and discretion are in the nature of public trusts).

The law vests the Board of Commissioners with the exclusive jurisdiction to settle cases and enter into contracts. The law further provides that all contracts entered into by the commission on behalf of the county must be in writing and entered on the minutes of the county commission.

O.C.G.A. § 36-10-1. Where that is not followed, there is no enforceable agreement. <u>Ogletree</u>, 682 F.2d at 1370. In fact, even if the Board of Commissioners were to discuss or vote in executive session to authorize settlement to lawsuits, the vote is not binding on a county until a subsequent vote is taken in an open meeting. Brantley Cnty. Code of Ordinances, Art. VII, § 2-190. Here, the County has rejected the proposed host agreement; representatives for the County never had authority to bind the County in any agreement; any purported authority would have been ultra vires and null and void; there is no evidence that the Board of Commissioners ███████████████████ ████████████████████████████████████████ and there is no evidence that the Board of Commissioners ███████████████████████████████████████████████████████ ████████████████████████ The parties never reached an agreement that Plaintiff can seek to enforce.

C.  <u>The proposed host agreement is not a valid contract because there was no meeting of the minds or assent to the terms of the proposed agreement.</u>

First, the representatives of the County made clear in writing ███████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████ Rather, these representatives had authority to negotiate the best possible agreement that should be presented to the full board for consideration and, if the appropriate motion was made, a vote in a public meeting. Plaintiff has presented no evidence or authority to show that counsel for the County had authority to enter into a binding settlement agreement. Plaintiff has also presented no evidence that the County could have even given such authorization.

Second, the representatives of the County made clear, again in writing, ███████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████. One day after that conference, on November 18,

2022, Plaintiff's counsel sent an e-mail ████████████████████████████████████

████████████████████████████████████████████████████████████████████████

[Doc. 204 at Exhibit "G"]. Later that same day, Dana Maine responded to that e-mail and said that

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ (Exhibit 6, E-mail D.

Maine to M. Johnson 11/18/22). Also that same day, Kimberly Hale e-mailed Plaintiff's counsel

███████████████████████████████████. [Doc. 204 at Exhibit "I"]. Plaintiff's counsel

responded ███████████████████████████████ [id. at Exhibit "J"], and Kimberly Hale

replied with ███████████████████████████████████ [Id. at Exhibit

"K"]. Ms. Hale reminded Plaintiff's counsel that ████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ [Id.];

(Exhibit 6, E-mail D. Maine to M. Johnson 11/18/22). Plaintiff has no evidence or authority to

show that a vote by the Board of Commissioners approving a proposed host agreement is a mere

████████████ In fact, these e-mails make clear that an agreement had not been reached without

action from the Board of Commissioners.

        Third, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████ further

showing that there was no meeting of the minds. (See Exhibit 5, K. Hale Dec. at ¶¶ 11-2, 16-18).

As discussed above, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████

## CONCLUSION

In conclusion, Plaintiff has presented no evidence that representatives for the County had, or even could have had, authority to bind the County, and it presents no authority that a vote by the Board of Commissioners is a "mere formality." Of note, Plaintiff does not reference the permit appeal at all in its motion. Plaintiff's rush to formalize settlement is no more than an attempt to supplant the permit review process by the Office of State Administrative Hearings ("OSAH") which is almost complete. Further, no binding settlement agreement was ever reached among counsel or representatives of the parties, and Plaintiff's Motion to Enforce Settlement is premature and procedurally improper and should be denied. To hold otherwise would overturn centuries of law in Georgia regarding the authority of local governments to conduct one of their most basic powers—the power to contract.

Respectfully submitted this 27th day of January 2023.

OLIVER MANER LLP

**/s/ PAUL H. THRELKELD**

P.O. Box 10186
Savannah, GA 31412
(912) 236-3311
pht@olivermaner.com
astevens@olivermaner.com

PAUL H. THRELKELD
Georgia Bar No. 710731
AMELIA C. STEVENS
Georgia Bar No. 758771

FREEMAN MATHIS & GARY, LLP

100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
(770) 8181-0000
dmaine@fmglaw.com
rslimmon@fmglaw.com

DANA K. MAINE
Georgia Bar No. 466580
RACHAEL SLIMMON
Georgia Bar No. 831661

*Attorneys for Defendant Brantley County, Georgia, Chairman, and members of the Brantley County Board of Commissioners*

20

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the foregoing DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT on all parties and counsel of record in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

Respectfully submitted this 27th day of January 2023.

OLIVER MANER LLP

**/s/ PAUL H. THRELKELD**

P.O. Box 10186
Savannah, GA 31412
(912) 236-3311
pht@olivermaner.com
astevens@olivermaner.com

PAUL H. THRELKELD
Georgia Bar No. 710731
AMELIA C. STEVENS
Georgia Bar No. 758771

FREEMAN MATHIS & GARY, LLP

100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
(770) 8181-0000
dmaine@fmglaw.com
rslimmon@fmglaw.com

DANA K. MAINE
Georgia Bar No. 466580
RACHAEL SLIMMON
Georgia Bar No. 831661

*Attorneys for Defendant Brantley County, Georgia, Chairman, and members of the Brantley County Board of Commissioners*