IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

WAYCROSS DIVISION

| | | |
|---|---|---|
| BRANTLEY COUNTY DEVELOPMENT PARTNERS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CV 519-109 |
| BRANTLEY COUNTY, GEORGIA, et al., | ) ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The Court **REPORTS** and **RECOMMENDS** Plaintiff's Motion to Enforce the Settlement Agreement, (doc. nos. 204, 205), be **DENIED** because a settlement agreement negotiated by Brantley County's legal counsel and only two Commissioners cannot bind the County unless approved by a quorum of the Board of Commissioners at a public hearing that complies with Georgia law.

**I.     BACKGROUND**

After nearly three years of litigation over Plaintiff's efforts to build a landfill in Brantley County, Georgia, U.S. District Court Judge Lisa Godbey Wood referred the parties to mediation with U.S. Magistrate Judge Benjamin W. Cheesbro. (Doc. no. 205, p. 2; doc. no. 206, p. 1.) By Order dated August 11, 2022, Judge Cheesbro scheduled the mediation for September 27, 2022, and stated, in part, as follows:  "Counsel must ensure a client representative with full settlement authority is available in person or by telephone or video

teleconference at all times from the beginning of the conference until the conference is concluded." (Doc. no. 175.)

Prior to mediation, Defendants informed Judge Cheesbro that county representatives would attend the mediation and were "prepared to negotiate in good faith," but that "none of the attendees had authority to enter into a binding agreement on behalf of the County." (Doc. no. 206 p. 2; Exs. 1, 4, 5.) The following county representatives attended the mediation on September 27, 2022: Chairman Skipper Harris, Commissioner Randy Davidson, County Manager Bryan Singleton, County Attorney Deen Strickland, and retained counsel of record. (Doc. no. 205, p. 2; doc. no. 206, p. 3.) At the time of the mediation, Plaintiff knew these were the only county representatives in attendance and understood any agreement reached in mediation would be contingent upon approval by a quorum of the Board of Commissioners at a public meeting. See Court's recording system, *For the Record*, (hereinafter FTR), Jan. 30, 2023, 2:12:27-2:13:54, 3:03:47-3:04:21. The mediation was unsuccessful, and negotiations continued by phone and email in October and early November. (Doc. no. 205, p. 3; Ex. B.)

The parties reconvened for in-person mediation with Judge Cheesbro on November 1 and 17, 2022. (Doc. nos. 178-182; doc. no. 205, p. 4; doc. no. 206, p. 4.) As with the first mediation, Plaintiff knew the County negotiating team for the second and third mediation consisted of the same members, had no authority to bind the County, and any proposed agreement would be contingent upon approval by the Board. FTR 3:03:47-3:04:21. The parties were unable to reach a final agreement during the two November mediations, and the parties continued negotiating by phone and email until December 2, 2022, when they finalized all terms of an agreement. (Doc. no. 205, Exs. G, H, & I.) On this date, as conceded by Plaintiff's counsel, Plaintiff knew the agreement was contingent upon approval by the Board at its next meeting. FTR 2:41:17-2:42:49. (See also doc. no. 205, Ex. L; doc. no. 206, p. 5.)

2

Indeed, the final agreement contained a provision to memorialize the date and fact of the anticipated approval by the Board. (Doc. no. 205, Ex. L.)

On December 6, 2022, Plaintiff's counsel informed the Court by email of success in negotiating an agreement and stated, "[T]he County will be meeting in executive session on Tuesday and in regular session on Wednesday for the formal process of approving the settlement agreement." (Doc. no. 206, p. 5; Exs. L, M.) Defendants responded to clarify the vote was not a mere formality and the agreement was not binding unless the Board approved it. (Id. Ex. P.) The Board did not consider the proposed agreement during its public meeting on December 8, 2022. (Doc. no. 205, p. 6.) However, on January 12, 2023, the Board convened in executive session to consider the agreement and unanimously disapproved it during its public meeting on the same day. (Id. at 6; Ex. T.)

Because the final weeks of negotiations occurred asynchronously by electronic means and Plaintiff had no idea which County representatives participated and what process they used to review and approve counterproposals. FTR 2:18:15-2:19:28, 2:19:45-2:20:31. However, based on the slow turnaround time of Defendants' counterproposals and cover emails describing those counterproposals as coming from "the County," Plaintiff believes it is reasonable to assume the entire Board of Commissioners participated in the negotiations and approved the final agreement on or before December 2, 2022. FTR 2:36:01-2:36:45, 2:41:17-2:42:49. Nevertheless, Plaintiff concedes it understood there still "had to be a formal open meeting on the record for the County to formally approve it." FTR 2:31:00-2:33:13.

