IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| BRANTLEY COUNTY DEVELOPMENT PARTNERS, LLC | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CASE NO. 5:19-CV-00109 |
| | : | |
| BRANTLEY COUNTY, GEORGIA by and through its Chairman and Members of the Brantley County Board of Commissioners; CHRIS "SKIPPER" HARRIS, RANDY DAVIDSON, BRIAN HENDRIX, JESSE MOBLEY AND RAY GRIFFIN, all in their individual and official capacities as Commissioners, | : : : : : : : : | |
| | : | |
| Defendants. | | |

### PLAINTIFF BRANTLEY COUNTY DEVELOPMENT PARTNERS, LLC'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FEBRUARY 6, 2023 REPORT AND RECOMMENDATION REGARDING MOTION TO ENFORCE SETTLEMENT AGREEMENT

Plaintiff Brantley County Development Partners, LLC ("Plaintiff") respectfully submits its Objections to the Magistrate Judge's February 6, 2023 Report and Recommendation regarding Motion To Enforce Settlement Agreement. [Dkt. 213] ("Report"). For the reasons set forth below, this Court should decline to follow the Report and should grant Plaintiff's Motion To Enforce Settlement Agreement. [Dkt. 204]. As grounds therefor, Plaintiff shows this Court as follows:

### INTRODUCTION

The matter before this Court presents a troubling contradiction between the events which actually occurred during the weeks long court-ordered mediation process and what Defendants and their counsel now say occurred within their sworn testimony. Defendants and their counsel now

1

submit sworn testimony contending that the entire mediation process amounted to absolutely nothing because:

(1) the representatives attending and participating in mediation never had authority to bind the County in any way [Dkt. 206-2, para. 7; 206-3, para. 7];

(2) counsel for ████████████████████████ ████████████████████ [Dkt. 206-4, para. 9; 206-5, para. 9]; and

(3) Defendants never ████████████████████████ ████████████ [Id.].[1]

On the other hand, in stark contrast to what Defendants now say happened, this is what **actually occurred** over the span of this four (4) month mediation process [2]:

(1) Plaintiff and its representatives attended two in-person mediation sessions with Judge Cheesbro and Defendants' representatives that lasted more than eight (8) hours each;

(2) Plaintiff participated in numerous mediation telephone conferences with Judge Cheesbro and Defendants' representatives [Dkt. 178; 179; 180; 181; 188];

---

[1] Outside of the mediation process, and requirement that it be conducted in good faith, applicable State Bar Rules require lawyers to promptly communicate settlement offers to their client. [See State Bar Rules 1.2 and 1.4 together with the official Comment for those Rules]. As discussed herein, there appears to be a serious contradiction between Defense counsel's representations during mediation that the County Board of Commissioners was evaluating proposals and information was being passed along to the County, and Ms. Maine and Ms. Hale's sworn testimony ████████████████████████████████████████ [See Dkt. 206-4, para. 9; 206-5, para. 9].

[2] Plaintiff arrives at four (4) months for the mediation process because the case was stayed to accommodate mediation on August 11, 2022 and the stay was not lifted until December 12, 2022. [Dkt. 175 and 185]. The first in-person mediation session took place on September 27, 2022 and, approximately nine (9) weeks later, concluded on December 2, 2022 when Plaintiff contends settlement was reached.

(3) Plaintiff exchanged ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;

(4) During the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Dkt. 178];

(5) Also during the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Dkt. 204, Ex. H];

(6) The parties entered the November 17, 2022 in-person mediation session ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Dkt. 204, Ex. G];

(7) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Id., Exs. L, N & O];

(8) Plaintiff and Judge Cheesbro spent countless hours on this endeavor and Plaintiff spent tens of thousands of dollars during the process; and

(9) justice was delayed where this case stayed for a period of four (4) months to accommodate the mediation process.

Despite these actual events, Defendants now contend that the entire four (4) month mediation process into which substantial judicial and private resources were poured amounted to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Either the Defendants complied with this Court's order, mediated in good faith and a binding settlement agreement exists; or, Defendants violated the Court's order, mediated in bad faith and used the mediation process as a subterfuge to

3

achieve a four (4) month delay of this case at great cost and expense to Plaintiff.[3]  It cannot be either scenario, as erroneously recommended by the Magistrate Report.