Based on the suspicion of full Board involvement in the final weeks of negotiations, and the general proposition that attorneys have apparent authority to settle lawsuits, Plaintiff contends the public vote was a mere formality and the final agreement was binding from inception despite the contingency of Board approval and failure of that contingency. (See

3

generally doc. no. 205.)  It is undisputed, however, that only two Commissioners participated in these negotiations from the very outset in September through conclusion in December 2022, and the first time a quorum of the Board met to consider the agreement was the January 12, 2023, meeting where it was unanimously disapproved.  FTR 2:25:27-2:26:17, 3:03:47-3:04:21.

## II.  DISCUSSION

A board of commissioners is the governing body of a Georgia county, and it must vote on any official business at a public meeting for the action to be valid and binding.  O.C.G.A. § 50-14-1(a)(1)(C); O.C.G.A. §§ 50-14-1(a)(3)(A)-(b)(1); Bowen v. Lewis, 40 S.E.2d 80, 82-83 (Ga. 1946).  Settling legal claims is no exception.  Brennan v. Chatham Cnty. Comm'rs, 433 S.E.2d 597, 598 (Ga. Ct. App. 1993).  Boards have "original and exclusive jurisdiction over . . . examining, settling, and allowing of all claims against the county."  O.C.G.A. § 36-5-22.1.  A county cannot delegate its contracting authority and is not bound by any contract the board does not approve, even if a contract is executed by county officials acting beyond their authority.  Floyd v. Thomas, 87 S.E.2d 846, 847 (Ga. 1955); City of Atlanta v. Black, 457 S.E.2d 551, 552 (Ga. 1995); McDilda v. Bd. of Comm'rs of Bulloch Cnty., 497 S.E.2d 25, 27 (Ga. Ct. App. 1998).

Under the Georgia Open Meetings Act, a quorum of commissioners at a public meeting is necessary for approval of any settlement agreement.  O.C.G.A. § 50-14-1(a)(3)(A).  A quorum is a "majority of all the members of the board then in office."  Brantley County Code of Ordinances Art. I, Sec. 1.  Before the public vote, a quorum may meet in executive session to discuss proposed settlements and the opinions of each commissioner concerning approval or disapproval.  O.C.G.A. § 50-14-2; Schoen v. Cherokee Cnty., 530 S.E.2d 226, 227-28 (Ga. Ct. App. 2000).

4

The Brantley County Code of Ordinances recognizes the Board of Commissioner's exclusive jurisdiction over claims asserted against the County and, as set forth in Article VI, Sec. 2-190, authorizes only the Board of Commissioners to:

> Authorize settlements to lawsuits and claims. The board may close a meeting to discuss or vote to authorize settlements to lawsuits and claims involving the county. No vote by the commissioners in executive session to settle litigation, claims, or administrative proceedings, is binding on the county until a subsequent vote is taken in an open meeting. The parties to the lawsuit or claim and principal settlement terms shall be disclosed before the vote.

There are five elected Commissioners in Brantley County, and a quorum is three. Id. at Art. I, Sec. 1.

Plaintiff contends the negotiating team had the ability to bind the County even though it is undisputed the team never included a quorum of the Board, the Board never attempted to delegate powers to the team, and the Board never convened to approve any offers made by the team. (Doc. no. 205.) Plaintiff points to the longstanding Georgia precedent that attorneys have the "apparent authority to enter into agreements on behalf of their clients, and those agreements are enforceable against the clients . . . . unless an opposing party has been made aware of express restrictions on the attorney's authority to settle." Progressive Mountain Ins. Co. v. Butler, 875 S.E.2d 422, 425 (Ga. Ct. App. 2022). This argument fails for two reasons.

First, Plaintiff concedes it had actual knowledge of express restrictions on the negotiating team's ability to settle. Plaintiff knew from the outset the negotiating team included only two Commissioners, the team had no authority to bind the County, and the agreement was contingent upon Board approval. Any contrary belief gleaned from the turnaround time of counterproposals during the final weeks of negotiations, and references to "the County" in cover emails, is unreasonable and flies in the face of repeated reminders the agreement being negotiated had to be submitted to the Board for approval.