Unless overruled, the Magistrate's Report creates a dangerous precedent in this regard because, when followed to its logical conclusion, no mediation with a county **can ever be binding or even meaningful** without a quorum of the Commissioners present.  The problem with this logic is that in real practice a quorum of county commissioners will **never** be present for any mediation.  Indeed, as to this one point, both Commissioners Harris and Davidson's testimony is correct:

"It was important to the County to have the appropriate elected officials attend the settlement conferences without violating Georgia's Open Meetings Law.  **That is why only two commissioners attended the settlement conferences, me and the Chairman.  Had three commissioners attended, that would have constituted a quorum and that would have constituted an official, public meeting of the board.  Such a meeting would have to have been advertised and made open to public participation**".  [Dkt. 204-2, para. 5; 204-3, para. 5].[4]

It is axiomatic that a confidential mediation process cannot be attended by a quorum of county commissioners because it would turn mediation into an open meeting with public participation, an untenable situation.  That is why a quorum of commissioners is **never** present for a mediation.  Yet, that is precisely what the Magistrate Report would require for a binding settlement to ever be entered into with a county at mediation.  The Report turns the law of agency

---

[3] Further evidencing this point, Commissioners Harris and Davidson attended and participated in all mediation sessions where the issues of disagreement were narrowed and ultimately agreed upon. Yet, these same Commissioners **still voted in opposition to settlement**.

[4] Presumably, some official action was taken in executive session by the County deputizing Commissioners Harris and Davidson to attend and participate in mediation along with County Manager Bryan Singleton, County Attorney Deen Strickland and outside private counsel Dana Maine and Kimberly Hale.  However, executive sessions are closed to the public by the attorney-client privilege and Defendants have failed to produce any evidence of that official action demonstrating the group's authority at mediation, or perhaps more importantly, any limitations on the group's authority. Nevertheless, in response to Judge Cheesbro's order requiring attendance by "client representative with full settlement authority", this group attended and participated in the mediation conferences.

on its head and ignores well settled law that private attorneys are officers of the court and have apparent authority to bind their clients to settlement agreements. See O.C.G.A. § 15-19-5. To comply with court-ordered mediation requirements the County Board of Commissioners need only vote in executive session on matters pertaining to settlement of litigation. See O.C.G.A. § 50-14-2 (authorizing executive session to consult and meet with legal counsel pertaining to litigation and settlement); Schoen v. Cherokee Cnty., 242 Ga. 501 (2000) (voting in executive session authorized to accept or reject settlement offers). That is what Plaintiff understood to be the case in this situation in accordance with common practice when dealing with counties or cities as the opposing party in a court ordered mediation.

As noted, and demonstrated more fully below, either a valid and binding settlement agreement exists between the parties or Defendants failed to comply with the requirements for court-ordered mediation, failed to mediate in good faith and wrongfully used the mediation process to gain a four (4) month delay of this litigation. The Magistrate Report produces a result where neither scenario applies, which cannot be the law. The Magistrate Report should be rejected and this Court should grant Plaintiff's Motion To Enforce Settlement or, alternatively, find that Defendants violated both the Local Rules and this Court's Order governing mediation.

## OBJECTIONS TO THE BACKGROUND SECTION OF THE REPORT

**Objection Number 1**: Page two (2) of the Report states: "Prior to mediation, Defendants informed Judge Cheesbro that county representatives would attend the mediation and were "prepared to negotiate in good faith", but that "none of the attendees had authority to enter into a binding agreement on behalf of the County."

**Plaintiff's Response**: Plaintiff objects to these statements. There is no evidence that these quoted statements were made to Judge Cheesbro prior to mediation. Indeed, it is unclear to

Plaintiff what evidence the Report is quoting to support the conclusion that these statements were allegedly made to Judge Cheesbro prior to mediation. The only written document which Plaintiff learned about after filing its Motion to Enforce Settlement is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Dkt. 206, Ex. 1].

In a game of semantics, Defendants now argue that "authority to negotiate" is not the same as "authority to settle". Nevertheless, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ until Defendants filed their response to the Motion To Enforce Settlement.

**Objection Number 2**: Page two (2) of the Report further states: "At the time of the mediation, Plaintiff ... understood any agreement reached in mediation would be contingent upon approval by a quorum of the Board of Commissioners at a public meeting. ... Plaintiff knew the County negotiating team ... had no authority to bind the County, and any proposed agreement would be contingent upon approval by the Board. ... On this date, as conceded by Plaintiff's counsel, Plaintiff knew the agreement was contingent upon approval by the Board at its next meeting".

**Plaintiff's Response**: Plaintiff objects to these statements. In accordance with Judge Cheesbro's Order and Local Rule 16.7.6(c), Plaintiff believed that the Defendants' group ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ had settlement authority. No one ever told the Plaintiff that Defendants were violating Judge Cheesbro's order or violating this Court's Local Rules.

106214.1 141566-000002

Plaintiff further disputes that enforceability of the settlement agreement was contingent upon approval by the Board of Commissioners. Once agreement was reached between those with settlement authority, it would then go before the Board of Commissioners to formally authorize the Chairman to sign the agreement. See Schoen, 242 Ga. App. at 503 (authorizing Board of Commissioners to reaffirm at public meeting actions previously taken in executive session pertaining to settlement of litigation). Nowhere ████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████ [Dkt. 204, Ex. N].

**Objection Number 3**: Page three (3) of the Report states: "on January 12, 2023, the Board convened in executive session to consider the agreement and unanimously disapproved it during its public meeting on the same day".

**Plaintiff's Response**: Plaintiff objects insofar as the Report omits certain facts relative to the Board vote. ██████████████████████████████████████████ ████████████████████████████ ████████████ [Dkt. 204, Ex. N, para. 41]. Defendants inexplicably failed to do so. [Dkt. 188 ("Defense confirms that the matter was not put on the agenda for County meeting")]. When they finally did get around to placing it on an agenda in January, 2023, ████████ ████████████████████████████████████ **voted to disapprove**.

**Objection Number 4**: The bottom of page four (4) of the Report states: "Based on the suspicion of full Board involvement in the final weeks of negotiations, and the general proposition that attorneys have apparent authority to settle lawsuits, Plaintiff contends the public vote was a

7

mere formality and the final agreement was binding from inception despite the contingency of Board approval and the failure of that contingency".

**Plaintiff's Response**: Plaintiff first objects to use of the word "suspicion". Plaintiff had much more than mere "suspicion" that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ [Dkt. 204, Ex. A]. On October 13, 2022, during a telephone conference with Judge Cheesbro, Defense counsel indicated that Defendants [the named County Board of Commissioners]:

"**are evaluating the proposed agreement** and states it may be Monday, 10/17/2022, before they can deliver a response back to Plaintiff. Court orders Defense to provide response back to Plaintiff by close of business on Monday, 10/17/2022". [Dkt. 178] (emphasis supplied).

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ [Dkt. 204, Ex. B]. Subsequently, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ [Dkt. 204, Ex. C; Dkt. 179]. [5]

---

[5] Curiously, after this telephone conference took place and the minutes filed, Ms. Maine asked Judge Cheesbro to put less detail in the minutes for the stated reason that outside third parties could be looking at the docket and information they obtained could impede settlement discussions. Whatever the true motive, subsequent minutes filed with the Court contain scant details and do not reflect all of the discussions that took place.

8

Later in the mediation process, Plaintiff provided ███████████████

███████████████████████████████████████████████████

███████ [Dkt. 204, Ex. H].

For the same reasons discussed in Objection Number 2 above, Plaintiff objects to the statement that Board of Commissioner approval was a contingency of enforceability of the settlement agreement.

**Objection Number 5**: The Report's Omission of Salient Factual Evidence.

**Plaintiff's Response**: The Report is silent on a number of salient facts pertinent to the issue before the Court. Plaintiff objects to the Report's omission of the following factual evidence not otherwise previously addressed with these Objections:



(1) ███████████████████████████████████████

███████████████████████████████████████

█████████████████████████ [Dkt. 204, Ex. E];

(2) ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████ [Id. Ex. F];

(3) On November 17, 2022, the parties conducted another in-person settlement conference lasting more than nine hours ████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████ [Id. Ex. G];

106214.1 141566-000002

(4) ███████████████████████████████
███████████████████████████████
███████████████████████████████
████████████████████ [Id., Ex. J];

(5) ███████████████████████████████
███████████████████████████████
████████████████████████████ [Id., Ex. K];

(6) ███████████████████████████████
███████████████████████████ [Id., Exs. L, N & O]; and

(7) ███████████████████████████████
███████████████████████████████
██████ [Id., Ex. P].

## OBJECTIONS TO THE DISCUSSION SECTION OF THE REPORT

### A. Plaintiff Objects To the Report's Legal Conclusion Refusing To Recommend Enforcement Of The Settlement Agreement.

The Magistrate Report's legal conclusion recommending denial of Plaintiff's Motion to Enforce Settlement is fatally defective where it is premised on the flawed logic that the group of Brantley County representatives attending and participating in mediation lacked settlement authority because the group did not include a quorum of the Board of Commissioners. [See Report, Dkt. 213, p. 5 ("Plaintiff contends the negotiating team had the ability to bind the County even though it is undisputed the team never included a quorum of the Board, the Board never attempted to delegate powers to the team, and the Board never convened to approve any offers made by the team")]. As noted, because a quorum of the Board of Commissioners cannot **ever** attend mediation without converting the mediation into a public meeting, the Report leads to the conclusion that

mediation with a county can never be valid. The Report fails to correctly apply Georgia contract law, errs on principals of agency, and runs afoul of the Rule that "the law favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced". Progressive Mountain Ins. Co. v. Butler, 364 Ga. App. 439, 442 (2022).

The construction and enforcement of settlement agreements are governed by principals of the state's general contract law. Wong v. Bailey, 752 F.2d 619, 621 (11th Cir. 1985). In determining whether to enforce settlement agreements, Federal Courts look to Georgia state law principals when reviewing the scope of an attorney's authority to enter into a settlement agreement. Hayes v. National Service Indus., 196 F. 3d 1252, 1254 (11th Cir. 1999). An attorney of record is the client's agent in pursuing a cause of action and under Georgia law an act of an agent within the scope of her apparent authority binds the principal. Id.; see also O.C.G.A. § 15-19-5 (attorneys have authority to bind their clients in any action or proceeding by any agreement in relation to the cause). When determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent where one party's intention is deemed to be the meaning that a reasonable man in the position of the other contracting party would ascribe to the other party's manifestations of assent. Cox Broadcasting Corp. v. National Collegiate Athletic Ass'n, 250 Ga. 391, 395 (1982).

Application of these governing precepts to the undisputed factual evidence, summarized above, shows that a settlement agreement was entered into on December 2, 2022 when Plaintiff accepted the Defendants' counteroffer. Judge Cheesbro's order required attendance by "client representative with full settlement authority". Two commissioners, the county manager, the county attorney and two outside private sector attorneys attended and participated in all mediation conferences. Ms. Maine and Ms. Hale, outside private sector counsel, had apparent authority to

11

bind the Defendants. ███████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
████████████████
█████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
██████████████████████ Old Peachtree Partners, LLC v. Gwinnett Cnty., 315 Ga. App. 342, 346 (2012); Lennon v. AECK Associates, Inc., 157 Ga. App. 294, 295 (1981) ("The legislature has provided and the courts of Georgia have held that an attorney should be able to rely upon the authority of the other attorney of record").

Contrary to the Report's recommendation, nothing about Plaintiff's understanding of this process violated the Open Meetings Act, applicable law, or normal custom and practice when mediating with a governmental entity. The Open Meetings Act authorizes the Board of Commissioners to meet in executive session to discuss settlement of litigation, authorize individuals to attend court-ordered mediation, and to approve or reject settlement offers. See O.C.G.A. § 50-14-2; Schoen, Supra. Moreover, the law enables the Board of Commissioners to reaffirm at public meeting actions previously taken at executive session pertaining to settlement. Schoen, Supra at 503. Under the objective standard governing contract formation, Plaintiff had

every reason to believe █████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████ Nor could Plaintiff have discovered anything to the contrary since executive sessions are closed to the public and protected by attorney-client privilege.

████████████████████████████████████████████████████████

█████████████████████████████████ While a vote by the Board of Commissioners was a required formality to effectuate the signature upon the settlement agreement, "the Board's failure to complete that formality in good faith when voting in the public meeting cannot destroy an already existing settlement agreement". Id. at 348.

The Report also cites City of Atlanta v. Black, 265 Ga. 425 (1995) to support its flawed conclusion that "an agreement negotiated by the team could not bind Brantley County unless a quorum of the Board voted to approve the agreement at a public meeting". But that case is wholly inapposite. In Black, the Georgia Supreme Court held that the authority of the City of Atlanta attorney, a public officer and public sector attorney, was restricted by express limitations placed upon the City Attorney within the Municipal Code. However, the holding of Black is limited to public sector attorneys who are public officers. It does not apply to private outside counsel, such as Ms. Maine and Ms. Hale:

"[T]he presumption of plenary authority that attaches to **private sector attorneys** … cannot apply to those attorneys who are also public officers since pursuant to O.C.G.A. § 45-6-5, public sector attorneys can exercise only those powers 'defined and conferred by law'. … It is apparent that the holding in Brumbelow is not applicable to **public sector attorneys**". Black, 265 Ga. 425, 427 (1995) (emphasis supplied).

13

106214.1 141566-000002

Black has no bearing on the situation here involving two private sector attorneys who are not public officers, but instead are officers of this court. Private sector attorneys have apparent authority to enter into enforceable agreements on behalf of their clients. Brumbelow v. Northern Propane Gas Co., 251 Ga. 674 (1983).

## CONCLUSION

For the foregoing reasons, and based on the entire Record before the Court, Plaintiff respectfully objects to the Magistrate Judge's Report and Recommendation. Plaintiff's Motion to Enforce Settlement should be granted. Plaintiff respectfully requests such other, further and different relief to which it may be entitled.

Respectfully submitted this 13th day of February, 2023.

GILBERT, HARRELL, SUMERFORD & MARTIN, P.C.

By: ___/s/ Mark D. Johnson_____
     Mark D. Johnson
     Georgia Bar No. 395041
     Post Office Box 190
     Brunswick, Georgia 31521-0190
     (912) 265-6700

|  |  |
|---|---|
|  | LOVETT LAW GROUP, LLC |
| 5400 Riverside Drive<br>Suite 203<br>Macon, Georgia 31210<br>(478) 476-4500<br>bob@LovettLawGroup.com | By: /s/ L. Robert Lovett<br>     L. Robert Lovett<br>     Georgia Bar No. 459566 |
|  | WILSON BROCK & IRBY, L.L.C. |
| 2849 Paces Ferry Road SE<br>Suite 700<br>Atlanta, Georgia 30339<br>(404) 853-5050<br>kwise@wbilegal.com | By: /s/ Kyler L. Wise<br>     Kyler L. Wise<br>     Georgia Bar No. 771285 |
|  | BROWN ROUNTREE PC |
| 26 North Main St.<br>Statesboro, GA 30458<br>(912) 489-6900 Office<br>(912) 764-2251 Facsimile<br>george@br-firm.com | By: /s/ George Rountree<br>     GEORGE ROUNTREE<br>     GA Bar No. 616205<br>     *Attorneys for Plaintiff* |

15

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing pleading via electronic service through the e-filing system upon:

Dana K. Maine
Rachael Slimmon
Freeman Mathis & Gary, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339

Paul H. Threlkeld
Amelia C. Stevens
Oliver Maner LLP
P.O. Box 10186
Savannah, Georgia 31412

This 13$^h$ day of February, 2023.

/s/ Kyler L. Wise
Kyler L. Wise

106214.1 141566-000002