5

Second, even if Plaintiff did not know the negotiating team's limitations, Plaintiff is nonetheless charged with such knowledge pursuant to O.C.G.A. § 45-6-5, which provides as follows: "[P]owers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power." In City of Atlanta v. Black, the Supreme Court of Georgia explained any party negotiating with an attorney who represents a governmental entity is presumed to understand the limitations of that attorney's authority as prescribed by Georgia law and local ordinances. 457 S.E.2d 551, 554 (Ga. 1995). Here, the legal framework described *supra* left no doubt an agreement negotiated by the team could not bind Brantley County unless a quorum of the Board voted to approve the agreement at a public meeting.

Plaintiff relies on Old Peachtree Partners, LLC v. Gwinnett Cnty, Ga., in which a quorum of a county board voted in executive session to authorize the county attorney to offer specific terms to settle litigation concerning the county's attempts to purchase a parcel of land from a partnership. 726 S.E.2d 437, 438-39 (Ga. Ct. App. 2012). The county attorney made the exact offer authorized by the board and the partnership accepted, but the county board then voted against purchasing the property in an open meeting. Id. at 439-40. When the partnership sought to enforce the settlement agreement, the county argued its offer was contingent upon final approval of the land purchase by the board at a public meeting. Id. at 440-41. The court held the county was bound by the offer it expressly authorized the county attorney to make, a binding settlement agreement was formed upon acceptance by the partnership, and the contingency of the board approving the land purchase was a mere formality the county had a good faith duty to satisfy. Id. at 442.

Here, in stark contrast to Old Peachtree, it is undisputed a quorum of the Board never met to authorize any of the proposals to Plaintiff, including the final agreement. The first time

6

the Board met to vote on the final agreement was the January 12, 2023, meeting where it was unanimously disapproved.  Nor did the Board clothe its negotiating team with authority to settle the litigation on any terms, but instead merely authorized them to negotiate the best agreement possible for consideration by the Board.

Plaintiff also cites Board of Regents of the Univ. Sys. of Ga. v. Doe, a case involving enforceability of a contract entered by the Georgia Institute of Technology ("Ga Tech") to hire a professor as dean of the management school.  630 S.E.2d 85, 87-88 (Ga. Ct. App. 2006).  The Board of Regents authorized Georgia Tech to conduct the search, and Georgia Tech offered the position to Mr. Doe in a letter that included a contingency of approval by the Board of Regents.  Id. at 88.  Mr. Doe accepted the offer, and Georgia Tech requested approval by the Board of Regents.  Id.  Accusations then surfaced of misconduct by Mr. Doe, and Georgia Tech withdrew the request for approval.  Id.  The Court of Appeals held the employment contract was enforceable despite the absence of approval by the Board of Regents because: (1) the Board of Regents properly delegated its contracting authority to Georgia Tech; (2) Georgia Tech and Mr. Doe entered into a valid, binding contract; and (3) the contingency of approval by the Board of Regents "created an implied duty" for Georgia Tech to "exercise good faith in securing such approval."  Id. at 88-90.  The Court of Appeals also found the absence of approval by the Board of Regents did not preclude enforcement of the contract because approval "would have been a mere perfunctory act" based on compelling evidence showing not "even a slight possibility the Board would have rejected Doe's appointment."  Id. at 90-91.

None of these facts are present here.  The Board did not delegate settlement authority to its negotiating team nor could it here.  The team did not act in bad faith by refusing to present the final agreement for approval by the Board.  There is no evidence approval was a "mere

7

perfunctory" act without even a slight possibility of rejection. On the contrary, the Board did consider the agreement and voted unanimously to reject it.

Finally, Plaintiff cites State v. Federal Defender Program, Inc., which concerns the authority of a senior executive within the Criminal Division of the Georgia Attorney General's office to enter into a binding contract on behalf of the Attorney General. No. S22A1099, 2022 WL 17813458, at *1 (Ga. Dec. 20, 2022). Nothing in this decision sheds meaningful light on the legal issues discussed *supra*. Indeed, in Federal Defender, the Supreme Court of Georgia rejected precedent concerning the validity of contracts executed by municipal officials for this same reason, finding them "inapposite." Id. at *14.

As Plaintiff points out, Georgia law favors compromise and the enforcement of valid settlement agreements. DeRossett Enters. v. Gen. Elec. Cap. Corp., 621 S.E.2d 755, 756 (Ga. Ct. App. 2005). Dismantling the legal framework of county governance to enforce a settlement agreement, however, is a bridge too far.

### III.   CONCLUSION

For the above reasons, the Court **REPORTS** and **RECOMMENDS** Plaintiff's Motion to Enforce the Settlement Agreement be **DENIED**. (Doc. nos. 204, 205.)

SO REPORTED AND RECOMMENDED this 6th day of February, 2023, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA